**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
Robert Scott Lawrence (SBN 207099)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050
info@gauntlettlaw.com
rsl@gauntlettlaw.com

Attorneys for Plaintiff
GAUNTLETT & ASSOCIATES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| DAVID A. GAUNTLETT d/b/a GAUNTLETT & ASSOCIATES, a California sole proprietorship,<br><br>Plaintiff,<br><br>vs.<br><br>ILLINOIS UNION INSURANCE COMPANY, an Illinois corporation,<br><br>Defendant. | Case No. 5:11-cv-00455 LHK<br><br>Hon. Lucy H. Koh<br><br>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: ILLINOIS UNION'S DUTY TO DEFEND**<br><br>Date: April 21, 2011<br>Time: 1:30 p.m.<br>Ctrm: 4 – 5th Floor |

# TABLE OF CONTENTS


**Page**

**I. INTRODUCTION ..... 1**

**II. MATERIAL FACTS ..... 1**

**A. The Underlying Litigation ..... 1**

**B. The Pertinent Language of the Illinois Union Policy ..... 2**

**C. Insurer Response to Tender of Defense ..... 3**

**III. APPLICATION OF THE PERTINENT GOVERNING PRINCIPLES SUPPPORTS FINDING A DEFENSE HEREIN ..... 4**

**A. Summary Judgment Standard ..... 4**

**B. California Law Governs This Dispute ..... 4**

**C. Facts Which Directly or by Inference Arguably Place Part of the Underlying Claim Within the Policy Trigger a Duty to Defend ..... 5**

**1. The Mere Potential for Coverage Triggers the Duty to Defend ..... 5**

**2. Inferences Need Not Be Pled to Evidence a Defense ..... 5**

**3. An Insurer Cannot Rely on a Claimant Who Seeks to Avoid Triggering Coverage by Failing to Factually Develop Potentially Covered Elements of Its Claim ..... 6**

**D. Facts, Not Pleading Labels, Trigger the Duty to Defend ..... 6**

**1. The Duty to Defend Analysis Does Not Depend on Titles Given to the Claims in the Underlying Complaint ..... 6**

**2. It Is of No Consequence that Tarzi Failed to Actually Plead Causes of Action for "Misrepresentation" or "Invasion of Privacy" ..... 7**

**3. The Facts that Implicate Coverage Need Not Predominate in Order to Compel Finding a Defense ..... 7**

**4. The Standard of Potentiality Triggering a Defense Is Far Broader than that of Plausibility that Governs Rule 12(b)(6) Scrutiny ..... 7**

**E. Wage and Hour Claims May Give Rise to a Loss Within an EPLI Insurance Policy in Light of Their Breadth and the Nature and Scope of Their Provisions ..... 8**

**IV. ILLINOIS UNION'S DUTY TO DEFEND IS TRIGGERED BY TARZI'S ALLEGATIONS OF "INVASION OF PRIVACY" ..... 8**

**A. Illinois Union's Policy Language Creates a Three-Part Test to Determine that It Had a Duty to Defend ..... 8**

B. Each of the Elements of "Any Invasion of Right of Privacy of an Employee" Is Satisfied ........ 9

1. "Any" Element Is Satisfied ........ 9

2. "Invasion of Right of Privacy" Element Is Satisfied ........ 10

a. The Pertinent Policy Language Is Subject to a Broad Construction ........ 10

b. The Seclusion Prong of Common Law Privacy Falls Within the Policy's Broad "Any Invasion of Privacy" Coverage ........ 11

c. E-mails Are Accorded Legal Protection Like Traditional Forms of Communication that Render Their Alleged Interruption Actionable As a Form of "Invasion of Privacy" ........ 11

d. The Inferences Necessary to Show "Any Invasion of Privacy" Are Stronger than Those Found Sufficient to Evidence "Disparagement" in a Recent Case ........ 13

e. There Is No Distinct Publication Requirement in Illinois Union's Policy ........ 14

3. "Employee" Element Is Satisfied ........ 15

V. MISCLASSIFICATION OF TARZI AS EXEMPT IS AN EMPLOYMENT-RELATED MISREPRESENTATION THAT TRIGGERS THE DUTY TO DEFEND ........ 16

A. "Misrepresentation" Includes Any Intent to Deceive ........ 16

B. This Court Has Found that Any Employment Representation May Include Misclassification of an Employee As Exempt ........ 16

C. No Claim for "Misrepresentation" Need Be Asserted to Trigger the Pertinent Coverage ........ 17

D. An Amendment of the Pleadings to Bring a Claim Within Coverage Could Have Been Readily Effected ........ 17

VI. PLAINTIFF'S CLAIMS FALL OUTSIDE ANY EXCLUSION ........ 18

A. The Gain or Profit, Compensation Earned or Due, As Well As Employment Contracts Exclusions Do Not Bar a Defense ........ 18

B. The FLSA Exclusion Does Not Clearly and Unambiguously Exclude Potential Coverage for Loss for Employment-Related Misrepresentation ........ 19

VII. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970) .......... 4

*Align Tech., Inc. v. Federal Ins. Co.*,
673 F. Supp. 2d 957 (N.D. Cal. 2009) .......... 5, 6

*American Guar. & Liab. Ins. Co. v. Vista Med. Supply*,
699 F. Supp. 787 (N.D. Cal. 1988) .......... 6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 4

*Anthem Elecs., Inc. v. Pacific Employers Ins. Co.*,
302 F.3d 1049 (9th Cir. (Cal.) 2002) .......... 5

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (U.S. 2009) .......... 7

*California Dairies, Inc. v. RSUI Indem. Co.*,
617 F. Supp. 2d 1023 (E.D. Cal. 2009) .......... 20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 4

*City of Ontario v. Quon*,
130 S. Ct. 2619 (U.S. 2010) .......... 11

*Conestoga Servs. Corp. v. Executive Risk Indem., Inc.*,
312 F.3d 976 (9th Cir. (Cal.) 2002) .......... 4

*Creative Hospitality Ventures, Inc. v. United States Liab. Ins.*,
655 F. Supp. 2d 1316 (S.D. Fla. 2009) .......... 9

*Dobrin v. Allstate Ins. Co.*,
897 F. Supp. 442 (C.D. Cal. 1995) .......... 6, 17

*Haynes v. Office of the Attorney General*,
298 F. Supp. 2d 1154 (D. Kan. 2003) .......... 12

*Hudson Ins. Co. v. Colony Ins. Co.*,
624 F.3d 1264 (9th Cir. (Cal.) 2010) .......... 6, 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .......... 4

*Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*,
__ F. Supp. 2d __, 2011 WL 221658 (N.D. Cal. 2011) .......... 13, 14

*National Union Fire Ins. Co. of Pittsburgh, PA v. Seagate Technology, Inc.*,
233 Fed. Appx. 614 (9th Cir. (Cal.) 2007) ........ 19

*Netscape Communications Corp. v. Federal Ins. Co.*,
343 Fed. Appx. 271 (9th Cir. (Cal.) 2009) ........ 15

*O'Connor v. Ortega*,
480 U.S. 709 (1987) ........ 12

*Park Univ. Enters. v. American Cas. Co. of Reading, PA*,
314 F. Supp. 2d 1094 (D. Kan. 2004), *aff'd*, 442 F.3d 1239 (10th Cir. (Kan.) 2006) ........ 10

*Payless Shoe Source, Inc. v. Travelers Cos., Inc.*,
569 F. Supp. 2d 1189 (D. Kan. 2008), *aff'd*, 585 F.3d 1366 (10th Cir. (Kan.) 2009) ........ 8

*Pension Trust Fund v. Federal Ins. Co.*,
307 F.3d 944 (9th Cir. (Cal.) 2002) ........ 7, 14, 17

*Perkins v. Maryland Cas. Co.*,
388 Fed. Appx. 641 (9th Cir. (Cal.) 2010) ........ 19

*Pure Power Boot Camp v. Warrior Fitness Boot Camp*,
587 F. Supp. 2d 548 (S.D.N.Y. 2008) ........ 12

*United States v. Forrester*,
512 F.3d 500 (9th Cir. (Cal.) 2008) ........ 11

*United States v. Sterling Salt Co.*,
200 F. 593 (W.D.N.Y. 1912) ........ 16

**STATE CASES**

*A.P. Landis Inc. v. Mellinger*,
175 A. 745 (Pa. Super. Ct. 1934) ........ 16

*ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.*,
147 Cal. App. 4th 137 (2007) ........ 11

*American Cyanamid Co. v. American Home Assur. Co.*,
30 Cal. App. 4th 969 (1994) ........ 8

*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*,
100 Cal. App. 4th 1017 (2002) ........ 6, 19

*Barnett v. Fireman's Fund Ins. Co.*,
90 Cal. App. 4th 500 (2001) ........ 7

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*,
5 Cal. 4th 854 (1993) ........ 10

*CNA Cas. of Cal. v. Seaboard Sur. Co.*,
176 Cal. App. 3d 598 (1986) ........ 18

*Fibreboard Corp. v. Hartford Acc. & Indem. Co.*,
16 Cal. App. 4th 492 (1993) ........ 10

*Fireman's Fund Ins. Cos. v. Atlantic Richfield Co.*,
94 Cal. App. 4th 842 (2001) ........ 15

*Gray v. Zurich Ins. Co.*,
65 Cal. 2d 263 (1966) ........ 17

*Horace Mann Ins. Co. v. Barbara B.*,
4 Cal. 4th 1076, 1086 (1993) ........ 13

*Mariscal v. Old Republic Life Ins. Co.*,
42 Cal. App. 4th 1617 (1996) ........ 5

*Mid-Century Ins. Co. v. Gardner*,
9 Cal. App. 4th 1205 (1992) ........ 9

*Montrose Chem. Corp. v. Superior Court*,
6 Cal. 4th 287 (1993) ........ 5, 7, 13, 18

*Reserve Ins. Co. v. Pisciotta*,
30 Cal. 3d 800 (1982) ........ 16

*Safeco Ins. Co. of Am. v. Robert S.*,
26 Cal. 4th 758 (2001) ........ 15

*Scottsdale Ins. Co. v. MV Transp.*,
36 Cal. 4th 643 (2005) ........ 7

*State ex rel. State Comp. Mut. Ins. Fund v. Berg*,
927 P.2d 975 (Mont. 1996) ........ 16

*United Pacific Ins. Co. v. McGuire Co.*,
229 Cal. App. 3d 1560 (1991) ........ 5

*Vann v. Travelers Cos.*,
39 Cal. App. 4th 1610 (1995) ........ 6

**DOCKETED**

*AVAAK, Inc. v. Shi*,
No. D052687, 2008 WL 5403665 (Cal. Ct. App. (4th Dist.) Dec. 30, 2008) ........ 12

*Hooters of Augusta, Inc. v. American Global Ins. Co.*,
No. 04-11077, 2005 WL 3292089 (11th Cir. (Ga.) Dec. 6, 2005) ........ 10

*LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.*,
No. C 04-1001 SBA, 2005 WL 146896 (N.D. Cal. Jan. 20, 2005) ........ 10, 15

*Professional Sec. Consultants, Inc. v. United States Fire Ins. Co.*,
No. CV 10-04588 SJO (SSx), 2010 WL 4123786 (C.D. Cal. Sept. 22, 2010) ........ 16, 17, 20

**FEDERAL RULES AND STATUTES**

18 U.S.C. § 2510 (Electronic Communications Privacy Act) ........ 12
18 U.S.C. § 2511 ........ 12
18 U.S.C § 2707 (Stored Communications Act) ........ 12
FED. R. CIV. P. 12(b)(6) ........ 7, 8
FED. R. CIV. P. 56(c) ........ 4
Fed. R. Civ. P. 56(d) ........ 1

**OTHER AUTHORITIES**

RANDOM HOUSE UNABRIDGED DICTIONARY (2d ed. 1993) ........ 9, 10, 16
RESTATEMENT (SECOND) OF TORTS ........ 11
RESTATEMENT (SECOND) OF TORTS § 652B (1977) ........ 11

## I. INTRODUCTION

Plaintiff David A. Gauntlett d/b/a Gauntlett & Associates ("G&A") seeks an order pursuant to Fed. R. Civ. P. 56(d) that defendant Illinois Union Insurance Company ("Illinois Union") had a duty to defend the underlying lawsuit styled *Tarzi v. Gauntlett & Associates, et al.*, Consolidated Superior Courts of California, County of Orange, Central District, Case No. 07-CC-08999 (the "*Tarzi* action").

Illinois Union's policy includes express "Inappropriate Employment Conduct" coverage for "Employment-related misrepresentation to . . . an Employee" and for "any invasion of right of privacy of an Employee."

There are two distinct grounds for potential coverage:

**First,** the *Tarzi* complaint's allegations that G&A accessed Tarzi's computer, changed the settings, and deleted some 3,000 of her e-mails potentially implicate the policy's broad coverage for "any invasion of the right of privacy." Tarzi complained that these actions were inappropriate and taken by G&A without Tarzi's permission, consent or knowledge after Tarzi had demanded that she be paid overtime wages based on her claim that she was not, in fact, an "exempt" employee.

**Second,** the *Tarzi* complaint alleges that G&A improperly characterized Tarzi as an "exempt" employee. These claims implicate the policy's coverage for "Employment-related misrepresentation to . . . an Employee," as a statement regarding employment status can only be construed as "employment-related," and Tarzi's allegation that G&A chose to "misclassify her as an 'exempt' employee" necessarily implies that Tarzi had been informed of this misclassification – which, if untrue, would constitute a "misrepresentation."

No exclusions bar a defense because G&A's potential liability for unpaid overtime and other wages that were allegedly withheld from Tarzi is independent of both the alleged "invasion of privacy" and "misrepresentation" as to Tarzi's employment status.

## II. MATERIAL FACTS

### A. The Underlying Litigation

Miriam Tarzi ("Tarzi") filed a lawsuit against G&A on August 16, 2007 styled *Miriam Tarzi v. David A. Gauntlett dba Gauntlett & Associates et al.*, Consolidated Superior Courts of California,

County of Orange, Central District, Case No. 07-CC-08999 (the "*Tarzi* action"). It alleged causes of action including alleged misclassification of Tarzi as an exempt employee and managing a work place where someone had: (1) logged onto her computer, (2) manipulated the settings, and (3) deleted thousands of e-mails.[1]

The *Tarzi* complaint alleges in pertinent part that:

> 5. . . . From the onset of her employment, defendant classified her as an "exempt" employee . . . .
>
> . . . .
>
> 10. On May 10, 2007, plaintiff provided defendant Gauntlett a letter regarding what she reasonably believed to be **his choice to mis-classify her as an "exempt" employee.** She requested payment for her unpaid overtime hours. When plaintiff returned to work she learned that **all of her stored email communications, over 3000, had been deleted from her work computer.** Plaintiff immediately brought this to the attention of defendant's Technology Manager who stated that he knew nothing about the missing documents. He looked at plaintiff's computer and did, however, confirm that **someone had changed her settings and deleted of [sic] her stored e-mails.** Plaintiff then advised defendant Gauntlett that **someone had logged into her computer, manipulated the settings and deleted several thousand e-mails.** Defendant Gauntlett had no response.

(Emphasis added.)

**B. The Pertinent Language of the Illinois Union Policy**

Illinois Union issued Employment Practices Liability Insurance Policy No. 12 62 65 8 to David A. Gauntlett d/b/a Gauntlett & Associates, as named insured, effective July 10, 2006 through July 10, 2007 (the "Policy").[2]

The Policy has a limit of $1 million for each First Party Insured Event.

The Policy provides in pertinent part the following coverage and definitions:

> This policy covers Claims alleging Employment-related Discrimination, Employment-related Harassment, and **Inappropriate Employment Conduct** liability . . . .
>
> . . . .
>
> **A.** We will pay Loss amounts that the insured is legally obligated to pay on account of a Claim because of an Insured Event to which this policy applies. . . .
>
> . . . .

---

[1] A copy of the *Tarzi* action complaint is attached as **Exhibit "2"** to the accompanying Declaration of David A. Gauntlett (hereinafter "Gauntlett Decl.").

[2] A copy of the Policy is attached as **Exhibit "1"** to the accompanying Gauntlett Decl.

> **C.** **Defense**. We have the right and duty to defend any Claim made or brought against any Insured to which this policy applies. . . .
>
> . . . .
>
> **XI.** **DEFINITIONS**
>
> . . . .
>
> **G.** **Inappropriate Employment Conduct** means any actual or alleged:
>
> . . . .
>
> **3.** **Employment-related misrepresentation to . . . an Employee** . . . .
>
> . . . .
>
> **6.** Employment-related libel, slander, defamation of character or **any invasion of right of privacy of an Employee** . . . .
>
> . . . .
>
> **I.** **Loss**
>
> **1.** Loss means the amount the insureds become legally obligated to pay on account of each Claim . . . made against them for . . . Inappropriate Employment Conduct for which coverage applies, including, but not limited to, damages . . . settlements and Defense Costs.

(Emphasis added.)

**C. Insurer Response to Tender of Defense**

G&A provided notice of the *Tarzi* action to Illinois Union on or about September 4, 2007 after it had been served in that action (following a previous timely tender of the claim to Illinois Union that preceded the suit). [Gauntlett Decl. ¶¶6-7] Gauntlett requested that Illinois Union defend G&A in the *Tarzi* action, and provided Illinois Union with a copy of Tarzi's complaint. [Gauntlett Decl. ¶¶6-7]

By letter dated September 27, 2007, Illinois Union denied G&A a defense. [Gauntlett Decl. ¶8] Illinois Union acknowledged therein receiving G&A's claim for the *Tarzi* action and the *Tarzi* complaint. It denied a defense, claiming the allegations in the *Tarzi* action could not fall within the Policy's definition of covered "Loss" or were otherwise excluded by the Gain or Profit, the Compensation Earned or Due, and the Employment Contracts Exclusions.

Illinois Union did not explain, in any detail, why it believed the exclusions applied:

> Claimant's civil complaint alleges failure to pay certain wages owed. Under the above Policy, Claimant's allegations do not fall within the Policy's definition of covered "Loss." Accordingly, the Insurer is constrained to advise that there is no coverage for this matter.
>
> . . . .
>
> . . . Claimant is seeking to be reimbursed for unpaid overtime

> and other wages that were allegedly withheld. The Exclusions section of the Policy specifically excludes coverage for wages owed. Accordingly, we again must advise that there is no coverage.[3]

Because of Illinois Union's failure to defend, G&A has incurred expenses defending itself in the *Tarzi* action and in resolving the *Tarzi* action through settlement.

## III. APPLICATION OF THE PERTINENT GOVERNING PRINCIPLES SUPPPORTS FINDING A DEFENSE HEREIN

### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there are no genuine issues of material fact for trial and that the moving party is entitled to judgment as a matter of law.[4] Material facts are those "that might affect the outcome of the suit under the governing law."[5] The underlying facts are viewed in the light most favorable to the party opposing the motion.[6]

The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact.[7] Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial.[8]

### B. California Law Governs This Dispute

The Illinois Union Policy contains no choice of law provision. In the absence of contractual language to the contrary, federal courts sitting in diversity apply the substantive law of the forum state.[9] Under California choice of law rules, the pendency of the *Tarzi* case in California, the location of the insured (California), the Policy's place of execution and issuance (California), and the fact that Illinois Union regularly does business in California all compel the application of California

---

[3] A copy of Illinois Union's September 27, 2007 denial letter is attached as **Exhibit "3."**

[4] FED. R. CIV. P. 56(c).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[6] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[7] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[9] *Conestoga Servs. Corp. v. Executive Risk Indem., Inc.*, 312 F.3d 976, 980-81 (9th Cir. (Cal.) 2002).

law.

### C. Facts Which Directly or by Inference Arguably Place Part of the Underlying Claim Within the Policy Trigger a Duty to Defend

#### 1. The Mere Potential for Coverage Triggers the Duty to Defend

Illinois Union's duty to defend is based on G&A's potential for liability and turns on (in this case) whether allegations in the underlying complaint could conceivably impose liability against G&A. "Under California law, an insurer owes a broad duty to defend its insured against claims that create a *potential* for indemnity."[10] "To trigger the defense duty, there need be nothing more than a 'bare potential or possibility of coverage.' "[11] An insurer is obliged to provide a defense unless it is determined that the underlying complaint "*can by no conceivable theory raise a single issue which could bring it within the policy coverage*."[12]

#### 2. Inferences Need Not Be Pled to Evidence a Defense

No matter how minimal, spare, or recondite the allegations are, if they raise the merest glimmer of possible coverage, then the duty to defend is triggered.[13] If there is any doubt as to whether the facts establish the existence of a duty to defend, they must be resolved in the insured's favor.[14] The allegations in the complaint are to be liberally construed,[15] and reasonable inferences must be made based upon the language in the complaint in determining the potential for coverage. The inferences themselves need not be of record since they do not purport to be evidence, but rather reasonable constructions of the evidence.[16]

---

[10] *Align Tech., Inc. v. Federal Ins. Co.*, 673 F. Supp. 2d 957, 967 (N.D. Cal. 2009), citing *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993) (emphasis added).

[11] *Id.* at 967, citing *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993).

[12] *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993) (emphasis in original).

[13] *Id.*

[14] *United Pacific Ins. Co. v. McGuire Co.*, 229 Cal. App. 3d 1560, 1567 (1991).

[15] *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1623 (1996).

[16] *Anthem Elecs., Inc. v. Pacific Employers Ins. Co.*, 302 F.3d 1049, 1058 (9th Cir. (Cal.) 2002) ("[The insurers] are relieved of their duty to defend if [claimant's] complaint '*can by no conceivable theory raise a single issue which could bring it within the policy coverage.*' . . . The complaint raises an obvious inference that [the claimant] lost the use of its systems because of [the insured's] defective products." (emphasis added)).

#### 3. An Insurer Cannot Rely on a Claimant Who Seeks to Avoid Triggering Coverage by Failing to Factually Develop Potentially Covered Elements of Its Claim

In *Dobrin*,[17] the underlying plaintiff [Raitt] sued his former law partner for breach of fiduciary duty, artfully structuring the pleading to avoid triggering insurance coverage. The court recognized this, and found that while Raitt did not assert "libel," "slander," or "publication of material damaging to one's reputation" as causes of action, the factual allegations demonstrated that the breach of fiduciary duty claim was "premised on the claim that [his partner] misrepresented the nature of the dissolution in order to divert clients away from Raitt, thus causing Raitt damage to his business reputation. Consequently, a potential claim for personal injury as defined under the policy exists." *Id*. at 444.

Illinois Union cannot establish that Tarzi's factual assertions or the inferences logically derived therefrom are so "tenuous and farfetched"[18] that they fail to evince a potential for coverage, and thus it cannot meet its burden to negate the potential for coverage.[19]

### D. Facts, Not Pleading Labels, Trigger the Duty to Defend

#### 1. The Duty to Defend Analysis Does Not Depend on Titles Given to the Claims in the Underlying Complaint

The duty to defend turns on whether the facts that underlay them possibly allege covered offenses. In examining the complaint, "the focus is not on 'the technical legal cause of action' but rather on the potential for liability as revealed by the facts alleged."[20]

Thus, the Ninth Circuit recently held in *Hudson Ins. Co.*[21] that there was a duty to defend based on a potential slogan infringement claim even where no slogan claim was asserted. Because

---

[17]*Dobrin v. Allstate Ins. Co.*, 897 F. Supp. 442, 444 (C.D. Cal. 1995).

[18]*American Guar. & Liab. Ins. Co. v. Vista Med. Supply*, 699 F. Supp. 787, 793-94 (N.D. Cal. 1988).

[19]*Vann v. Travelers Cos.*, 39 Cal. App. 4th 1610, 1616 (1995).

[20]*Align Tech.*, 673 F. Supp. at 967, citing *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 606-07 (1986); *see Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1034 (2002) ("The scope of the duty [to defend] does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the *alleged facts or known extrinsic facts* reveal a *possibility* that the claim may be covered by the policy.").

[21]*Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1270 (9th Cir. (Cal.) 2010).

the NFL complaint "potentially stated a cause of action for slogan infringement" and the trademark exclusion did not eliminate slogan infringement coverage, Colony had a duty to defend. *Id.* So, here, the absence of any articulated claims for "invasion of privacy" and "negligent misrepresentation" is of no moment.

**2. It Is of No Consequence that Tarzi Failed to Actually Plead Causes of Action for "Misrepresentation" or "Invasion of Privacy"**

The fact "that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability."[22] The insured "is entitled to a defense if the underlying complaint alleges the insured's liability for damages potentially covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose*, 6 Cal. 4th at 299.

**3. The Facts that Implicate Coverage Need Not Predominate in Order to Compel Finding a Defense**

In *Barnett*,[23] the court found a duty to defend because the plaintiffs alleged facts that "might" give rise to a defamation claim. Although the pertinent allegations were buried in the background allegations of the complaint, the court found that they triggered "at least a potential for coverage under the personal injury coverage for defamation provided by the CGL policy." *Id.* at 510. As the Ninth Circuit observed, even "remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty."[24] This follows as "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[25]

**4. The Standard of Potentiality Triggering a Defense Is Far Broader than that of Plausibility that Governs Rule 12(b)(6) Scrutiny**

While "invasion of privacy" and "employment-related misrepresentation to . . . an

[22] *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005).

[23] *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500 (2001).

[24] *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 951 (9th Cir. (Cal.) 2002).

[25] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009).

Employee" may be adjudged to arise or not when pled as a claim for relief in the underlying action under a Fed. R. Civ. P. 12(b)(6) plausibility standard, the pertinent question here is different: *potential* for coverage. Any other approach would involve making a coverage determination, not a duty to defend determination. But California law requires that "[i]f the parties dispute whether the insured's alleged misconduct is potentially within the policy coverage . . . 'the duty to defend is then *established* . . . .' "[26]

### E. Wage and Hour Claims May Give Rise to a Loss Within an EPLI Insurance Policy in Light of Their Breadth and the Nature and Scope of Their Provisions

The insurer's obligation to cover a claim is tied to the insurance policy the employer purchased. When the employer is faced with allegations concerning alleged "wage-hour" violations or other types of employment claims, the pertinent benefits it is to receive are set forth in a "loss" covered by a policy. These are defined as damages including back pay and front pay (judgments, settlements, pre- and post-judgment interests and defense costs).[27]

"Loss," thus, is broader than the mere term "damages" and includes "wrongful acts" such as misrepresentation, for which coverage applies. A misclassification by an employer of an employee or improper designation of the status of an employee constitutes a "misrepresentation" covered by Illinois Union's EPLI policy, just as allegedly intrusive conduct vis-à-vis an employee may fall within the "any" "invasion of privacy" prong of that same policy.

## IV. ILLINOIS UNION'S DUTY TO DEFEND IS TRIGGERED BY TARZI'S ALLEGATIONS OF "INVASION OF PRIVACY"

### A. Illinois Union's Policy Language Creates a Three-Part Test to Determine that It Had a Duty to Defend

The language of the insurance contract determines whether alleged conduct falls within coverage. Here, an "Inappropriate Employment Conduct" claim is potentially covered where there is: (1) any (2) invasion of right of privacy (3) of an Employee. [Gauntlett Decl. ¶11]

---

[26] *American Cyanamid Co. v. American Home Assur. Co.*, 30 Cal. App. 4th 969, 975 (1994).

[27] *Payless Shoe Source, Inc. v. Travelers Cos., Inc.*, 569 F. Supp. 2d 1189, 1192 (D. Kan. 2008), *aff'd*, 585 F.3d 1366 (10th Cir. (Kan.) 2009).

### B. Each of the Elements of "Any Invasion of Right of Privacy of an Employee" Is Satisfied

#### 1. "Any" Element Is Satisfied

"Any" is undefined in the Policy. An undefined term is interpreted "by applying the meaning a reasonable person would ordinarily give the term."[28] The ordinary meaning of "any" is quite broad, as one might expect: it means "in whatever degree; to some extent; at all."[29]

In a recent decision construing the meaning of the phrase "publication in any manner," a Florida district court found that the addition of the words "in any manner" clarified the scope of the meaning of "publication" by broadening it to the extent that it was "difficult to conceive of a more inclusive description of the categories of 'publication' to be covered . . . ."[30]

Rejecting the insurer's request to narrowly limit the construction of the phrase, the court noted that the insurer had had every opportunity to "restrict the definition" or "narrow the meaning" of the terms in its policy, and that " '[h]aving failed to do so, [Defendants] cannot now ask the court to re-write the policy for [them] under the guise of policy construction.' "[31]

The word "any" is defined as "**1.** one, a, an, or some; one or more without specification or identification: *If you have any witnesses, produce them.*"[32] Here, the word "any" modifies the phrase "invasion of right of privacy" in a similar manner – i.e., without any limitation whatsoever. The phase "any invasion of right of privacy" in the Policy thus can reasonably be construed to mean an "invasion of right of privacy" "in whatever degree," an "invasion of right of privacy" "at all" or an "invasion of right of privacy" "to some extent."

This comports not only with the dictionary definition and common sense, but also with case law noting that "a word with a broad meaning or multiple meanings may be used for that very reason

---

[28] *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1211 (1992).

[29] RANDOM HOUSE UNABRIDGED DICTIONARY 96 (2d ed. 1993).

[30] *Creative Hospitality Ventures, Inc. v. United States Liab. Ins.*, 655 F. Supp. 2d 1316, 1329 (S.D. Fla. 2009).

[31] *Id.*

[32] RANDOM HOUSE UNABRIDGED DICTIONARY 96 (2d ed. 1993).

– its breadth – to achieve a broad purpose."[33] To the extent G&A's accessing and deletion of Tarzi's e-mail constitutes an "invasion of privacy" "at all," this element is satisfied.

### 2. "Invasion of Right of Privacy" Element Is Satisfied

#### a. The Pertinent Policy Language Is Subject to a Broad Construction

The Policy language includes coverage for "any" "invasion of right of privacy" without defining "invasion," "privacy," or any other terms that limit what the "invasion of right of privacy" offense means.

Absent limiting language, there can be no reasonable argument that the "right of privacy" offense in the Illinois Union Policy is limited simply to the tort of "invasion of privacy" or to common law rights.[34] "To the extent the listed offenses are framed in generic terms, they should be construed broadly to encompass all specific torts which reasonably could fall within the general category."[35]

As the Eleventh Circuit observed, applying Georgia law,

> Notably, the insurance policy contains no language explicitly limiting the scope of the term "privacy" or, for that matter, alerting non-expert policyholders that coverage depends on the source of law underlying the relevant privacy right. . . .
>
> . . . .
>
> . . . We therefore must consider the ordinary meaning of the term "privacy," not whatever specialized [statutory] meaning the word may have taken on in the context of [federal statutory law].[36]

The dictionary defines "privacy" as "the state of being free from intrusion or disturbance in one's private life or affairs: *the right to privacy.*"[37]

---

[33] *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 868 (1993).

[34] *LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.*, No. C 04-1001 SBA, 2005 WL 146896, at *10 (N.D. Cal. Jan. 20, 2005) ("[N]othing in the Liberty Policies limits 'right of privacy' to common law right of privacy."); *see Park Univ. Enters. v. American Cas. Co. of Reading, PA*, 314 F. Supp. 2d 1094, 1109 (D. Kan. 2004), *aff'd*, 442 F.3d 1239 (10th Cir. (Kan.) 2006) (declining to define "right of privacy" by importing Illinois tort standards where insurer failed to adopt that meaning in its policy).

[35] *Fibreboard Corp. v. Hartford Acc. & Indem. Co.*, 16 Cal. App. 4th 492 (1993).

[36] *Hooters of Augusta, Inc. v. American Global Ins. Co.*, No. 04-11077, 2005 WL 3292089, at *3, *4 (11th Cir. (Ga.) Dec. 6, 2005).

[37] RANDOM HOUSE UNABRIDGED DICTIONARY 1540 (2d ed. 1993).

**b. The Seclusion Prong of Common Law Privacy Falls Within the Policy's Broad "Any Invasion of Privacy" Coverage**

The "right of privacy" – protecting against intrusion upon seclusion – is well established under California law.

> [A] person claiming the privacy right of seclusion asserts the right to be free, in a particular location, from disturbance *by* others. **A person claiming the privacy right of secrecy asserts the right to prevent disclosure of personal information *to* others.** Invasion of the privacy right of seclusion involves the *means, manner, and method* of communication in a location (or at a time) which disturbs the recipient's seclusion.[38]

In the absence of a defined meaning, it is entirely reasonable to construe the phrase "invasion of right of privacy" in accordance with the widely-accepted views of the Restatement (Second) of Torts that invasion of someone's right to privacy consists of things such as "examination into his private concerns, as by opening his private and personal mail" and that the "intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the . . . information."

> The invasion may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail . . . . The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.[39]

**c. E-mails Are Accorded Legal Protection Like Traditional Forms of Communication that Render Their Alleged Interruption Actionable As a Form of "Invasion of Privacy"**

Given the fundamental similarities between e-mail and traditional forms of communication, courts have recognized that it would defy common sense to afford e-mails lesser protections. The United States Supreme Court has deemed a search of a person's e-mail account as intrusive as "a wiretap on his home phone line,"[40] and the Ninth Circuit has stated that a person's privacy interest in mail and e-mail "are identical."[41] Cases from diverse jurisdictions hold that an employee may have

---

[38] *ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.*, 147 Cal. App. 4th 137, 148-49 (2007) (bold emphasis added).

[39] RESTATEMENT (SECOND) OF TORTS § 652B (1977), Comments.

[40] *City of Ontario v. Quon*, 130 S. Ct. 2619, 2631 (U.S. 2010).

[41] *United States v. Forrester*, 512 F.3d 500, 511 (9th Cir. (Cal.) 2008).

a reasonable expectation of privacy in the contents of his computer depending on the particular factual circumstances of the case.[42]

In *Haynes*,[43] the court found that an employee had a reasonable expectation of privacy in private computer files, despite a computer screen warning that there shall be no expectation of privacy in using the employer's computer system, where employees were allowed to use computers for private communications, were advised that unauthorized access to a user's e-mail was prohibited, employees were given passwords to prevent access by others, and no evidence was offered to show that the employer ever monitored private files or employee e-mails.

The mere possibility that some of the 3,000 e-mails Tarzi complains were deleted were web-based implicates not only common law invasion of privacy but potentially gives rise to violations of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2511 ("ECPA")[44] and the Stored Communications Act, 18 U.S.C § 2707 ("SCA") for acts of accessing and deleting e-mail from online email accounts.[45]

Here, given the terse nature of the allegations, the exact nature of the 3,000 e-mails Tarzi complains were accessed and deleted from her computer is unclear. Whether they were personal e-mail collected over the 10 years of her employment or a mix of personal and business e-mail is not alleged.

Similarly, the complaint is silent as to whether these e-mails were generated exclusively from Tarzi's G&A e-mail address or if they were from web-based e-mail application such as Yahoo!, Hotmail, or Gmail. The precise metes and bounds of her claims, which might have been explored in discovery, are irrelevant, however, as it is the *possibilities* generated by the allegations which give rise to the immediate duty to defend.[46]

---

[42] *O'Connor v. Ortega*, 480 U.S. 709, 718 (1987).

[43] *Haynes v. Office of the Attorney General*, 298 F. Supp. 2d 1154, 1161-62 (D. Kan. 2003).

[44] *AVAAK, Inc. v. Shi*, No. D052687, 2008 WL 5403665, at *1 (Cal. Ct. App. (4th Dist.) Dec. 30, 2008) ("[S]omeone at AVAAK accessed his private email account without his knowledge or permission [and] deleted many of his email messages . . . .").

[45] *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548 (S.D.N.Y. 2008) (Accessing Hotmail, Yahoo!, and Gmail accounts of former employee violated SCA.).

[46] *National Econ. Research Assocs. v. Evans*, 21 Mass. L. Rptr. 337, 2006 WL 2440008 (Mass.

G&A does not have to prove that Tarzi's allegations have merit in order to be entitled to a defense – G&A merely has to prove that Tarzi's allegations are sufficient to state *potential* claims for *any* form of invasion of privacy, which G&A has done. "To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*."[47]

Illinois Union is obligated to defend G&A against "any" claim for invasion of privacy, regardless of whether it was false, frivolous, or groundless. The viability of the underlying claim against the insured does not affect an insurance company's duty to defend. "[Even] when the underlying action is a sham, the insurer [may terminate its duty to defend only by] demur[ring] or obtain[ing] summary judgment on its insured's behalf . . . ."[48]

#### d. The Inferences Necessary to Show "Any Invasion of Privacy" Are Stronger than Those Found Sufficient to Evidence "Disparagement" in a Recent Case

In *Michael Taylor*[49] the court analyzed whether allegedly infringing the trade dress of one of its former suppliers by offering "cheap synthetic knock-offs" of that supplier's wicker furniture products supported a claim for disparagement. This, even though there was no express allegation of same in the complaint and the " 'publications' described in the complaint did not, in and of themselves, constitute disparagement [because] [m]arketing brochures containing pictures of Rosequist's actual products cannot be said to impugn the quality of her furniture, standing alone."[50] Nonetheless, the district court, in finding a defense was owed, observed that:

> The complaint, however, explained that the alleged purpose of those brochures was to entice customers interested in Rosequist's products into MTD's showrooms, where they would then be "*steered* instead" to the imitation products. The term "steered" fairly implies some *further* statements, presumably oral, were being made by MTD

Super. Ct. Aug. 3, 2006) (Employee had privacy interest in e-mail sent from company laptop via his personal, password-protected Yahoo! account.).

[47] *Montrose*, 6 Cal. 4th at 300 (emphasis in original).

[48] *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1086 (1993).

[49] *Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*, __ F. Supp. 2d __, 2011 WL 221658, at *6 (N.D. Cal. 2011).

[50] *Id.*

> personnel to convey the information that the imitation products were the Rosequist furniture depicted in the brochures.[51]

Here, the allegations of the *Tarzi* complaint implicate the "seclusion" prong of the "right of privacy," as implicit in Tarzi's complaint that G&A accessed and deleted "all of her stored email communications, over 3000" (Complaint, ¶ 10) is the assertion that these were her private e-mails that no one should have had access to, and that instead of respecting her privacy G&A "logged onto her computer, manipulated the settings and deleted several thousand e-mails." (*Id*.) When Tarzi confronted G&A about his actions, he refused to own up to it, and instead "had no response." (*Id.*).

Tarzi's accusations that G&A improperly accessed e-mail on her computer and then deleted her e-mails without her permission on its face alleges an "intrusion" upon Tarzi's "private affairs" that would be highly offensive to a reasonable person, and alleges an offense falling within the definition of "invasion of right of privacy" as a reasonable person would ordinarily understand the phrase. A reasonable inference is that these acts constituted an intrusion upon seclusion based on Tarzi's expectation of privacy and of the right to possess the e-mails allegedly deleted.

Tarzi's claims that G&A misrepresented her employment status and invaded her right of privacy need not predominate in the asserted causes of action nor even be expressed as independent causes of action, but – as in *Barnett* – may simply be "buried within the complaint to show the moral blameworthiness of the defendants."[52] The mere inclusion of such allegations in the complaint is sufficient to give rise to Illinois Union's duty to defend.

**e. There Is No Distinct Publication Requirement in Illinois Union's Policy**

To the extent that Illinois Union argues that there is no alleged "publication" of the information accessed on Tarzi's computer, Illinois Union would mistake what is required. Accessing e-mail without permission has been found to constitute an "invasion of the right of privacy" even in cases where the policy contained a "publication" requirement which is entirely absent here. Thus, the Ninth Circuit affirmed a finding of potential coverage where "AOL

[51] *Id.*

[52] *Pension Trust Fund*, 307 F.3d at 952 (discussing *Barnett*).

intercepted and internally disseminated private online communications."[53]

Faced with a similar argument in *LensCrafters*,[54] where the policy expressly included "publication" language, Judge Armstrong noted that while "common law invasion of privacy by public disclosure of private facts requires that the actionable disclosure be widely published and not confined to a few persons or limited circumstances, nothing in the Liberty Policies limits 'right of privacy' to common law right of privacy." *Id*. at *10.

Finding that "the California constitutional right to privacy…may be invaded by a less-than-public dissemination of information,"[55] the *LensCrafters* court concluded that:

> Given the many ways that publication of material can violate a person's right of privacy, and the fact that the clear language of the [policies] does not limit "right to privacy" to just one type of right, it is not clear that the term should be limited . . . .[56]

The reasoning of *LensCrafters* is even more apropos here, where Illinois Union's Policy contains no "publication" requirement and "any" "invasion of right of privacy" whatsoever is sufficient to trigger coverage. If Illinois Union had wanted to limit the definition of the phrase "invasion of right of privacy" to the common law tort or to any other meaning, it should have indicated as much in the Policy,[57] but did not.[58]

#### 3. "Employee" Element Is Satisfied

Tarzi identifies herself as an "employee" of G&A in the underlying complaint. (Complaint, ¶¶ 5, 10.) Thus, the "employee" element is met.

---

[53] *Netscape Communications Corp. v. Federal Ins. Co.*, 343 Fed. Appx. 271, 272 (9th Cir. (Cal.) 2009) (finding coverage for violation of right to privacy).

[54] *LensCrafters*, 2005 WL 146896.

[55] *Id.*, citing *Hill v. National Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 27 (1994).

[56] *Id.*

[57] *Fireman's Fund Ins. Cos. v. Atlantic Richfield Co.*, 94 Cal. App. 4th 842, 852 (2001) ("[A]n insurance company's failure to use available language to exclude certain types of liability gives rise to the inference that the parties intended not to so limit coverage.").

[58] *Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 764 (2001) ("[W]e cannot read into the policy what Safeco has omitted.").

## V. MISCLASSIFICATION OF TARZI AS EXEMPT IS AN EMPLOYMENT-RELATED MISREPRESENTATION THAT TRIGGERS THE DUTY TO DEFEND

### A. "Misrepresentation" Includes Any Intent to Deceive

"Misrepresentation" is not defined by the Policy herein, and therefore is given the meaning a reasonable person would ordinarily give the term.[59] The dictionary definition of "misrepresent" is "to represent incorrectly, improperly or falsely."[60] It is synonymous with "distort" and "falsify," which "share the sense of presenting information in a way that does not accord with the truth." *Id.* "Misrepresent usually involves a deliberate attempt to deceive, either for profit or advantage." *Id*. "Misrepresentation" has been defined as "[a]ny manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts."[61] A misrepresentation can also involve concealment of the truth.[62]

In light of these broad definitions, courts have recognized that a misclassification of employees can constitute a "misrepresentation."[63] Thus, the term "misrepresentation" in an EPLI policy reasonably can be interpreted to include a representation contrary to fact, or concealment, relating to the nature of an employee's job, such as whether the employee is "exempt" from overtime requirements.

### B. This Court Has Found that Any Employment Representation May Include Misclassification of an Employee As Exempt

The recent case of *Professional Security Consultants*[64] is instructive. The underlying complaint alleged that defendant had "disseminated false information" among its employees that they "were not entitled to overtime compensation." *Id*. at *3. In construing an EPLI policy which

---

[59]*Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807 (1982).

[60]RANDOM HOUSE UNABRIDGED DICTIONARY 1230 (2d ed. 1993).

[61]*A.P. Landis Inc. v. Mellinger*, 175 A. 745, 746 (Pa. Super. Ct. 1934).

[62]*United States v. Sterling Salt Co*., 200 F. 593, 597 (W.D.N.Y. 1912).

[63]*See State ex rel. State Comp. Mut. Ins. Fund v. Berg*, 927 P.2d 975, 978 (Mont. 1996) ("The jury ultimately returned a special verdict finding that [the employer] . . . misrepresented payroll, employee status and employee duties by misclassifying his employees.").

[64]*Professional Sec. Consultants, Inc. v. United States Fire Ins. Co.*, No. CV 10-04588 SJO (SSx), 2010 WL 4123786 (C.D. Cal. Sept. 22, 2010).

provided coverage for the (as here) undefined phrase "any employment-related misrepresentation," the court found that the "misrepresentations" included in the complaint potentially gave rise to the duty to defend and that the insurer had "fail[ed] to demonstrate that there can be no conceivable theory that the allegations derived from the alleged misrepresentation could potentially be covered under the Policy. Plaintiff has pled sufficient facts to state a claim of breach of duty to defend." *Id.*

### C. No Claim for "Misrepresentation" Need Be Asserted to Trigger the Pertinent Coverage

Illinois Union's Policy requires it to defend any civil proceeding against G&A for any actual or alleged "employment-related misrepresentation," no matter how groundless, false or fraudulent.[65] The *Tarzi* complaint's factual allegations that G&A made the "choice" to "mis-classify her as an 'exempt' employee" fall within the scope of the Policy's insuring agreement. It does not matter that Tarzi did not expressly plead any "cause of action" based on the alleged employment-related misrepresentation.[66] Nor does it matter that these factual allegations are "buried" within "causes of action" that might not otherwise be potentially covered under the Policy, *id.*, or that potentially non-covered claims for relief predominate. *Id.*

### D. An Amendment of the Pleadings to Bring a Claim Within Coverage Could Have Been Readily Effected

Where allegations in the complaint support an amendment which could state a potentially covered claim, California courts require the insurer to provide a defense. *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275-77 (1966).

> Defendant cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable. . . . "In determining whether or not the [insurer] was bound to defend ..." . . . courts do not examine only the pleaded word but the potential liability created by the suit.[67]

A number of cases illustrate the accepted principle in California that potential claims, no matter how poorly articulated, give rise to the duty to defend where the possibility of amendment

[65][Gauntlett Decl. ¶5, **Exhibit "1."** (*See* Policy, Definitions, § G(3))]

[66]*Pension Trust Fund*, 307 F.3d at 951-52; *Dobrin*, 897 F. Supp. at 444-45.

[67]*Gray*, 65 Cal. 2d at 276.

exists. Thus, for example, in *CNA*,[68] an antitrust case, the court found that the possibility of amendment to state inchoate claims of piracy, libel, and slander gave rise to a duty to defend. *Id*. at 608-10.

Although these allegations of wrongdoing were only recited in support of the antitrust claims, the court noted that "two solitary, unsubstantiated words" – "false disparagement" – that were part of a "patently groundless and 'shotgun allegation' in the middle of . . . a completely unrelated federal antitrust cause of action which was, itself, undisputedly *not* covered" were sufficient to trigger a duty to defend under the policy's coverage for unfair competition and defamation. *Id.* at 612 (internal quotes omitted).

Given California's liberal policy toward amending complaints to conform to evidence, these factual allegations would readily support Tarzi's potential recovery of damages under state common law theories such as negligent misrepresentation (e.g., based on having refrained from seeking more lucrative compensation with a different employer because she detrimentally believed and relied on G&A's alleged misrepresentations that her job description did not entitle her to overtime compensation).[69] Nevertheless, the factual allegations alone are sufficient under California law to trigger Illinois Union's duty to defend.

## VI. PLAINTIFF'S CLAIMS FALL OUTSIDE ANY EXCLUSION

### A. The Gain or Profit, Compensation Earned or Due, As Well As Employment Contracts Exclusions Do Not Bar a Defense

The exclusions cited by Illinois Union in its denial letter – the Gain or Profit, Compensation Earned or Due, and the Employment Contracts Exclusions – cannot eliminate a defense duty because the exclusions deal only with Tarzi's asserted claims for unpaid wages rather than Tarzi's inchoate claims for "misrepresentation" or "invasion of a right to privacy," which could proceed independently of any of the alleged causes of action for "wage and over time violations."

In analogous situations, California courts have held that claims which can be inferred outside

---

[68] *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598 (1986).

[69] *Montrose Chemical Corp.*, 6 Cal. 4th at 299 (duty to defend triggered if complaint could be amended to state a potentially covered theory of recovery).

the pled causes of action give rise to coverage when the inferred claims fall outside the excluded categories of claims. Thus, the court in *Seagate*[70] held a trade secrets misappropriation exclusion did not eliminate the defense duty because claims for trade libel "could proceed and succeed" outside the misappropriation claims.

Similarly, the court in *Perkins*[71] held an employment-related practices exclusion did not eliminate the defense duty because "[t]he facts known to the insurer established the possibility that McQuown could assert a false imprisonment claim within the coverage and outside the exclusion."

In *J. Lamb*, Judge Croskey found claims for disparagement nested within a tortious interference counterclaim fell outside the "first publication" exclusion because there was one possible world under the complaint allegations in which the defense would not be eliminated by the exclusion.

> [A]n insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds. . . . Even though it may ultimately be determined that [the insurer] has a viable defense to coverage by virtue of the application of the "first publication" exclusion, this can *only* affect its liability for indemnification. Its duty to defend depended on the existence of only a *potential* for coverage.[72]

Herein, Tarzi's potential "misrepresentation" and "invasion of right of privacy" claims are potentially within Illinois Union's coverage and outside its exclusions, so a defense is owed.

**B. The FLSA Exclusion Does Not Clearly and Unambiguously Exclude Potential Coverage for Loss for Employment-Related Misrepresentation**

Although Illinois Union failed to reference Exclusion C.2 of the Policy (the "FLSA Exclusion") in its denial letter, if Illinois Union seeks to assert it now, it will be to no avail as the FLSA Exclusion cannot bar a defense for the "misrepresentation" claim in the *Tarzi* action.

The FLSA Exclusion provides in pertinent part:

> This policy does not cover any Loss imposed on the insured under: . . . [¶] 2. The Fair Labor Standards Act . . . [¶] 7. Rules or regulations promulgated under any of such statutes or laws, amendments thereto

[70]*National Union Fire Ins. Co. of Pittsburgh, PA v. Seagate Technology, Inc.*, 233 Fed. Appx. 614, 616 (9th Cir. (Cal.) 2007).

[71]*Perkins v. Maryland Cas. Co.*, 388 Fed. Appx. 641, 643 (9th Cir. (Cal.) 2010).

[72]*J. Lamb, Inc.*, 100 Cal. App. 4th at 1039, 1040.

> or similar provisions of any federal, state or local statutory law or common law.

If Illinois Union argues that the FLSA Exclusion bars potential coverage for all causes of action in the *Tarzi* complaint based on *California Dairies*,[73] its argument would not be well taken. *California Dairies* is readily distinguishable in at least two important respects.

**First,** the underlying complaint in *California Dairies* contains no allegation of employment-related misrepresentation, *id.* at 1050, and therefore does not reach the issue whether employment-related misrepresentation is clearly and unambiguously barred by an exclusion similar to the FLSA Exclusion here.

**Second,** the *California Dairies* policy is an indemnity policy only, and does not include a duty to defend. Therefore, the district court does not analyze whether the claims alleged in the underlying action trigger a defense under a broad, potential coverage standard.[74] Rather, the *California Dairies* court only addresses whether an exclusion "similar" to the FLSA Exclusion bars indemnity – not a duty to defend – for an underlying wage and hour class action

Should Illinois Union attempt to rely on *California Diaries*, any such attempt should be rejected in light of *Professional Security Consultants*,[75] which properly rejected the insurer's argument that "that damages from the alleged misrepresentation are explicitly tied to a failure to pay overtime compensation and, therefore, excluded by [a similar] FLSA Provision." *Id*. at *3.

As in *Professional Security Consultants*, Illinois Union cannot demonstrate "that there can be no conceivable theory that the allegations derived from the alleged misrepresentation could potentially be covered under the Policy." *Id.* Simply put, Illinois Union cannot show the required "absence of potential" for coverage. Tarzi alleged facts sufficient to trigger the duty to defend based on G&A's alleged "misrepresentations" and the FLSA exclusion does not bar a defense.

## VII. CONCLUSION

Plaintiff is entitled to a defense as the allegations of the underlying complaint, and the

---

[73] *California Dairies, Inc. v. RSUI Indem. Co.*, 617 F. Supp. 2d 1023 (E.D. Cal. 2009).

[74] *See California Dairies*, 617 F. Supp. 2d at 1026, 1027.

[75] *Professional Security Consultants*, 2010 WL 4123786.

inferences arising therefrom, triggered Illinois Union's duty to defend under the Policy's covered offenses of "employment-related misrepresentation" and "any invasion of right of privacy of an Employee." No policy exclusion bars coverage.

Plaintiff G&A therefore respectfully requests that this Court enter an Order finding that Illinois Union has and had a duty to defend Gauntlett in the underlying *Tarzi* action and must pay all reasonable defense fees and prejudgment interest thereon at the legal rate of 10% from date of invoice.

Dated: February 14, 2011

**GAUNTLETT & ASSOCIATES**

By: /s/ Robert Scott Lawrence
Robert Scott Lawrence

RE: *David A. Gauntlett vs. Illinois Union Insurance Company*
VENUE: United States District Court, Northern District of California, San Jose Division
CASE NO.: 5:11-cv-00455 LHK

**PROOF OF SERVICE**

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) years and not a party to the within action; my business address is: Gauntlett & Associates, 18400 Von Karman, Suite 300, Irvine, California 92612.

On February 14, 2011, I served the foregoing document described as: **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: ILLINOIS UNION'S DUTY TO DEFEND** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Lane J. Ashley, Esq.
LEWIS BRISBOIS BISGAARD & SMITH LLP
221 No. Figueroa Street, Suite 1200
Los Angeles, CA 90012-2601
Telephone: (213) 250-1800
Facsimile: (213) 250-7900

*Attorneys for Defendant*
*Illinois Union Insurance Company*

**[X]** **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **(BY FACSIMILE)** The document was transmitted by facsimile transmission to the above fax number with the transmission reported as complete and without error.

[ ] **(BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION)** I caused the document to be sent to the e-mail address of the party as stated above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[ ] **(BY UPS NEXT DAY AIR)** I caused such package to be deposited with the UPS Drop Box or UPS Air Service Center located at one of the following locations: 18400 Von Karman, Irvine, California 92612 or 2222 Michelson Drive, #222, Irvine, California 92612.

**[X]** **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 14, 2011, at Irvine, California.

Peggy Murray
(Print Name)

Peggy Murray
(Signature)