LANE J. ASHLEY, (SBN 073296)
E-Mail: ashley@lbbslaw.com
RAQUEL VIDAL (SBN 199597)
E-Mail: vidal@lbbslaw.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: (213) 250-1800
Facsimile: (213) 250-7900

Attorneys for Defendant
ILLINOIS UNION INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID A. GAUNTLETT d/b/a GAUNTLETT & ASSOCIATES, a sole proprietorship,<br><br>Plaintiff,<br><br>v.<br><br>ILLINOIS UNION INSURANCE COMPANY, an Illinois corporation,<br><br>Defendant. | CASE NO. 11-CV-00455 LHK (Ex)<br><br>**DEFENDANT ILLINOIS UNION INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE ILLINOIS UNION'S DUTY TO DEFEND**<br><br>Date: May 5, 2011<br>Time: 1:30 p.m.<br>Courtroom: 4 - 5th Floor |

Defendant Illinois Union Insurance Company ("Illinois Union"), hereby submits its opposition to plaintiff David A. Gauntlett d/b/a Gauntlett & Associates' ("Gauntlett") motion for partial summary judgment:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## TABLE OF CONTENTS


| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | THE MATERIAL FACTS | 1 |
| | A. The Illinois Union Policy | 1 |
| | B. The Tarzi Claim | 4 |
| | C. The Coverage Claim | 8 |
| III. | ILLINOIS UNION WAS NOT OBLIGATED TODEFEND THE TARZI CLAIM | 9 |
| | A. Based on Well Established Rules of Policy Construction, the Court Should determine That Illinois Union Owed No Duty to Defend the Tarzi Claim | 9 |
| | 1. Accepted Rules of Policy Interpretation | 9 |
| | 2. Rules Regarding Duty to Defend | 10 |
| | B. The *Tarzi* Complaint Does Not Allege a Potentially Covered Claim | 12 |
| | 1. The Policy Does Not Cover Wage and Hour Claims | 12 |
| | 2. Plaintiff's Imagined "Misrepresentation" Claim Does Not Trigger Potential Coverage | 14 |
| | 3. The Coverage for Invasion of Privacy is Not Potentially Triggered | 15 |
| | 4. The Cases Relied on by Plaintiff to Justify Its Speculation About Covered Claims are Distinguishable | 19 |
| | C. To the Extent the Alleged Deletion of E-mails Implies an Invasion of Privacy Claim, the Claim Was Not Made and Reported During the Illinois Union Policy Period | 21 |
| IV. | THE COURT MAY GRANT SUMMARY JUDGMENT IN FAVOR OF ILLINOIS UNION PURSUANT TO RULE 56(f) | 22 |
| V. | CONCLUSION | 23 |

# TABLE OF AUTHORITIES

**Federal Cases** **Page**

*Bohach v. City of Reno*, 932 F. Supp. 1232 (D. NV 1996) . . . . . 17

*Cal. Dairies, Inc. v. RSUI Indemnity Co.*, 617 F. Supp. 2d 1023 (E.D. Cal. 2009) . . . . . 14

*City of Ontario v. Quan*, 130 S. Ct. 2619 (U.S. 2010) . . . . . 18, 19

*Dobrin v. Allstate Insurance Co.*, 897 F. Supp.442 (C.D. Cal. 1995) . . . . . 20, 21

*Fremont Indemnity Co. v. California National Physician's Insurance Co.*, 954 F. Supp. 1399 (CD Cal. 1997) . . . . . 22

*Haynes v. Office of the AG*, 298 F. Supp. 2d 1154 (D. Kan. 2003) . . . . . 19

*Hilderman v. Enea Teksci, Inc.*, 551 F. Supp. 2d 1183 (S.D. Cal. 2008) . . . . . 18

*Hudson Insurance Co. v. Colony Insurance Co.*, 624 F.3d 1264 (9th Cir. 2010) . . . . . 20

*Michael Taylor Designs, Inc. v. Travelers Prop. Casualty Co. of America*, __ F. Supp. 2d ___, 2011 WL. 221658 (N.D. Cal. 2011) . . . . . 16

*Microtec Research, Inc. v. Nationwide Mutual Insurance Co.*, 40 F.3d 968 (9th Cir. 1994) . . . . . 16

*O'Connor v. Ortega*, 480 U.S. 709 (U.S. 1987) . . . . . 19

*Sony Computer Entertainment America, Inc. v. American Home Assurance Co.*, 532 F.3d 1007 (2007) . . . . . 15

*TriTech Software System v. U.S. Specialty Insurance Co.*, 2010 U.S. Dist. LEXIS 132245 (C.D. Cal. Dec. 13, 2010) . . . . . 12, 13

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) . . . . . 19

# TABLE OF AUTHORITIES

**State Cases** **Page**

*ACS Systems, Inc. v. St. Paul Fire & Marine Insurance Co.*, 147 Cal. App. 4th 137 (2007) . . . . . 15

*American Motorists Insurance Co. v. Allied-Sysco Food Services, Inc.*, 19 Cal. App. 4th 1342 (1993) . . . . . 11

*Atlantic Mutual Insurance Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017 (2002) . . . . . 10, 15

*Bank of the West v. Superior Court*, 2 Cal. 4th 1254 (1992) . . . . . 9

*Barnett v. Fireman's Fund Insurance Co.*, 90 Cal. App. 4th 500 (2001) . . . . . 20

*CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal. App. 3d 598 (1986) . . . . . 19, 20

*Collin v. American Empire Insurance Co.*, 21 Cal. App. 4th 787 (1994) . . . . . 11

*Continental Casualty Co. v. Phoenix Construction Co.*, 46 Cal. 2d 423 (1956) . . . . . 9

*Cooper Companies v. Transcontinental Insurance Co.*, 31 Cal. App. 4th 1094 (1995) . . . . . 10

*Feurzeig v. Insurance Co. of the West*, 59 Cal. App. 4th 1276 (1997) . . . . . 10

*Fibreboard Corp. v. Hartford Acc. & Indemnity Co.*, 16 Cal. App. 4th 492 (1993) . . . . . 15, 16

*Frank and Freedus v. Allstate Insurance Co.*, 45 Cal. App. 4th 461 (1996) . . . . . 11

*Friedman Prof. Management Co., Inc. v. Norcel Mutual Insurance Co.*, 120 Cal. App. 4th 17 (2004) . . . . . 11

*Golden Eagle Insurance Corp. v. Cen-Federal Ltd.*, 148 Cal. App. 4th 976 (2007) . . . . . 10, 11

*Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263 (1962) . . . . . 10

*Gunderson v. Fire Insurance Exchange*, 37 Cal. App. 4th 1006 (1995) . . . . . 11, 15

*Helfand v. National Union Fire Insurance Co.*, 10 Cal. App. 4th 869 (1992) . . . . . 21

# TABLE OF AUTHORITIES


**State Cases** **Page**

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) . . . . . 17

*Holmes v. Petrovich Development Co., LLC*, 191 Cal. App. 4th 1047 (2011) . . . . . 18

*Hurley Construction Co. v. State Farm Fire & Casualty Co.*, 10 Cal. App. 4th 533 (1992) . . . . . 11, 20

*La Jolla Beach and Tennis Club, Inc. v. Industrial Co.*, 9 Cal. 4th 27 (1994) . . . . . 9

*Low v. Golden Eagle Insurance Co.*, 99 Cal. App. 4th 109 (2002) . . . . . 15, 20

*McKee v. State Farm Fire & Casualty Co.*, 145 Cal. App. 3d 772 (1983) . . . . . 10

*Mez Industries, Inc. v. Pacific National Insurance Co.*, 76 Cal. App. 4th 856 (1999) . . . . . 10

*Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287 (1993) . . . . . 11, 19, 21

*Nichols v. Great America Insurance Co.*, 169 Cal. App. 3d 766 (1985) . . . . . 15

*Pacific Employers Insurance Co.*, 221 Cal.App.3d 1348, 1359 (1990) . . . . . 22

*Palmer v. Truck Insurance Exch.*, 21 Cal. 4th 1109 (1999) . . . . . 10

*Professional Sec. Consultants, Inc. v. United States Fire Insurance Co.*, *No. CV 10-04588 SJO (SSx)*, 2010 WL. 4123786 (C.D. Cal. Sept. 22, 2010) . . . . . 14

*Reserve Insurance Co. v. Pisciotta*, 30 Cal. 3d 800 (1982) . . . . . 10

*Root v. American Equity Specialty Insurance Co.*, 130 Cal. App. 4th 926 (2005) . . . . . 21

*Royal Globe Insurance Co. v. Whitaker*, 181 Cal. App. 3d 532 (1986) . . . . . 10, 11

*Scottsdale Insurance Co. v. MV Transportation*, 36 Cal. 4th 643 (2005) . . . . . 10, 11

*Shulman v. Group W. Productions, Inc.*, 18 Cal. 4th 200 (1998) . . . . . 17

# TABLE OF AUTHORITIES

**State Cases** **Page**

*TBG Insurance Services Corp. v. Superior Court*, 96 Cal. App. 4th 443 (2002) . . . . . 17

*Taus v. Loftus*, 40 Cal. 4th 683 (2007) . . . . . 17

*Total Call Int. Inc. v. Peerless Insurance Co.*, 181 Cal. App. 4th 161 (2010) . . . . . 16

*Venoco, Inc. v. Gulf Underwriters Insurance Co.*, 175 Cal. App. 4th 750 (2009) . . . . . 22

**Federal Statutes**

Federal Rule of Civil Procedure 56(f) . . . . . 22

**State Statutes**

California Labor Code § 510 . . . . . 13

## I. INTRODUCTION

Plaintiff's motion seeks to manufacture coverage for an uncovered "wage and hour" suit by imagining that the case was really about misrepresentations and invasion of privacy. However, neither the allegations in the pleadings nor applicable law support that hypothesis. Further, to the extent that the allegations could be construed as constituting an invasion of privacy claim, that claim was made and reported after the policy period, thereby disqualifying it from coverage.

## II. THE MATERIAL FACTS

### A. The Illinois Union Policy

The Illinois Union policy targeted by plaintiff's motion is policy no. 1262658 with an effective policy period from July 10, 2006 to July 10, 2007. (*See*, Exhibit 1 to the Gauntlett Declaration in support of motion.) Because plaintiff's abbreviated recitation of the policy provisions is both incomplete and misleading, Illinois Union relates all relevant provisions below.

The policy Declarations Page states that it is an "Employment Practices Insurance Coverage Claims First Made and Reported" policy. It further provides:

> THIS IS A CLAIMS-MADE AND REPORTED POLICY - PLEASE READ IT CAREFULLY.
>
> NOTICE: THIS IS A CLAIMS-MADE AND REPORTED POLICY. EXCEPT AS OTHERWISE STATED, THE COVERAGE PROVIDED BY THIS POLICY IS LIMITED TO LIABILITY FOR EMPLOYMENT-RELATED DISCRIMINATION, EMPLOYMENT-RELATED HARASSMENT AND INAPPROPRIATE EMPLOYMENT FOR WHICH CLAIMS ARE FIRST MADE AGAINST THE INSURED WHILE THE POLICY IS IN FORCE AND THAT ARE REPORTED TO US DURING THE POLICY PERIOD OR ANY LIMITED OR EXTENDED PERIOD.
>
> * * * * *
>
> EMPLOYMENT PRACTICES INSURANCE
>
> * * * * *
>
> This policy covers Claims alleging **Employment-related Discrimination, Employment-related Harassment** and **Inappropriate Employment Conduct** liability in accordance with the terms, conditions, limitations and exclusions set forth in this policy. . . .
>
> * * * * *

**I. COVERAGE: WHAT IS COVERED**

**A.** We will pay Loss amounts that the insured is legally obligated to pay on account of a Claim because of an Insured Event to which this policy applies....

**B.** This policy applies only if:

**1.** A Claim is first made against the insured in accordance with Section **III. WHEN COVERAGE IS PROVIDED**;

**2.** The Claim is first reported in accordance with Section **III. WHEN COVERAGE IS PROVIDED** section and the **CONDITIONS** section **X. A. Duties in the Event of a Claim**; and

* * * * *

**C.** **Defense.** We have the right and duty to defend any Claim made or brought against any Insured to which this policy applies....

* * * * *

**E.** **Duty to pay.** We have the duty to pay any Loss that results from any Claim made or brought against any insured to which this policy applies.... We have the duty to pay Defense Costs incurred for the defense of any Claim which is controlled by us.

* * * * *

**EXCLUSIONS: WHAT IS NOT COVERED**

* * * * *

**C.** **Employee Retirement Income Security Act and Other Laws.** This policy does not cover any Loss imposed on the insured under:

* * * * *

**2.** The Fair Labor Standards Act (except the Equal Pay Act);

* * * * *

**7.** Rules or regulations promulgated under any of such statutes or laws, amendments thereto or similar provisions of any federal, state or local statutory law or common law;

* * * * *

**J.** **Gain or Profit.** This policy does not cover any Loss based upon, arising out of, or attributable to an insured gaining in fact any profit, remuneration or financial advantage to which such insured was not legally entitled.

* * * * *

**III. WHEN COVERAGE IS PROVIDED**

**A.** This policy applies only to Claims arising out of an Insured Event that are first made or brought during the Policy Period and reported during the Policy Period or, if applicable, during the Limited or the Extended Reporting Period. A Claim is considered to be first made on the date a Management or Supervising Employee is served or first receives notice of a Claim. The date of Claim arising from a fact, situation or circumstance reported in accordance with the Notice of Potential Claim Condition will be the date notice is given under the policy.

**B.** **Limited Reporting Period** means the thirty (30) day period after the policy ends, during which Claims first made or brought during the Policy Period can be reported.

* * * * *

**XI. DEFINITIONS**

**A.** **Claim(s)** means:

**1.** A written demand for monetary damages;

**2.** A civil proceeding commenced by the service of a complaint or similar pleading . . . . against any insured, . . .

* * * * *

**B.** **Defense Costs** mean those reasonable and necessary expenses that result from the investigation, settlement or defense of a specific Claim including attorney fees and expenses, . . .

* * * * *

**F.** **First Party Insured Event** means actual or alleged acts of Employment-related Discrimination, Employment-related Harassment, or Inappropriate Employment Conduct by an insured against an Employee, former Employee or applicant for employment with an insured entity.

**G.** **Inappropriate Employment Conduct** means any actual or alleged:

* * * * *

**3.** Employment-related misrepresentation to, ... an Employee, ...;

* * * * *

**6.** Employment related libel, slander, defamation of character or any invasion of right of privacy of an Employee, ....

**H.** **Insured Event** includes a First Party Insured Event . . .

* * * * *

**I. Loss**

1. Loss means the amount the insureds become legally obligated to pay on account of each Claim ..., made against them for Employment-related Discrimination, Employment-related Harassment, and Inappropriate Employment Conduct for which coverage applies, including, but not limited to, damages, back pay and front pay, judgments, any award of pre-judgment and post-judgment interest, settlements and Defense Costs.

**2.** Loss does not include:

**a.** . . . penalties imposed by law;

* * * * *

**h.** Matters which may be deemed uninsurable according to the law under which this policy is construed;

**i.** Amounts owed under federal, state, or local wage and hour laws;

* * * * *

**k.** Damages arising from any written or express contract of employment or obligation to make payments, ....

**B. <u>The Tarzi Claim</u>**

On August 16, 2007 Mariam Tarzi filed suit against David Gauntlett and Gauntlett & Associates in the Orange County Superior Court. (*See*, Exhibit 2 to the Gauntlett declaration in support of motion.) Contrary to plaintiff's characterization, the suit is not about an invasion of privacy or misrepresentation, but rather is grounded on an assortment of statutory wage and hour claims based on the following allegations:

5. Plaintiff became employed by defendant as a file clerk in June of 1998. From the onset of her employment, defendant classified her as an "exempt" employee, earning a monthly salary of $3,200. . . .

6. In late 2000, in addition to her duties as defendant's file clerk, plaintiff was given additional job duties in that she began acting as defendant Gauntlett's personal assistant. . . . But for her file clerk duties, defendant Gauntlett assigned plaintiff her daily and weekly list of projects to be completed. . . . On many occasions, defendant Gauntlett required that plaintiff work late hours, on holiday and weekends to complete her assigned work.

7. In addition to the tasks set forth above, as part of her "exempt" duties, defendant Gauntlett assigned plaintiff to: . . . [various duties assisting Gauntlett in personal matters.]

> 8. As a result of the numerous and diverse tasks Plaintiff was required to perform by defendant Gauntlett, Plaintiff did not take rest periods, often did not take a lunch, or would eat at her desk. When Plaintiff did leave the office on a "lunch break," she often spent the entirety of her breaks running personal errands for defendant Gauntlett. Plaintiff worked overtime on a daily basis to meet defendant Gauntlett's demanding needs and deadlines.
>
> * * * * *
>
> 10. On May 10, 2007, plaintiff provided defendant Gauntlett a letter regarding what she reasonably believed to be his choice of mis-classify her as an "exempt" employee. She requested payment for her unpaid overtime hours. When plaintiff returned to work, she learned that all of her stored email communications, over 3000, had been deleted from her work computer. Plaintiff immediately brought this to the attention of defendant's Technology Manager who stated that he knew nothing about the missing documents. He looked at plaintiff's computer and did, however, confirm that someone had changed her settings and deleted of her stored e-mails. Plaintiff then advised defendant Gauntlett that someone had logged into her computer, manipulated the settings and deleted several thousand e-mails. Defendant Gauntlett had no response.
>
> 11. On May 14, 2007, after no written or verbal response to her demand for overtime compensation, Plaintiff gave her resignation. On May 17, 2007, defendant Gauntlett responded to plaintiff's resignation letter, by stating: "Preliminary, I would like to state that the firm absolutely disputes your claims for overtime wages." On May 25, 2007, he sent a follow up letter stating that Plaintiff was not entitled to overtime wages.
>
> 12. Plaintiff estimates that the total number of straight overtime hours worked between August 15, 2003 and May 14, 2007 to be in excess of 1131 hours. During this same time period, plaintiff estimates that the number of hours worked over 12 in a given work day and/or on legal holidays to be in excess of 117. Within this time period, plaintiff also estimates that the total number of days wherein plaintiff was either forced to perform work related tasks or personal ventures for defendant Gauntlett during her designated meal periods or simply could not take a lunch at all was in excess of 567. Finally, plaintiff estimates that the total number of missed rest breaks was in excess of 1512. To date, and despite her demands, plaintiff has not received any reimbursement for overtime hours, meal breaks or mileage reimbursement.

Based on the above alleged facts, Tarzi stated the following causes of action:

1. <u>Failure to pay overtime wages (Labor Code §§ 1194, 1199)</u>. Tarzi alleged:

> 15. Plaintiff was a non-exempt employee covered under one or more Industrial Welfare Commission (hereinafter referred to as "TWC") Wage Orders, Labor Code § 510, California regulation and statute, . . .

* * * * *

> 16. By virtue of the conduct set forth in paragraphs 5 through 12 above, defendant violated said statute in that plaintiff primarily performed non-exempt work in excess of the maximum regular rate hours set by the TWC in the above Wage Orders, regulations or statutes.
>
> 17. As a direct and proximate result of said statutory violation, Plaintiff sustained economic damages according to proof, plus pre-judgment interest thereon.
>
> 18. Plaintiff is further entitled to statutory attorney's fees and costs of suit pursuant to Lab. Code § 1194.
>
> 19. Plaintiff is further entitled to statutory penalties pursuant to Labor Code § 558.

2. <u>Failure to pay wages of terminated or resigned employees. (Labor Code §§ 201-203, 1199)</u>. Tarzi alleges:

> 24. By virtue of the conduct set forth in paragraphs 5 through 12 above, defendant violated said statute in that the defendant required the plaintiff to work overtime without lawful compensation, in violation of the various above applicable Wage Orders, regulations and statutes, and the defendant willfully failed and refused, and continues to fail and refuse to pay wages promptly when due upon termination of plaintiff's employment.
>
> 25. As a direct and proximate result of said violation, plaintiff is entitled to statutory penalties in the amount of 30 days of wages pursuant to Labor Code § 203.
>
> 26. Plaintiff is further entitled to an award of statutory attorney's fees and costs of suit pursuant to Lab. Code § 1194.

3. <u>Failure to provide Rest Breaks and Meal Periods. (Labor Code §§ 226.7 and 512)</u>. Tarzi alleged:

> 29. Labor Code § 226.7 provides that "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." . . .
>
> 30. By virtue of the conduct set forth in paragraphs 5 through 12 above, defendant violated said statute in that it failed or refused to provide plaintiff with the rest period or meal breaks as statutorily required.
>
> 31. As a direct and proximate result of said violations, plaintiff is entitled to statutory penalties pursuant to Labor Code § 558 plus statutory penalties equivalent to payment for an additional hour of pay at plaintiffs' regular rate of compensation for each work day that a rest period was not provided and for each day a meal period was not provided.

4. Failure to comply with Itemized Employee Wage Statement Provisions. (Lab. Code § 226(B)). Tarzi alleged:

> 34. Labor Code § 226 provides that at the time wages are paid, or semimonthly, whichever occurs first, every California employer must provide a statement identifying the following: gross wages earned; total hours worked; all deductions made; hourly rate of pay; net wages earned; inclusive dates of the pay period; name and social security number of the employee; name and address of the legal entity which is the employer.
>
> 35. Defendant has knowingly and intentionally failed to comply with Labor Code section 226(a) on each and every wage statement provided to Plaintiff.
>
> 36. As a direct and proximate result of said violation, Plaintiff is entitled to statutory penalties, each in the amount of $250 for the initial violation and $1,000 for each violation occurring thereafter pursuant to Labor Code § 226.3 plus statutory penalties in the amount of $4,000 pursuant to Labor Code § 226.
>
> 37. Plaintiff is further entitled to an award of statutory attorney's fees and costs pursuant to Lab. Code § 226.

5. Violations of the Unfair Competition law (Business and Professions Code §§ 17200-17208). Tarzi alleged:

> 42. By virtue of the conduct set forth in paragraphs 5 through 12 above, defendant engaged in policies and practices that have harmed Plaintiff, as well as the general public in that the failure to pay lawful overtime pay compensation to Plaintiff, and timely pay all overtime compensation due upon termination of plaintiff's employment to keep proper records as alleged herein, constitutes an unlawful and unfair business practice within the meaning of Business and Professions Code § 17200, *et seq*., including but not limited to a violation of the applicable State of California Industrial Welfare Commission Wage Orders, regulations and statutes, or is otherwise a practice which is otherwise unfair and unlawful, including that the defendant did not pay tax contributions on the accrued overtime compensation in the form of FICA, Social Security, Medicare and Unemployment Insurance.
>
> 43. This cause of action is brought as a cumulative remedy as provided in Business and Professions Code § 17205, and is intended as an alternative remedy for restitution for plaintiff for the time period, or any portion thereof, commencing within four (4) years prior to the filing of this complaint, and as the primary remedy for plaintiff for the time period of the fourth year prior to the filing of this complaint.

> 44. As a result of the Defendant's unlawful and unfair business practice of failing to pay overtime and prompt payment of wages in violation of California's Labor Laws, Plaintiff suffered loss of wages and is entitled to restitution in an amount according to proof.
>
> 45. Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

Based on the first four Causes of Action, plaintiff claims economic damages, statutory penalties, statutory attorney fees, prejudgment interest, costs and punitive damages. She seeks restitutionary damages, attorney fees and interest on the Fifth Cause of Action.

**C. <u>The Coverage Claim</u>**

On June 25, 2007, plaintiff notified Illinois Union of the Tarzi claim arising from her May 9, 2007 letter regarding unpaid overtime wages and submitted a copy of a Supplemental Claim Information form summarizing Tarzi's claim for unpaid overtime wages, a letter from plaintiff to Tarzi dated May 25, 2007 and correspondence from the Employment Development Department regarding Tarzi's unemployment claim. (*See*, Exhibit A to the Declaration of Laura Zaroski in support of opposition; *see also,* Gauntlett declaration, ¶ 6 in support of motion).) Plaintiff subsequently provided Illinois Union with a copy of Tarzi's May 9, 2007 letter regarding unpaid overtime wages. (*See*, Exhibit B to the Zaroski declaration in support of opposition.) Tarzi's letter states:

> As you know, during my Nine (9) years of employment with the Firm, there have been numerous instances when I had to work more than eight (8) hours in one day or more than forty (40) hours in a week. The time records in the Firm's computer system confirm this fact. However, I have never been paid any overtime.
>
> Although I have been classified as an exempt employee throughout my employment, I have since learned that I am not an exempt employee based on a number of factors, including but not limited to, the nature of my job duties and functions. In view thereof, I am entitled to and hereby request immediate payment for all of my unpaid overtime wages. As evidenced by the attached chart, I am owed unpaid overtime wages, plus interest. Please confirm your intent to honor your obligation regarding my overtime pay by this Friday, May 10, 2007, 9:30 a.m.

/ / /

/ / /

There is no mention in either the Tarzi letter or any of the documents provided to Illinois Union on June 25, 2007 of the alleged deleted e-mails. (*See*, Exhibits A and B to the Zaroski declaration in support of opposition.)

The Tarzi complaint alleging the deleted e-mails which was filed on August 16, 2007 (seventeen days after the expiration of the Illinois policy) was first reported to Illinois Union by plaintiff on September 4, 2007. (*See*, Gauntlett declaration, ¶¶ 6-7 in support of motion; Zaroski declaration in support of opposition, ¶¶ 4-5.)

No additional information or documents were provided to Illinois Union by plaintiff in connection with the Tarzi claim or Tarzi action. (*See*, Zaroski declaration in support of opposition, ¶ 7.)

Illinois Union declined coverage on September 27, 2007. (*See*, Gauntlett declaration, ¶¶ 6-7 in support of motion)

## III. ILLINOIS UNION WAS NOT OBLIGATED TO DEFEND THE TARZI CLAIM

### A. Based on Well Established Rules of Policy Construction, the Court Should determine That Illinois Union Owed No Duty to Defend the Tarzi Claim

#### 1. Accepted Rules of Policy Interpretation

(a) Insurance contracts are to be interpreted in the same manner as any other contract. *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (1992).

(b) The courts' immediate goal is to determine the mutual manifest intent of the parties to the contract concerning coverage for the type of claim presented. *Bank of the West v. Superior Court, supra*, 2 Cal.4th 1254.

(c) [A]n insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the [policy] must be respected. *Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 432 (1956).

(d) Language in a policy must be construed "in the context of that instrument as a whole, and in the circumstances of that case and cannot be found to be ambiguous in the abstract." *La Jolla Beach and Tennis Club, Inc. v. Industrial Co.*, 9 Cal.4th 27,

37 (1994); *Palmer v. Truck Ins. Exch.,* 21 Cal.4th 1109, 1115 (1999). Only if this rule does not resolve the ambiguity will the ambiguity then be resolved against the insurer. *Feurzeig v. Insurance Co. of the West,* 59 Cal.App.4th 1276, 1282 (1997).

(e) "[W]ords in an insurance policy are to be read in their plain and ordinary sense. [citation omitted] Ambiguity cannot be based on a strained instead of reasonable interpretation of a policy's terms . . . [citation omitted]." *McKee v. State Farm Fire & Cas. Co.,* 145 Cal.App.3d 772, 776 (1983). "Common sense" must be employed. *Cooper Companies v. Transcontinental Ins. Co.,* 31 Cal.App.4th 1094, 1106 (1995). "Courts will not adopt a strained interpretation in order to create an ambiguity where none exists." *Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800, 807 (1982).

(f) Pursuant to the doctrine of *ejusdem generis*, "a term is interpreted by reference to the surrounding language." *Mez Industries, Inc. v. Pacific National Ins. Co.,* 76 Cal.App.4th 856, 872-74 (1999); *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.,* 100 Cal.App.4th 1017, 1036, n. 15 (2002) [the principle of *ejusdem generis* provides that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated].

**2. <u>Rules Regarding Duty to Defend</u>**

(a) It is axiomatic that the duty to defend is broader than the duty to indemnify, and an insurer must defend a case which potentially seeks damages within the coverage of the policy. *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 275 (1962). However, if there is no potential for covered damages as a matter of law, there cannot be any potential for indemnification, nor can there be a duty to defend. *See e.g., Royal Globe Ins. Co. v. Whitaker,* 181 Cal.App.3d 532, 536-537 (1986); *Golden Eagle Insurance Corp. v. Cen-Fed Ltd.,* 148 Cal.App.4th 976, 985 (2007); *Scottsdale Ins. Co. v. MV Transportation,* 36 Cal.4th 643, 655 (2005).

/ / /

/ / /

(b) "[T]he insurer's obligation is not unlimited; the duty to defend is measured by the nature and kind of risks covered by the policy. (citations omitted.)" *Frank and Freedus v. Allstate Ins. Co.,* 45 Cal.App.4th 461, 469 (1996).

(c) The burden is initially on the insured to show that a claim potentially falls within the scope of the insurer's coverages. *Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 300 (1993); *Royal Globe Ins. Co. v. Whitaker, supra,* 181 Cal.App.3d 532 at 537; *Collin v. American Empire Ins. Co.,* 21 Cal.App.4th 787, 803 (1994).

(d) In judging whether the insured's burden of proof has been met, courts have held that the duty to defend cannot be based on a strained and forced interpretation of the allegations of the tendered complaint. *American Motorists Ins. Co. v. Allied-Sysco Food Services, Inc.,* 19 Cal.App.4th 1342, 1352-1353 (1993).

(e) Extrinsic evidence may be used to show that facts exist outside of the complaint which either support the existence of coverage <u>or</u> establish that there is no coverage. *Montrose Chemical, supra*, 6 Cal.4th at. p. 298. *Scottsdale Ins. Co. v. MV Transportation*, *supra*, 36 Cal.4th 643.

(f) A potential for coverage cannot be based on speculation about claims that have not been alleged or asserted. *Gunderson v. Fire Ins. Exchange,* 37 Cal.App.4th 1006, 1114 (1995); *Golden Eagle Insurance Corp. v. CenFed Ltd.*, *supra*, 148 Cal.App.4th at 988; *Friedman Prof. Management Co., Inc. v. Norcel Mutual Ins. Co.,* 120 Cal.App.4th 17, 35 (2004) (the potentiality rule for duty to defend depends on "possibility of actual indemnity coverage, not the mere existence of a plausible argument"); *Hurley Construction Co. v. State Farm Fire & Casualty Co.,* 10 Cal.App.4th 533, 538 (1992) (insured's counsel sought to justify coverage by arguing that the third party complaint might be amended to allege property damage).

/ / /

/ / /

/ / /

**B. <u>The *Tarzi* Complaint Does Not Allege a Potentially Covered Claim</u>**

**1. <u>The Policy Does Not Cover Wage and Hour Claims</u>**

Although plaintiff attempts to re-characterize the *Tarzi* complaint, that pleading can only be reasonably read in one way: it is a garden variety "wage and hour" claim which the Illinois Union policy terms clearly preclude from coverage.

On the one hand, the *Tarzi* complaint is entirely grounded on statutory wage and hour and derivative claims and consistent with these claims, the only relief sought is past due wages as well as penalties and ancillary relief. There is no mention of emotional distress or other consequential damages which would be expected to follow from an invasion of privacy.

On the other hand, the Illinois Union policy only covers "Loss amounts that the Insured is legally obligated to pay on account of a Claim because of an Insured Event." Not only are "wage and hour" violations not included in the definition of any Insured Event, such claims are specifically excluded from the definition of Loss as: "Amounts owed under federal, state or local wage and hour laws," as are resulting penalties. The absence of coverage for "wage and hour" claims is further reinforced by the policy's FSLA Exclusion (Exclusion (C)). The definition of Loss further excludes penalties from coverage.

The only reasonable interpretation of such policy provisions is that they exclude coverage for all of Tarzi's stated claims. The point is illustrated by the decision in *TriTech Software Sys. v. U.S. Specialty Ins. Co.*, 2010 U.S. Dist. LEXIS 132245 (C.D. Cal. Dec. 13, 2010). There, the court found that the insured's underlying claims for failures to pay overtime, to provide meal and rest breaks, to provide proper pay stubs, and to pay wages promptly upon termination were not covered as the claims fell within the policies' FLSA Exclusion. *Id*. at *17-18. That exclusion, similar to Illinois Union's exclusion, barred coverage for any claim alleging a violation of the Fair Labor Standards Act or "other similar provisions of any federal, state or local statutory or common law or any rules and regulations promulgated under any of the foregoing ...." *Id.* at *15.

The court held:

> The purpose of the FLSA exclusion is to prevent insurance coverage for Claims alleging certain labor law violations, whether under federal or state law. [Citations.] The word "similar" avoids the need to catalog every state and local law that is similar to the FLSA, which would be inefficient, and further puts insureds on notice that the Policy excludes coverage for violations of state labor laws similar to the FLSA. [Citations.] Accordingly, the FLSA exclusion bars coverage for any claims for violations of California Labor Code or Business and Professions Code provisions that are similar to FLSA provisions.

*Id.* at 15-16.

The court in *TriTech Software*, went on to review each claim and explain why each fell within the FLSA Exclusion. The court held that the claims seeking relief from failure to pay overtime under California Labor Code section ("CLC") 510 and other provisions addressing when and how much overtime must be paid and what remedies are available when an employer fails to comply were similar to FLSA provisions and therefore were excluded. *Id.* at *16. The court also reasoned that the claims seeking relief from failure to provide adequate breaks and to pay for such breaks under the CLC were also similar to FLSA provisions and were excluded. *Id.* at *17. As respects to the Business and Professions Code violations, the court explained:

> The fifth count of the Sims Complaint seeks relief under California Business and Professions Code Section 17200 for TriTech's failures to pay overtime and to provide paid meal and rest breaks. Any money damages available under this section would be as a direct result of violating the above California Labor Code provisions that are similar to the FLSA. Accordingly, the FLSA is likewise similar to the Section 17200 allegations in the Sims Claim. *See Cal. Dairies*, 617 F.Supp.2d at 1050-51; *Payless*, 585 F.3d at 1375-76.

*Id.* The court then found that these were also excluded. The same is true of the Tarzi claims.

Plaintiff's motion by its silence, essentially concedes non-coverage for all of Tarzi's stated claims, but instead speculates about unstated claims as a basis for coverage. Those hypothetical arguments do not bear scrutiny.

/ / /

/ / /

### 2. Plaintiff's Imagined "Misrepresentation" Claim Does Not Trigger Potential Coverage

In an effort to create coverage, plaintiff seeks to characterize its alleged misclassification of Tarzi's work status as a "misrepresentation," listed as an **Insured Event**. However, that argument was specifically rejected by the court in *Cal. Dairies, Inc. v. RSUI Indem. Co.*, 617 F.Supp.2d 1023 (E.D. Cal. 2009). There, the underlying complaint alleged that employees were denied mandated meal periods, rest periods, reimbursement for employee uniforms, and wages due at termination in violation of various labor statutes. The insurance policy at issue covered "Employment Practices Wrongful Acts," including "Employment Related Misrepresentation." The court granted the insurer's motion to dismiss the insured's coverage action holding that the insured's assertion that the California Labor Code violations alleged in the underlying action:

> should be viewed as "employment-related misrepresentations" is a strained interpretation of the Policy language in light of the facts presented. The *Gonzalez* action is limited to allegations based upon the failure to pay wages and related benefits. The *Gonzalez* complaint does not allege any misrepresentations by CDI, nor is misrepresentation a required element of any of the ... *Gonzalez* causes of action, all of which related to wage and hour conditions of employment.

*Id.* at 1050. Those same comments apply to the Tarzi complaint.

Plaintiff misplaces reliance on the decision in *Professional Sec. Consultants, Inc. v. United States Fire Ins. Co.*, No. CV 10-04588 SJO (SSx), 2010 WL 4123786 (C.D. Cal. Sept. 22, 2010). That case involved alleged violations of labor code provisions, but there were also allegations that the insured "disseminated false information .... [that employees] were not entitled to overtime compensation." *Id.* at 7-8. The court there held that the allegations were partially outside the FSLA exclusion contained in the insured's employment policy. However, that case is obviously distinguishable because, unlike this case, there were specific allegations of misrepresentation, not merely a misclassification.

In any event, even if one could imply in Tarzi's allegations a misrepresentation constituting an Insured Event, there is no resulting covered Loss because the relief

sought by Tarzi is limited to "amounts owed under wage and hour laws," excluded from the "Loss" definition.

California law is clear that the duty to defend does not attach to a complaint which does "not allege the type of damages covered by the policy." *Sony Computer Entertainment America, Inc. v. American Home Assurance Co.,* 532 F.3d 1007, 1020 (2007) (where complaints alleging defects in insured's video gaming stations did not allege "any property damage to discs," the court rejected insured's claim that such damage could potentially be alleged); *see also*, *Low v. Golden Eagle Ins. Co.,* 99 Cal.App.4th 109, 113-114 (2002); *Gunderson v. Fire Ins. Exch.*, *supra*, 37 Cal.App.4th at 1116. With that in mind, the Tarzi complaint is not covered for the simple reason that the damages sought are not covered.

Further, the exclusion for gain or profit (Exclusion J) would apply to the hypothetical misrepresentation claim because the alleged misrepresentation was a misclassification of work status necessarily resulting in gain to the insured. Thus, this case is distinguishable from the decisions cited by plaintiff in *National Union Fire Ins. Co. of Pittsburgh, PA v. Seagate Technology, Inc.*, 233 Fed.Appx. 614, 616 (9th Cir. Cal. 2007) and *Atlantic Mutual Ins. Co. v. J. Lamb*, 100 Cal.App.4th 1017, 1039 (2002).

**3. <u>The Coverage for Invasion of Privacy is Not Potentially Triggered</u>**

California courts have recognized that insurance coverage for "offense" based coverages, including invasion of privacy, typically relate to one or more types of common law torts. *See*, *ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.,* 147 Cal.App.4th 137, 147 (2007); *Fibreboard Corp. v. Hartford Acc. & Indem. Co.,* 16 Cal.App.4th 492, 511 (1993). Pursuant to the doctrine of *ejusdem generis*, this conclusion is reinforced by the location of Illinois Union's "invasion of right of privacy" offense next to other torts: libel, slander, etc.

California courts also recognize that in order to trigger coverage for such "offense" based torts, each of the elements of the tort must be alleged, not implied. *See, e.g.*, *Nichols v. Great Am. Ins. Co.,* 169 Cal.App.3d. 766, 775 (1985) (all of the elements

of a trade libel tort must be alleged to trigger disparagement coverage); *Total Call Int. Inc. v. Peerless Ins. Co.,* 181 Cal.App.4th 161 (2010) (all of the elements of a defamation tort must be alleged to trigger coverage); *Microtec Research, Inc. v. Nationwide Mutual Ins. Co.,* 40 F.3d 968 (9th Cir. 1994) (where the court rejected the insured's argument that the "false statement" element of trade libel claim could be implied).[1/]

As to coverage for the invasion of privacy offense, the court in *Fibreboard Corp. v. Hartford Accident & Indemnity Co.,* 16 Cal.App.4th 492 (1993), described the tort as follows:

> [T]he right of privacy has been described as the right "to be let alone," which can be tortiously invaded in diverse ways and in diverse contexts. [Citations omitted.] At common law the invasion of the right of privacy has clustered into four distinct wrongs, "whose only relation to one another is that each involves interference with the interest of the individual in leading, to some reasonable extent, a secluded and private life, free from the prying eyes, ears and publications of others." (Rest.2d Torts, §652A, com. b. at p. 377.) The four forms of tortious invasion are: unreasonable intrusion upon the seclusion of another; appropriation of the other's name or likeness; unreasonable publicity given to the other's private life; and publicity that unreasonably places the other in a false light before the public. (*Id.* §652A, at p. 376; Prosser & Keeton on Torts (5th e. 1984) §117, pp. 851-868.)

*Id.* at pp. 513-514.

According to plaintiff, the invasion of privacy offense which Tarzi was purportedly asserting in her wage and hour claim was "unreasonable intrusion upon the seclusion of another." Under California law:

> A privacy violation based on the common law tort of intrusion has two elements. First, the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy. Second, the intrusion must occur in a manner highly offensive to a reasonable person. [Citation Omitted.] These limitations on the right to privacy are not insignificant. [Citation Omitted.]

---

[1/]While ignoring the *Microtec* appellate decision, plaintiff relies on a trial court decision in *Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*, ___ F.Supp.2d ___, 2011 WL 221658, at *6 (N.D. Cal. 2011). However, to the extent that decision is considered, it should be noted that the complaint there clearly stated that "the injury they were alleging was damage to reputation...." From that a disparagement claim was implied by the court. In contrast, Tarzi does not allege any injury from the e-mail incident.

> Nonetheless, the cause of action recognizes a measure of personal control over the individual's autonomy, dignity, and serenity. [Citation Omitted.] The gravamen is the mental anguish sustained when both conditions of liability exist. [Citation Omitted].

*Hernandez v. Hillsides, Inc.,* 47 Cal.4th 272, 286 (2009) (where court held that an employer's surveillance system did not violate the plaintiff employee's right to privacy); *see also*, *Shulman v. Group W. Productions, Inc.,* 18 Cal.4th 200, 231 (1998); *Taus v. Loftus,* 40 Cal.4th 683, 724 (2007).

With the above "invasion of privacy" standard in mind, it is notable that the Tarzi complaint alleges none of the essential elements: that her e-mail communications had been searched, that these communications were personal, or that she had a reasonable expectation of privacy in the contents of any of the deleted e-mail communications stored in her work computer. She also does not allege that she was offended by the event or suffered mental anguish or any other damage as a result. Again, the only damage alleged is in the form of lost wages, penalties, etc. caused by Labor Code violations.

Not only is it evident that Tarzi was not intending to state a claim for invasion of privacy, she could not do so based on the allegations in the complaint because the courts have refused to recognize a reasonable expectation of privacy in using an employer's computers. As one court observed, employers providing computers to their employees can "do as they wish when it comes to accessing communications in electronic storage." *Bohach v. City of Reno,* 932 F.Supp. 1232, 1236 (D. NV 1996). Certainly that is the view of California courts. As the court stated in *TBG Ins. Services Corp. v. Superior Court*, 96 Cal.App.4th 443, 452 (2002) ". . . use of computers in the employment context carries with it social norms that effectively diminish the employee's reasonable expectation of privacy with regard to his use of his employer's computers."

/ / /

/ / /

/ / /

Similarly in *Holmes v. Petrovich Development Co., LLC*, 191 Cal.App.4th 1047, 1069 (2011), the court concluded that an employee had no reasonable expectation of privacy in her personal e-mail messages sent to her attorney using her employer's computer and consequently could not prevail on an invasion of privacy claim.

The courts have also found the element of "offensive conduct" lacking in the employment setting. In *Hilderman v. Enea Teksci, Inc.*, 551 F.Supp.2d 1183 (S.D. Cal. 2008), the court granted summary judgment against an employee's cause of action for invasion of privacy arising from an employer accessing his e-mail account on his work computer. The court found as a matter of law that the intrusion was "not highly offensive" reasoning:

> Although Baghai might have believed that he could purchase the computer upon leaving the company, the computer was, until that time, Enea's property. Enea did not look at the computer for the purpose of rooting out personal information about Baghai, but, rather, was motivated by a desire to protect its confidential information and to ensure that Baghai was not engaged in unauthorized activity that would harm Enea. Although Elliott may have come across some personal information while searching the computer, there is no evidence that Elliot used the laptop to access Baghai's AT&T e-mail account or otherwise pry into Baghai's personal affairs. . . . The laptop was not passed around the company, but, rather, was kept in Elliot's locked office until it was sent to the forensic computer specialist.

(*Id.* at 1204.)

> The facts of this case are distinguishable from cases where a defendant hacks into someone's home computer for purposes of finding out personal information. Considering all of the circumstances, the Court concludes that the alleged invasion of privacy was not "highly offensive." Therefore, the Court grants summary judgment in favor of Enea on this cause of action.

(*Id.*)

Similarly here, Tarzi could not expect privacy in her work computer nor do the facts alleged support a claim that the conduct was highly offensive.

In its motion, plaintiff cites to various case authorities, typically from outside California for the proposition that e-mails are accorded legal protection against invasion of privacy. However, those cases have no persuasive value as none considered issues involving an employer's intrusion into an employee's e-mail account at work. *See*, *City*

*of Ontario v. Quan*, 130 S.Ct. 2619, 2631 (U.S. 2010). (The text quoted by plaintiff referenced a search of a "personal e-mail account" and then noted: "OPD's audit of messages on Quan's employer-provided page was not nearly as intrusive as a search of his personal e-mail account or page, or a wiretap on his home phone line, would have been." *Id.* at 2631; *United States v. Forrester,* 512 F.3d 500, 511 (9th Cir. 2008) (This was not an employment case and involved the government's surveillance of an individual's internet and e-mail activity.); *O'Connor v. Ortega*, 480 U.S. 709, 718 (U.S. 1987) (This case did not involve a search of an employee's work computer, but rather a search of his desk and file cabinet.). Finally, in *Haynes v. Office of the AG*, 298 F.Supp.2d 1154, 1161-1162 (D. Kan. 2003), the alleged intrusion was the viewing of the contents of an employee's "private information contained on his work computer." *Id.* at 1162. In comparison, Tarzi does not allege that the Gauntlett viewed her private emails. The underlying complaint only alleges that Tarzi's stored email communications had been deleted from her work computer. If one is to imply anything from that allegation, it is that Gauntlett is being accused of destroying e-mail evidence of the Labor Code violations.

#### 4. **The Cases Relied on by Plaintiff to Justify Its Speculation About Covered Claims are Distinguishable**

Plaintiff relies on several California cases as authority for its effort to manufacture coverage for an uncovered wage and hour claim through speculation about unpled claims. However, each of those cases is distinguishable and none supports plaintiff's hypothesis about claims which were not and could not be made by Tarzi. First, there is *CNA Casualty of California v. Seaboard Surety Co.,* 176 Cal.App.3d 598 (1986), a decision which pre-dates more recent California authority and which was later disapproved by the California Supreme Court in *Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 296 (1993), because the *CNA* court had failed to consider the potential that extrinsic facts could eliminate coverage. Indeed, it is evident that the *CNA* case is not representative of current California law. Not only did that court refuse to

consider extrinsic evidence, it concluded that the insurer should consider the possibility of later amendments in the pleadings as a basis for coverage (*CNA, supra,* 176 Cal.App.3d at 610-611), a proposition repeatedly rejected by subsequent cases. *See*, *Hurley Construction*, *supra*, 10 Cal.App.4th 533; *Low*, *supra*, 99 Cal.App.4th 109, etc. In any event, the decision itself is readily distinguishable from this case. The court in *CNA* found potential defamation and disparagement coverage based on allegations "that WSBA misrepresented 'the business, property and rights possessed by [the Salveson] plaintiffs to persons with whom plaintiffs did business in an effort to disrupt and prevent the business relationships between those persons and the plaintiffs." *CNA, supra*, 176 Cal.App.3d at 608. In contrast here, there are no allegations of the critical elements of an invasion of privacy action (*e.g.*, Tarzi does not allege an expectation of privacy or resulting injury).

The decision in *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264 (9th Cir. 2010), is also not helpful to plaintiff. That case involved a contribution action between two insurers and a question of potential coverage for slogan infringement, not disparagement. The court found coverage noting that the complaint "alleges facts potentially supporting a legal theory of slogan infringement." *Id*. at 1268. Here, the facts alleged by Tarzi do not support a legal theory of invasion of privacy.

Plaintiff also relies on *Barnett v. Fireman's Fund Insurance Co.*, 90 Cal.App.4th 500 (2001). However, that case is also readily distinguishable. There, the subject complaints alleged that the insureds told third persons that a competitors' "methods of doing business were flawed and would result in Med Partners' failure and made other representations that disparaged and damaged MedPartners and SCMC." *Id.* at 509. On the other hand, here the Tarzi pleadings do not mention invasion of privacy or its elements or any resulting damage.

Finally, in *Dobrin v. Allstate Ins. Co.*, 897 F.Supp.442, 444 (C.D. Cal. 1995) cited by plaintiff, the court found a duty to defend a suit arising out of a partnership dispute because the pleadings "stated facts that would support an allegation of damage to . . .

business reputation." *Id.* In contrast, Tarzi alleges no emotional distress or other damages for invasion of privacy. Rather, her damages are specifically tied to her wage and hour claims.

**C. <u>To the Extent the Alleged Deletion of E-mails Implies an Invasion of Privacy Claim, the Claim Was Not Made and Reported During the Illinois Union Policy Period</u>**

The Illinois Union insurance policy requires that the claim be first made against the insured during the policy period (July 10, 2006 to July 10, 2007) and that as a condition precedent to coverage the claim must be first reported to Illinois Union during the policy period or "during the thirty (30) day period after the policy ends."

Such "claims made" policies "were specifically developed to limit an insurer's risk by restricting coverage to the single policy in effect at the time a claim was asserted against the insured, without regard to the timing of the damage or injury, thus permitting the carrier to establish reserves without regard to possibilities of inflation, upward-spiraling jury awards, or enlargements of tort liability after the policy period." *Montrose Chemical, supra,* 10 Cal.4th at 688. These policies may be contrasted with traditional "occurrence" policies where "the risk of a claim surfacing at some future date after the policy period has expired is borne by the insurer. With ... 'claims made' policies, that risk is shifted to the insured...." *Root v. American Equity Specialty Ins. Co.*, 130 Cal.App.4th 926, 945 (2005). The resulting greater certainty obtained with such claims made policies by insurers in gauging potential liability leads to more accurate calculation of both reserves and premiums, enabling insurers to provide lower rates than under occurrence policies. *See*, *Helfand v. National Union Fire Ins. Co.*, 10 Cal.App.4th 869, 888 (1992). Although the result of claims made and reporting requirements is coverage more restrictive than that provided by the basic types of professional liability insurance policies, "[a]n insurance company has the right to limit to coverage of a policy issued by it and when it has done so, the plain language of the

/ / /

/ / /

limitation must be respected." *National Ins. Underwriters v. Carter,* 17 Cal.3d 380, 386 (1976) (citation omitted); *Pacific Employers Ins. Co. v. Superior Court*, 221 Cal.App.3d 1348, 1359 (1990).

With the history and benefits of "claims made" coverages in mind, California courts have consistently upheld claims made and reporting requirements in such insurance policies, finding that they are neither ambiguous nor against public policy. *See, e.g.*, *Fremont Indem. Co. v. California Nat'l Physician's Ins. Co.*, 954 F.Supp. 1399, 1404 (CD Cal. 1997); *Pacific Employers Ins. Co., supra,* 221 Cal.App.3d at 1358; *see also*, *Venoco, Inc. v. Gulf Underwriters Ins. Co.*, 175 Cal.App.4th 750, 760 (2009).

Here, the facts establish that the only claim made and reported to Illinois Union during its policy period was the wage and hour claim. The allegations of deleted e-mails on which plaintiff bases its hypothetical invasion of privacy claim did not appear until the complaint was filed after the policy had expired. It was still reported later. Consistent with established legal authorities, Illinois Union, having limited its coverage to claims made within its policy period and reported within 30 days thereafter is not obligated to defend the purported invasion of privacy, in any event.

## IV. THE COURT MAY GRANT SUMMARY JUDGMENT IN FAVOR OF ILLINOIS UNION PURSUANT TO RULE 56(f)

Because plaintiff's motion fails to establish coverage under the Illinois Union policy, summary judgment in favor of Illinois Union is warranted. Federal Rule of Civil Procedure 56(f) provides in pertinent part:

> After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant;

Thus, summary judgment may be entered in favor of Illinois Union.

/ / /

/ / /

/ / /

/ / /

## V. CONCLUSION

For the above stated reasons, Illinois Union owed no obligation to defend the Tarzi claim and plaintiff's motion should be denied. Moreover, Illinois Union urges the Court to grant summary judgment in its favor.

DATED: April 14, 2011 LEWIS BRISBOIS BISGAARD & SMITH LLP

By /s/
Lane J. Ashley
Raquel Vidal
Attorneys for Defendant
ILLINOIS UNION INSURANCE COMPANY

# FEDERAL COURT PROOF OF SERVICE

Case: *Gauntlett, etc., v. Illinois Uunion, etc.*
U.S.D.C. Case No. 11-CV-00455 LHK (Ex)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action. My business address is 221 North Figueroa Street, Suite 1200, Los Angeles, California 90012. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On April 14, 2011, I served the following document(s): **DEFENDANT ILLINOIS UNION INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE ILLINOIS UNION'S DUTY TO DEFEND**

The documents were served by the following means:

**[X]** **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on April 14, 2011, at Los Angeles, California.

/s/
RAQUEL VIDAL