**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com

Attorneys for Plaintiff
David A. Gauntlett d/b/a
Gauntlett & Associates

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| DAVID A. GAUNTLETT d/b/a GAUNTLETT & ASSOCIATES, a California sole proprietorship,<br><br>Plaintiff,<br><br>vs.<br><br>ILLINOIS UNION INSURANCE COMPANY, an Illinois corporation,<br><br>Defendant. | Case No. 11-cv-00455 LHK<br><br>Hon. Lucy H. Koh<br><br>**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE: ILLINOIS UNION'S DUTY TO DEFEND**<br><br>Date: May 5, 2011<br>Time: 1:30 p.m.<br>Ctrm: 4 – 5th Floor |

## TABLE OF CONTENTS


Page

I. PRELIMINARY STATEMENT .......... 1

II. THE TARZI COMPLAINT ALLEGES SEVERAL POTENTIALLY COVERED CLAIMS .......... 2

A. "Coverage for Invasion of Privacy of an Employee" Is Potentially Triggered .......... 2

1. Invasion of Privacy Coverage Is Not Limited to Common Law Privacy Claims But Encompass Broadly, as Here, Alleged Any Form of "Intrusion Upon Exclusion" .......... 2

2. Dictionary Definitions of "Any Invasion of Privacy of All Employees" Include Any Actionable Privacy of "All Employees" Form of "Intrusion Upon Exclusion" .......... 4

3. Invasion of Privacy Includes Fact Allegations of Intrusion Upon Seclusion .......... 5

B. Employment Related Misrepresentation to An Employee "Including Conduct Evidencing that an Employee Was Held Out As Exempt When They Were Not is Also Expressly Covered .......... 7

III. NO EXCLUSIONS APPLY .......... 9

A. The "Loss or Gain" (Exclusion "J") .......... 9

B. The FLSA (Exclusion "C") .......... 10

IV. TARZI'S PRIVACY CLAIM WAS MADE AND REPORTED DURING POLICY PERIOD .......... 10

A. Tarzi Made A Single Claim .......... 10

B. The Claim Was Made And Reported Within Policy Period .......... 11

C. Notice of Potential Claim Also Satisfied Policy Condition .......... 13

D. The Notice Timing Condition Also Subject to Equitable Excusal .......... 14

V. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**


*AcraDyne Inc. v. Travelers Cas. & Sur. Co. of Am.*,
263 Fed. Appx. 594 (9th Cir. (Or.) 2008) ..... 9

*Align Tech., Inc. v. Federal Ins. Co.*,
673 F. Supp. 2d 957 (N.D. Cal. Nov. 25, 2009) ..... 6

*Bohach v. City of Reno*,
932 F. Supp. 1232 (D. Nev. 1996) ..... 7

*California Dairies, Inc. v. RSUI Indemnity Co.*,
617 F. Supp. 2d 1023 (E.D. Cal. 2009) ..... 10

*City of Ontario, Cal. v. Quon*,
130 S. Ct. 2619 (U.S. 2010) ..... 6

*Continental. Ins. Co. v. Metro-Goldwyn-Mayer, Inc.*,
107 F.3d 1344 (9th Cir. (Cal.) 1997) ..... 14

*Creative Hospitality Ventures, Inc. v. United States Liab. Ins. Co.*,
655 F. Supp. 2d 1316 (S.D. Fla. 2009) ..... 2

*Curtis-Universal, Inc. v. Sheboygan Emerg. Med. Servs., Inc.*,
43 F.3d 1119 (7th Cir. (Wis.) 1994) ..... 1

*Dobrin v. Allstate Ins. Co.*,
897 F. Supp. 442 (C.D. Cal. 1995) ..... 1

*Heffelfinger v. Electronic Data Systems Corp.*,
580 F. Supp. 2d 933 (C.D. Cal. 2008) ..... 3

*Hudson Ins. Co. v. Colony Ins. Co.*,
624 F.3d 1264 (9th Cir. (Cal.) 2010) ..... 1, 4

*Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*,
686 F. Supp. 2d 1005 (N.D. Cal. 2010) ..... 4

*Medical Lab. Mgmt. Consultants v. American Broadcasting Companies, Inc.*,
306 F.3d 806 (9th Cir. (Ariz.) 2002) ..... 6

*Park University Enterprises v. American Cas. Co. of Redding, PA*,
314 F. Supp. 2d 1094 (D. Kan. 2004) *aff'd* 442 F.3d 239 (10th Cir. (Kan.) 2006) ..... 4

*Quon v. Arch Wireless Operating Co., Inc.*,
445 F. Supp. 2d 1116 (C.D. Cal. 2006) *aff'd in part, rev'd in part*, 529 F.3d 892 (9th Cir. (Cal.) 2008) ..... 6

*Vozzcom, Inc. v. Beazley Ins. Co., Inc.*,
666 F. Supp. 2d 1321 (S.D. Fla. 2009) ..... 12

**STATE CASES**


*ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*,
147 Cal. App. 4th 137 (2007) .......... 3, 4

*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*,
100 Cal. App. 4th 1017 (2002) .......... 1, 6

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*,
5 Cal. 4th 854 (1993) .......... 12

*Branch v. Homefed Bank*,
6 Cal. App. 4th 793 (1992) affirmed .......... 9

*Continental. Ins. Co. v. Super. Ct.*,
37 Cal. App. 4th 69 (1995) .......... 14

*Fibreboard Corp. v. Hartford Acc. & Indem. Co.*,
16 Cal. App. 4th 492 (1993) .......... 4, 7

*Fireman's Fund Ins. Companies v. Atl. Richfield Co.*,
94 Cal. App. 4th 842 (2001) .......... 4

*Friedman Prof. Mgt. Co., Inc. v. Norcal Mut. Ins. Co.*,
120 Cal. App. 4th 17 (2004) .......... 12

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 7

*Holmes v. Petrovich Dev. Co.*,
191 Cal. App. 4th 1047 (2011) .......... 7

*Horace Mann Ins. Co. v. Barbara B.*,
4 Cal. 4th 1076 (1993) .......... 7

*MacKinnon v. Truck Ins. Exch.*,
31 Cal. 4th 635 (2003) .......... 4, 5

*Noble v. Draper*,
160 Cal. App. 4th 1 (2008) .......... 9

*Penzer v Transportation Ins. Co.*,
29 So. 3d 1000 .......... 2

*Root v. American Equity Specialty Ins. Co.*,
130 Cal. App. 4th 926 (2005) .......... 14, 15

*Rosen v. State Farm Gen. Ins. Co.*,
30 Cal. 4th 1070 (2003) .......... 10, 12

*Scott v. Continental Ins. Co.*,
44 Cal. App. 4th 24 (1996) .......... 5

*Scottsdale Ins. Co. v. MV Transp.*,
36 Cal. 4th 643 (2005) .......... 2

*Shulman v. Group W Productions, Inc.*,
18 Cal. 4th 200 (1998) ........ 6

*Small v. Fritz Companies, Inc.*,
30 Cal. 4th 167 (2003) ........ 8

*State Farm Gen. Ins. Co. v. JT's Frames, Inc.*,
181 Cal. App. 4th 429 (2010) ........ 3

*TBG Ins. Services Corp. v. Super. Ct.*,
96 Cal. App. 4th 443 (2002) ........ 7

*Terra Nova Ins. Co. v. Fray-Witzer*,
869 N.E.2d 565 (Mass. 2007) ........ 2

*Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*,
860 N.E.2d 307 (Ill. 2006) ........ 2

**DOCKETED CASES**

*Hooters of Augusta, Inc. v. American Global Ins. Co.*,
No. 04-11077, 2005 WL 3292089 (11th Cir. (Ga.) Dec. 6, 2005) ........ 4

*LensCrafters, Inc. v. Liberty Mutual Fire Ins. Co.*,
No. C 04-1001 SBA, 2005 WL 146896 (N.D. Cal. Jan. 20, 2005) ........ 4

*Miranda v. California Capital Ins. Co.*,
No. A126778, 2011 WL 1168064 (Cal. App. (1st Dist.) March 29, 2011) ........ 3

*Netscape Communications Corp. v. Federal Ins. Co.*,
No. 08-15120, 2009 WL 2634945 (9th Cir. (Cal.) Aug. 27, 2009) ........ 3

*PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*,
No. C 02-1774 PJH, 2006 WL 825266 (N.D. Cal. Mar. 29, 2006) ........ 9

*Scottsdale Ins. Co. v. OU Interests, Inc.*,
No. C 05-313 VRW, 2005 WL 2893865 (N.D. Cal. Nov. 2, 2005) ........ 3

*Tritech Software Systems v. U.S. Specialty Ins. Co.*,
No. CV-10-00094-R VBKX, 2010 WL 5174371 (C.D. Cal. Dec. 13, 2010) ........ 10

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY 1022 (8th ed. 2004) ........ 8

RANDOM HOUSE UNABRIDGED DICTIONARY 1540 (2nd ed. 1993) ........ 5

## I. PRELIMINARY STATEMENT

Illinois Union's overbroad characterization of the Tarzi claim and complaint, as a "garden variety wage and hour claim" evidence why its earlier coverage denial was deficient,[1] since it improperly focuses on labels of causes of action,[2] the gravamen of the lawsuit,[3] and character of the damage remedy asserted in the *Tarzi* Complaint.[4] Such a coverage approach is especially inappropriate where "the claimed cause of action was omitted out of negligence or 'for strategic adversarial reasons.'"[5]

Three (3) propositions evidence why a defense is owed herein:

**First**, it is of no moment that the titled claims for relief focus on "wage and hour" claims so long as the facts implicate potential coverage for two distinctly covered "wrongful acts" that constitute "inappropriate employment conduct": (1) "Employment-related misrepresentation to an Employee," or (2) "any invasion of right of privacy of an Employee . . . ."

**Second**, Illinois Union asserts no exclusions that could bar a defense to the "any invasion of right of privacy" coverage based on "intrusion upon seclusion." Its "gain or profit" exclusion depends on, "gaining in fact any profit" which requires an adjudication of liability that did not occur here. The FLSA exclusion does not encompass distinct conduct evidencing an "employment related

[1]This brief will reference cases that G&A discussed in its Motion for Partial Summary Judgment but Illinois Union elected not to address in **bold**.

[2]*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1034 (2002) (Croskey) ("The scope of the duty does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the *alleged facts or known extrinsic facts* reveal a *possibility* that the claim may be covered by the policy.").

[3]*Curtis-Universal, Inc. v. Sheboygan Emerg. Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. (Wis.) 1994) (Posner) ("Nor is the insurer allowed to escape from his duties of defense and indemnification **by reference to the core or dominant character of the plaintiff's allegations.** That would violate the principle that if any of the conduct alleged in the complaint falls within the scope of the insurance policy, the insurer must defend." (emphasis added)).

[4]*J. Lamb, Inc.*, 100 Cal. App. 4th at 1032 ("Under the personal injury policy provision, coverage is triggered by the *offense*, **not the injury or damage which the plaintiff suffers**. . . . The triggering event is the insured's *wrongful act*, not the resulting injury to the third party claimant." (emphasis added)).

[5]*Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1269 (9th Cir. (Cal.) 2010); *see also Dobrin v. Allstate Ins. Co.*, 897 F. Supp. 442 (C.D. Cal. 1995), which was inadequately distinguished by Illinois Union on the grounds that it addressed a different offense disparagement, stands for the same proposition.

misrepresentation to an Employee" including conduct that led Ms. Tarzi to hold herself out as an exempt employee, giving rise to a potentially actionable claim for negligent misrepresentation.

**Third**, timely notice of the *Tarzi claim* was sufficient to notify Illinois Union of the *single claim* asserted in the August 16, 2007 *Tarzi* Complaint. Moreover, the initial notice of claim was itself a distinct "*Notice of Circumstance*" within Illinois Union's policy period (an element of the policy Illinois Union neglected to address in its Denial letter or Opposition). Indeed, Illinois Union denied without ever confronting, much less analyzing, the grounds for potential coverage asserted herein. It also failed to raise any policy notice defenses despite relying on facts then *known* to it at the time of its wrongful denial on September 27, 2007.

## II. THE TARZI COMPLAINT ALLEGES SEVERAL POTENTIALLY COVERED CLAIMS

### A. "Coverage for Invasion of Privacy of an Employee" Is Potentially Triggered

#### 1. Invasion of Privacy Coverage Is Not Limited to Common Law Privacy Claims But Encompass Broadly, as Here, Alleged Any Form of "Intrusion Upon Exclusion"

Contrary to Illinois Union's citations, which cannot alter California Supreme Court precedent, the Tarzi Complaint and Claim need not allege all elements of a claim for "intrusion upon seclusion" in order to trigger a defense under the "any invasion of privacy of an Employee" offense.

**First**, the Complaint can be amended to add such elements.[6]

**Second**, not elements of a tort need be pled to satisfy the broad elements in a defense that speaks in lay language of "any invasion of privacy of an Employee." Courts addressing narrower policy language have readily concluded that "intrusion upon seclusion" is covered.[7]

---

[6] *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005) ("[T]hat the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability.").

[7] *Penzer v Transportation Ins. Co.*, 29 So. 3d 1000, 1006, 1008 (Fla. 2010) ("If 'privacy' was not preceded by 'right of' then the dictionary definition of 'privacy' would be relevant under a plain meaning analysis. . . . [*Terra Nova Ins. Co. v. Fray-Witzer*, 869 N.E.2d 565, 573 (Mass. 2007)] . . . [*Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 860 N.E.2d 307, 316 (Ill. 2006)] ('[A] violation of privacy in the sense of a violation of seclusion is implicit in a TCPA fax-ad claim.')");

*Creative Hospitality Ventures, Inc. v. United States Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1329 (S.D. Fla. 2009) ("In considering the breadth of the phrase, 'publication, in **any** manner,' the Court finds it

**Third**, like disparagement,[8] a distinct offense covered by Illinois Union's policy, "invasion of any privacy" (not limited to a "right of privacy") can be inferred from fact allegations without requiring a specific labeled claim for relief asserting invasion of privacy, or meeting the elements for a common law claim of "intrusion upon seclusion." A lay person would understand that any "invasion of right of privacy" would simply refer to intrusion upon exclusion, whether or not the claim meets all elements to satisfy a tort.[9]

**Fourth**, even if a common law privacy claim was required, sufficient facts are pled to evidence potential coverage for such a claim.[10] In *JT's Frames*, the Court of Appeal, analyzing narrower policy language, agreed that "right of privacy . . . may . . . refer to the right to seclusion or to be free from unwanted intrusion"[11] as did the Court of Appeals in *ACS*.[12] Illinois Union's attempt to argue that each element of a statutorily based tort claim, falling within the ambit of any "invasion

---

difficult to conceive of a more inclusive description of the categories of 'publication' . . . ." (emphasis added)).

[8]*Miranda v. California Capital Ins. Co.*, No. A126778, 2011 WL 1168064, at *4 (Cal. App. (1st Dist.) March 29, 2011) ("The Christie complaint states that the insureds knowingly transferred the insureds' "inferior cows" to a dairy rancher, falsely told the rancher that the cows were from Christie's herd, and made the transfer and false statement with the intention of disrupting Christie's business relationships with dairy ranchers. Christie further alleged that the insured's conduct resulted in Christie suffering lost profits from a loss of business reputation. . . . Here, the allegations of the Christie complaint suggest that the insureds' intention was not simply to palm off their inferior cows for Christie cows (hoping the substitution would go undetected) but also to disrupt Christie's livestock business by creating the false impression that Christie's cows are substandard and thereby impairing future sales."); *see Heffelfinger v. Electronic Data Systems Corp.*, 580 F. Supp. 2d 933, 969 (C.D. Cal. 2008) ("The law in this circuit is different. 'Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority.' *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865, *3 (N.D. Cal. Nov. 2, 2005).

[9]*Miranda*, 2011 WL 1168064, at *3 ("If any facts stated or **fairly inferable in the complaint, or otherwise known or discovered by the insurer**, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage.").

[10]***Netscape Communications Corp. v. Federal Ins. Co.*, No. 08-15120, 2009 WL 2634945, at *1 (9th Cir. (Cal.) Aug. 27, 2009)** ("The policy covered claims alleging that AOL had made known to any person or organization material that violated a person's right of privacy. Although the underlying claims against AOL were not traditional breach of privacy claims, given that coverage provisions are broadly construed . . . the underlying complaints sufficiently alleged that AOL had intercepted and internally disseminated private online communications.").

[11]*State Farm Gen. Ins. Co. v. JT's Frames, Inc.*, 181 Cal. App. 4th 429, 445 (2010) ("A person claiming the privacy right of secrecy asserts the right to prevent disclosure of personal information to others.").

[12]*ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 147 Cal. App. 4th 137, 148-49 (2007).

of privacy of an employee" must be asserted, improperly adds words of limitation to the policy not set forth therein.[13]

**Fifth**, notably absent from Illinois Union's analysis is any reference to G&A's case authority which clarifies why the element of common law privacy need not be pled to secure a defense.[14] Illinois Union's privacy invasion covered cases wholly look to common law definitions and address **distinct** policy language that includes a "right of privacy"[15] not present here, so it's "all tort elements" test is equally inapplicable.[16]

### 2. Dictionary Definitions of "Any Invasion of Privacy of All Employees" Include Any Actionable Privacy of "All Employees" Form of "Intrusion Upon Exclusion"

The available inferences from the phrase "any invasion of right of privacy of an Employee" is inferred solely from the written provisions of the contract.[17] The words in an insurance contract are to be "interpreted in their 'ordinary and popular sense,' unless used by the parties in a technical

---

[13]*Fireman's Fund Ins. Companies v. Atl. Richfield Co.*, 94 Cal. App. 4th 842, 852 (2001) ("[A]n insurance company's failure to use available language to exclude certain types of liability gives rise to the inference that the parties intended not to so limit coverage.").

[14]***LensCrafters, Inc. v. Liberty Mutual Fire Ins. Co.*, No. C 04-1001 SBA, 2005 WL 146896, at *10 (N.D. Cal. Jan. 20, 2005)** noted that "nothing in the Liberty Policies limits 'right of privacy' to common law right of privacy" which in turn relied on ***Park University Enterprises v. American Cas. Co. of Redding, PA*, 314 F. Supp. 2d 1094, 1109 (D. Kan. 2004) *aff'd* 442 F.3d 239 (10th Cir. (Kan.) 2006)**, declining to define "right of privacy" by importing Illinois tort standards where insurer failed to adopt that meaning in its policy. ***Hooters of Augusta, Inc. v. American Global Ins. Co.*, No. 04-11077, 2005 WL 3292089, at *3-4 (11th Cir. (Ga.) Dec. 6, 2005)** ("We therefore must consider the ordinary meaning of the terms 'privacy,' not whatever specialized [statutory] meaning the word may have taken on in the context of [federal statutory law].").

[15]*ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 147 Cal. App. 4th 137, 147 (2007) ("*Making known to any person or organization written . . . material that violates an individual's right of privacy.*" (emphasis in original);

*Fibreboard Corp. v. Hartford Acc. & Indem. Co.*, 16 Cal. App. 4th 492, 499 (1993) ("[P]ublication or utterance in violation of any individual's right of privacy . . . .").

[16]*Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*, 686 F. Supp. 2d 1005, 1007 (N.D. Cal. 2010) ("In contrast to *Total Call*, the Court here found that the allegations in the underlying complaint referred disparagingly to a competitor by clear implication.");

*Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1269 (9th Cir. (Cal.) 2010) ("*Microtec* does not 'stand [ ] for the principle that where the plaintiff acknowledges the existence of facts that could give rise to a cause of action but consciously avoids asserting that cause of action,' there is no duty to defend. Rather, we relied once again on the absence of any *factual* allegations in the complaint. *See Microtec*, 40 F.3d at 971.").

[17]*MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003).

sense or a special meaning is given to them by usage."[18] Furthermore, "insurance coverage is 'interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] ... exclusionary clauses are interpreted narrowly against the insurer.' " (internal quotation marks omitted). The phrase must be interpreted in their ordinary and popular sense.[19]

"In seeking to ascertain the ordinary sense of words [in an insurance policy], courts in insurance cases regularly turn to general dictionaries."[20] Turning to the dictionary, the word "privacy" means "**1.** the state of being private; retirement or seclusion; **2.** the state of being free from intrusion or disturbance in one's private life or affairs: *the right of privacy*."[21] Far from being an outlier definition, "the right to protection from interference with seclusion" is the core element that a lay person would anticipate to find coverage for under this policy provision.

### 3. Invasion of Privacy Includes Fact Allegations of Intrusion Upon Seclusion

In her Complaint, Tarzi took exception to G&A's access to and alleged destruction of e-mails from her computer, boldly declaring in her complaint that

> when plaintiff returned to work she learned that all of her stored email communications, over 3000, had been deleted from her work computer. . . . Plaintiff then advised defendant Gauntlett that someone had logged into her computer, manipulated the settings and deleted several thousand emails.[22]

This August 16, 2007 Complaint followed the May 25, 2007 letter from G&A to Tarzi that:

> [W]e have conducted a forensic review of your computer. It reveals your extensive use of e-mail accounts to conduct political and social activities during the time period that you now purport to have been an "hourly" employee rather than working on firm business.[23]

Ms. Tarzi's complaint and response to that letter place into direct controversy G&A's alleged search and purported destruction of her e-mails. Ms. Laura Zarosky, Illinois Union's coverage counsel, *knew* prior to issuance of the September 27, 2007 denial letter of G&A's May 25, 2007

---

[18] *Id.* at 648. (Internal quotation marks omitted)

[19] *Id.*

[20] *Scott v. Continental Ins. Co.*, 44 Cal. App. 4th 24, 29 (1996).

[21] RANDOM HOUSE UNABRIDGED DICTIONARY 1540 (2nd ed. 1993).

[22] **[Doc. 1:5, ¶16]**

[23] **[Doc. 16-1:14]**

letter to Ms. Tarzi which categorically denied the viability of any of her claims but also took issue with her private e-mails, which included private and political e-mail correspondence.

So here, Illinois Union does not adequately explain why these facts cannot create a potential coverage claim for "an invasion of privacy of an Employee," or at minimum, a disputed issue of fact as to whether a privacy invasion occurred, requiring a finding that a defense is owed.[24] Absent such a showing, Illinois Union cannot preclude the possibility of coverage "in all possible worlds."[25]

The elements of common law invasion of privacy are: (1) an intentional intrusion into a private place, conversation, or matter (2) in a manner highly offensive to a reasonable person.[26] To prevail on the first element, Ms. Tarzi must show that she had a reasonable expectation of seclusion or solitude in the place, conversation, or data source. In determining whether an alleged intrusion is "highly offensive" under the second element, relevant considerations include "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded."[27]

An employee, using the employer's property (desk, pager or computer) may have an expectation of privacy. The *Quon* case[28] considered a police officer's right privacy in messages

---

[24]*Align Tech., Inc. v. Federal Ins. Co.*, 673 F. Supp. 2d 957, 972 (N.D. Cal. Nov. 25, 2009) (J. Whyte) ("[A]ccepting Federal's argument would allow it to cobble together the most favorable allegations from both parties and disregard the rest. . . . At best, the conflicting allegations might create a factual issue . . . . Since a factual dispute does not completely eliminate the possibility of coverage, it does not relieve Federal of its duty to defend. *Mirpad, LLC v. California Ins. Guar. Ass'n*, 132 Cal. App. 4th 1058, 1068 (2005) ('If coverage depends on an unresolved dispute over a factual question, the very existence of that dispute would establish a possibility of coverage and thus a duty to defend.')").

[25]*J. Lamb*, 100 Cal. App. 4th at 1039 ("[A]n insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds.").

[26]*Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200, 231 (1998); *see also Medical Lab. Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. (Ariz.) 2002).

[27]*Medical Lab.*, 306 F.3d at 819 (quoting *Deteresa v. Am. Broad. Cos.*, 121 F.3d 460, 465 (9th Cir. (Cal.) 1997)).

[28]*Quon v. Arch Wireless Operating Co., Inc.*, 445 F. Supp. 2d 1116, 1141-42, (C.D. Cal. 2006) *aff'd in part, rev'd in part*, 529 F.3d 892 (9th Cir. (Cal.) 2008) *rev'd and remanded sub nom. City of Ontario, Cal. v. Quon*, 130 S. Ct. 2619 (U.S. 2010). ("That the pager in question was owned by the City adds nothing by itself to the analysis. A per se rule that public employees cannot have a reasonable expectation of privacy when using property owned by their employer would be at odds with the Supreme Court's holding in [*O'Connor v.*] *Ortega* [480 U.S. 709, 719 (1987)]. There the

transmitted on his city-owned pager and found it to be a factual question, not resolved by reference to ownership of the technology device.

The argument that Tarzi could not succeed in her invasion of privacy claim is misplaced because whether Tarzi's e-mail complaint was "an intrusion into a private place" that was "highly offensive" are factual issues to be determined at trial. The *potential* that an underlying fact finder could find in Tarzi's favor on these issues is sufficient to trigger the duty to defend. No case cited in Illinois Union's Opposition **[Doc. 16:21-25]** conclusively eliminates the potential for coverage.[29] Had it defended, it should have made these arguments for its insured.[30]

### B. Employment Related Misrepresentation to An Employee "Including Conduct Evidencing that an Employee Was Held Out As Exempt When They Were Not is Also Expressly Covered

The Policy promises to cover "Inappropriate Employment Conduct [that] means any actual or alleged . . . Employment-Related misrepresentation to . . . an employee . . ." This capacious coverage is not limited by any definition of an "Employment-Related misrepresentation." That term must reasonably include the tort of negligent misrepresentation so long as it is "employment-related" and directed to an employee, future, present or past. California recognizes the tort of negligent misrepresentation as having the elements of (a) misrepresentation (false representation, concealment, or nondisclosure); (b) justifiable reliance; and (c) resulting damage. It encompasses " '[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true' and [also] '[t]he positive assertion, in a manner not warranted by the information of the

---

Supreme Court held unanimously that the employee could have a reasonable expectation of privacy in the personal items he stored in a desk that was presumably owned by his employer. Expectations of privacy are not tied up by reference to property law.").

[29] *Fibreboard Corp. v. Hartford Accident & Indem. Co.*, 16 Cal. App. 4th 492, 497 (1993) was an asbestos injury case that only discussed privacy in dicta. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 300-01 (2009) simply found that the "particular conduct of defendants [was not] highly offensive." *Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996) only held that plaintiffs failed to prove their privacy claim. *TBG Ins. Services Corp. v. Super. Ct*., 96 Cal. App. 4th 443 (2002) was only a ruling on discovery (concerning a home computer). *Holmes v. Petrovich Dev. Co.*, 191 Cal. App. 4th 1047, 1074 (2011) declined to consider the plaintiff's right of privacy claim after failing to raise it at trial or properly on appeal.

[30] *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1086 (1993) ("[W]hen the underlying action is a sham, [the insurer may terminate its duty to defend only by] demur[ing] or obtain[ing] summary judgment on its insured's behalf . . . .").

person making it, of that which is not true, though he believes it to be true.' "[31]

The elements of this tort are potentially alleged in the *Tarzi* action where she alleges that she was "from the onset of her employment [classified by defendant] as an 'exempt' employee" **[Doc. 1:4, ¶16]**, accepted that representation and worked for many years in reasonable reliance on that job classification and was therefore allegedly underpaid because of this misrepresented employment status.

Where the defendant may have misrepresented Tarzi's exempt status negligently, all elements of the tort of negligent misrepresentation are expressly or impliedly plead in the *Tarzi* action: (a) a false representation, (b) justifiable reliance by Tarzi, and (c) damages based on that false representation. This tort is factually pled notwithstanding that the facts were also used to support the labeled statutory wage claims, especially as misrepresentation includes many forms of conduct that is not limited to statements.[32]

Ms. Tarzi, by her own admission, routinely and evidently worked after hours. David Gauntlett's May 25, 2007 letter to Miriam Tarzi referencing "Your exempt executive capacity duties" was within the materials described as **Exhibit "A" to the Declaration of Laura Zaroski [Doc. 16-1: p. 12 of 15, ¶3]**, filed herein. Ms. Tarzi's May 9, 2007 letter stated: "[D]uring my Nine (9) years of employment with the firm, there have been numerous instances when I had to work more than eight (8) hours in one day or more than forty (40) hours in a week. The time records in the Firm's computer system confirm this fact. However, I have never been paid any overtime. . . . I have been classified as an exempt employee throughout my employment. . . . As evidenced by the attached chart, I am owed unpaid overtime wages, plus interest." **[Exhibits to Zaroski Decl., Doc. 16-2: p. 8 of 12]**

---

[31] *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173-74 (2003) (internal citations omitted).

[32] BLACK'S LAW DICTIONARY 1022 (8th ed. 2004) (The term "misrepresentation" is not defined in the policy. The legal definition of "misrepresentation," which a lay person would adopt in understanding the legal terminology states: "**1.** the act of making a false or misleading assertion about something, usually with the intent to deceive. • The word denotes not just written or spoken words but also any other conduct that amounts to a false assertion; **2.** the assertion so made; and the assertion that is not in accord with the facts – also termed *false representation* (redundantly false misrepresentation). . . . 'an assertion may also be inferred from conduct rather than words.' . . . Restatement (2nd) of Contract §159 (cmt. a (1979)).

Courts have found the potential for a negligent representation claim in other employment settings.[33] Similarly in this case, the potential for a negligent misrepresentation claim exists in the *Tarzi* action based upon the alleged misrepresentation that she was an exempt employee leading her to do more work for less money.

## III. NO EXCLUSIONS APPLY

### A. The "Loss or Gain" (Exclusion "J")

The Gain or Profit exclusion precludes coverage for any claim "based upon, arising out of, or attributable to an insured gaining **in fact** any profit . . . ."[34] California courts have held that the meaning of the term "in fact" within the gain or profit exclusion should be read to require a "final adjudication" or "at least some evidentiary proof that the insured reaped an illegal profit."[35] In *PMI Mortgage*, the court held that whether the gain or profit exclusion applies "cannot be based solely on the 'basic allegations' themselves, but must also focus on the elements of the causes of action alleged, and only *if proven*, will the exclusion apply due to an illegal profit or gain."[36]

Here, the "Gain or Profit" exclusion cited by Illinois Union in its denial letter cannot eliminate a defense duty because the exclusion only deals with causes of action that have been adjudicated. Defendant relies solely on the allegations of the *Tarzi* complaint, which reliance is misplaced because the cause of action was **settled** and not "proven" or "adjudicated." There are no grounds upon which the exclusion may be applied because the "misrepresentation" and "invasion of privacy" claims do not, and cannot as defendant argues, "necessarily result[] in gain to

---

[33] *AcraDyne Inc. v. Travelers Cas. & Sur. Co. of Am.*, 263 Fed. Appx. 594, 597 (9th Cir. (Or.) 2008) (unpublished) reversed and remanded a summary judgment for an EPLI insurer in a case where employee may have been damaged by a negligent misrepresentation of employer about future benefits and settlement might be for that wrongful employment practice. ("The Corporations might not have been aware of any purely negligent misrepresentations.");

*Branch v. Homefed Bank*, 6 Cal. App. 4th 793, 795, (1992) affirmed a jury award to bank employee for negligent misrepresentation about his pay and benefits that induced him to take the job;

*Noble v. Draper*, 160 Cal. App. 4th 1, 17 (2008) held that a claim for unpaid wages did not bar claim for negligent misrepresentation about pay and benefits.

[34] **[Doc. 1-1:7]**

[35] *PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, No. C 02-1774 PJH, 2006 WL 825266, at *7 (N.D. Cal. Mar. 29, 2006).

[36] *Id.* (emphasis in original).

the insured."[37]

### B. The FLSA (Exclusion "C")

Equally, ill conceived is Illinois Union's attempt to apply the FLSA Exclusion, "Exclusion C," to bar all potential coverage. It excludes only "Loss amounts owed under federal, state or local wage narrow laws." Its overbroad assertion is not justified by Illinois Union's cases. *Tritech*[38] addressed specific claims that were found to be within the scope of the pertinent FLSA exclusion, relying on *California Dairies*.[39] It pre-dates *Professional Security Consultants*, which *Tritech* neither discusses nor distinguishes,[40] as Judge Otero noted in *Professional Security Consultants*,[41] falls outside the FLSA exclusion because it is not itself a wage and hour violation but like other forms of false advertising is a misstatement with its own injurious consequences. So long as damages are sought,[42] potential coverage arises, especially as the theory of damages is not germane to the analysis of offense-based coverage claims.

## IV. TARZI'S PRIVACY CLAIM WAS MADE AND REPORTED DURING POLICY PERIOD

### A. Tarzi Made A Single Claim

Illinois Union asserts that it has no duty to defend an invasion of privacy claim because factual allegations supporting such a claim – that is, employee allegations of deleted e-mails from her computer, "did not appear until the [*Tarzi*] complaint was filed after the policy expired." **[Doc. 16:28]** Illinois Union admits that its insurance Policy was effective for the period July 10, 2006

---

[37]**[Doc. 16:21]**

[38]*Tritech Software Systems v. U.S. Specialty Ins. Co.*, No. CV-10-00094-R VBKX, 2010 WL 5174371 (C.D. Cal. Dec. 13, 2010).

[39]*California Dairies, Inc. v. RSUI Indemnity Co.*, 617 F. Supp. 2d 1023, 1031 (E.D. Cal. 2009).

[40]*Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 1076 (2003) ("[A]n opinion is only authority for those issues actually considered or decided.").

[41]*Professional Security Consultants, Inc. v. U.S. Fire Ins. Co.*, CV 10-04588 SJO SSX, 2010 WL 4123786, at *3 (C.D. Cal. Sept. 22, 2010) (Otero) ("[D]isseminated false information . . . that [employees] were not entitled to overtime compensation").

[42]*Id*. at *3 ("Defendant, however, has a duty to pay for 'damages' from 'Employment Claims,' which includes 'damages' incurred in connection with 'any employment-related misrepresentations.' . . . The plaintiffs in the Underlying Action requested 'damages.' . . . Whether or not these damages were in connection with the lost overtime payments, or whether these damages were connected with the employment-related misrepresentation is a matter that is outside the scope of this Order.").

through July 10, 2007 **[Doc. 16:7]**, that Tarzi made her initial claim against the insured by letter on May 9, 2007, and that it was reported to Illinois Union on June 25, 2007. **[Doc. 16:14]** It is thus undisputed that the *Tarzi* claim was first made and reported by the insured to Illinois Union within the Policy Period on June 25, 2007. There is and was only one *Tarzi* claim; it began with a letter to the insured, continued with conversations and, when it was not resolved to Tarzi's satisfaction, was filed as a lawsuit.

The *Tarzi* claim ripened into a civil lawsuit filed on August 16, 2007. The complaint was reported to Illinois Union on September 4, 2007, shortly after service. **[Doc. 10:2, ¶7]** Illinois Union's argument mentions several general legal principals but does not focus on the actual policy language that governs whether the *Tarzi* claim was made and reported within the Policy Period. Illinois Union's specific policy language establishes that the *Tarzi* claim, including the alleged infringement of privacy allegations, were "first made . . . during the Policy Period and reported during the Policy Period." **[Doc. 10-1:8]**

**B. The Claim Was Made And Reported Within Policy Period**

Under the Policy definition of a "Claim,"[43] Illinois Union owes coverage. Policy section III (A) explains: "When Coverage is Provided. A. This policy applies only to Claims arising out of an Insured Event that are first made . . . during the Policy Period and reported during the Policy Period . . . A Claim is considered to be first made on the date a Management or Supervising Employee . . . first receives notice of a Claim. The date of Claim arising from a fact, situation or circumstance reported in accordance with the Notice of Potential Claim Condition will the date notice is given under the policy." **[Doc. 10-1:8]**

The *Tarzi* claim was "first made" on May 10, 2007, during the Policy Period, when her letter was presented to David Gauntlett. Tarzi's May 10, 2007 letter demanded monetary damages and was thus a "Claim" and the related complaint arose out of an "Insured Event."[44]

---

[43]"Claim means: 1. A written demand for monetary damages; 2. A civil proceeding commenced by the service of a complaint . . . ." **[Doc. 10-1:18]**

[44]An "Insured Event includes a First Party Insured Event and . . . One or more actual or alleged acts which are: 1. Related by an unbroken chain of events; or . . . 3. The subject of related Claims brought by the same person will be considered one Insured Event. All Claims arising out of one Insured Event will be deemed to have been first made . . . on the date that the first of those Claims

The Tarzi letter presented May 10, 2007 alleged an "Insured Event," one or more acts of "Inappropriate Employment Conduct" in the form of alleged "Employment-related misrepresentation to" Tarzi as "an Employee" in the form of alleged misrepresentations about her status as an exempt employee. The later lawsuit complaint repeated these allegations with more detail and clarified that the "Inappropriate Employment Conduct" included alleged "invasion of right of privacy of an employee [or] former employee."

In the only known reported decision to consider the same policy language as here, *Vozzcom*[45] rejected Beazley's denial of coverage on the ground that a second lawsuit filed after the expiration of the Beazley policy was a related event and was therefore covered. The "Insured Events" Tarzi alleged in her letter and later lawsuit were "related by an unbroken chain of events."[46] Both a logical and causal connection exist between Tarzi's original wage claim and later privacy claim. No contrary showing is made.

Even if they did not constitute a single Claim, the allegations amounted to "Claims arising out of one Insured Event" and therefore "will be deemed to have been first made . . . on the date that the first of those Claims was made . . ." Consequently, the date of the May 10, 2007 Tarzi letter becomes the date when "all Claims . . . will be deemed to have been first made" The reporting of that claim within the Policy Period satisfies Policy reporting conditions.

---

was made . . ." **[Doc. 10-1:14]** A "First Party Insured Event means actual or alleged acts of . . . Inappropriate Employment Conduct by an insured against an Employee . . ." [*Id.*] "Inappropriate Employment Conduct means any actual or alleged: . . . 3. Employment-related misrepresentation to . . . an Employee . . .6. Employment-related . . . any invasion of right of privacy of an employee [or] a former employee . . ." [*Id.*]

[45] *Vozzcom, Inc. v. Beazley Ins. Co., Inc.*, 666 F. Supp. 2d 1321, 1329 (S.D. Fla. 2009) ("The factual and temporal circumstances of the two claims are closely related; thus the Teixeira claim and the DaSilva claim constitute one insured event for purposes of coverage under the Beazley policy. Under the 'One Insured Event' provision of the policy, the DaSilva claim is considered to have been made on the date the Teixeira claim was made, which is within the coverage period of the Beazley policy.").

[46] *Friedman Prof. Mgt. Co., Inc. v. Norcal Mut. Ins. Co.*, 120 Cal. App. 4th 17, 32 (2004) relied on the meaning given by the California Supreme Court in *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal. 4th 854, 873 (1993) (that "the term 'related' as it is commonly understood and used [in a claims made insurance policy] encompasses both logical and causal connections") to hold that an "invasion of privacy claim [was] causally related to [an earlier] malpractice claim."

**C. Notice of Potential Claim Also Satisfied Policy Condition**

Even if the facts under the foregoing language did not satisfy the Policy reporting requirements, another provision of the Policy makes the notice of Claim timely. The optional Notice of a Potential Claim provision[47] would make the June 25, 2007 notice to Illinois Union effective for the Claim brought in the later lawsuit. Because the June 25, 2007 notice about the Tarzi letter amounted to a "notice of a fact, situation or circumstance which may result in a Claim," the later filed Tarzi complaint must be deemed to have been both made and reported on June 25, 2007, indisputably within the Policy Period. Thus, under policy provisions Illinois Union neglected to cite, much less address, although the complaint had additional details about the alleged "Inappropriate Employment Conduct," the claim will be deemed to be made and reported earlier, satisfying the Policy conditions.

In response to the Tarzi May 10, 2007 letter David Gauntlett sent her a detailed response letter that was sent to Illinois Union with other notice of claim documentation and is attached to the declaration of its adjuster, Laura Zaroski in opposition to this summary judgment motion.[48] **[Doc. 16-1]**

Providing this letter and other documents to Illinois Union was sufficient to give "notice of a fact, situation or circumstance which may result in a Claim." While the insured did not know that an invasion of privacy claim would be made in a subsequent lawsuit, Illinois Union was on reasonable notice of the fact of the Tarzi computer and e-mail forensic examination, creating a situation or circumstance, related to the other Tarzi employment claim, that could "result in a Claim." The subsequently alleged "Inappropriate Employment Conduct:" could be expected, where the Policy

---

[47]That provision says that "the insured may within the Policy Period give us notice of a fact, situation or circumstance which may result in a Claim, by providing to us the information required in accordance with Condition A. 1. a. through f. If such notice is given within the Policy Period then any Claim subsequently arising from such notice will be deemed to be made on the date such notice was given." **[Doc. 10-1:11]**

[48]The Gauntlett May 25, 2007 letter not only rebuts Tarzi's claim of misrepresentation about her employment status but also discusses a forensic examination of her computer to determine how Ms. Tarzi was spending her time that she claimed to be required overtime. The Gauntlett letter asserted that the forensic examination of Tarzi's e-mails "revealed your extensive use of e-mail accounts to conduct political and social activities during the time periods that you now purport to have been an 'hourly' employee rather than working on firm business." **[Doc. 16-1:14]**

expressly insured against the "Insured Event" of "invasion of right of privacy of a[] former employee." The privacy invasion claim grew out of and was directly related to the earlier alleged "Insured Event," however groundless both were.[49]

An analogous case, *Metro-Goldwyn-Mayer*[50] held that the production to the insurer of a variety of documents about a potential claim was sufficient to satisfy the policy conditions in a "claims made" policy. *Continental* similarly found sufficient notice given under a "claims made" policy when the insured provided all information available.[51]

The Tarzi letter triggering the Gauntlett response provided notice to Illinois Union of circumstances surrounding the termination of Tarzi's employment, including the insured's examination of her e-mails. These facts about employer conduct led directly to the Tarzi complaint concerning precisely the events discussed in the letters. The insurer had all this during the policy period. Nothing further could be provided nor does the Policy require more.

**D. The Notice Timing Condition Also Subject to Equitable Excusal**

Under California law, a trial court may equitably excuse the satisfaction of conditions in insurance contracts in order to avoid a forfeiture of coverage.[52] Such excusal is appropriate in certain circumstances where the reporting requirement functions as a condition rather than "an element of

[49]All necessary and available information was provided "in accordance with Condition A. 1. a. through f." where the names of the insured and claimant were given with a full description of the specific events and actions of the insured that allegedly led to the invasion of privacy claim and all available knowledge up to that time. Illinois Union has not shown that this Policy provision is not triggered by the facts shown in its exhibits or that the Policy conditions were not fully met by the notice. The insurer was given notice of the precise conduct upon which the later privacy claim was based.

[50]*Continental. Ins. Co. v. Metro-Goldwyn-Mayer, Inc.*, 107 F.3d 1344, 1348 (9th Cir. (Cal.) 1997) ("The combination of these documents provided Continental with all the information required by the notice provisions of the insurance contract. . . . For the purposes of the insurance policy, MGM provided sufficient notice to Continental. . .of the transaction that was expected to give rise to claims against MGM . . . and this notice was sufficiently specific to satisfy the terms of the policy.").

[51]*Continental. Ins. Co. v. Super. Ct.*, 37 Cal. App. 4th 69, 81 (1995) (The insured gave: "timely notice of the claims which they believed might be asserted against them. This is both the purpose and function of [the policy provision]. **Continental cannot avoid coverage by claiming that plaintiffs' description of possible future events was not more specific.** Plaintiffs provided all of the information they had as well as all they were likely to have until a specific complaint was actually filed by the complaining third parties. **The policy could not reasonably require more**."). (Emphasis added.)

[52]*Root v. American Equity Specialty Ins. Co.*, 130 Cal. App. 4th 926, 947-48 (2005).

the fundamental risk insured."[53] Timely written notice is explicitly identified as a "condition precedent to the obligations of the Insurer" under the terms of the Illinois Union policy, and therefore any G&A failure to provide notice within the policy period is subject to the equitable rule in *Root*. A time may come at the end of the policy period when it is impossible for the insured to notify the company of a claim.

It was impossible for G&A to give the insurer a more specific identification of the exact complaint allegations because the complaint was not filed until after the policy period. But the insured had given notice of all facts upon which the complaint was based and then gave immediate notice of the actual complaint based on the facts that had been previously provided to Illinois Union. Instead of excusing the insurer's duty to defend with a "gotcha" condition, the Court should find that Illinois Union's notice timing condition, even if found applicable, is excused in these circumstances. In such circumstances, "it may well be that an insured would be relieved of giving notice during the period of such impossibility."[54] Rather than permitting a policy condition to act as a forfeiture of policy benefits, "California's common law rule [is] that conditions can be excused if equity requires it."[55]

## V. CONCLUSION

For all the reasons set forth herein and in G&A's Motion for Summary Judgment awarding a defense was owed in the *Tarzi* claim and Complaint. An Order so finding and prejudgment interest at the legal rate from the date of invoice should be entered for reasonable attorneys' fees and monies paid in settlement.

Dated: April 21, 2011

**GAUNTLETT & ASSOCIATES**

By: /s/ James A. Lowe
James A. Lowe

Attorneys for Plaintiff
David A. Gauntlett dba Gauntlett & Associates

---

[53] *Id*. at 943.

[54] *Id*. at 939.

[55] *Id*. at 948.