United States District Court
For the Northern District of California

1

2

3

4

5

6

7            IN THE UNITED STATES DISTRICT COURT

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                    SAN JOSE DIVISION

10   DAVID A. GAUNTLETT,                    CASE NO. 5:CV 11-00455-EJD

11                                          **ORDER DENYING PLAINTIFF'S**
                     Plaintiff(s),          **MOTION FOR PARTIAL SUMMARY**
12      v.                                  **JUDGMENT**

13   ILLINOIS UNION INSURANCE
     COMPANY,
14                                          [Re: Docket Item No. 9]

15                    Defendant(s).

16   _____/

17        This is a declaratory judgment action to determine coverage under a policy issued by

18   Defendant Illinois Union Insurance Company ("Defendant" or "Illinois Union"), insuring David A.

19   Gauntlett d/b/a Gauntlett & Associates' ("Plaintiff" or "Gauntlett") against liability for certain

20   "Employment Practices." Plaintiff was the defendant in an underlying "wage and hour" civil action,

21   in which it claims Defendant's duty to defend was triggered. Presently before the Court is Plaintiff's

22   Motion for Partial Summary Judgment, seeking an order that Defendant had a duty to defend the

23   underlying lawsuit. Having reviewed the parties' submissions, the Court finds this matter

24   appropriate for decision without oral argument. Civ. L. R. 7-1(b). For the reasons described below,

25   the Court DENIES Plaintiff's motion for partial summary judgment.[1]

26   ///

27

28        _____
          [1]  This disposition is not designated for publication in the official reports.

                                            1

**United States District Court**
For the Northern District of California

## II. BACKGROUND

**A.** **The Illinois Union Policy**

Illinois Union issued Employment Practices Liability Insurance Policy No. 1262658 to Gauntlett, as the named insured, effective July 10, 2006 through July 10, 2007 (the "Policy"). The Policy Declarations Page states that it is an "Employment Practices Insurance Coverage Claims First Made and Reported" policy. It further provides:

> THIS IS A CLAIMS-MADE AND REPORTED POLICY - PLEASE READ IT CAREFULLY.
>
> NOTICE: THIS IS A CLAIMS-MADE AND REPORTED POLICY. EXCEPT AS OTHERWISE STATED, THE COVERAGE PROVIDED BY THIS POLICY IS LIMITED TO LIABILITY FOR EMPLOYMENT-RELATED DISCRIMINATION, EMPLOYMENT-RELATED HARASSMENT AND INAPPROPRIATE EMPLOYMENT FOR WHICH CLAIMS ARE FIRST MADE AGAINST THE INSURED WHILE THE POLICY IS IN FORCE AND THAT ARE REPORTED TO US DURING THE POLICY PERIOD OR ANY LIMITED OR EXTENDED PERIOD.
>
> * * * * *
>
> EMPLOYMENT PRACTICES INSURANCE
>
> * * * * *
>
> This policy covers Claims alleging **Employment-related Discrimination, Employment-related Harassment** and **Inappropriate Employment Conduct** liability in accordance with the terms, conditions, limitations and exclusions set forth in this policy. . . .
>
> * * * * *
>
> **I.**     **COVERAGE: WHAT IS COVERED**
>
> > **A.**     We will pay Loss amounts that the insured is legally obligated to pay on account of a Claim because of an Insured Event to which this policy applies. . . .
> >
> > **B.**     This policy applies only if:
> >
> > > **1.**     A Claim is first made against the insured in accordance with Section **III. WHEN COVERAGE IS PROVIDED**;
> > >
> > > **2.**     The Claim is first reported in accordance with Section **III. WHEN COVERAGE IS PROVIDED** section and the **CONDITIONS** section **X. A. Duties in the Event of a Claim**; and
> >
> > * * * * *
> >
> > **C.**     **Defense.** We have the right and duty to defend any Claim made or brought against any Insured to which this policy applies....
> >
> > * * * * *

2

**E.** **Duty to pay.** We have the duty to pay any Loss that results from any Claim made or brought against any insured to which this policy applies.... We have the duty to pay Defense Costs incurred for the defense of any Claim which is controlled by us.

\* \* \* \* \*

**EXCLUSIONS: WHAT IS NOT COVERED**

\* \* \* \* \*

**C.** **Employee Retirement Income Security Act and Other Laws.** This policy does not cover any Loss imposed on the insured under:

\* \* \* \* \*

**2.** The Fair Labor Standards Act (except the Equal Pay Act);

\* \* \* \* \*

**7.** Rules or regulations promulgated under any of such statutes or laws, amendments thereto or similar provisions of any federal, state or local statutory law or common law;

\* \* \* \* \*

**J.** **Gain or Profit.** This policy does not cover any Loss based upon, arising out of, or attributable to an insured gaining in fact any profit, remuneration or financial advantage to which such insured was not legally entitled.

\* \* \* \* \*

**III.** **WHEN COVERAGE IS PROVIDED**

**A.** This policy applies only to Claims arising out of an Insured Event that are first made or brought during the Policy Period and reported during the Policy Period or, if applicable, during the Limited or the Extended Reporting Period. A Claim is considered to be first made on the date a Management or Supervising Employee is served or first receives notice of a Claim. The date of Claim arising from a fact, situation or circumstance reported in accordance with the Notice of Potential Claim Condition will be the date notice is given under the policy.

**B.** **Limited Reporting Period** means the thirty (30) day period after the policy ends, during which Claims first made or brought during the Policy Period can be reported.

\* \* \* \* \*

**XI.** **DEFINITIONS**

**A.** **Claim(s)** means:

**1.** A written demand for monetary damages;

**2.** A civil proceeding commenced by the service of a complaint or similar pleading . . . . against any insured,          . . .

\* \* \* \* \*

3

United States District Court
For the Northern District of California

    **B.**      **Defense Costs** mean those reasonable and necessary expenses that result from the investigation, settlement or defense of a specific Claim including attorney fees and expenses, . . .

* * * * *

    **F.**      **First Party Insured Event** means actual or alleged acts of Employment-related Discrimination, Employment-related Harassment, or Inappropriate Employment Conduct by an insured against an Employee, former Employee or applicant for employment with an insured entity.

    **G.**      **Inappropriate Employment Conduct** means any actual or alleged:

* * * * *

        **3.**     **Employment-related misrepresentation to, . . . an Employee, . . . .**

* * * * *

        **6.**     Employment related libel, slander, defamation of character or **any invasion of right of privacy of an Employee**, . . . .

    **H.**      **Insured Event** includes a First Party Insured Event . . .

* * * * *

    **I.**      **Loss**

        **1.**     Loss means the amount the insureds become legally obligated to pay on account of each Claim . . . made against them for . . . Inappropriate Employment Conduct for which coverage applies, including, but not limited to, damages . . . settlements and Defense Costs.

(Emphasis added.)  <u>See</u> "Policy," Docket Item No. 10-1.

**B.**    <u>**The Tarzi Action**</u>

       On May 9, 2007, Mariam Tarzi ("Tarzi"), a long-time Gauntlett employee, wrote a letter to David Gauntlett, demanding unpaid overtime wages, plus interest, for hours which she claimed to have worked as a non-exempt employee.  Tarzi's letter stated:

    As you know, during my Nine (9) years of employment with the Firm, there have been numerous instances when I had to work more than eight (8) hours in one day or more than forty (40) hours in a week.  The time records in the Firm's computer system confirm this fact.  However, I have never been paid any overtime.

    Although I have been classified as an exempt employee throughout my employment, I have since learned that I am not an exempt employee based on a number of factors, including but not limited to, the nature of my job duties and functions.  In view thereof, I am entitled to and hereby request immediate payment for all of my unpaid overtime wages.  As evidenced by the attached chart, I am owed unpaid overtime wages, plus interest.  Please confirm your intent to honor your obligation regarding my overtime pay by this Friday, May 10, 2007, 9:30 a.m.

4

1   See Docket Item No. 16-2.

2       Gauntlett responded to Tarzi's letter on May 25, 2007, addressing her "claim for unpaid

3   overtime wages," and denying that she was an exempt employee.  On June 25, 2007, Gauntlett

4   notified Illinois Union of the Tarzi claim arising from her May 9, 2007 letter and submitted 1) a

5   copy of a Supplemental Claim Information form summarizing Tarzi's claim for unpaid overtime

6   wages, 2) the letter from Gauntlett to Tarzi dated May 25, 2007, and 3) correspondence from the

7   Employment Development Department regarding Tarzi's unemployment claim.  See Docket Item

8   No. 16-1.

9       On August 16, 2007, Tarzi filed suit against David Gauntlett and Gauntlett & Associates, in

10  an action entitled Tarzi v. Gauntlett & Associates, et al., Consolidated Superior Courts of California,

11  County of Orange, Central District, Case No. 07-CC-08999 (the "Tarzi" action").  The complaint in

12  the Tarzi action raised the following allegations:

13
        5.      Plaintiff became employed by defendant as a file clerk in June of 1998.
14              From the onset of her employment, defendant classified her as an "exempt"
                employee, earning a monthly salary of $3,200. . . .
15
        6.      In late 2000, in addition to her duties as defendant's file clerk, plaintiff was
16              given additional job duties in that she began acting as defendant Gauntlett's
                personal assistant. . . . But for her file clerk duties, defendant Gauntlett
17              assigned plaintiff her daily and weekly list of projects to be completed. . . .
                On many occasions, defendant Gauntlett required that plaintiff work late
18              hours, on holiday and weekends to complete her assigned work.

19      7.      In addition to the tasks set forth above, as part of her "exempt" duties,
                defendant Gauntlett assigned plaintiff to: . . . [various duties assisting
20              Gauntlett in personal matters.]

21      8.      As a result of the numerous and diverse tasks Plaintiff was required to
                perform by defendant Gauntlett, Plaintiff did not take rest periods, often did
22              not take a lunch, or would eat at her desk. When Plaintiff did leave the
                office on a "lunch break," she often spent the entirety of her breaks running
23              personal errands for defendant Gauntlett. Plaintiff worked overtime on a
                daily basis to meet defendant Gauntlett's demanding needs and deadlines.
24
                                    * * * * *
25      10.     On May 10, 2007, plaintiff provided defendant Gauntlett a letter regarding
                what she reasonably believed to be his choice to misclassify her as an
26              "exempt" employee. She requested payment for her unpaid overtime hours.
                When plaintiff returned to work, she learned that all of her stored email
27              communications, over 3000, had been deleted from her work computer.
                Plaintiff immediately brought this to the attention of defendant's
28              Technology Manager who stated that he knew nothing about the missing

CASE NO. 5:CV 11-00455-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
For the Northern District of California

documents. He looked at plaintiff's computer and did, however, confirm that someone had changed her settings and deleted of her stored e-mails. Plaintiff then advised defendant Gauntlett that someone had logged into her computer, manipulated the settings and deleted several thousand e-mails. Defendant Gauntlett had no response.

11.   On May 14, 2007, after no written or verbal response to her demand for overtime compensation, Plaintiff gave her resignation. On May 17, 2007, defendant Gauntlett responded to plaintiff's resignation letter, by stating: "Preliminary, I would like to state that the firm absolutely disputes your claims for overtime wages." On May 25, 2007, he sent a follow up letter stating that Plaintiff was not entitled to overtime wages.

12.   Plaintiff estimates that the total number of straight overtime hours worked between August 15, 2003 and May 14, 2007 to be in excess of 1131 hours. During this same time period, plaintiff estimates that the number of hours worked over 12 in a given work day and/or on legal holidays to be in excess of 117. Within this time period, plaintiff also estimates that the total number of days wherein plaintiff was either forced to perform work related tasks or personal ventures for defendant Gauntlett during her designated meal periods or simply could not take a lunch at all was in excess of 567. Finally, plaintiff estimates that the total number of missed rest breaks was in excess of 1512. To date, and despite her demands, plaintiff has not received any reimbursement for overtime hours, meal breaks or mileage reimbursement.

See Docket Item No. 10-2.

Based on the above alleged facts, Tarzi stated the following causes of action:

1.   Failure to pay overtime wages (Labor Code §§ 1194, 1199);

2.   Failure to pay wages of terminated or resigned employees (Labor Code §§ 201-203, 1199);

3.   Failure to provide Rest Breaks and Meal Periods (Labor Code §§ 226.7 and 512);

4.   Failure to comply with Itemized Employee Wage Statement Provisions (Labor Code § 226(B)); and

5.   Violations of the Unfair Competition law (Business and Professions Code §§ 17200-17208).

Docket Item No. 10-2.

Gauntlett provided notice of the Tarzi lawsuit to Illinois Union on or about September 4, 2007, after it had been served with the summons and complaint.  See Declaration of David A. Gauntlett in Support of Plaintiff's Motion for Partial Summary Judgment re: Illinois Union's Duty to Defend ("Gauntlett Decl."), ¶¶ 6-7.  Gauntlett requested that Illinois Union defend Gauntlett in the Tarzi action and provided Illinois Union with a copy of Tarzi's complaint.  Id.  No additional

6

United States District Court
For the Northern District of California

1   information or documents were provided to Illinois Union by Gauntlett in connection with the <u>Tarzi</u>

2   action or Tarzi claim.  <u>See</u> Declaration of Laura Zaroski in Support of Defendant Illinois Union

3   Insurance Company's Opposition to Plaintiff's Motion for Partial Summary Judgment ("Zaroski

4   Decl."), ¶ 7.

5          By letter dated September 27, 2007, Illinois Union declined coverage, claiming that the

6   allegations in the <u>Tarzi</u> action could not fall within the Policy's definition of covered "Loss" or were

7   otherwise excluded by the Gain or Profit, the Compensation Earned or Due, and the Employment

8   Contracts Exclusions.  Gauntlett Decl., ¶¶ 6-7.  Gauntlett paid for its own defense in the <u>Tarzi</u>

9   action, and the matter was resolved through settlement.

10          Plaintiff Gauntlett filed the instant declaratory judgment action in January 2011, seeking to

11   establish that Defendant Illinois Union had a duty to defend Gauntlett in the underlying <u>Tarzi</u> action.

12   <u>See</u> Complaint for Declaratory Judgment ("Complaint"), Docket Item No. 1.  Plaintiff then filed a

13   Motion for Partial Summary Judgment re: Illinois Union's Duty to Defend ("Motion"), Docket Item

14   No. 9, and the Declaration of David A. Gauntlett in support of its Motion.  Defendant filed its

15   Opposition to Plaintiff's Motion ("Opposition" or "Opp'n"), Docket Item No. 16, and submitted

16   Objections to the Gauntlett Declaration ("Objections"), <u>See</u> Docket Item No. 16-3.  Plaintiff replied

17   to the Opposition ("Reply"), Docket Item No. 17, and filed its Response to Defendant's Objections

18   ("Response to Objections"), Docket Item No. 18.

19                              **III.  LEGAL STANDARD**

20          The standard applied to a motion seeking partial summary judgment is identical to the

21   standard for a motion seeking summary judgment of the entire case.  A motion for summary

22   judgment should be granted if "there is no genuine dispute as to any material fact and the movant is

23   entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>Addisu v. Fred Meyer, Inc.</u>, 198

24   F.3d 1130, 1134 (9th Cir. 2000).  The moving party bears the initial burden of informing the Court

25   of the basis for the motion and identifying the portions of the pleadings, depositions, answers to

26   interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material

27   fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

28          If the moving party meets this initial burden, the burden shifts to the non-moving party to go

1    beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."

2    Fed. R. Civ. P. 56(e); <u>Celotex</u>, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving

3    party presents evidence from which a reasonable jury, viewing the evidence in the light most

4    favorable to that party, could resolve the material issue in his or her favor.  <u>Anderson v. Liberty</u>

5    <u>Lobby, Inc.</u>, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202; <u>Barlow v. Ground</u>, 943 F.2d

6    1132, 1134-36 (9th Cir. 1991).  Conversely, summary judgment must be granted where a party "fails

7    to make a showing sufficient to establish the existence of an element essential to that party's case, on

8    which that party will bear the burden of proof at trial."  <u>Celotex</u>, 477 U.S. at 322.

9    <b>IV. DISCUSSION</b>

10    A.    <u>Defendant's Objections to the Declaration of David A. Gauntlett</u>

11         Defendant objects to paragraphs nine, eleven, and twelve of the Gauntlett Declaration on the

12    grounds that those sections contain inadmissible legal argument and conclusions.  Objections at 1.

13    In response to these objections, Plaintiff argues that Mr. Gauntlett's personal knowledge is a proper

14    foundation for his testimony, and any conclusions he offers are "logical conclusion[s] that can be

15    drawn by any insured in Mr. Gauntlett's position as a defendant. . . ."  Response to Objections at 1-

16    2.

17         Rule 56(c)(4) of the Federal Rules of Civil Procedure places three straightforward

18    requirements upon declarations that are filed in support of a motion for summary judgment.  To

19    meet these requirements, a declaration must: 1) be based upon personal knowledge, 2) set forth

20    admissible facts, and 3) show that the declarant is competent to testify on the matters stated.

21         The testimony at issue, in paragraphs nine, eleven and twelve, characterizes the claims of the

22    <u>Tarzi</u> action and opines as to Defendant's obligations under the Policy.  These statements are not

23    facts; they are legal arguments and conclusions which fail the admissibility requirement of Rule

24    56(c)(4).  Therefore, to the extent that Mr. Gauntlett makes legal arguments and conclusions, the

25    Court will disregard his declaration.

26    B.    <u>Motion for Partial Summary Judgment</u>

27         Plaintiff's principal argument is that the underlying <u>Tarzi</u> action triggered Defendant's duty

28    to defend.  To determine whether a defense duty was owed, the court applies well-established law to

**United States District Court** (left margin, vertical)<br>For the Northern District of California

8

1   the terms of the Policy, in light of the Policy exclusions.

2         In California,[2] insurance contracts are to be interpreted in the same manner as any other

3   contract, with the fundamental goal of giving effect to the mutual intention of the parties.  Bank of

4   the West v. Superior Court, 2 Cal. 4th 1254, 1264 (1992).  To that end, "words in an insurance

5   policy are to be read in their plain and ordinary sense. [Citation.] Ambiguity cannot be based on a

6   strained instead of reasonable interpretation of a policy's terms . . . ."[3]  McKee v. State Farm Fire &

7   Cas. Co., 145 Cal. App. 3d 772, 776 (1983) (citation omitted); see also Am. Intern. Underwriters

8   Ins. Co. v. Am. Guarantee and Liability Ins. Co., 181 Cal. App. 4th 616 (2010).

9         The language of an insurance policy determines whether alleged conduct falls within

10   coverage.  It is the insured's initial burden to show that a claim potentially falls within the scope of

11   the insurer's coverages.  Montrose Chemical Corp. v. Superior Court, 6 Cal. 4th 287, 300 (1993);

12   Royal Globe Ins. Co. v. Whitaker, 181 Cal. App. 3d 532, 537 (1986); Collin v. Am. Empire Ins. Co.,

13   21 Cal. App. 4th 787, 803 (1994).  Whether coverage exists does not depend on the labels given to

14   the causes of action in the third party complaint; instead it rests on whether the *alleged facts or*

15   *known extrinsic facts* reveal a *possibility* that the claim may be covered by the policy."  Atlantic

16   Mut. Ins. Co. v. J. Lamb, Inc., 100 Cal. App. 4th 1017, 1034 (2002) (citing Hurley Constr. Co. v.

17   State Farm Fire & Cas. Co., 10 Cal. App. 4th 533, 538 (1992).

18         An insured may not trigger the duty to defend by speculating about claims that have not been

19   alleged or asserted.  Golden Eagle Ins. Corp. v. Cen-Fed Ltd., 148 Cal. App. 4th 976, 988 (2007);

20   Friedman Prof. Mgmt. Co., Inc. v. Norcel Mut. Ins. Co.,120 Cal. App. 4th 17, 35 (2004) (the

21

22         [2]    California law governs this dispute.  The Policy in this case contained no choice of law
     provision. Docket Item No. 10-2.  In the absence of contractual language to the contrary, federal
23   courts sitting in diversity apply the substantive law of the forum state.  Id. at 980-81.  The location
     of of the Tarzi case (California), the location of the insured (California), California choice of law
24   rules, the Policy's place of execution and issuance (California), and the fact that Defendant regularly
     does business in California all compel the application of California law.

25         [3]    Under most circumstances, when interpreting policy provisions, undefined terms should
     be interpreted as laymen would read them, not as they might be analyzed by an attorney or insurance
26   expert.  Lebas Fashion Imports of USA Inc. v. ITT Hartford Ins. Group, 50 Cal. App. 4th 548, 559
     (1996). Dictionary definitions may be useful, but a court must not "make a fortress out of the
27   dictionary," by disregarding the policy's context.  MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635,
     649 (2003).  Rather, a court must "put itself in the position of a layperson and understand how he or
28   she might reasonably interpret the exclusionary language."  Id.

CASE NO. 5:CV 11-00455-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  potentiality rule for duty to defend depends on "possibility of actual indemnity coverage, not the

2  mere existence of a plausible argument"); Gunderson v. Fire Ins. Exch., 37 Cal. App. 4th 1106, 1114

3  (1995); Hurley Constr., 10 Cal. App. 4th at 538.  Courts "look to the nature and kind of risk covered

4  by the policy as a limitation upon the duty to defend . . . ." Gray v. Zurich Insurance Co., 65 Cal.2d

5  263, 275 (1966).  Any doubt as to whether the insurer must defend should be resolved in the

6  insured's favor.  United Pacific Ins. Co. v. McGuire Co., 229 Cal. App. 3d 1560, 1567 (1991).  If

7  there is no potential for covered damages as a matter of law, there cannot be any potential for

8  indemnification, nor can there be a duty to defend.  See, e.g., Royal Globe Ins. Co., 181 Cal. App. 3d

9  at 536-537; Golden Eagle Ins. Corp., 148 Cal. App. 4th at 985; Scottsdale Ins. Co. v. MV Transp.,

10  36 Cal. 4th 643, 655 (2005).

11  **1.    Policy Exclusions**

12      The Policy excludes certain claims from coverage, including those seeking "[a]mounts owed

13  under federal, state or local wage and hour laws" and resulting penalties.  Such "wage and hour"

14  claims are also omitted from the definition of an "Insured Event."  Additionally, the Policy bars

15  coverage for any claims under the Fair Labor Standards Act ("FLSA"), or similar provisions under

16  the California Labor Code or Business and Professions Code.  See Policy; c.f. TriTech Software Sys.

17  v. U.S. Specialty Ins. Co., 2010 U.S. Dist. LEXIS 132245, at *15-16 (C.D. Cal. Dec. 13, 2010)

18  (explaining the purpose of an FLSA exclusion and the extent to which it covers similar state claims).

19      Plaintiff and Defendant agree that the Policy's "FLSA Exclusion" and its narrow definition

20  of "Loss" exclude coverage for all of Tarzi's statutory wage and hour and derivative claims.[4]  See

21  Opp'n at 13.  Although such "wage and hour" claims are excluded from coverage, Tarzi could still

22  maintain a claim for misrepresentation and/or invasion of privacy claims against Plaintiff.  Even if

23  an exclusion applies to a cause of action that is expressly pled, the defense duty may still arise for

24  _____

25      [4] The court is unpersuaded by Defendant's argument that the exclusion for gain or profit precludes separate claims for misrepresentation or invasion of privacy.  See Opp'n at 15.  An insurer
26  relying on an exclusion must prove, through conclusive evidence, that the exclusion applies in all possible worlds."  Atlantic Mutual Ins. Co. v. J. Lamb, Inc., 100 Cal. App. 4th 1017, 1039-40
27  (2002).  There is no evidence that the alleged misrepresentation "necessarily result[ed] in gain" to Plaintiff.  Moreover, the Tarzi action was settled, and thus did not "prove" or "adjudicate" that
28  Plaintiff gained any profit or advantage from the misclassification or alleged misrepresentation. Accordingly, Defendant has not met its burden to support application of the gain or profit exclusion.

CASE NO. 5:CV 11-00455-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    other claims that fall outside the excluded categories.  <u>National Union Fire Ins. Co. of Pittsburgh,</u>

2    <u>PA v. Seagate Technology, Inc.</u>, 233 Fed. Appx. 614, 616 (9th Cir. 2007); <u>Perkins v. Maryland Cas.</u>

3    <u>Co.</u>, 388 Fed. Appx. 641, 643 (9th Cir. 2010).  In other words, claims by Tarzi for misrepresentation

4    and/or invasion of privacy against Plaintiff could proceed and succeed even if, as Plaintiff maintains,

5    Tarzi were not entitled to unpaid wages.  <u>See, e.g.</u>, <u>id</u>.  Therefore, the court considers whether claims

6    of misrepresentation or invasion of privacy were potentially alleged in the <u>Tarzi</u> action, triggering

7    the duty to defend.

8         **2.      Misrepresentation Claim**

9         Plaintiff contends that the claims alleged in the <u>Tarzi</u> action gave rise to coverage under the

10   Policy as an "employment-related misrepresentation."  Plaintiff seeks a broad construction of the

11   Policy language to encompass what it claims are Tarzi's allegations of misrepresentation.

12   Defendant responds that Plaintiff is simply trying to create coverage where there is none.

13        In pertinent part, the Policy provided coverage for a "Loss" due to an alleged

14   "Employment-related misrepresentation to . . . an Employee . . . ."  The Policy does not define

15   "Employment-related misrepresentation."  According to Plaintiff, this undefined term must

16   reasonably include the tort of negligent misrepresentation, so long as it is "employment-related" and

17   directed to an employee.  Reply at 7.  Thus, to trigger the defense duty, the underlying <u>Tarzi</u> action

18   must allege facts that potentially cause Plaintiff to face liability for negligent misrepresentation.[5]

19        There are no allegations in the <u>Tarzi</u> action that create a potential claim for negligent

20   misrepresentation.  The underlying complaint is limited to allegations for failure to pay wages and

21   related benefits, and seeks only damages limited to "amounts owed under wage and hour laws."  The

22   <u>Tarzi</u> action did not allege any affirmative misrepresentations by Gauntlett, nor is misrepresentation

23   a required element of any of the <u>Tarzi</u> causes of action, all of which related to wage and hour

24   _____

25        [5]   In California the tort of negligent misrepresentation consists of: (1) a misrepresentation
     of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with
26   intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and
     justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5)
27   damages.  <u>Fox v. Pollack</u>, 181 Cal. App. 3d 954, 962 (1986) (citation omitted).

28

CASE NO. 5:CV 11-00455-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    conditions of employment.  To view these allegations as "employment-related misrepresentations" is

2    a strained interpretation of the Policy language in light of the facts presented.  See Cal. Diaries, Inc.

3    v. RSUI Indem. Co., 617 F. Supp. 2d 1023, 1050 (E.D. Cal. 2009).  For these reasons, the Tarzi

4    action could not conceivably impose liability against Plaintiff for an "employment-related

5    misrepresentation."

6            **3.     Invasion of Privacy Claim**

7            Plaintiff and Defendant dispute whether the underlying complaint raised allegations that

8    potentially support a claim for invasion of privacy.  Plaintiff bases its argument on Tarzi's allegation

9    that 3,000 e-mails were deleted from her work computer.  Defendant denies that this allegation,

10   without more, triggered the duty to defend Gauntlett from liability for invasion of privacy.

11          California courts have recognized that insurance coverage for "offense" based claims,

12   including invasion of privacy, typically relate to one or more types of common law torts.  See ACS

13   Systems, Inc. v. St. Paul Fire & Marine Ins. Co., 147 Cal. App. 4th 137, 147 (2007); Fibreboard

14   Corp. v. Hartford Acc. & Indem. Co., 16 Cal. App. 4th 492, 511 (1993).  Pursuant to the doctrine of

15   *ejusdem generis*, this conclusion is reinforced by the location of the term "invasion of right of

16   privacy" next to other torts, such as libel and slander.  See Policy.

17          California courts also recognize that coverage for "offense" based claims is not triggered

18   simply because a third party complaint mentions an element of a covered claim; there is no duty to

19   defend when the facts known to the insurer, viewed as a whole, establish that no such claim is

20   potentially asserted.  See, e.g., Microtec Research, Inc. v. Nationwide Mutual Ins. Co., 40 F.3d 968

21   (9th Cir. 1994) (rejecting the insured's argument that the "false statement" element of trade libel

22   claim could be implied); Total Call Int. Inc. v. Peerless Ins. Co., 181 Cal. App. 4th 161 (2010) (all of

23   the elements of a defamation tort must be alleged to trigger coverage); Nichols v. Great Am. Ins.

24   Co., 169 Cal. App. 3d. 766, 775 (1985) (all of the elements of a trade libel tort must be alleged to

25   trigger disparagement coverage).[6]

26   ─────────────────────

27          [6]   Plaintiff misplaces its reliance on Michael Taylor Designs, Inc. v. Travelers Prop. Cas.
     Co. of Am., 761 F. Supp. 2d 904, 911 (N.D. Cal. 2011), in which the complaint alleged an injury of
28   damage to reputation.  From that language, the court implied a disparagement claim.  Here, in
     contrast, Tarzi did not allege any injury from the e-mail incident.

CASE NO. 5:CV 11-00455-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Under California law, a privacy violation based upon "intrusion" consists of two elements:

> First, the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy. Second, the intrusion must occur in a manner highly offensive to a reasonable person. [Citation Omitted.] These limitations on the right to privacy are not insignificant. [Citation Omitted.] Nonetheless, the cause of action recognizes a measure of personal control over the individual's autonomy, dignity, and serenity. [Citation Omitted.] The gravamen is the mental anguish sustained when both conditions of liability exist. [Citation Omitted].

Hernandez v. Hillsides, Inc., 47 Cal. 4th 272, 286 (2009) (holding that employer's surveillance system did not violate the plaintiff employee's right to privacy); see also Shulman v. Group W. Productions, Inc., 18 Cal. 4th 200, 231 (1998); Taus v. Loftus, 40 Cal. 4th 683, 725 (2007).

With the above "invasion of privacy" standard in mind, it is notable that the Tarzi complaint alleges none of the essential elements: that her e-mail communications had been searched, that these communications were personal, or that she had a reasonable expectation of privacy in the contents of any of the deleted e-mail communications stored in her work computer. Tarzi also did not allege that she was offended by the event or suffered mental anguish or any other damage as a result. Again, the only damage alleged is in the form of lost wages and penalties caused by Labor Code violations.

Plaintiff's position that Tarzi intended to state a claim for invasion of privacy is further undermined by case law. Courts generally refuse to find a reasonable expectation of privacy in an employee's use of an employer's computers. See, e.g., Holmes v. Petrovich Development Co., LLC, 191 Cal. App. 4th 1047, 1069 (2011) (concluding that an employee had no reasonable expectation of privacy in her personal e-mail messages sent to her attorney using her employer's computer and consequently could not prevail on an invasion of privacy claim); TBG Ins. Services Corp. v. Superior Court, 96 Cal. App. 4th 443, 452 (2002) (". . . use of computers in the employment context carries with it social norms that effectively diminish the employee's reasonable expectation of privacy with regard to his use of his employer's computers."); Bohach v. City of Reno, 932 F. Supp. 1232, 1236 (D. NV 1996) (Employers providing computers and electronic communication service to their employees can "do as they wish when it comes to accessing communications in electronic storage."). Courts have also found the element of "offensive conduct" lacking in the employment

CASE NO. 5:CV 11-00455-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    setting.  For instance, the court in <u>Hilderman v. Enea Teksci, Inc.</u>, 551 F. Supp. 2d 1183 (S.D. Cal.

2    2008) granted summary judgment against an employee's cause of action for invasion of privacy

3    arising from an employer accessing his e-mail account on his work computer.  The intrusion in that

4    case was "not highly offensive" because, in part, there was no evidence that the employer used the

5    laptop to access the employee's personal e-mail account or otherwise pry into the employee's

6    personal affairs.  <u>Id.</u> at 1204.

7          Similarly here, Tarzi could not expect privacy in her work computer nor do the facts alleged

8    support a claim that the conduct was highly offensive.  Plaintiff's Motion cites to various case

9    authorities, many from outside California, for the proposition that e-mails are accorded legal

10   protection against invasion of privacy.  However, none of those cases considered issues involving an

11   employer's intrusion into an employee's e-mail account at work.[7]  In comparison, Tarzi did not

12   allege that Plaintiff viewed her private emails.[8]  The underlying complaint only alleges that Tarzi's

13   stored email communications had been deleted from her work computer.  The facts of this case are

14   distinguishable from cases in which a defendant hacks into someone's home computer or personal e-

15   mail account for purposes of discovering personal information.

16         A privacy violation of "intrusion upon seclusion" requires a reasonable expectation of

17   privacy and highly offensive conduct.  Neither of these essential elements is alleged in the <u>Tarzi</u>

18

19

20

---

21         [7]   <u>See</u> <u>City of Ontario v. Quan</u>, 130 S.Ct. 2619, 2631 (2010) (noting that the company's

22   audit of employee's messages on the employer-provided page was not nearly as intrusive as a search
     of his personal e-mail account or page, or a wiretap on his home phone line, would have been");

23   <u>United States v. Forrester</u>, 512 F.3d 500, 511 (9th Cir. 2008) (a non-employment case involving the
     government's surveillance of an individual's internet and e-mail activity); <u>O'Connor v. Ortega</u>, 480

24   U.S. 709, 718 (1987) (concerning a search of an employee's desk and file cabinet; not computer);
     <u>Haynes v. Office of the AG</u>, 298 F. Supp. 2d 1154, 1161-1162 (D. Kan. 2003) (alleged intrusion was

25   the viewing of an employee's "private information contained on his work computer").

26         [8]   Plaintiff argues that the exact nature of the 3,000 e-mails is unclear; the allegation does

27   not specify whether they were personal e-mails or a mix of personal and business e-mails.  Motion at
     12.  At the very least, Plaintiff contends, this is a factual issue to be determined at trial and, as a

28   result, it raises the potential for coverage.  Motion at 13; Reply at 6-7.  The court disagrees and finds
     that the facts known to the insurer, viewed as a whole, raise no threat of *potential* liability for a
     claim of invasion of privacy.

CASE NO. 5:CV 11-00455-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

complaint, nor are facts potentially supporting those elements pled.[9]  Moreover, Tarzi seeks only

damages for wage and hour violations, instead of emotional distress or other consequential damages

that might be expected to flow from a claim for invasion of privacy.  Considering all of the

circumstances, the court concludes that the <u>Tarzi</u> complaint did not allege facts that support a

potential claim of invasion of privacy.

## V.  CONCLUSION

Neither party argues that triable issues of material fact remain regarding Defendant's duty of

defense in the <u>Tarzi</u> action.  Rather, the parties dispute the application of law to those facts.  The

court agrees with Defendant's reasoning and concludes that summary judgment cannot be granted in

Plaintiff's favor.  Applying the law to the facts of this case, the court finds that the <u>Tarzi</u> action is

based solely on "wage and hour" claims; Plaintiff faced no potential liability to Tarzi for claims of

misrepresentation or invasion of privacy.  Since the Policy terms clearly preclude wage and hour

claims from coverage, Defendant owed Plaintiff no obligation to defend the <u>Tarzi</u> action.

Accordingly, Plaintiff's Motion for Partial Summary Judgment is DENIED.

In its Opposition, Defendant briefly "urges the Court to grant summary judgment in its

favor."  Opp'n at 23.  While the court finds no remaining issue of triable fact, it grants only the

properly noticed motion before it.  Because Defendant's request was not properly noticed or argued,

it will be disregarded by the court.

Plaintiff and Defendant are referred to the court's ADR Program at (415) 522-2199.  The

parties shall contact the ADR program no later than **December 9, 2011**.

///

///

---

[9]    The court does not consider the merits of Tarzi's allegations; only whether those allegations are sufficient to state *potential* claims for any form of invasion of privacy.

CASE NO. 5:CV 11-00455-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court

For the Northern District of California

1    IT IS HEREBY ORDERED that a Case Management Conference will be held in this matter

2    before the Honorable Edward J. Davila on **December 16, 2011 at 10:00 a.m.** in Courtroom No. 1,

3    5th Floor, 280 S. First Street, San Jose, California.  On or before **December 9, 2011** the parties shall

4    file a joint case management conference statement.

5    **IT IS SO ORDERED.**

6    Dated:  November 1, 2011

7                                                                         EDWARD J. DAVILA

8                                                                         United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

CASE NO. 5:CV 11-00455-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT