**LEWIS BRISBOIS BISGAARD & SMITH LLP**
LANE J. ASHLEY, (SBN 073296)
E-Mail: ashley@lbbslaw.com
RAQUEL VIDAL (SBN 199597)
E-Mail: vidal@lbbslaw.com
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant ILLINOIS UNION INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID A. GAUNTLETT d/b/a GAUNTLETT & ASSOCIATES, a sole proprietorship,<br><br>Plaintiff,<br><br>vs.<br><br>ILLINOIS UNION INSURANCE COMPANY, an Illinois corporation,<br><br>Defendant. | CASE NO. 11-CV-00455 EJD<br><br>Hon. Edward J. Davila<br><br>**ILLINOIS UNION INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN THEREOF**<br><br>[Filed concurrently with Exhibits in Support of Motion for Summary Judgment and Proposed] Order]<br><br>DATE: February 10, 2012<br>TIME: 9:00 a.m.<br>CTRM: 1, 5TH Floor |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Notice is hereby given that on February 10, 2012 at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 1, 5th Floor of the above-entitled Court, located at 280 South First Street, San Jose, California 95113, defendant Illinois Union Insurance Company ("Illinois Union") will and hereby does move this Court for summary judgment on plaintiff David Gauntlett's ("Gauntlett") complaint.

Said Motion shall be brought on the grounds that there is no genuine dispute as to the facts that establish as a matter of law that Illinois Union did not have a duty to defend Gauntlett in an underlying lawsuit.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the cited portions of the Declaration of David Gauntlett and the Declaration of Laura Zaroski attached to the Exhibits in Support of Motion for Summary Judgment, the Court's Order Denying Plaintiff's Motion for Partial Summary Judgment, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

DATED: January 3, 2012

LANE J. ASHLEY
RAQUEL VIDAL
LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/
Raquel Vidal
Attorneys for Defendant ILLINOIS UNION INSURANCE COMPANY

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 2

II. THE UNDISPUTED MATERIAL FACTS ..... 2

A. The Illinois Union Policy ..... 2

B. The Tarzi Claim ..... 6

C. Declination Of Coverage And This Action ..... 11

III. ILLINOIS UNION'S MOTION SHOULD BE GRANTED BASED ON UNDISPUTED FACTS AS A MATTER OF LAW ..... 11

IV. ILLINOIS UNION WAS NOT OBLIGATED TO DEFEND THE TARZI CLAIM ..... 12

A. Based On Well Established Rules Of Policy Construction, The Court Should Determine That Illinois Union Owed No Duty To Defend The Tarzi Claim ..... 12

1. Accepted Rules of Policy Interpretation ..... 12

2. Rules Regarding Duty to Defend ..... 13

B. The Tarzi Claim Does Not Involve a Potentially Covered Claim ..... 14

1. The Policy Does Not Cover Wage and Hour Claims ..... 14

2. Illinois Union's Coverage for Invasion of Privacy is Not Potentially Triggered ..... 16

3. Gauntlett's Imagined "Misrepresentation" Claim Does Not Trigger Potential Coverage ..... 20

4. There is No Covered "Loss" ..... 21

V. CONCLUSION ..... 23

# TABLE OF AUTHORITIES

**Federal Cases** **Page**

*Addisu v. Fred Meyer, Inc.*,
198 F.3d 1130 (9th Cir. 2000) ..... 11

*Bohach v. City of Reno*,
932 F. Supp. 1232 (D. NV 1996) ..... 18

*California Dairies, Inc. v. RSUI Indem. Co.*,
617 F. Supp. 2d 1023 (E.D. Cal. 2009) ..... 20

*Hilderman v. Enea Teksci, Inc.*,
551 F. Supp. 2d 1183 (S.D. Cal. 2008) ..... 19

*Microtec Research, Inc. v. Nationwide Mutual Ins. Co.*,
40 F.3d 968 (9th Cir. 1994) ..... 17

*Sony Computer Entertainment America, Inc. v. American Home Assurance Co.*,
532 F.3d 1007 (2007) ..... 21

*TriTech Software Systems v. U.S. Specialty Ins. Co.*,
2010 U.S. Dist. LEXIS 132245 (C.D. Cal. Dec. 13, 2010) ..... 15, 16

**State Cases** **Page**

*ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.*,
147 Cal. App. 4th 137 (2007) ..... 16

*American Motorists Ins. Co. v. Allied-Sysco Food Services, Inc.*,
19 Cal. App. 4th 1342 (1993) ..... 14

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*,
100 Cal. App. 4th 1017, 1036 (2002) ..... 13

*Bank of the West v. Superior Court*,
2 Cal. 4th 1254 (1992) ..... 12, 21

*Collin v. American Empire Ins. Co.*,
21 Cal. App. 4th 787 (1994) ..... 13

*Continental Casualty Co. v. Phoenix Construction Co.*,
46 Cal. 2d 423 (1956) ..... 12

*Cooper Companies v. Transcontinental Ins. Co.*,
31 Cal. App. 4th 1094 (1995) ..... 12

*Feurzeig v. Insurance Co. of the West*,
59 Cal. App. 4th 1276 (1997) ..... 12

*Fibreboard Corp. v. Hartford Accident & Indem. Co.*,
16 Cal. App. 4th 492 (1993) ..... 16, 17

# TABLE OF AUTHORITIES

**State Cases** **Page**

*Fox v. Pollack,*
181 Cal. App. 3d 954 (1986).......... 21

*Frank and Freedus v. Allstate Ins. Co.,*
45 Cal. App. 4th 461 (1996) .......... 13

*Friedman Prof. Management Co., Inc. v. Norcel Mutual Ins. Co.,*
120 Cal. App. 4th 17 (2004) .......... 14

*Golden Eagle Insurance Corp. v. Cen-Fed Ltd.,*
148 Cal. App. 4th 976 (2007) .......... 13, 14

*Gray v. Zurich Insurance Co.,*
65 Cal. 2d 263 (1962) .......... 13

*Gunderson v. Fire Ins. Exchange,*
37 Cal. App. 4th 1006 (1995) .......... 14, 21, 22

*Hernandez v. Hillsides, Inc.,*
47 Cal. 4th 272 (2009) .......... 18

*Hurley Construction Co. v. State Farm Fire & Casualty Co.,*
10 Cal. App. 4th 533 (1992) .......... 14

*La Jolla Beach and Tennis Club, Inc. v. Industrial Co.,*
9 Cal. 4th 27 (1994) .......... 12

*Low v. Golden Eagle Ins. Co.,*
99 Cal. App. 4th 109 (2002) .......... 21

*McKee v. State Farm Fire & Casualty Co.,*
145 Cal. App. 3d 772 (1983).......... 12

*Mez Industries, Inc. v. Pacific National Ins. Co.,*
76 Cal. App. 4th 856 (1999) .......... 13

*Montrose Chemical Corp. v. Superior Court,*
6 Cal. 4th 287 (1993) .......... 13, 14

*Nichols v. Great American Ins. Co.,*
169 Cal. App. 3d. 766 (1985).......... 17

*Palmer v. Truck Ins. Exchange,*
21 Cal. 4th 1109 (1999) .......... 12

*Reserve Ins. Co. v. Pisciotta,*
30 Cal. 3d 800 (1982) .......... 13

*Royal Globe Ins. Co. v. Whitaker,*
181 Cal. App. 3d 532 (1986).......... 13

# TABLE OF AUTHORITIES

**State Cases** **Page**

*Scottsdale Ins. Co. v. MV Transportation,* 36 Cal. 4th 643 (2005) ........ 13, 14

*Shulman v. Group W. Productions, Inc.,* 18 Cal. 4th 200 (1998) ........ 18

*Similarly in Holmes v. Petrovich Development Co., LLC,* 191 Cal. App. 4th 1047 (2011) ........ 18

*Taus v. Loftus,* 40 Cal. 4th 683 (2007) ........ 18

*TBG Ins. Services Corp. v. Superior Court,* 96 Cal. App. 4th 443 (2002) ........ 18

*Total Call Int. Inc. v. Peerless Ins. Co.,* 181 Cal. App. 4th 161 (2010) ........ 17

*Waller v. Truck Ins. Exchange, Inc.,* 11 Cal. 4th 1 (1995) ........ 22

**Federal Rules and Regulations**

Fed. R. Civ. P. 56(a) ........ 11

COMES NOW defendant Illinois Union Insurance Company ("Illinois Union") and moves this Court for summary judgment on plaintiff David Gauntlett's ("Gauntlett") complaint.

## I. INTRODUCTION

This Court previously denied plaintiff Gauntlett's motion for partial summary judgment ruling that:

> "Applying the law to the facts of this case, the court finds that the Tarzi action is based solely on "wage and hour" claims; Plaintiff faced no potential liability to Tarzi for claims of misrepresentation or invasion of privacy. Since the Policy terms clearly preclude wage and hour claims from coverage, Defendant owed Plaintiff no obligation to defend the Tarzi action."

(*See* Order Denying Plaintiff's Motion for Partial Summary Judgment ("Order"), p. 15:10-14.) For those same reasons, Illinois Union now moves the Court for an Order of summary judgment in favor of Illinois Union against plaintiff Gauntlett's complaint.

As detailed below, Gauntlett is seeking by this lawsuit to obtain coverage for an uncovered "wage and hour" suit by improperly speculating that the case was really about invasion of privacy and misrepresentations. However, as the Court found in denying Gauntlett's prior motion, neither the allegations in the underlying pleadings nor applicable law support that argument. Therefore, this motion should be granted, dismissing Gauntlett's complaint.

## II. THE UNDISPUTED MATERIAL FACTS

### A. The Illinois Union Policy

Illinois Union issued Employment Practices Liability policy no. 1262658 to Gauntlett with an effective policy period from July 10, 2006 to July 10, 2007. (*See* Exhibit 1 to Declaration of David A. Gauntlett in Support of Plaintiff's Motion for

/ / /



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

Partial Summary Judgment Re: Illinois Union's Duty to Defend ("Gauntlett Decl." or "Gauntlett Declaration"), p. 7.)[1] The relevant policy provisions are as follows:

The policy Declarations Page states that it is an "Employment Practices Insurance Coverage Claims First Made and Reported" policy. It further provides:

> THIS IS A CLAIMS-MADE AND REPORTED POLICY - PLEASE READ IT CAREFULLY.
>
> NOTICE: THIS IS A CLAIMS-MADE AND REPORTED POLICY. EXCEPT AS OTHERWISE STATED, THE COVERAGE PROVIDED BY THIS POLICY IS LIMITED TO LIABILITY FOR EMPLOYMENT-RELATED DISCRIMINATION, EMPLOYMENT-RELATED HARASSMENT AND INAPPROPRIATE EMPLOYMENT CONDUCT FOR WHICH CLAIMS ARE FIRST MADE AGAINST THE INSURED WHILE THE POLICY IS IN FORCE AND THAT ARE REPORTED TO US DURING THE POLICY PERIOD OR ANY LIMITED OR EXTENDED PERIOD. (Gauntlett Decl., Exh. 1, ¶ 5, p. 10.)
>
> * * * * *
>
> EMPLOYMENT PRACTICES INSURANCE
>
> * * * * *
>
> This policy covers Claims alleging **Employment-related Discrimination, Employment-related Harassment** and **Inappropriate Employment Conduct** liability in accordance with the terms, conditions, limitations and exclusions set forth in this policy. . . .
>
> * * * * *
>
> I. COVERAGE: WHAT IS COVERED
>
> **A.** We will pay **Loss** amounts that the insured is legally obligated to pay on account of a **Claim** because of an **Insured Event** to which this policy applies. . . .
>
> * * * * *

---

[1] The Gauntlett Declaration is attached as Exhibit A to Illinois Union Insurance Company's Exhibits Filed in Support of Motion for Summary Judgment. Illinois Union relies only upon the non-objectionable portions of the Gauntlett Declaration cited herein. Illinois Union does not waive and specifically incorporates by reference its Objections To Declaration of David A. Guantlett in Opposition To Plaintiff's Motion for Partial Summary Judgment and the Court's ruling on Illinois Union's objections it its Order.

C. **Defense**. We have the right and duty to defend any **Claim** made or brought against any Insured to which this policy applies. . . .

* * * * *

E. **Duty to pay**. We have the duty to pay any **Loss** that results from any **Claim** made or brought against any insured to which this policy applies.... We have the duty to pay **Defense Costs** incurred for the defense of any **Claim** which is controlled by us. (Gauntlett Decl., ¶ 5, Exh. 1, pp. 10-11.)

* * * * *

**EXCLUSIONS: WHAT IS NOT COVERED**

* * * * *

C. **Employee Retirement Income Security Act and Other Laws.** This policy does not cover any **Loss** imposed on the insured under:

* * * * *

2. The Fair Labor Standards Act (except the Equal Pay Act);

* * * * *

7. Rules or regulations promulgated under any of such statutes or laws, amendments thereto or similar provisions of any federal, state or local statutory law or common law; (Gauntlett Decl., ¶ 5, Exh. 1, p. 11.)

* * * * *

**XI. DEFINITIONS**

A. **Claim(s)** means:

1. A written demand for monetary damages;

2. A civil proceeding commenced by the service of a complaint or similar pleading . . . . against any insured, . . .

* * * * *

B. **Defense Costs** mean those reasonable and necessary expenses that result from the investigation, settlement or defense of a specific **Claim** including attorney fees and expenses, . . .

* * * * *

F. **First Party Insured Event** means actual or alleged acts of Employment-related Discrimination, Employment-related Harassment, or Inappropriate Employment Conduct by an insured against an Employee, former Employee or applicant for employment with an insured entity.

G. **Inappropriate Employment Conduct** means any actual or alleged:

* * * * *

3. Employment-related misrepresentation to, ... an Employee, . . . ;

* * * * *

6. Employment related libel, slander, defamation of character or any invasion of right of privacy of an Employee, ....

H. **Insured Event** includes a **First Party Insured Event** . . .

* * * * *

I. **Loss**

1. **Loss** means the amount the insureds become legally obligated to pay on account of each **Claim** . . . made against them for Employment-related Discrimination, Employment-related Harassment, and Inappropriate Employment Conduct for which coverage applies, including, but not limited to, damages, back pay and front pay, judgments, any award of pre-judgment and post-judgment interest, settlements and **Defense Costs**.

2. **Loss** does not include:

a. . . . penalties imposed by law;

* * * * *

h. Matters which may be deemed uninsurable according to the law under which this policy is construed;

i. Amounts owed under federal, state, or local wage and hour laws; (Gauntlett Decl., ¶ 5, Exh. 1, pp. 19-21.)

* * * * *

**B. The Tarzi Claim**

On May 9, 2007, Gauntlett employee Mariam Tarzi ("Tarzi") wrote a letter to Gauntlett, demanding unpaid overtime wages, plus interest, for hours which she claimed to have worked as a non-exempt employee. Tarzi's letter stated:

> As you know, during my Nine (9) years of employment with the firm, there have been numerous instances when I had to work more than eight (8) hours in one day or more than forty (40) hours in a week. The time records in the Firm's computer system confirm this fact. However, I have never been paid any overtime.
>
> Although I have been classified as an exempt employee throughout my employment, I have since learned that I am not an exempt employee based on a number of factors, including but not limited to, the nature of my job duties and functions. In view thereof, I am entitled to and hereby request immediate payment of all of my unpaid overtime wages. As evidenced by the attached chart, I am owed unpaid overtime wages, plus interest. Please confirm your intent to honor your obligation regarding my overtime pay by this Friday, May 10, 2007, 9:30 a.m. (Declaration of Laura Zaroski in Support of Defendant Illinois Union Insurance Company's Opposition to Plaintiff's Motion for Partial Summary Judgment ("Zaroski Declaration" or Zaroski Decl.", ¶ 6, Exh B, p. 75.)[2]

By letter dated May 25, 2007, Gauntlett responded to Tarzi's claim for unpaid wages. (Zaroski Decl., ¶ 3, Exh. A, pp. 64-67.) On June 25, 2007, Gauntlett notified Illinois Union of the Tarzi claim arising from her May 9, 2007 letter and submitted (1) a copy of a Supplemental Claim Information form summarizing Tarzi's claim for unpaid overtime wages, (2) the letter from Gauntlett to Tarzi dated May 25, 2007; and (3) correspondence from the Employment Development Department regarding Tarzi's unemployment claim. (Zaroski Decl., ¶ 3, Exh. A, pp. 57-71.)

/ / /

/ / /

[2] The Zarosky Declaration is attached as Exhibit B to Illinois Union Insurance Company's Exhibits Filed in Support of Motion for Summary Judgment, p. 53.

On August 16, 2007 Tarzi filed suit against David Gauntlett and Gauntlett & Associates in the Orange County Superior Court. (Gauntlett Decl., ¶ 4, Exh. 2, pp. 29-43.) The relevant allegations are as follows:

> 5. Plaintiff became employed by defendant as a file clerk in June of 1998. From the onset of her employment, defendant classified her as an "exempt" employee, earning a monthly salary of $3,200. . . .
>
> 6. In late 2000, in addition to her duties as defendant's file clerk, plaintiff was given additional job duties in that she began acting as defendant Gauntlett's personal assistant. . . . But for her file clerk duties, defendant Gauntlett assigned plaintiff her daily and weekly list of projects to be completed. . . . On many occasions, defendant Gauntlett required that plaintiff work late hours, on holiday and weekends to complete her assigned work.
>
> 7. In addition to the tasks set forth above, as part of her "exempt" duties, defendant Gauntlett assigned plaintiff to: . . . [various duties assisting Gauntlett in personal matters.]
>
> 8. As a result of the numerous and diverse tasks Plaintiff was required to perform by defendant Gauntlett, Plaintiff did not take rest periods, often did not take a lunch, or would eat at her desk. When Plaintiff did leave the office on a "lunch break," she often spent the entirety of her breaks running personal errands for defendant Gauntlett. Plaintiff worked overtime on a daily basis to meet defendant Gauntlett's demanding needs and deadlines.
>
> * * * * *
>
> 10. On May 10, 2007, plaintiff provided defendant Gauntlett a letter regarding what she reasonably believed to be his choice of mis-classify her as an "exempt" employee. She requested payment for her unpaid overtime hours. When plaintiff returned to work, she learned that all of her stored email communications, over 3000, had been deleted from her work computer. Plaintiff immediately brought this to the attention of defendant's Technology Manager who stated that he knew nothing about the missing documents. He looked at plaintiff's computer and did, however, confirm that someone had changed her settings and deleted of her stored e-mails. Plaintiff then advised defendant Gauntlett that someone had logged into her computer, manipulated the settings and deleted several thousand e-mails. Defendant Gauntlett had no response.
>
> 11. On May 14, 2007, after no written or verbal response to her demand for overtime compensation, Plaintiff gave her resignation. On May 17, 2007, defendant Gauntlett responded to plaintiff's resignation letter, by stating: "Preliminary, I would like to state that the firm absolutely disputes your claims for overtime wages." On May 25, 2007, he sent a follow up letter stating that Plaintiff was not entitled to overtime wages.

> 12. Plaintiff estimates that the total number of straight overtime hours worked between August 15, 2003 and May 14, 2007 to be in excess of 1131 hours. During this same time period, plaintiff estimates that the number of hours worked over 12 in a given work day and/or on legal holidays to be in excess of 117. Within this time period, plaintiff also estimates that the total number of days wherein plaintiff was either forced to perform work related tasks or personal ventures for defendant Gauntlett during her designated meal periods or simply could not take a lunch at all was in excess of 567. Finally, plaintiff estimates that the total number of missed rest breaks was in excess of 1512. To date, and despite her demands, plaintiff has not received any reimbursement for overtime hours, meal breaks or mileage reimbursement.

Based on the above alleged facts, Tarzi stated the following causes of action:

1. <u>Failure to pay overtime wages (Labor Code §§ 1194, 1199)</u>. Tarzi alleged:

> 15. Plaintiff was a non-exempt employee covered under one or more Industrial Welfare Commission (hereinafter referred to as "TWC") Wage Orders, Labor Code § 510, California regulation and statute, . . .
>
> * * * * *
>
> 16. By virtue of the conduct set forth in paragraphs 5 through 12 above, defendant violated said statute in that plaintiff primarily performed non-exempt work in excess of the maximum regular rate hours set by the TWC in the above Wage Orders, regulations or statutes.
>
> 17. As a direct and proximate result of said statutory violation, Plaintiff sustained economic damages according to proof, plus pre-judgment interest thereon.
>
> 18. Plaintiff is further entitled to statutory attorney's fees and costs of suit pursuant to Lab. Code § 1194.
>
> 19. Plaintiff is further entitled to statutory penalties pursuant to Labor Code § 558.

2. <u>Failure to pay wages of terminated or resigned employees. (Labor Code §§ 201-203, 1199).</u> Tarzi alleges:

> 24. By virtue of the conduct set forth in paragraphs 5 through 12 above, defendant violated said statute in that the defendant required the plaintiff to work overtime without lawful compensation, in violation of the various above applicable Wage Orders, regulations and statutes, and the defendant willfully

failed and refused, and continues to fail and refuse to pay wages promptly when due upon termination of plaintiff's employment.

25. As a direct and proximate result of said violation, plaintiff is entitled to statutory penalties in the amount of 30 days of wages pursuant to Labor Code § 203.

26. Plaintiff is further entitled to an award of statutory attorney's fees and costs of suit pursuant to Lab. Code § 1194.

3. Failure to provide Rest Breaks and Meal Periods. (Labor Code §§ 226.7 and 512). Tarzi alleged:

29. Labor Code § 226.7 provides that "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." . . .

30. By virtue of the conduct set forth in paragraphs 5 through 12 above, defendant violated said statute in that it failed or refused to provide plaintiff with the rest period or meal breaks as statutorily required.

31. As a direct and proximate result of said violations, plaintiff is entitled to statutory penalties pursuant to Labor Code § 558 plus statutory penalties equivalent to payment for an additional hour of pay at plaintiffs' regular rate of compensation for each work day that a rest period was not provided and for each day a meal period was not provided.

4. Failure to comply with Itemized Employee Wage Statement Provisions. (Lab. Code § 226(B)). Tarzi alleged:

34. Labor Code § 226 provides that at the time wages are paid, or semimonthly, whichever occurs first, every California employer must provide a statement identifying the following: gross wages earned; total hours worked; all deductions made; hourly rate of pay; net wages earned; inclusive dates of the pay period; name and social security number of the employee; name and address of the legal entity which is the employer.

35. Defendant has knowingly and intentionally failed to comply with Labor Code section 226(a) on each and every wage statement provided to Plaintiff.

36. As a direct and proximate result of said violation, Plaintiff is entitled to statutory penalties, each in the amount of $250 for the initial violation and $1,000 for each violation occurring thereafter pursuant to Labor Code § 226.3 plus statutory penalties in the amount of $4,000 pursuant to Labor Code § 226.

> 37. Plaintiff is further entitled to an award of statutory attorney's fees and costs pursuant to Lab. Code § 226.

5. <u>Violations of the Unfair Competition law (Business and Professions Code §§ 17200-17208)</u>. Tarzi alleged:

> 42. By virtue of the conduct set forth in paragraphs 5 through 12 above, defendant engaged in policies and practices that have harmed Plaintiff, as well as the general public in that the failure to pay lawful overtime pay compensation to Plaintiff, and timely pay all overtime compensation due upon termination of plaintiff's employment to keep proper records as alleged herein, constitutes an unlawful and unfair business practice within the meaning of Business and Professions Code § 17200, et seq., including but not limited to a violation of the applicable State of California Industrial Welfare Commission Wage Orders, regulations and statutes, or is otherwise a practice which is otherwise unfair and unlawful, including that the defendant did not pay tax contributions on the accrued overtime compensation in the form of FICA, Social Security, Medicare and Unemployment Insurance.
>
> 43. This cause of action is brought as a cumulative remedy as provided in Business and Professions Code § 17205, and is intended as an alternative remedy for restitution for plaintiff for the time period, or any portion thereof, commencing within four (4) years prior to the filing of this complaint, and as the primary remedy for plaintiff for the time period of the fourth year prior to the filing of this complaint.
>
> 44. As a result of the Defendant's unlawful and unfair business practice of failing to pay overtime and prompt payment of wages in violation of California's Labor Laws, Plaintiff suffered loss of wages and is entitled to restitution in an amount according to proof.
>
> 45. Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

Based on the first four Causes of Action, Tarzi claims economic damages, statutory penalties, statutory attorney fees, prejudgment interest, costs and punitive damages. She seeks restitutionary damages, attorney fees and interest on the Fifth Cause of Action.

/ / /

/ / /

/ / /

### C. <u>Declination Of Coverage And This Action</u>

By letter dated September 27, 2007, Illinois Union declined coverage, asserting that the allegations in the *Tarzi* action could not fall within the Policy's definition of covered "Loss" or were otherwise excluded. (Gauntlett, Decl., Exh. 3, pp. 45-52.)

Plaintiff Gauntlett filed this declaratory judgment action in January 2011, seeking to establish that Defendant Illinois Union owed a duty to defend Gauntlett in the underlying *Tarzi* action. *See* Complaint for Declaratory Relief ("Complaint"). Plaintiff then filed a Motion for Partial Summary Judgment re Illinois Union's Duty to Defend. After briefing, the Court denied the motion. (Order, p. 1.)

## III. <u>ILLINOIS UNION'S MOTION SHOULD BE GRANTED BASED ON UNDISPUTED FACTS AS A MATTER OF LAW</u>

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). In this case, the material facts consist of pleadings, correspondence and the Illinois Union policy. Those facts are undisputed (at most their meaning is disputed). For the reasons stated below and in the Court's prior Order, this Court should now grant Illinois Union's motion as a matter of law.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. ILLINOIS UNION WAS NOT OBLIGATED TO DEFEND THE TARZI CLAIM

### A. Based On Well Established Rules Of Policy Construction, The Court Should Determine That Illinois Union Owed No Duty To Defend The Tarzi Claim

#### 1. Accepted Rules of Policy Interpretation

(a) Insurance contracts are to be interpreted in the same manner as any other contract. *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (1992).

(b) The courts' immediate goal is to determine the mutual manifest intent of the parties to the contract concerning coverage for the type of claim presented. *Bank of the West v. Superior Court*, *supra*, 2 Cal.4th 1254.

(c) [A]n insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the [policy] must be respected. *Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 432 (1956).

(d) Language in a policy must be construed "in the context of that instrument as a whole, and in the circumstances of that case and cannot be found to be ambiguous in the abstract." *La Jolla Beach and Tennis Club, Inc. v. Industrial Co.*, 9 Cal.4th 27, 37 (1994); *Palmer v. Truck Ins. Exch.*, 21 Cal.4th 1109, 1115 (1999). Only if this rule does not resolve the ambiguity will the ambiguity then be resolved against the insurer. *Feurzeig v. Insurance Co. of the West*, 59 Cal.App.4th 1276, 1282 (1997).

(e) "[W]ords in an insurance policy are to be read in their plain and ordinary sense. [citation omitted] Ambiguity cannot be based on a strained instead of reasonable interpretation of a policy's terms . . . [citation omitted]." *McKee v. State Farm Fire & Cas. Co.*, 145 Cal.App.3d 772, 776 (1983). "Common sense" must be employed. *Cooper Companies v. Transcontinental Ins. Co.*, 31 Cal.App.4th 1094, 1106 (1995). "Courts will not adopt a strained interpretation in order to create

/ / /

an ambiguity where none exists." *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 807 (1982).

(f) Pursuant to the doctrine of ejusdem generis, "a term is interpreted by reference to the surrounding language." *Mez Industries, Inc. v. Pacific National Ins. Co.*, 76 Cal.App.4th 856, 872-74 (1999); *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal.App.4th 1017, 1036, n. 15 (2002) [the principle of ejusdem generis provides that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated].

**2. <u>Rules Regarding Duty to Defend</u>**

(a) It is axiomatic that the duty to defend is broader than the duty to indemnify, and an insurer must defend a case which potentially seeks damages within the coverage of the policy. *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 275 (1962). However, if there is no potential for covered damages as a matter of law, there cannot be any potential for indemnification, nor can there be a duty to defend. *See e.g., Royal Globe Ins. Co. v. Whitaker*, 181 Cal.App.3d 532, 536-537 (1986); *Golden Eagle Insurance Corp. v. Cen-Fed Ltd.*, 148 Cal.App.4th 976, 985 (2007); *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal.4th 643, 655 (2005).

(b) "[T]he insurer's obligation is not unlimited; the duty to defend is measured by the nature and kind of risks covered by the policy. (citations omitted.)" *Frank and Freedus v. Allstate Ins. Co.*, 45 Cal.App.4th 461, 469 (1996).

(c) The burden is initially on the insured to show that a claim potentially falls within the scope of the insurer's coverages. *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 300 (1993); *Royal Globe Ins. Co. v. Whitaker*, *supra*, 181 Cal.App.3d 532 at 537; *Collin v. American Empire Ins. Co.*, 21 Cal.App.4th 787, 803 (1994).

(d) In judging whether the insured's burden of proof has been met, courts have held that the duty to defend cannot be based on a strained and forced

interpretation of the allegations of the tendered complaint. *American Motorists Ins. Co. v. Allied-Sysco Food Services, Inc.*, 19 Cal.App.4th 1342, 1352-1353 (1993).

(e) Extrinsic evidence may be used to show that facts exist outside of the complaint which either support the existence of coverage or establish that there is no coverage. *Montrose Chemical*, *supra*, 6 Cal.4th at 298; *Scottsdale Ins. Co. v. MV Transportation*, *supra*, 36 Cal.4th 643.

(f) A potential for coverage cannot be based on speculation about claims that have not been alleged or asserted. *Gunderson v. Fire Ins. Exchange*, 37 Cal.App.4th 1006, 1114 (1995); *Golden Eagle Insurance Corp. v. CenFed Ltd.*, *supra*, 148 Cal.App.4th at 988; *Friedman Prof. Management Co., Inc. v. Norcel Mutual Ins. Co.*, 120 Cal.App.4th 17, 35 (2004) (the potentiality rule for duty to defend depends on "possibility of actual indemnity coverage, not the mere existence of a plausible argument"); *Hurley Construction Co. v. State Farm Fire & Casualty Co.*, 10 Cal.App.4th 533, 538 (1992) (insured's counsel sought to justify coverage by arguing that the third party complaint might be amended to allege property damage).

**B. <u>The Tarzi Claim Does Not Involve a Potentially Covered Claim</u>**

**1. <u>The Policy Does Not Cover Wage and Hour Claims</u>**

Although Gauntlett has attempted in this suit to re-characterize the *Tarzi* complaint, that pleading can only be reasonably read in one way: it is a garden variety "wage and hour" claim which the Illinois Union policy terms clearly preclude from coverage.

On the one hand, the *Tarzi* complaint is entirely grounded on statutory wage and hour and derivative claims and consistent with these claims, the only relief sought is past due wages together with ancillary relief (penalties, fees, etc.). There is no mention of emotional distress or consequential economic losses which would be expected to follow from the torts of invasion of privacy or negligent misrepresentation.

On the other hand, the Illinois Union policy only covers "**Loss** amounts that the **Insured** is legally obligated to pay on account of a **Claim** because of an **Insured Event**." Not only are "wage and hour" violations not included in the definition of any "**Insured Event**," such claims are specifically excluded from the definition of "**Loss**" as: "Amounts owed under federal, state or local wage and hour laws," (*See* policy section XI.I.2.i). The absence of coverage for "wage and hour" claims is further reinforced by the policy's "FSLA" Exclusion (Exclusion (C)).

The only reasonable interpretation of such policy provisions is that they exclude coverage for all of Tarzi's stated claims grounded in a dispute over wages. The point is illustrated by the decision in *TriTech Software Sys. v. U.S. Specialty Ins. Co.*, 2010 U.S. Dist. LEXIS 132245 (C.D. Cal. Dec. 13, 2010). There, the court found that the insured's underlying claims for failures to pay overtime, to provide meal and rest breaks, to provide proper pay stubs, and to pay wages promptly upon termination were not covered as the claims fell within the policies' FLSA Exclusion. *Id.* at *17-18. That exclusion, similar to Illinois Union's exclusion, barred coverage for any claim alleging a violation of the Fair Labor Standards Act or "other similar provisions of any federal, state or local statutory or common law or any rules and regulations promulgated under any of the foregoing ...." *Id.* at *15. The court held:

> The purpose of the FLSA exclusion is to prevent insurance coverage for Claims alleging certain labor law violations, whether under federal or state law. [Citations.] The word "similar" avoids the need to catalog every state and local law that is similar to the FLSA, which would be inefficient, and further puts insureds on notice that the Policy excludes coverage for violations of state labor laws similar to the FLSA. [Citations.] Accordingly, the FLSA exclusion bars coverage for any claims for violations of California Labor Code or Business and Professions Code provisions that are similar to FLSA provisions.

*Id.* at 15-16.

The court in *TriTech Software* went on to review each claim and explain why each fell within the FLSA Exclusion. The court held that the claims seeking relief from failure to pay overtime under California Labor Code section ("CLC") 510 and other provisions addressing when and how much overtime must be paid and what



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

remedies are available when an employer fails to comply were similar to FLSA provisions and therefore were excluded. *Id.* at *16. The court also reasoned that the claims seeking relief from failure to provide adequate breaks and to pay for such breaks under the CLC were also similar to FLSA provisions and were excluded. *Id.* at *17. As respect to the Business and Professions Code violations, the court explained:

> The fifth count of the Sims Complaint seeks relief under California Business and Professions Code Section 17200 for TriTech's failures to pay overtime and to provide paid meal and rest breaks. Any money damages available under this section would be as a direct result of violating the above California Labor Code provisions that are similar to the FLSA. Accordingly, the FLSA is likewise similar to the Section 17200 allegations in the Sims Claim. *See Cal. Dairies*, 617 F. Supp. 2d at 1050-51; *Payless*, 585 F.3d at 1375-76.

*Id.* The court then found that these were also excluded. The same is true of all of the Tarzi claims.

Gauntlett appears to concede non-coverage for all of Tarzi's stated "wage and hour" claims, but instead speculates about unstated hypothetical claims of invasion of privacy and misrepresentation as a basis for coverage. That argument does not bear scrutiny.

### 2. <u>Illinois Union's Coverage for Invasion of Privacy is Not Potentially Triggered</u>

California courts have recognized that insurance coverage for "offense" based coverages, including invasion of privacy relate to one or more types of common law torts. *See, ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.*, 147 Cal.App.4th 137, 147 (2007); *Fibreboard Corp. v. Hartford Acc. & Indem. Co.*, 16 Cal.App.4th 492, 511 (1993). Pursuant to the doctrine of ejusdem generis, this conclusion is reinforced by the location of Illinois Union's "invasion of right of privacy" offense next to other torts: libel, slander, etc.

California courts also recognize that in order to trigger coverage for such "offense" based torts, each of the elements of the tort must be alleged, not implied.

*See, e.g.*, *Nichols v. Great Am. Ins. Co.*, 169 Cal.App.3d. 766, 775 (1985) (all of the elements of a trade libel tort must be alleged to trigger disparagement coverage); *Total Call Int. Inc. v. Peerless Ins. Co.*, 181 Cal.App.4th 161 (2010) (all of the elements of a defamation tort must be alleged to trigger coverage); *Microtec Research, Inc. v. Nationwide Mutual Ins. Co.*, 40 F.3d 968 (9th Cir. 1994) (where the court rejected the insured's argument that the "false statement" element of trade libel claim could be implied).

As to coverage for the invasion of privacy offense, the court in *Fibreboard Corp. v. Hartford Accident & Indemnity Co.*, *supra*, described the tort as follows:

> [T]he right of privacy has been described as the right "to be let alone," which can be tortiously invaded in diverse ways and in diverse contexts. [Citations omitted.] At common law the invasion of the right of privacy has clustered into four distinct wrongs, "whose only relation to one another is that each involves interference with the interest of the individual in leading, to some reasonable extent, a secluded and private life, free from the prying eyes, ears and publications of others." (Rest.2d Torts, § 652A, com. b. at p. 377.) The four forms of tortious invasion are: unreasonable intrusion upon the seclusion of another; appropriation of the other's name or likeness; unreasonable publicity given to the other's private life; and publicity that unreasonably places the other in a false light before the public. (*Id.* § 652A, at p. 376; *Prosser & Keeton on Torts* (5th e. 1984) § 117, pp. 851-868.)

*Fibreboard, supra,* 16 Cal.App.4th at 513-514.

According to Gauntlett, the invasion of privacy offense which Tarzi was purportedly asserting in her wage and hour claim was "unreasonable intrusion upon the seclusion of another." Under California law:

> A privacy violation based on the common law tort of intrusion has two elements. First, the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy. Second, the intrusion must occur in a manner highly offensive to a reasonable person. [Citation Omitted.] These limitations on the right to privacy are not insignificant. [Citation Omitted.] Nonetheless, the cause of action recognizes a measure of personal control over the individual's autonomy, dignity, and serenity. [Citation Omitted.] The gravamen is the mental anguish sustained when both conditions of liability exist. [Citation Omitted].

*Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 286 (2009) (where court held that an employer's surveillance system did not violate the plaintiff employee's right to

privacy); *see also*, *Shulman v. Group W. Productions, Inc.*, 18 Cal.4th 200, 231 (1998); *Taus v. Loftus*, 40 Cal.4th 683, 724 (2007).

With the above "invasion of privacy" standard in mind, it is notable that the *Tarzi* complaint alleges none of the essential elements of that tort: that her e-mail communications had been searched, that these communications were personal, and that she had a reasonable expectation of privacy in the contents of any of the deleted e-mail communications stored in her work computer. Rather, the underlying complaint only alleges that Tarzi's stored email communications had been deleted from her work computer. If one is to imply anything from that allegation, it is that Gauntlett is being accused of destroying e-mail evidence of the Labor Code violations. Tarzi also does not allege that she was offended by the event or suffered mental anguish or any other damage as a result. Again, the only damage alleged is in the form of lost wages, penalties, etc. connected to Labor Code violations.

Not only is it evident that Tarzi was not intending to state a claim for invasion of privacy, she could not do so based on the allegations in the complaint because the courts have refused to recognize a reasonable expectation of privacy in using an employer's computers. As one court observed, employers providing computers to their employees can "do as they wish when it comes to accessing communications in electronic storage." *Bohach v. City of Reno*, 932 F.Supp. 1232, 1236 (D. NV 1996). Certainly that is the view of California courts. As the court stated in *TBG Ins. Services Corp. v. Superior Court*, 96 Cal.App.4th 443, 452 (2002) ". . . use of computers in the employment context carries with it social norms that effectively diminish the employee's reasonable expectation of privacy with regard to his use of his employer's computers."

Similarly in *Holmes v. Petrovich Development Co., LLC*, 191 Cal.App.4th 1047, 1069 (2011), the court concluded that an employee had no reasonable expectation of privacy in her personal e-mail messages sent to her attorney using her

/ / /

employer's computer and consequently could not prevail on an invasion of privacy claim.

The courts have also found the element of "offensive conduct" lacking in the accessing of computer e-mail accounts in the employment setting. In *Hilderman v. Enea Teksci, Inc.*, 551 F.Supp. 2d 1183 (S.D. Cal. 2008), the court granted summary judgment against an employee's cause of action for invasion of privacy arising from an employer accessing his e-mail account on his work computer. The court found as a matter of law that the intrusion was "not highly offensive" reasoning:

> Although Baghai might have believed that he could purchase the computer upon leaving the company, the computer was, until that time, Enea's property. Enea did not look at the computer for the purpose of rooting out personal information about Baghai, but, rather, was motivated by a desire to protect its confidential information and to ensure that Baghai was not engaged in unauthorized activity that would harm Enea. Although Elliott may have come across some personal information while searching the computer, there is no evidence that Elliot used the laptop to access Baghai's AT&T e-mail account or otherwise pry into Baghai's personal affairs. . . . The laptop was not passed around the company, but, rather, was kept in Elliot's locked office until it was sent to the forensic computer specialist.

*Id.* at 1204.

> The facts of this case are distinguishable from cases where a defendant hacks into someone's home computer for purposes of finding out personal information. Considering all of the circumstances, the Court concludes that the alleged invasion of privacy was not "highly offensive." Therefore, the Court grants summary judgment in favor of Enea on this cause of action.

*Id.*

Similarly here, Tarzi legally could not expect privacy in her work computer nor would Gauntlett's conduct satisfy the legal requirement of "highly offensive" conduct.

In short, while a privacy violation of "intrusion upon seclusion" requires both a reasonable expectation of privacy and highly offensive conduct, neither element is present here so as to trigger potential coverage.

/ / /

### 3. Gauntlett's Imagined "Misrepresentation" Claim Does Not Trigger Potential Coverage

Continuing in its effort to manufacture coverage, Gauntlett seeks to characterize its alleged misclassification of Tarzi's work status as a "misrepresentation," listed as an "**Insured Event**." However, that same strained interpretation was rejected by the court in *Cal. Dairies, Inc. v. RSUI Indem. Co.*, 617 F.Supp.2d 1023 (E.D. Cal. 2009). There, the underlying complaint alleged that employees were denied mandated meal periods, rest periods, reimbursement for employee uniforms, and wages due at termination in violation of various labor statutes. The insurance policy at issue covered "Employment Practices Wrongful Acts," including "Employment Related Misrepresentation." The court granted the insurer's motion to dismiss the insured's coverage action. The court reasoned that the insured's assertion that the California Labor Code violations alleged in the underlying action:

> should be viewed as "employment-related misrepresentations" is a strained interpretation of the Policy language in light of the facts presented. The Gonzalez action is limited to allegations based upon the failure to pay wages and related benefits. The Gonzalez complaint does not allege any misrepresentations by CDI, nor is misrepresentation a required element of any of the ... Gonzalez causes of action, all of which related to wage and hour conditions of employment.

*Id.* at 1050.

Similarly in this case, the underlying Tarzi claim includes no allegations evidencing any affirmative misrepresentations by Gauntlett. Further, a misrepresentation is not a "required element" of Tarzi's wage claims, although it may follow or be implied from the statutory violations. Consequently, any incidental misrepresentation cannot trigger coverage. Indeed, if an implied misrepresentation was held to create coverage for otherwise uncovered wage claims, the evident policy intent to exclude such claims from coverage would be defeated contrary to California law. *See Bank of the West*, *supra*, 2 Cal.4th 1254.

/ / /

In any event, in order for a purported misrepresentation claim to trigger a potential for coverage allegations in the *Tarzi* complaint or extrinsic evidence would need to evidence facts constituting the elements of the tort of negligent misrepresentation. (*See* discussion in section B.2 above.) Those elements are: (1) a misrepresentation of a past or existing material fact; (2) without reasonable grounds for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was direct; and (5) damages. *Fox v. Pollack*, 181 Cal.App.3d 954, 962 (1986). Here, none of these elements are alleged by Tarzi.

**4. <u>There is No Covered "Loss"</u>**

Even if one could imply in Tarzi's allegations a negligent misrepresentation constituting an "**Insured Event**," there is no resulting covered "**Loss**" because the relief sought by Tarzi is limited to "amounts owed under wage and hour laws," excluded from the "**Loss**" definition. (*See* policy section XI.1.2.i; Gauntlett Decl., ¶ 5, Exh. 1, pp. 20-21.)

California law is clear that the duty to defend does not attach to a complaint which does "not allege the type of damages covered by the policy." *Sony Computer Entertainment America, Inc. v. American Home Assurance Co.*, 532 F.3d 1007, 1020 (2007) (where complaints alleging defects in insured's video gaming stations did not allege "any property damage to discs," the court rejected insured's claim that such damage could potentially be alleged); *see also*, *Low v. Golden Eagle Ins. Co.*, 99 Cal.App.4th 109, 113-114 (2002); *Gunderson v. Fire Ins. Exch.*, *supra*, 37 Cal.App.4th at 1116. With that in mind, the *Tarzi* complaint is not covered for the simple reason that the damages sought are not covered.

Illinois Union anticipates that Gauntlett may assert that Tarzi also seeks various other types of relief, including attorney fees and penalties, in addition to wage payments. However, all are sought in connection with excluded "wage and hour laws." Stated another way, "but for" the alleged violation of those laws there

would be no claims for penalties and fees. The courts have generally held that such claims derivative of an uncovered claim also are uncovered. The point is illustrated by the California Supreme Court decision in *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1 (1995), where the court considered whether "a commercial general liability insurer is required to defend a third party action that seeks incidental emotional distress damages caused by the insured's noncovered economic or business torts." *Id.* at 10. The Supreme Court ruled in favor of the insurer holding:

> the finding of no duty to defend in this context is consistent with the reasonable expectations of the parties when they enter into a contract for commercial general liability insurance, for it is widely understood by both insureds and insurers that such policies are not intended to cover economic losses. As we explain, the damages alleged in Amey's complaint flowed from intangible property losses that could not be considered covered occurrences under the CGL policy. Likewise, <u>the derivative emotional distress</u> damages sought by Amey for the plaintiffs' alleged business torts were not covered because they flowed from the same noncovered acts. (Emphasis supplied.)

*Id.* at 15-16. Similarly here, Tarzi's requested relief all flows from an uncovered loss.

Moreover, even if Tarzi's ancillary claims could be viewed separately, they would be uncovered. Penalties are excluded by policy section XI.I.2.a. Restitution is excluded by policy section XI.I.2.h and the attorney fee claim does not constitute a claim for monetary "damages." (*See* policy sections XI.A.1 and I.1; Gauntlett Decl., ¶ 5, Exh. 1, pp. 19-21.) *See also Cutler-Orosi*, 31 Cal.App.4th 617, 629-630 (1994).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V. CONCLUSION

For the above stated reasons and consistent with the Court's prior Order denying Gauntlett's motion for partial summary judgment, the Court should grant summary judgment in favor of Illinois Union.

DATED: January 3, 2012

LANE J. ASHLEY
RAQUEL VIDAL
LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/
Raquel Vidal
Attorneys for Defendant ILLINOIS UNION INSURANCE COMPANY

# FEDERAL COURT PROOF OF SERVICE

Case: *Gauntlett, etc., v. Illinois Union, etc.*
U.S.D.C. Case No. 11-CV-00455 EJD

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action. My business address is 221 North Figueroa Street, Suite 1200, Los Angeles, California 90012. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On January 3, 2012, I served the following document(s): **ILLINOIS UNION INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN THEREOF**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

David A. Gauntlett, Esq.
James A. Lowe, Esq.
**GAUNTLETT & ASSOCIATES**
18400 Von Karman, Suite 300
Irvine, CA 92612
Tel. No.: (949) 553-1010
Fax No.: (949) 553-2050
info@gauntlettlaw.com
Jal@gauntlettlaw.com

Attorneys for Plaintiff
GAUNTLETT & ASSOCIATES

The documents were served by the following means:

[X] **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on January 3, 2012, at Los Angeles, California.

/s/ ______________________
RAQUEL VIDAL