**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com

Attorneys for Plaintiff
GAUNTLETT & ASSOCIATES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| DAVID A. GAUNTLETT d/b/a GAUNTLETT & ASSOCIATES, a California sole proprietorship,<br><br>Plaintiff,<br><br>vs.<br><br>ILLINOIS UNION INSURANCE COMPANY, an Illinois corporation,<br><br>Defendant. | Case No. 11-cv-00455 EJD<br><br>Hon. Edward J. Davila<br><br>**PLAINTIFF'S:**<br><br>**(1) OPPOSITION TO ILLINOIS UNION'S MOTION FOR SUMMARY JUDGMENT; AND**<br><br>**(2) CROSS-MOTION FOR RECONSIDERATION PURSUANT TO RULES 59 AND 60 PARTIAL SUMMARY JUDGMENT MOTION RE ILLINOIS UNION'S DUTY TO DEFEND AND SETTLE**<br><br>Date: February 10, 2012<br>Time: 9:00 a.m.<br>Ctrm: 1, 5th Floor |

## TABLE OF CONTENTS

Page

I. RECONSIDERATION IS PERMITTED WHERE THE DECISION IS CLEARLY MISTAKEN OR MANIFESTLY FAILS TO CONSIDER MATERIAL FACTS PRESENTED .......... 1

II. ILLINOIS UNION'S CHARACTERIZATION OF CALIFORNIA LAW IS MISLEADING .......... 1

A. Illinois Union's Citation Of California Coverage Law Is Inconsistent With Post Order Issuance Coverage Cases .......... 1

B. Illinois Union's Recital of California Coverage Law Incorporates Distinct Legal Doctrines Not Germane Here .......... 3

C. Illinois Union's Analytic Approach Is An Improper Attempt To Focus On Labels Of Claims For Relief, Rather Than Pertinent Facts .......... 4

D. Illinois Union's Recital of California Coverage Law Incorporates Distinct Legal Doctrines Not Germane Here .......... 5

E. Illinois Should Be Estopped from Reliance on Grounds for Denial that It DiD Not Assert Upon Denial and Whose Absence G&A Rlied in Settling the Case .......... 7

III. THE PERTINENT COVERAGES ARE NOT LIMITED TO PROOF OF LIABILITY FOR THE TORT OF NEGLIGENT MISREPRESENTATION .......... 8

A. The District Court's Analysis of the Misrepresentation Claim Should Be Revisited In Light of Applicable California Law .......... 8

B. The Broad Categories Of "Inappropriate Employee Conduct" Described By Illinois Union's Policy, Are Implicated .......... 9

C. Illinois Union Offers An Unreasonable And Strained Construction Of The Scope Of Broadly Defined "Inappropriate Employment Conduct" .......... 10

D. Illinois Union Studiously Ignores the Most Relevant Case Law – *Professional Security* .......... 11

E. TriTech Does Not Support a Contrary Result .......... 13

IV. THE "ANY INVASION OF RIGHT OF PRIVACY" CLAIM GIVES RISE TO A DEEFNSE .......... 13

A. Any Invasion of Right of Privacy Coverage Is Not Limited to Common Law Privacy Claims But Encompass Broadly, as Here, Alleged Any Form of Highly Objectionable Intrusive Conduct .......... 13

B. Dictionary Definitions of "Any Invasion of Privacy of All Employees" Include Any Actionable Privacy of "All Employees" Form of "Intrusion Upon Exclusion" .......... 16

C. Although Any "Invasion of the Right to Privacy" Includes Broader than the Common Law Tort of "Intrusion Upon Seclusion" .......... 16

D. The Analysis Of Any Invasion Of the Right of Privacy Claim Should be Revised .......... 18

1. The Elements of "Any Invasion of the Right to Privacy" are Not Delimited by Any Singular Tort .......... 18

2. It Is Of No Moment That The Facts Alleged In Support Of The Privacy Invasion Claim In The *Tarzi* Complaint May Not Withstand A Motion To Dismiss .......... 20

3. Conduct Similar to Which the Court Conceded Was Alleged in Light of the Claim .......... 20

4. The Court's Order Improperly Focused On "Nature and Kind of Risk" Covered by Policy .......... 21

5. Court Improperly Focused On Nature of Damages Instead of Nature of Claim .......... 23

V. FACTUALLY ASSERTED CLAIMS FOR MISREPRESENTATION AND PRIVACY INVASION SUPPORT DAMAGE RELIEF AND THEREBY ASSERT A POTENTIALLY COVERED LOSS .......... 23

VI. TARZI'S QUEST FOR ATTORNEYS' FEES SOUGHT DAMAGES ASSERTING A POTENTIALLY COVERED LOSS .......... 24

A. The *Powerine* Decision Provides a Bright-Line Definition of "Damages" Which Is Not Subject to the Limitation Sought by Illinois Union .......... 24

B. Illinois Union's Entire Argument Is Based upon Law Which Is No Longer Applicable .......... 24

VII. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Align Tech., Inc. v. Federal Ins. Co.*,
673 F. Supp. 2d 957 (N.D. Cal. Nov. 25, 2009) ........ 17

*Andrews Farms v. Calcot, Ltd.*,
693 F. Supp. 2d 1154 (E.D. Cal. 2010) ........ 1

*Bernstein v. Travelers Ins. Co.*,
447 F. Supp. 2d 1100 (N.D. Cal. 2006) ........ 7

*Bohach v. City of Reno*,
932 F. Supp. 1232 (D. Nev. 1996) ........ 22

*Burgett, Inc. v. Am. Zurich Ins. Co.*,
___ F. Supp. 2d ___, 2011 WL 5884251 (E.D. Cal. Nov. 23, 2011) ........ 2, 18

*Cal. Diaries, Inc. v. RSUI Indem. Co.*,
617 F.Supp.2d 1023 (E.D.Cal.2009) ........ 9, 12

*City of Ontario, Cal. v. Quon*,
130 S. Ct. 2619 (U.S. 2010) ........ 18

*Creative Hospitality Ventures, Inc. v. United States Liab. Ins. Co.*,
655 F. Supp. 2d 1316 (S.D. Fla. 2009) ........ 20

*Hudson Ins. Co. v. Colony Ins. Co.*,
624 F.3d 1264 (9th Cir. (Cal.) 2010) ........ 3, 4, 5, 11, 16

*Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*,
686 F. Supp. 2d 1005 (N.D. Cal. 2010) ........ 15

*Marconi Wireless Telegraph Co. v. United States*,
320 U.S. 1, 63 S. Ct. 1393, 86 L. Ed. 1731 (1943) ........ 1

*Medical Lab. Mgmt. Consultants v. American Broadcasting Companies, Inc.*,
306 F.3d 806 (9th Cir. (Ariz.) 2002) ........ 16, 17

*Mustafa v. Clark County Sch. Dist.*,
157 F.3d 1169 (9th Cir. 1998) ........ 1

*Navajo Nation v. Norris*,
331 F.3d 1041 (9th Cir. 2003) ........ 1

*Park University Enterprises v. American Cas. Co. of Redding, PA*,
314 F. Supp. 2d 1094 (D. Kan. 2004) *aff'd* 442 F.3d 239 (10th Cir. (Kan.) 2006) ........ 15, 19

*Pension Trust Fund for Operating Engineers v. Fed. Ins. Co.*,
307 F.3d 944 (9th Cir. 2002) ........ 5

*Quon v. Arch Wireless Operating Co., Inc.*,
445 F. Supp. 2d 1116 (C.D. Cal. 2006) *aff'd in part, rev'd in part*, 529 F.3d 892 (9th Cir. (Cal.) 2008) .......... 18

*School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*,
5 F.3d 1255 (9th Cir. 1993) .......... 1

*Sewell Plastics Inc. v. Coca-Cola*,
720 F. Supp. 1196 (W.D.N.C. 1989), *aff'd in part w/o op. and remanded in part w/o op.*, 912 F.2d 463 (4th Cir. 1990), *cert. denied*, 498 U.S. 1110, 111 S. Ct. 1019, 112 L. Ed. 2d 110 (1991) .......... 1

*Sony Computer Entertainment America, Inc. v. American Home Assurance Co.*,
532 F.3d 1007 (9th Cir. (Cal.) 2007) .......... 6

**STATE CASES**

*ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*,
147 Cal. App. 4th 137 (2007) .......... 15

*AIU Ins. Co. v. Superior Court*,
51 Cal. 3d 807 (1990) .......... 24

*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*,
100 Cal. App. 4th 1017 (2002) .......... 4, 6, 18, 19, 23

*B.L.M. v. Sabo & Deitsch*,
55 Cal.App.4th 823 (1997) .......... 23

*Bank of the West v. Superior Court*,
2 Cal. 4th 1254 (1992) .......... 4

*City of Hollister v. Monterey Ins. Co.*,
165 Cal. App. 4th 455 (2008) .......... 8

*CNA Cas.of Cal. v. Seaboard Sur. Co.*,
222 Cal.Rptr. 276 .......... 11

*Cooper Companies v. Transcontinental Ins. Co.*,
31 Cal. App. 4th 1094 (1995) .......... 10

*Cutler-Orosi Unified School District v. Tulare County School Districts Liability/Property Self-Insurance-Authority*, 31 Cal. App. 4th 617 (1994) .......... 24

*Doyle v. Allstate Ins. Co.*,
1 N.Y.2d 439, 154 N.Y.S.2d 10 (1956) .......... 24

*Fibreboard Corp. v. Hartford Acc. & Indem. Co.*,
16 Cal. App. 4th 492 (1993) .......... 15, 22

*Fireman's Fund Ins. Companies v. Atl. Richfield Co.*,
94 Cal. App. 4th 842 (2001) .......... 15

*Frank and Freedus v. Allstate Ins. Co.*,
45 Cal. App. 4th 461 (1996) .......... 22

*Friedman Prof. Management Co., Inc., v. Norcel Mutual Ins. Co.*,
120 Cal. App. 4th 17 (2004) .......... 5

*Golden Eagle Insurance Corp. v. CenFed Ltd.*,
148 Cal.App.4th 976 (2004) .......... 6

*Gray v. Zurich Ins. Co.*,
419 P.2d 168 (Cal. 1966) .......... 4

*Gunderson v. Fire Ins. Exch.*,
37 Cal. App. 4th 1106 (1995) .......... 3, 7

*Heffelfinger v. Electronic Data Systems Corp.*,
580 F. Supp. 2d 933 (C.D. Cal. 2008) .......... 14

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 22

*Holmes v. Petrovich Dev. Co.*,
191 Cal. App. 4th 1047 (2011) .......... 22

*Horace Mann Ins. Co. v. Barbara B.*,
4 Cal. 4th 1076 (1993) .......... 22

*Hurley Construction Co. v. State Farm Fire & Cas. Co.*,
10 Cal. 4th 533, 12 Cal. Rptr. 2d 629 (1992) .......... 3, 8, 11

*Kearney v. Saloman Smith Barney, Inc.*,
39 Cal.4th 95 (2006) .......... 23

*La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*,
9 Cal. 4th 27 (1994) .......... 3, 4, 22

*Low v. Golden Eagle Ins. Co.*,
99 Cal. App. 4th 109 (2002) .......... 6, 7, 11

*Mabee v. Nurseryland Garden Centers, Inc.*,
88 Cal. App. 3d 420 (1979) .......... 25

*MacKinnon v. Truck Ins. Exch.*,
31 Cal. 4th 635 (2003) .......... 16

*McKee v. State Farm Fire & Cas. Co.*,
145 Cal.App.3d 772 (1983) .......... 10

*Mez Industries, Inc. v. Pacific National Ins. Co.*,
76 Cal.App.4th 856 (1999) .......... 19

*Montrose Chem. Corp. v. Superior Court*,
6 Cal. 4th 287, 861 P.2d 1153 (Cal. 1993) .......... 2, 4, 8, 22

*Palmer v. Truck Ins. Exch.*,
988 P.2d 568 (Cal.1999) .......... 2

*Penzer v Transportation Ins. Co.*,
29 So. 3d.......... 14

*Reserve Ins. Co. v. Pisciotta*,
30 Cal.3d 800 (1982).......... 10, 11

*Scott v. Continental Ins. Co.*,
44 Cal. App. 4th 24 (1996).......... 16

*Scottsdale Ins. Co. v. MV Transp.*,
36 Cal. 4th 643 (2005).......... 14

*Shulman v. Group W Productions, Inc.*,
18 Cal. 4th 200 (1998).......... 16

*State Farm Gen. Ins. Co. v. JT's Frames, Inc.*,
181 Cal. App. 4th 429 (2010).......... 15

*TBG Ins. Services Corp. v. Super. Ct.*,
96 Cal. App. 4th 443 (2002).......... 22

*Terra Nova Ins. Co. v. Fray-Witzer*,
869 N.E.2d 565 (Mass. 2007) .......... 14

*Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*,
860 N.E.2d 307 (Ill. 2006) .......... 14

*Vandenberg v. Superior Court*
21 Cal. 4th 815 (1999).......... 24

**DOCKETED CASES**

*California Dairies Inc. v. RSUI Indem. Co.*,
Nos. 10-16684, 10-16730, 2011 WL 6392200 (9th Cir. Dec. 21, 2011) .......... 12

*Energex Sys. Corp. v. Fireman's Fund Ins. Co.*,
No. 96-CIV-5993 (JSM), 1997 WL 358007 (S.D.N.Y. June 24, 1997) .......... 23

*Gauntlett v. Illinois Union Ins. Co.*,
No. 5:CV 11-00455-EJD, 2011 WL 5191808 (N.D. Cal. Nov. 1, 2011).......... 8, 12, 20, 22, 23

*Hooters of Augusta, Inc. v. American Global Ins. Co.*,
No. 04-11077, 2005 WL 3292089 (11th Cir. (Ga.) Dec. 6, 2005).......... 15

*LensCrafters, Inc. v. Liberty Mutual Fire Ins. Co.*,
No. C 04-1001 SBA, 2005 WL 146896 (N.D. Cal. Jan. 20, 2005).......... 15, 19

*Miranda v. California Capital Ins. Co.*,
No. A126778, 2011 WL 1168064 (Cal. App. (1st Dist.) March 29, 2011) .......... 14

*Netscape Communications Corp. v. Federal Ins. Co.*,
No. 08-15120, 2009 WL 2634945 (9th Cir. (Cal.) Aug. 27, 2009) ............................................ 14

*Owners Ins. Co. v. European Auto Works, Inc.*,
No. CIV. 10-2868 RHK/JJG, 2011 WL 3847469 (D. Minn. Aug. 30, 2011)........................ 19, 20

*Professional Security Consultants, Inc. v. U.S. Fire Ins. Co.*,
No. CV 10-04588 SJO SSX, 2010 WL 4123786 (C.D. Cal. Sept. 22, 2010).............................. 11

*Tom Kelley Studios, Inc. v. State Farm Gen. Ins. Co.*,
No. 10-55931, 2011 WL 6396441 (9th Cir. Dec. 21, 2011)......................................................... 1

*Tower Ins. Co. of New York v. Capurro Enterprises Inc.*,
No. C 11-03806 SI, 2011 WL 6294485 (N.D. Cal. Dec. 15, 2011)................................. 2, 3, 7, 19

*TriTech Software Sys. v. U.S. Specialty Ins. Co.*,
No. CV10-00094-R VBKX, 2010 WL 5174371 (C.D. Cal. Dec. 13, 2010) ............................... 13

**FEDERAL RULES AND STATUTES**

Fed. R. Civ. P. 59 & 60 .................................................................................................................. 1

**STATE RULES AND STATUTES**

Local Rule 7-18 ............................................................................................................................ 1

California Code of Civil Procedure § 1021.5 ................................................................................ 25

**OTHER AUTHORITIES**

RANDOM HOUSE UNABRIDGED DICTIONARY, 2d Ed, 1993 ............................................................... 8

RANDOM HOUSE UNABRIDGED DICTIONARY 1540 (2nd ed. 1993) ................................................... 16

RANDOM HOUSE UNABRIDGED DICTIONARY 1989 (2d ed. 1993) ..................................................... 11

## I. RECONSIDERATION IS PERMITTED WHERE THE DECISION IS CLEARLY MISTAKEN OR MANIFESTLY FAILS TO CONSIDER MATERIAL FACTS PRESENTED

Reconsideration is appropriate where there is a showing of manifest failure to consider material facts (Local Rule 7-18), or mistakes of law (Fed. R. Civ. P. 59 & 60) or "clear error or the initial decision was manifestly unjust . . . ."[1]

A court is "free in its discretion to grant a reargument based either on all the evidence then of record or only the evidence before the court when it rendered its interlocutory decision, or to reopen the case for further evidence."[2] The issuance of three California coverage law cases clarifying legal propositions germane to the district court's prior ruling also justify reconsideration.[3]

There is no preclusive effect from this court's denial of G&A's motion for partial summary judgment re the duty to defend as this order is interlocutory.[4]

## II. ILLINOIS UNION'S CHARACTERIZATION OF CALIFORNIA LAW IS MISLEADING

### A. Illinois Union's Citation Of California Coverage Law Is Inconsistent With Post Order Issuance Coverage Cases

Three California coverage cases that post-date this court's order, including one from the Ninth Circuit, illustrate why Illinois Union's characterization of coverage law is misleading when applied to the facts of this case.[5] Illinois Union offers another version of this discredited

---

[1] *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

[2] *Marconi Wireless Telegraph Co. v. United States*, 320 U.S. 1, 48, 63 S. Ct. 1393, 1415, 86 L. Ed. 1731, 1757 (1943); *Sewell Plastics Inc. v. Coca-Cola*, 720 F. Supp. 1196, 1215 (W.D.N.C. 1989), *aff'd in part w/o op. and remanded in part w/o op.*, 912 F.2d 463 (4th Cir. 1990), *cert. denied*, 498 U.S. 1110, 111 S. Ct. 1019, 112 L. Ed. 2d 110 (1991) (Even if no new material is presented, reconsideration of a previously denied summary judgment motion is proper because " 'the court was not bound to perpetuate error if it later believed it had committed such.' ").

[3] *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003) ("**Reconsideration is indicated in the face of** the existence of new evidence, **an intervening change in the law**, or as necessary to prevent manifest injustice. *See Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1178-79 (9th Cir. 1998).").

[4] *Andrews Farms v. Calcot, Ltd.*, 693 F. Supp. 2d 1154, 1164, 1165 (E.D. Cal. 2010) ("A denial of a summary judgment motion does not constitute a final disposition of any issue in the case and does not become the 'law of the case.' . . . The denial of a summary judgment motion has no preclusive effect, does not merge into a final judgment, and is an interlocutory, unappealable order that can be reviewed by the district court at any time before final judgment is entered.").

[5] *Tom Kelley Studios, Inc. v. State Farm Gen. Ins. Co.*, No. 10-55931, 2011 WL 6396441, at *1 (9th Cir. Dec. 21, 2011) ("State Farm argues that this requirement [that the 'course of advertising' must

"inherency" argument by positing that because a case labeled as one for wage and hour claims, must preclude any potential coverage where an exclusion bars those particular claims despite whatever claim the fact allegations evidence.

In *Burgett*,[6] Judge England recently observed in finding a defense due for claim of implicit disparagement and action, otherwise captioned as one for trademark infringement under "personal injury" covered provisions of an offense-based policy:

> Courts in California have frequently stated that an insurer's duty to defend is broader than the duty to indemnify. . . . Thus, under California law, an insurer must defend against groundless, false, or even fraudulent claims, regardless of their merits. . . . In fact, an insurer is excused from its duty to defend only when "the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." . . . The duty to defend may exist even where coverage is in doubt and ultimately does not develop. . . . "California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty."[7]

In *Tower*,[8] Judge Illston found express statements that Capurro was "wrongfully benefitting from Certa Pro's … trade dress" and alleged wrongful use of Certa Pro's non-inclusive list of proprietary marks sufficient triggered a defense. These claims fell within express exception to the trademark exclusion for claims of "trade dress or slogan infringement in your advertisement." Recognizing the issue was close, the court nevertheless clarified the breadth of the defense duty.[9] Judge Illston also distinguished the "speculation" cases relied on by Illinois Union, clarifying that

---

be by the insured] **is inherent in the policy** because Kelley does not have an objectively reasonable expectation that the policy would cover a third party's course of advertising Kelley's products. We reject this argument because State Farm has adduced no evidence to support it. At most, the policy language on this point is ambiguous because it is 'susceptible to two or more reasonable constructions.' *Palmer v. Truck Ins. Exch.*, 988 P.2d 568, 573 (Cal.1999).").

[6] *Burgett, Inc. v. Am. Zurich Ins. Co.*, ___ F. Supp. 2d ___, 2011 WL 5884251, at *4, *5 (E.D. Cal. Nov. 23, 2011).

[7] *Burgett*, 2011 WL 5884251, at *4, *5.

[8] *Tower Ins. Co. of New York v. Capurro Enterprises Inc.*, No. C 11-03806 SI, 2011 WL 6294485 (N.D. Cal. Dec. 15, 2011).

[9] *Tower*, 2011 WL 6294485, at *6 ("To be sure, given the specific examples provided in the Underlying Complaint, there could be some doubt as to whether the facts established the duty to defend. However, 'any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor.' *Montrose*, 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153.").

inferences drawn from fact allegations suggesting the potential for coverage did not constitute speculation of the kind which would preclude a defense obligation. The court distinguished *Hurley Construction Co. v. State Farm Fire & Cas. Co.*, 10 Cal. 4th 533, 12 Cal. Rptr. 2d 629 (1992).[10]

**B. Illinois Union's Recital of California Coverage Law Incorporates Distinct Legal Doctrines Not Germane Here**

Illinois Union's spare citation from scattered coverage cases do not adequately inform the court as to the proper application of coverage doctrine here. In *Hudson*,[11] a contribution action between carriers regarding a duty to defend, the court distinguished *Gunderson*,[12] stating:

> In *Gunderson* neither the legal theory of property damage nor facts supporting the legal theory of property damage were alleged, but here, the NFL complaint alleges facts potentially supporting a legal theory of slogan infringement.[13]

Restating the district court analysis, the Ninth Circuit observed:

> A fair reading of the [NFL complaint] reveals that 'Steel Curtain' is used to promote fan loyalty to the Steelers (an NFL Member Club) in general, and a subset of Steeler players in particular." The district court concluded that this potentially stated a claim for slogan infringement because a "slogan" is a "brief attention-getting phrase used in advertising or promotion."[14]

Nor is Illinois Union's brief recitation to the "nature and kind of risk" language from *La Jolla*[15] preclude coverage in this wage and hour suit for fact allegations in this representation for privacy invasion, expressly covered by the EPLI policy issued through Illinois Union. The "nature and kind of risk" limitation cannot bar potential coverage under the "use of another's advertising idea in your 'advertisement' " offense. Cases referencing the "*nature and kind* of risk covered by the policy" doctrine limit its application to circumstances where the proposed policy construction

---

[10]*Tower*, 2011 WL 6294485, at *7 ("*Hurley* does not stand for the proposition that additional *facts* that add to potentially covered allegations already in the complaint cannot be relied upon when tendering a claim to one's insurer. Indeed, in most cases, as here, the insured is far more likely to know potential facts that trigger the defense duty than the injured party drafting the complaint. Courts 'do not examine only the pleaded word but the potential liability created by the suit[.]'").

[11]*Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1268 (9th Cir. (Cal.) 2010).

[12]*Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106 (1995).

[13]*Hudson*, 624 F.3d at 1268.

[14]*Id*. at 1268.

[15]*La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27 (1994).

would be wholly inconsistent with the enforcement of another policy provision or would render it superfluous.[16]

*Gray v. Zurich* rejected the argument Illinois Union advances here that the duty to defend arises only when an underlying complaint pleads liability for which the carrier owes an indemnity obligation. The flexible character of modern pleadings makes Illinois Union's approach unworkable and inconsistent with *Gray*.[17]

Illinois Union's reference to *Montrose*,[18] arguing for a limited duty to defend, is misplaced. Pursuant to *Montrose*, 861 P.2d at 1157 ("[T]he duty 'may exist even where coverage is in doubt and ultimately does not develop.' [Citation.]"). Illinois Union's recitation of the rules applicable to evaluating an ambiguity is not meaningful outside its application to a specific context. A doctrine wholly distinct from that pertaining to indemnification of a judgment adjudicated against an insured. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992) addressed indemnity, not the duty to defend. Its analysis did not require consideration of the potential for coverage.

### C. Illinois Union's Analytic Approach Is An Improper Attempt To Focus On Labels Of Claims For Relief, Rather Than Pertinent Facts

As Judge Croskey noted in *Lamb*,[19] "[t]he scope of the duty does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the *alleged facts or known extrinsic facts* reveal a *possibility* that the claim may be covered by the policy."[20] This view was reiterated with studied force by the Ninth Circuit in *Hudson*:[21]

---

[16] *Id*. at 42, citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d at 273-75 and *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th at 299 ("Construing the workers' compensation portion to also include the duty to defend any claim asserted by an employee, including civil suits for damages, renders the employer's liability section superfluous.").

[17] *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 176 (Cal. 1966) ("[*Gray* rejected the insurer's] contention that the duty [to defend] arises only if the pleadings disclose a cause of action for which the insurer must indemnify the insured. Defendant would equate the duty to defend with the complaint that pleaded a liability for which the insurer was bound to indemnify the insured. . . . We point out that the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy[.]").

[18] *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1157 (Cal. 1993) [cited at Document No. 50, p. 28].

[19] *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1034 (2002).

[20] *Id*. at 1034.

[21] *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1269-70 (9th Cir. (Cal.) 2010) (" '[T]he

Illinios Union cites no case authority for a narrow construction of the employment-related misrepresentation to an employee sub-element of its coverage for inappropriate employment conduct. Its suggestion that tort principles must be imported and only the elements for pleading negligent misrepresentation must be asserted" is contrary to settled California case authority which is binding precedent for this court.

> The duty to defend does not usually turn on whether facts supporting a covered claim predominate or generate the claim. . . . Instead, California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty. . . . Thus, California law does not require that the insured's conduct proximately cause the third party claim in order to trigger the defense duty. . . .
>
> [I]n *Barnett*, . . . [t]he complaint in the underlying suit stated causes of action for . . . intentional interference with contractual relations[.] 90 Cal.App.4th at 506[.] Nevertheless, the court found a duty to defend because the plaintiffs alleged facts that might give rise to a defamation claim. These allegations were buried within the complaint to show the moral blameworthiness of the defendants, yet they were enough to trigger the duty to defend.[22]

**D. Illinois Union's Recital of California Coverage Law Incorporates Distinct Legal Doctrines Not Germane Here**

Illinois Union argues that *Friedman*[23] supports its argument that plaintiff has failed to show a claim potentially within the scope of the insurer's coverages. However, *Hudson* concluded that *Friedman* does not support that argument, because that case concluded that there was no potential for coverage, not because the complaint did not list a particular legal cause of action but because "there have been *no* allegations, or facts ever presented to or learned by the insurer" to support coverage.[24]

---

absence of an element of a properly pleaded cause of action is of no moment in determining [the] duty to defend.' . . . The technical label on a cause of action does not dictate the duty to defend whether the claimed cause of action was omitted out of negligence or 'for strategic adversarial reasons.'").

[22] *Pension Trust Fund for Operating Engineers v. Fed. Ins. Co.*, 307 F.3d 944, 951-52 (9th Cir. 2002) ("The court rejected the insurer's argument that 'two solitary, unsubstantiated words' buried within 'completely unrelated federal antitrust cause of action, which was, itself, undisputedly *not* covered' could not trigger the duty to defend. . . . The defense duty, it held, is triggered even if an element of a covered action is omitted.").

[23] *Friedman Prof. Management Co., Inc., v. Norcel Mutual Ins. Co.*, 120 Cal. App. 4th 17, 35 (2004).

[24] *Hudson*, 624 F.3d at 1268 n. 4 (emphasis added).

The court in *Golden Eagle*,[25] found no potential for coverage for the same reason, that "[t]here are *no* allegations suggesting that appellant's representations caused injury or damage . . . [to] constitute an 'injury to or destruction of tangible personal property' as defined in the policy." (emphasis added).

Illinois Union misconstrues *Sony*.[26] That "California law is clear that the duty to defend does not attach to a complaint which does 'not allege the type of damages covered by the policy,'" does not also relieve Illinois Union of its duty to defend. Despite an absence of labels of "misrepresentation" or "invasion of the right to privacy" in the complaint, there are facts that allege claims and would entitle the underlying plaintiff to damages. It is of no moment that the underlying plaintiff only lists causes of action for "wage and hour" claims, because California follows the facts not labels given to the causes of action.[27] Nor is the damages theory asserted germane.[28]

Illinois Union's reference to *Low*,[29] is not analogous to the case at hand. In *Low*, no claim for recovery of damages was asserted in the complaint, instead "Plaintiffs…preserve…their rights to pursue claims for personal injuries…in other litigation."[30] The court went on to acknowledge "that the complaint could easily have been amended to assert claims for the recovery of damages…thus falling squarely within policy coverage and supporting a duty to defend."[31] On that analysis, "the third party complaint would have presented a " 'conceivable theory rais[ing] a[n] ... issue which could bring it within the policy coverage.' "[32] Thus the fact that the complaint might need to be

---

[25]*Golden Eagle Insurance Corp. v. CenFed Ltd.*, 148 Cal.App.4th 976, 988 (2004).

[26]*Sony Computer Entertainment America, Inc. v. American Home Assurance Co.*, 532 F.3d 1007, 1020 (9th Cir. (Cal.) 2007).

[27]*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1032, 123 Cal. Rptr. 2d 256 (2002) (Coverage for personal injury is not determined by the nature of the damages sought in the action against the insured, but by the nature of the claims made against the insured in that action. Under the personal injury policy provision, '[c]overage . . . is triggered by the offense, not the injury or damage which a plaintiff suffers.'").

[28]*J. Lamb, Inc.*, 100 Cal. App. 4th at 1032 ("The scope of the duty does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the alleged facts or known extrinsic facts reveal a possibility that the claim may be covered by the policy.").

[29]*Low v. Golden Eagle Ins. Co.*, 99 Cal. App. 4th 109, 112-113 (2002).

[30]*Id*. at 112.

[31]*Id*. at 113.

[32]*Id*. at 13, citing *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 300.

amended to bring it within policy coverage is not the problem, rather the problem in *Low*, was that the facts were too speculative.[33] That problem is not present in this case because the allegations for "misrepresentation" and "invasion of privacy" are evident on the face of the third party complaint.

*Gunderson*,[34] is also not analogous. In *Gunderson*, there were no allegations in the pleadings to show damages. The complaint stated that "[a]t no time did I seek to amend these pleadings to allege such claims or indicate that I intended to do so."[35] That statement eliminated any potentiality for coverage and further "most of the alleged extrinsic evidence of a potential claim for property damage arose after [the] complaint was filed and tendered to [the insurer] for defense."[36] The present case is inopposite, the allegations in the pleadings show potential damages and do require extrinsic evidence furnished after the insurer made its determination of whether or not to provide coverage, to make that finding.

**E. Illinois Should Be Estopped from Reliance on Grounds for Denial that It DiD Not Assert Upon Denial and Whose Absence G&A Rlied in Settling the Case**

Notably, Illinois Union did not initially analyze whether the fact allegations supporting the wage and hour claims could support coverage under its EPLI policy for a form of covered invasion of privacy or a misrepresentation.[37] It is an "after the fact" construction which followed the denial of any defense or settlement reimbursement for the underlying action.[38] It should be estopped from making any arguments to contest any evidence brought to its attention in connection with this action

[33] *Id.* at 13. ("An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date .... Thus, the issue[] ... [is] what facts [the insurer] knew at the time [insureds] tendered the defense of the [underlying] lawsuit, both from the allegations on the face of the third party complaint, and from extrinsic information available to it at the time; and whether these known facts created a potential for coverage under the terms of the [p]olicy.")

[34] *Gunderson v. Fire Ins. Exch.*, 37 Cal.App.4th 1106, 1116 (1995).

[35] *Id.* at 1116.

[36] *Id.* at 1117.

[37] Alaniz Decl., ¶ 12; *Tower*, 2011 WL 6294485, at *7 ("[O]ne's duty to defend is not analyzed after discovery; it 'must be assessed at the outset of litigation against an insured.' . . . An insurer cannot 'wait out' discovery before determining its duty to defend[.]").

[38] *Id*. at *8; *see Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1112 (N.D. Cal. 2006) ("[A] carrier can be found liable on a bad faith theory for . . . [looking] *only in one self-serving direction* for evidence about the source, nature, or extent of the claimed losses." (emphasis in original)).

as an additional grounds for declining a defense.[39]

## III. THE PERTINENT COVERAGES ARE NOT LIMITED TO PROOF OF LIABILITY FOR THE TORT OF NEGLIGENT MISREPRESENTATION

### A. The District Court's Analysis of the Misrepresentation Claim Should Be Revisited In Light of Applicable California Law

The Court analyzed two distinct potential coverages implicated by a wage and hour case rejecting a defense under both theories. The court denied the potential for coverage based on employment-related misrepresentation, a unique coverage provision within an EPOI policy. The errors included narrowly construing the policy language, contrary to California law, turning the simple generic policy language into a specific tort, then finding that the elements of the tort were not pled. This is absolutely contrary to the directions of the California Supreme Court.

"The 'clear and explicit' meaning of [policy] provisions, interpreted in their 'ordinary and popular sense,' controls judicial interpretation unless 'used by the parties in a technical sense, or unless a special meaning is given to them by usage.' "[40] Coverage for "employment-related misrepresentation to… an employee …" is not language used in any special or technical sense. "Misrepresentation" is a simple term meaning only "to represent incorrectly, improperly, or falsely."[41] Any employment-related misrepresentation will be covered. But the Court erred by turning this phrase into the tort of "negligent misrepresentation," and then asserting that the Tarzi allegations did not allege such a tort. The Court in fn 5 recited all the elements of "negligent misrepresentation" including four elements that are entirely outside the simple dictionary definition of "misrepresentation."

Narrow construction of fact allegations is contrary to California law, especially as "[a]ny doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor."[42] That court's approach did not look at inferences from the express representations

---

[39] *City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 455, 500 (2008) (Estoppel against insurer for change or position following detrimental recline.);

[40] *Montrose*, 10 Cal. 4th at 666.

[41] RANDOM HOUSE UNABRIDGED DICTIONARY, 2d Ed, 1993 (Random House, New York) 1230.

[42] *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 299-300 (1993); *Gauntlett*, 2011 WL 5191808, at *8 ("The *Tarzi* action did not allege any affirmative misrepresentations by Gauntlett, nor is misrepresentation a required element of any of the *Tarzi* causes of action, all of which related to

by G&A that Tarzi was an exempt employee when she contended that she was not. The "representations" included pay stubs as a method of calculation of wage provided to Tarzi and other alleged statements that Tarzi's complaint asserted.

**B. The Broad Categories Of "Inappropriate Employee Conduct" Described By Illinois Union's Policy, Are Implicated**

That an employee was "mis-classif[ied]…as an 'exempt' employee'" (Complaint ¶ 10), is a misrepresentation that would fall under claims for "**Inappropriate Employment Conduct**", which the policy defines as "Employment-related misrepresentation to . . . an Employee . . ." [Alaniz Decl., ¶ 12] Further, that the underlying complaint alleges that "someone had changed her settings and deleted her stored e-mails" (Complaint ¶ 10), falls under the definition of "**Inappropriate Employment Conduct**" as "Employment related…invasion of right of privacy of an Employee[.]"[Alaniz Decl., ¶ 12]

Although Tarzi did not label any claim as "misrepresentation," she certainly alleged that she was not properly paid because her employer misrepresented her status as an exempt employee, thereby reducing the pay she claimed to be entitled to receive. That seems, on its face, to be a significant alleged misrepresentation and certainly employment-related and for which damages were sought.

Without a policy definition of what a misrepresentation would be, such that the allegations would not potentially fall within the scope of this provision, the policy coverage is not limited to articulated tort claims. The court's analysis takes too narrow a view of coverage. It also ignored a subsequent unpublished decision from the Central District of California cited to the court, but not discussed in its opinion.

The court did not explain why it interpreted "employment-related misrepresentation" to mean "negligent misrepresentation." If that had been your client's intention, it could have easily used that language. It is improper for a court to interpret policies in favor of insurers in order to protect an insurer from its own drafting."

---

wage and hour conditions of employment. To view these allegations as 'employment-related misrepresentations' is a strained interpretation of the Policy language in light of the facts presented. *See Cal. Diaries, Inc. v. RSUI Indem. Co.*, 617 F.Supp.2d 1023, 1050 (E.D.Cal.2009).").

### C. Illinois Union Offers An Unreasonable And Strained Construction Of The Scope Of Broadly Defined "Inappropriate Employment Conduct"

Illinois Union's narrow construction of the categories of "**Inappropriate Employment Conduct**" "(3) Employment-related misrepresentation to,…an Employee" and "(6) Any invasion of right of privacy of an Employee…", as constrained by tort principles that require proof of all the formal elements fails to recognize that these coverages, by their plain language, evidence a broader ambit of coverage than common law tort claims.

Illinois Union's reliance on *McKee*,[43] is misguided. There, the court found the plaintiff's interpretation strained and unreasonable, when the exclusion clearly stated "[m]oney, bullion, numismatic property and bank notes", and thus there was no way for the plaintiff to argue that "silver coins" did not fall within those enumerated categories.[44] In stark contrast, Illinois Union's policy does not limit either of the referenced "**Inappropriate Employment Conduct**" to common law claims for "negligent misrepresentation" or the "intrusion upon seclusion" prong of the tort of "invasion of the right of privacy", and they cover "any" kind of "invasion of the right of privacy" or "employment-related misrepresentation."

Illinois Union's reliance on *Cooper*,[45] only bolsters the need for a broader construction of the "invasion of the right of privacy," as that court concluded that "the only interpretation of the policy" requires "objectively reasonable expectations of the insured and common sense."[46] For the "common sense" interpretation of the average insured looking at the policy language would be that they are covered for "any invasion of the right of privacy" as stated in the policy or "employment-related misrepresentation" as long as each is "to an Employee." No layperson would envision adding in tort elements they have no knowledge of, to this plain language.

Illinois Union's citation of *Reserve*,[47] also supports a broad definition of "invasion of the right of privacy" because to do so as Illinois Union does here is curious, as it adopts "a strained

[43] *McKee v. State Farm Fire & Cas. Co.*, 145 Cal.App.3d 772, 776 (1983).

[44] *Id*. at 776.

[45] *Cooper Companies v. Transcontinental Ins. Co*., 31 Cal. App. 4th 1094 (1995).

[46] *Id*. at 1106.

[47] *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800 (1982).

interpretation in order to create an ambiguity where none exists."[48] Here if there is any ambiguity, it is caused by the breadth of the policy language it includes "of an Employee" as a limitation but otherwise infers the broadest possible construction for both categories 3 and 6, especially as the word "any" which means "1. one…or some; one or more without specification or identification…2. whatever or whichever it may be…4. every; all"[49] supports that view.

Even if the policy were to be interpreted to cover only the tort of "invasion of the right of privacy," "California courts have cast doubt on the notion that a complaint must support all elements of a cause of action to state potential liability."[50] Here the underlying complaint does not unambiguously disclaim or make any concession that fact allegations would not fall within the "inappropriate employment conduct", and thus gives rise to a defense. "Indeed, in cases where the complaint alleges facts that support a duty to defend, California courts have concluded that there is no duty to defend *only* when the third-party complaint unambiguously disclaims or concedes an element."[51]

### D. Illinois Union Studiously Ignores the Most Relevant Case Law – *Professional Security*

In *Professional Security*,[52] Judge Otero analyzed an EPLI policy alleging, among other claims, the failure to pay overtime.

---

[48] *Id.* at 807.

[49] RANDOM HOUSE UNABRIDGED DICTIONARY 1989 (2d ed. 1993).

[50] *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1269-1270 (9th Cir. (Cal.) 2010) ("*CNA Casualty* rejected the argument that there was no coverage for a potential malicious prosecution claim even though it was clear that the malicious prosecution claim could not be brought because an essential element was missing (prior termination of the earlier proceeding in favor of the party alleging malicious prosecution).") *See CNA Cas.of Cal. v. Seaboard Sur. Co.*, 222 Cal.Rptr. 276, 281 n.4.

[51] *Id.* at 1270 (emphasis added), *See Low v. Golden Eagle Ins. Co.*, 99 Cal.App.4th 109, 120 Cal.Rptr.2d 827, 829, 831 (2002) ("Plaintiff expressly disclaims seeking recovery for personal injuries attributable to [consuming the product]"); *Hurley Constr. Co. v. State Farm Fire & Cas. Co.*, 10 Cal.App.4th 533, 12 Cal.Rptr.2d 629, 632-33 (1992) (noting that the insured "concede[d] that all repair work was performed for the property owner, not [the third-party plaintiff]" so that the third-party plaintiff "could not assert a claim for breach of warranty"; the property owners would have to "file [ ] their own actions for property damages").

[52] *Professional Security Consultants, Inc. v. U.S. Fire Ins. Co.*, No. CV 10-04588 SJO SSX, 2010 WL 4123786, at *3 (C.D. Cal. Sept. 22, 2010).

> The Policy provides coverage for "any employment-related misrepresentation." The facts in the Underlying Action **specifically allege that Plaintiff "[d]isseminated false information throughout [Plaintiff's] facilities and amongst [Plaintiff's] employees**, **reciting that**, under [Plaintiff's] labor policies and practices and under California law, the members of the Illegal Wages Class **were not entitled to overtime compensation**." (emphasis added)

The allegations of misrepresentation in *Professional Security Consultants* underlying case were express, while those in *Tarzi* were necessarily implied. This case is also distinguishable from *California Diaries*.[53] Nor need there be any question that an employer misrepresentation may be actionable in an EPLI policy.[54]

In denying the G&A MSJ, the court borrowed from this language.[55] The CDE court rejected CDI's argument "that the allegations in the *Gonzalez* complaint . . . that employees were denied mandated meal periods, rest periods, reimbursement for employee uniforms, and wages due at termination, involve 'Employment Practices Wrongful Acts' because they 'reflect employment misrepresentations to employees that Plaintiff would comply with the law regarding such benefits[.]' "[56]

In contrast to the allegations in the *Gonzalez* complaint at issue in *CDI*, the *Tarzi* complaint alleged that G&A improperly characterized Tarzi as an "exempt" employee. These allegations were an "employment-related misrepresentation to . . . an Employee" because a statement regarding employment status can only be construed as "employment-related." Tarzi's allegation that G&A "misclassify[ied] her as an 'exempt' employee," necessarily implying that Tarzi had been informed of this alleged misclassification so as to lull her into continuing to work at lower wages, would

---

[53] *California Dairies Inc. v. RSUI Indem. Co.*, Nos. 10-16684, 10-16730, 2011 WL 6392200 (9th Cir. Dec. 21, 2011) ("EPWA coverage is not illusory, but it is limited to specific claims not asserted here. The Underlying Action does not allege a failure to enforce organizational policies, and misrepresentation is not an element of any of the claims it alleges.").

[54] *California Dairies Inc. v. RSUI Indem. Co.*, 617 F. Supp. 2d 1023, 1050 (E.D. Cal. 2009).

[55] *Gauntlett v. Illinois Union Ins. Co.*, No. 5:CV 11-00455-EJD, 2011 WL 5191808, at *8 (N.D. Cal. Nov. 1, 2011).

[56] *California Dairies*, 617 F. Supp. 2d at 1049 ("CDI's assertion that the CLC violations alleged in the Gonzalez complaint should be viewed as 'employment-related misrepresentations' is a strained interpretation of the Policy language in light of the facts presented. The Gonzalez action is limited to allegations based upon the failure to pay wages and related benefits. The Gonzalez complaint does not allege any misrepresentations by CDI, nor is misrepresentation a required element of any of the Gonzalez causes of action, all of which relate to wage and hour conditions of employment.").

potentially constitute a "misrepresentation" related to her employment.

Misrepresenting to an employee her wage classification as "exempt" if she was not properly "exempt," leading to her long-term reduced compensation, must be characterized as an "employment-related misrepresentation." Indeed, that would be the most fundamental of employment-related misrepresentations. This is entirely different from simple denial of miscellaneous benefits: meal periods, rest periods, and uniform reimbursement, that were addressed by the *CDI* case.

**E. TriTech Does Not Support a Contrary Result**

*TriTech*[57] does not require a different result on the facts herein. There distinct conduct, which did not encompass misrepresentation as to the exempt status of an employee was analyzed. This court has already determined that the exclusions cannot bar coverage for potentially stated claims for relief falling within the express categories of **"Inappropriate Employment Conduct."** The reference to *TriTech* cannot resurrect an exclusionary bar to otherwise potentially available coverage that does not fall within the scope of this exclusionary provision.

The inchoate claims for "misrepresentation" and "privacy invasion" emanate from related interactions between Tarzi and G&A that do not fall directly within the scope of the exclusion 2 or 7. The analysis in *TriTech* is therefore not germane to that issue. Again, there is a distinction between a failure to pay overtime, which might implicate liability under California Labor Code and a misrepresentation as to exempt status, or intrusive conduct leading to the destruction of personal emails, which are within the heart of the categories of inappropriate employment conduct referenced.

## IV. THE "ANY INVASION OF RIGHT OF PRIVACY" CLAIM GIVES RISE TO A DEEFNSE

### A. Any Invasion of Right of Privacy Coverage Is Not Limited to Common Law Privacy Claims But Encompass Broadly, as Here, Alleged Any Form of Highly Objectionable Intrusive Conduct

Contrary to Illinois Union's citations, which cannot alter California Supreme Court precedent, the Tarzi Complaint and Claim need not allege all elements of a claim for "intrusion upon

[57] *TriTech Software Sys. v. U.S. Specialty Ins. Co.*, No. CV10-00094-R VBKX, 2010 WL 5174371 (C.D. Cal. Dec. 13, 2010).

seclusion" in order to trigger a defense under the "any invasion of privacy of an Employee" offense.

**First**, the Complaint can be amended to add such elements.[58]

**Second**, not elements of a tort need be pled to satisfy the broad elements in a defense that speaks in lay language of "any invasion of privacy of an Employee." Courts addressing narrower policy language have readily concluded that "intrusion upon seclusion" is covered. [59]

**Third**, like disparagement, a distinct offense covered by Illinois Union's policy, "invasion of any privacy" (not limited to a "right of privacy") can be inferred from fact allegations without requiring a specific labeled claim for relief asserting invasion of privacy, or meeting the elements for a common law claim of "intrusion upon seclusion."[60] A lay person would understand that any "invasion of right of privacy" would simply refer to intrusion upon exclusion, whether or not the claim meets all elements to satisfy a tort.[61]

**Fourth**, even if a common law privacy claim was required, sufficient facts are pled to evidence potential coverage for such a claim.[62] In *JT Frames*,[63] the Court of Appeal, analyzing

---

[58]*Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005) ("[T]hat the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability.").

[59]*Penzer v Transportation Ins. Co.*, 29 So. 3d 1000, 1006, 1008 (Fla. 2010) ("If 'privacy' was not preceded by 'right of' then the dictionary definition of 'privacy' would be relevant under a plain meaning analysis. . . . [*Terra Nova Ins. Co. v. Fray-Witzer*, 869 N.E.2d 565, 573 (Mass. 2007)] . . . [*Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 860 N.E.2d 307, 316 (Ill. 2006)] ('[A] violation of privacy in the sense of a violation of seclusion is implicit in a TCPA fax-ad claim.')").

[60]*Miranda v. California Capital Ins. Co.*, No. A126778, 2011 WL 1168064, at *4 (Cal. App. (1st Dist.) March 29, 2011) ("Here, the allegations of the Christie complaint suggest that the insureds' intention was not simply to palm off their inferior cows for Christie cows (hoping the substitution would go undetected) but also to disrupt Christie's livestock business by creating the false impression that Christie's cows are substandard and thereby impairing future sales.");

*See Heffelfinger v. Electronic Data Systems Corp.*, 580 F. Supp. 2d 933, 969 (C.D. Cal. 2008) ("The law in this circuit is different. 'Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority.' *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865, *3 (N.D. Cal. Nov. 2, 2005).").

[61]*Miranda*, 2011 WL 1168064, at *3 ("If any facts stated or **fairly inferable in the complaint, or otherwise known or discovered by the insurer**, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage.").

[62]*Netscape Communications Corp. v. Federal Ins. Co.*, No. 08-15120, 2009 WL 2634945, at *1 (9th Cir. (Cal.) Aug. 27, 2009) ("The policy covered claims alleging that AOL had made known to any person or organization material that violated a person's right of privacy. Although the underlying

narrower policy language, agreed that "right of privacy . . . may . . . refer to the right to seclusion or to be free from unwanted intrusion" as did the Court of Appeals in *ACS*.[64] "A person claiming the privacy right of secrecy asserts the right to prevent disclosure of personal information to others."[65] Illinois Union's attempt to argue that each element of a statutorily based tort claim, falling within the ambit of any "invasion of privacy of an employee" must be asserted, improperly adds words of limitation to the policy not set forth therein.[66]

**Fifth**, notably absent from Illinois Union's analysis is any reference to G&A's case authority which clarifies why the element of common law privacy need not be pled to secure a defense. *Lens Crafters*[67] noted that "nothing in the Liberty Policies limits 'right of privacy' to common law right of privacy" which in turn relied on *Park University*,[68] declining to define "right of privacy" by importing Illinois tort standards where insurer failed to adopt that meaning in its policy.[69] Illinois Union's privacy invasion covered cases wholly look to common law definitions and address **entirely distinct** policy language that includes a "right of privacy."[70] As for broader policy coverage is present here, so it's "all tort elements" test is equally inapplicable.[71]

---

claims against AOL were not traditional breach of privacy claims, given that coverage provisions are broadly construed . . . the underlying complaints sufficiently alleged that AOL had intercepted and internally disseminated private online communications.").

[63]*State Farm Gen. Ins. Co. v. JT's Frames, Inc.*, 181 Cal. App. 4th 429 (2010).

[64]*ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 147 Cal. App. 4th 137, 148-49 (2007);

[65]*JT's Frames*, 181 Cal. App. 4th at 445.

[66]*Fireman's Fund Ins. Companies v. Atl. Richfield Co.*, 94 Cal. App. 4th 842, 852 (2001) ("[A]n insurance company's failure to use available language to exclude certain types of liability gives rise to the inference that the parties intended not to so limit coverage.").

[67]*LensCrafters, Inc. v. Liberty Mutual Fire Ins. Co.*, No. C 04-1001 SBA, 2005 WL 146896, at *10 (N.D. Cal. Jan. 20, 2005).

[68]*Park University Enterprises v. American Cas. Co. of Redding, PA*, 314 F. Supp. 2d 1094, 1109 (D. Kan. 2004) *aff'd* 442 F.3d 239 (10th Cir. (Kan.) 2006).

[69]*Hooters of Augusta, Inc. v. American Global Ins. Co.*, No. 04-11077, 2005 WL 3292089, at *3-4 (11th Cir. (Ga.) Dec. 6, 2005) ("We therefore must consider the ordinary meaning of the terms 'privacy,' not whatever specialized [statutory] meaning the word may have taken on in the context of [federal statutory law].").

[70]*ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 147 Cal. App. 4th 137, 147 (2007) ("*Making known to any person or organization written . . . material that violates an individual's right of privacy*." (emphasis in original); *Fibreboard Corp. v. Hartford Acc. & Indem. Co.*, 16 Cal. App. 4th 492, 499 (1993) ("[P]ublication or utterance in violation of any individual's right of privacy . . . .").

[71]*Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*, 686 F. Supp. 2d 1005,

**B. Dictionary Definitions of "Any Invasion of Privacy of All Employees" Include Any Actionable Privacy of "All Employees" Form of "Intrusion Upon Exclusion"**

The available inferences from the phrase "any invasion of right of privacy of an Employee" is inferred solely from the written provisions of the contract.[72] The words in an insurance contract are to be "interpreted in their 'ordinary and popular sense,' unless used by the parties in a technical sense or a special meaning is given to them by usage."[73] (Internal quotation marks omitted) Furthermore, "insurance coverage is 'interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] ... exclusionary clauses are interpreted narrowly against the insurer.' " (internal quotation marks omitted). The phrase must be interpreted in their ordinary and popular sense.[74] Far from being an outlier definition, "the right to protection from interference with seclusion" is the core element that a lay person would anticipate to find coverage for under this policy provision.[75]

**C. Although Any "Invasion of the Right to Privacy" Includes Broader than the Common Law Tort of "Intrusion Upon Seclusion"**

The elements of common law invasion of privacy are: (1) an intentional intrusion into a private place, conversation, or matter (2) in a manner highly offensive to a reasonable person.[76] To prevail on the first element, Ms. Tarzi must show that she had a reasonable expectation of seclusion

---

1007 (N.D. Cal. 2010) ("In contrast to *Total Call*, the Court here found that the allegations in the underlying complaint referred disparagingly to a competitor by clear implication.");

*Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1269 (9th Cir. (Cal.) 2010) ("*Microtec* does not 'stand [ ] for the principle that where the plaintiff acknowledges the existence of facts that could give rise to a cause of action but consciously avoids asserting that cause of action,' there is no duty to defend. Rather, we relied once again on the absence of any *factual* allegations in the complaint. *See Microtec*, 40 F.3d at 971.").

[72] *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003).

[73] *Id*. at 648.

[74] *Scott v. Continental Ins. Co.*, 44 Cal. App. 4th 24, 29 (1996) ("In seeking to ascertain the ordinary sense of words [in an insurance policy], courts in insurance cases regularly turn to general dictionaries.")

[75] RANDOM HOUSE UNABRIDGED DICTIONARY 1540 (2nd ed. 1993) (Turning to the dictionary, the word "privacy" means "**1.** the state of being private; retirement or seclusion; **2.** the state of being free from intrusion or disturbance in one's private life or affairs: *the right of privacy*.").

[76] *Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200, 231 (1998); *see also Medical Lab. Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. (Ariz.) 2002).

or solitude in the place, conversation, or data source. In determining whether an alleged intrusion is "highly offensive" under the second element, relevant considerations include "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded."[77]

In her Complaint, Tarzi took exception to G&A's access to and alleged destruction of e-mails from her computer, boldly declaring in her complaint that when plaintiff returned to work she learned that all of her stored email communications, over 3000, had been deleted from her work computer. . . . Plaintiff then advised defendant G&A that someone had logged into her computer, manipulated the settings and deleted several thousand emails.[78]

Ms. Tarzi's complaint and response to that letter place into direct controversy G&A's alleged search and purported destruction of her e-mails.[79] Ms. Laura Zarosky, Illinois Union's coverage counsel, *knew* prior to issuance of the September 27, 2007 denial letter of G&A's May 25, 2007 letter to Ms. Tarzi which categorically denied the viability of any of her claims but also took issue with her private e-mails, which included private and political e-mail correspondence.

So here, Illinois Union does not adequately explain why these facts cannot create a potential coverage claim for "an invasion of privacy of an Employee," or at minimum, a disputed issue of fact as to whether a privacy invasion occurred, requiring a finding that a defense is owed.[80] Absent such

---

[77]*Medical Lab.*, 306 F.3d at 819 (quoting *Deteresa v. Am. Broad. Cos.*, 121 F.3d 460, 465 (9th Cir. (Cal.) 1997)).

[78]**Doc. 1:5, ¶16.**

[79]**Doc. 16-1:14** ("[W]e have conducted a forensic review of your computer. It reveals your extensive use of e-mail accounts to conduct political and social activities during the time period that you now purport to have been an "hourly" employee rather than working on firm business.").

[80]*Align Tech., Inc. v. Federal Ins. Co.*, 673 F. Supp. 2d 957, 972 (N.D. Cal. Nov. 25, 2009) (J. Whyte) ("[A]ccepting Federal's argument would allow it to cobble together the most favorable allegations from both parties and disregard the rest. . . . At best, the conflicting allegations might create a factual issue . . . . Since a factual dispute does not completely eliminate the possibility of coverage, it does not relieve Federal of its duty to defend. *Mirpad, LLC v. California Ins. Guar. Ass'n*, 132 Cal. App. 4th 1058, 1068 (2005) ('If coverage depends on an unresolved dispute over a factual question, the very existence of that dispute would establish a possibility of coverage and thus a duty to defend.')").

a showing, Illinois Union cannot preclude the possibility of coverage "in all possible worlds."[81]

An employee, using the employer's property (desk, pager or computer) may have an expectation of privacy. The *Quon*[82] case considered a police officer's right privacy in messages transmitted on his city-owned pager and found it to be a factual question, not resolved by reference to ownership of the technology device.[83]

The argument that Tarzi could not succeed in her invasion of privacy claim is misplaced because whether Tarzi's e-mail complaint was "an intrusion into a private place" that was "highly offensive" are factual issues to be determined at trial. The *potential* that an underlying fact finder could find in Tarzi's favor on these issues is sufficient to trigger the duty to defend.

**D. The Analysis Of Any Invasion Of the Right of Privacy Claim Should be Revised**

**1. The Elements of "Any Invasion of the Right to Privacy" are Not Delimited by Any Singular Tort**

There is no descriptive predicate to the coverages even describing the conduct as offense-based in Illinois Union's policy. Rather, the broad category of (g) inappropriate employment conduct simply means "actual or **alleged** (emphasis added) . . . 6. employment related – libel, slander, defamation of character or any invasion of right of privacy of an Employee . . . . The terms "any invasion of right of privacy denote a far broader range of conduct than claims which would meet the elements of any recognized tort. Narrowly interpreting a policy language as if it was stated in tort terminology is contrary to pertinent rules of coverage analysis where there is nothing about the term selected that requires such a narrow construction.[84]

---

[81] *J. Lamb*, 100 Cal. App. 4th at 1039 ("[A]n insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds.").

[82] *Quon v. Arch Wireless Operating Co., Inc.*, 445 F. Supp. 2d 1116 (C.D. Cal. 2006) *aff'd in part, rev'd in part*, 529 F.3d 892 (9th Cir. (Cal.) 2008) *rev'd and remanded sub nom. City of Ontario, Cal. v. Quon*, 130 S. Ct. 2619 (U.S. 2010).

[83] *Quon*, 445 F. Supp. 2d at 1141-42 ("There the Supreme Court held unanimously that the employee could have a reasonable expectation of privacy in the personal items he stored in a desk that was presumably owned by his employer. Expectations of privacy are not tied up by reference to property law.").

[84] *Burgett, Inc. v. Am. Zurich Ins. Co.*, 2:11-CV-01554-MCE, 2011 WL 5884251, at *6 (E.D. Cal. Nov. 23, 2011) ("Under California law, in order to establish a duty to defend, Burgett must show that the underlying Plaintiff alleges that it made derogatory statements about Persis products, causing it pecuniary damages. . . . A requisite element of a claim for disparagement is that the alleged disparaging publication specifically reference the plaintiff; this element can be met by either direct

In *Mez*[85], pursuant to the doctrine of *ejusdem generis*, "a term is interpreted by reference to the surrounding language." There that doctrine was used to prevent the addition of coverage for "patent infringement" from falling within the coverage for "infringement of copyright, title or slogan." *Id.* at 873. *Ejusdem generis,* however, as Illinois Union calls conceder "provides that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated."[86] This does mean that "invasion of the right of privacy" is delimited to the common law tort. It is clustered with a number of other forms of **"Inappropriate Employment Conduct."** Such as "employment-related misrepresentation," which does not reference any singular common-law tort. Privacy is one of several claims including "libel, slander" as well as the redundant "defamation of character" but are not specific iterations of a preceding general concept. There are no "general words followed by the enumeration of particular claims."

In *Capurro*,[87] Judge Illston found references in the allegations sufficient to implicate coverage for infringement of slogan where "Capurro's next letter stated that his 'vehicle had been outfitted with a Certa ProPainters vinyl vehicle wrap publishing or broadcasting (such as by a billboard) services using the trade dress and slogans in issue."[88] Judge Armstrong observed in *LensCrafters*,[89] that common law tort privileges could not define the scope of privacy coverage. So as Judge Kyle recently noted in *European Auto Works*,[90] legalistic and technical definitions of privacy, rather than plain and ordinary meaning of the language used in the policies, are to be

---

or indirect reference.").

[85]*Mez Industries, Inc. v. Pacific National Ins. Co*., 76 Cal.App.4th 856, 872-74 (1999).

[86]*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal.App.4th 1017, 1036, n. 15 (2002).

[87]*Tower Ins. Co. of New York v. Capurro Enterprises Inc.*, C 11-03806 SI, 2011 WL 6294485 (N.D. Cal. Dec. 15, 2011).

[88]*Id*. at *6.

[89]*LensCrafters, Inc. v. Liberty Mutual Fire Ins. Co.*, No. C 04-1001 SBA, 2005 WL 146896, at *10 (N.D. Cal. Jan. 20, 2005) ("[N]othing in the Liberty Policies limits 'right of privacy' to common law right of privacy. *See Park Univ. Enters. v. Am. Cas. Co. of Reading,* 314 F.Supp.2d 1094, 1109 (D.Kan.2004) [*aff'd on appeal*] (noting that if insurer wanted the term "right of privacy" to be defined by importing Illinois tort standards, "it should have indicated as much in the policy.").

[90]*Owners Ins. Co. v. European Auto Works, Inc.*, CIV. 10-2868 RHK/JJG, 2011 WL 3847469 (D. Minn. Aug. 30, 2011).

avoided.[91] *Creative Hospitality*[92] addresses a narrower privacy invasion coverage provision, but one broader than that addressed in the cases upon which Illinois Union provides.[93] So here, the phrase "any" as a predicate to invasion of right of privacy for importing any narrow tort law principles infers the reverse. A proposition which Illinois Union never contemplated.

**2. It Is Of No Moment That The Facts Alleged In Support Of The Privacy Invasion Claim In The *Tarzi* Complaint May Not Withstand A Motion To Dismiss**

The court's order premised that improper search of and destruction of e-mails which implicitly would include personal as well as business information from the context of the suit, should have triggered a defense.[94] It does not matter that there might be a question as to whether such conduct could be an invasion of privacy at a workplace computer based on substantive law because that argument concerns the merits of underlying suit.[95]

**3. Conduct Similar to Which the Court Conceded Was Alleged in Light of the Claim**

Facts brought to insurer's attention in Rule 26 document exchange evidenced facts supporting privacy invasion claims under district court's order. In May 2007 G&A employed Talon Executive Services ("Talon"), a computer forensic analysis firm, who arranged for the analysis of a

---

[91] *Owners Ins.*, 2011 WL 3847469, at *5 ("As the Tenth Circuit aptly noted: '[t]he plain and ordinary meaning of privacy includes the right to be left alone. Certainly, the insurer could impose a more restrictive, technical and legal definition to the term "privacy" following that of the classic tort of invasion of secrecy interests or defamation. Such an approach, however, would construe the language of the contract from the vantage of an insurer or an attorney, rather than the insured.'").

[92] *Creative Hospitality Ventures, Inc. v. United States Liab. Ins. Co.*, 655 F. Supp. 2d 1316 (S.D. Fla. 2009).

[93] *Creative Hospitality*, 655 F. Supp. 2d at 1329 (" '**[T]ort law principles do *not* control judicial construction of insurance contracts.' . . .** [T]he addition of the words 'in any manner' to the term 'publication' should have some function. Here, the words clarify the scope of the meaning of 'publication.' . . . Had Defendants wished to restrict the definition of 'publication' to be narrowed to the meaning of that term under Florida defamation law or to be otherwise qualified, Defendants bore the burden of articulating that limitation." (emphasis added)).

[94] *Gauntlett v. Illinois Union Ins. Co.*, 2011 WL 5191808 at * 9 ("With the above 'invasion of privacy' standard in mind, it is notable that the *Tarzi* complaint alleges none of the essential elements: that her e-mail communications had been searched, that these communications were personal, or that she had a reasonable expectation of privacy in the contents of any of the deleted e-mail communications stored in her work computer.").

[95] *Id*. at *10 ("The facts of this case are distinguishable from cases in which a defendant hacks into someone's home computer or personal email account for purposes of discovering personal information.").

computer that had been used by Tarzi while employed at G&A. [Alaniz Decl., ¶ 4] The process undertaken on behalf of G&A was for Talon to take and copy the hard drive from Tarzi's computer and inspect it, looking for email and other Internet traffic. [Alaniz Decl., ¶ 4] The search of Tarzi's Outlook email activity identified e-mails of Tarzi that were not related to any G&A business activity. [Alaniz Decl., ¶ 6]

Analysis of Tarzi's hard drive included preliminary inspection of archived emails that Tarzi later alleged in the *Tarzi* action as having been deleted; this included reconstruction of deleted or partially deleted or overwritten files on her hard drive. [Alaniz Decl., ¶ 7] The emails that Tarzi alleged as having been deleted were, in fact, reviewed and sometimes reconstructed for that review. [Alaniz Decl., ¶ 7] Analysis of Tarzi's hard drive also disclosed emails to and from personal web based email accounts of Tarzi. [Alaniz Decl., ¶ 7] During the preliminary review of the computer files it was observed, for example, that Tarzi's computer had interacted with websites associated with Arman Tarzi (a non-employee) and research had been done to identify and possibly purchase a new website, www.tarzi.org, activity having nothing to do with the business of G&A. [Alaniz Decl., ¶ 7]

The preliminary analysis by Talon for G&A revealed that there was likely private information on the hard drive and communications of a non-business nature made by Tarzi on the computer. [Alaniz Decl., ¶ 8] Notice of Tarzi's claim was promptly given to defendant National Union and a copy of the Tarzi complaint was provided to National Union on or about September 4, 2007, immediately after service on G&A, On September 27, 2007, National Union denied the defense but never requested any additional information. [Alaniz Decl., ¶ 9] Reports of Talon's activity on behalf of G&A and the results of the preliminary analysis presented by Talon would have been available to the insurer, had it requested that information or had it defended the lawsuit and investigated any claims. [Alaniz Decl., ¶ 11]

### 4. The Court's Order Improperly Focused On "Nature and Kind of Risk" Covered by Policy

Conduct can be multifarious in a suit, and aspects can be broader than the labeled wage and hour claims. While "the duty to defend is measured by the nature and kind of risks covered by the

policy,"[96] that doesn't support Illinois Union's claim that the court can't look to the facts to support claims other than wage and hour.

The Court erroneously relied on "the nature and kind of risk covered by the policy as a limitation upon the duty to defend[.]"[97] As articulated by the California Supreme Court, the "nature and kind of risks" limitation was originally used as a method to *expand* the scope of coverage for a policyholder's benefit where "the insured would reasonably expect such coverage based on the 'nature and kind of risk covered by the policy.'"[98]

California courts apply this doctrine to limit defense only in obvious circumstances, such as the failed effort of the *La Jolla Beach & Tennis Club* to expand its workers compensation policy to cover an ordinary civil damages suit. The court in determining that the workers' compensation policy was not capable of responding to a civil risk clarified the characteristics of the nature in kind risk argument and necessarily why it has no application here. There is nothing in Illinois Union's policy that would limit its application in a suit by a former employee against an employer for damages. Indeed, that is the very nature of the protection sold to the employer by the insurer. The "nature and kind" argument was improperly applied in the context of the *Tarzi* Action. The court fundamentally erred by applying the wrong coverage analysis consistent with the views now improperly advanced by Illinois Union in its Motion.[99]

---

[96] *Frank and Freedus v. Allstate Ins. Co.*, 45 Cal. App. 4th 461, 469 (1996).

[97] *Gauntlett*, 2011 WL 5191808, at * 7.

[98] *La Jolla Beach & Tennis Club, Inc. v. Industrial Indem. Co.*, 9 Cal. 4th 27, 41-42 (1994), citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d at 273-75 and *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 299 (1993).

[99] *Fibreboard Corp. v. Hartford Accident & Indem. Co.*, 16 Cal. App. 4th 492, 497 (1993) was an asbestos injury case that only discussed privacy in dicta. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 300-01 (2009) simply found that the "particular conduct of defendants [was not] highly offensive." *Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996) only held that plaintiffs failed to prove their privacy claim. *TBG Ins. Services Corp. v. Super. Ct.*, 96 Cal. App. 4th 443 (2002) was only a ruling on discovery (concerning a home computer). *Holmes v. Petrovich Dev. Co.*, 191 Cal. App. 4th 1047, 1074 (2011) declined to consider the plaintiff's right of privacy claim after failing to raise it at trial or properly on appeal. Had it defended, it should have made these arguments for its insured. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1086 (1993) ("[W]hen the underlying action is a sham, [the insurer may terminate its duty to defend only by] demur[ing] or obtain[ing] summary judgment on its insured's behalf . . . .").

### 5. Court Improperly Focused On Nature of Damages Instead of Nature of Claim

"Offense" based coverage for offenses such as privacy invasion, do not, however, focus on injury or damages, as did the court's order.[100] But instead, on whether the elements of the policy offense (not some tort) are met.[101]

Damages are available for the tort of "invasion of the right of privacy".[102] Whether damages for "invasion of the right of privacy" are to be awarded requires looking at the allegations in the complaint.[103] Here, the underlying complaint alleges that "someone had changed her settings and deleted her stored e-mails," (Complaint ¶ 10) therefore, showing claims for "invasion of the right of privacy" which entitles damages. Similarly for "misrepresentation" damages are available by looking at the complaint.[104] Here the complaint alleges that the employee was "mis-classif[ied]…as an 'exempt' employee" (Complaint ¶ 10), therefore, showing a claim for "misrepresentation" and an entitlement of damages.

## V. FACTUALLY ASSERTED CLAIMS FOR MISREPRESENTATION AND PRIVACY INVASION SUPPORT DAMAGE RELIEF AND THEREBY ASSERT A POTENTIALLY COVERED LOSS

As New York federal district court observed in finding it was the nature of the claim that was germane to analysis of the duty to defend.[105] This proposition is fully consistent with California law.

[100] *Gauntlett v. Illinois Union Ins. Co.*, 2011 WL 5191808, at *10 ("[D]amages for wage and hour violations, instead of emotional distress or other consequential damages that might be expected to flow from a claim for invasion of privacy.").

[101] *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1032 (2002) (**"Coverage** for personal injury **is not determined by the nature of the damages sought** in the action against the insured, but by *the nature of the claims* made against the insured in that action. Under the personal injury policy provision, '[c]overage ... is triggered by the *offense*, not the injury or damage which a plaintiff suffers.' " (Italics in original, bold emphasis added)).

[102] *Kearney v. Saloman Smith Barney, Inc*., 39 Cal.4th 95, 117 (2006) ("any person who has been injured by any…invasion-of-privacy…recover damages…")

[103] *Id.* at 117, ("[O]ur concern here is solely whether plaintiffs may maintain a civil cause of action for damages and/or injunction relief under section 637.2 under the factual circumstances alleged in the complaint.")

[104] *B.L.M. v. Sabo & Deitsch*, 55 Cal.App.4th 823, 849 (1997) ("[A]lthough pleaded in just one count, the complaint asserts claims for damages under…negligent misrepresentation.")

[105] *Energex Sys. Corp. v. Fireman's Fund Ins. Co.*, No. 96-CIV-5993 (JSM), 1997 WL 358007, at *5 (S.D.N.Y. June 24, 1997) ("Finally, defendant contends that there is no duty to defend because the Anton/Bauer complaint seeks injunctive relief and not damages. While Anton/Bauer's prayer for relief does not specifically seek damages, it does seek whatever relief the Court deems just and

Illinois Union's analysis does not contemplate the potential for an amendment of the pleadings to state a grounds for relief consistent with the remedies available for claims of misrepresentation or privacy invasion as other courts to address this issue have found germane.

## VI. TARZI'S QUEST FOR ATTORNEYS' FEES SOUGHT DAMAGES ASSERTING A POTENTIALLY COVERED LOSS

### A. The *Powerine* Decision Provides a Bright-Line Definition of "Damages" Which Is Not Subject to the Limitation Sought by Illinois Union

In *Powerine*, the California Supreme Court purposely provided a bright-line test, as "many ordered by a court."[106] The court also confirmed its holding in *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807 (1990). There, the court found that the term "damages" could encompass costs an insured is forced to pay in equity. The *Powerine* court clarified that its holding was a limitation on the scope of damages only to the extent it limited "damages" to "money ordered by a court" as opposed to an administrative agency where the claim for relief was administrative costs incurred therein. In *Powerine*, the court answered the very issue posed here in G&A's favor.[107] The court also clarified why its rulings were consistent with the holding in *Vandenberg* finding that the term "damages" may include money paid for contract-related actions.[108]

### B. Illinois Union's Entire Argument Is Based upon Law Which Is No Longer Applicable

Illinois Union's sole authority for the proposition that costs and attorney's fees awarded to claimants cannot constitute "damages" is *Cutler-Orosi*.[109] Illinois Union fails to acknowledge,

---

proper. Under New York law, this encompasses a claim for damages and the insurer must defend. *Doyle v. Allstate Ins. Co.*, 1 N.Y.2d 439, 443, 154 N.Y.S.2d 10, 13 (1956).").

[106] *Powerine*, 24 Cal. 4th at 965 (emphasis added) (" '[Finding a] duty to indemnify commends itself to society generally as laying down a **bright-line rule**.' '**[I]t serves to deter some litigation on the issue and to conclude what it does not deter expeditiously and soundly**.' " (emphasis added)).

[107] *Powerine*, 24 Cal. 4th at 966 ("Not to the contrary is *AIU*. There, we held to the effect that the duty to *indemnify may embrace all money* ordered by a court, including 'money that the insured must give under law as compensation to third parties' and also 'money that the insured must itself expend in equity in order to provide relief of the same sort.' " (emphasis added)).

[108] *Powerine*, 24 Cal. 4th at 966 ("Neither is *Vandenberg v. Superior Court* (1999) 21 Cal. 4th 815 [88 Cal. Rptr. 2d 366, 982 P.2d 229] to the contrary. There, we held to the effect that the duty to indemnify **may embrace *all* money ordered by a court**, including money ordered by a court under the law of torts and, in some cases, money ordered by a court under the law of contracts. (*Id*. at pp. 838-841." (italics in original; bold emphasis added)).

[109] *Cutler-Orosi Unified School District v. Tulare County School Districts Liability/Property Self-*

however, that the principle which it relies on in *Cutler-Orosi* is no longer good law, as it was specifically superceded by the California Supreme Court's decision in *Powerine*.

The *Cutler-Orosi* analysis fails in a critical aspect. The *Cutler-Orosi* court performed no policy interpretation analysis for the term "damages" as it relates to attorney fees. Rather, the court leapt to the conclusion that "[a]ttorney fees . . . are inconsistent with the concept of 'damages'" and that "damages" means "compensation paid to a party of the loss or detriment suffered because of the wrongful act of another." This holding is directly contrary to the *Powerine* bright-line definition of "damages" as "money ordered by a court."

Attorney's fees are an available remedy for the torts of "misrepresentation" and "invasion of the right of privacy" under California Code of Civil Procedure § 1021.5.[110] Here the attorney's fees at issue are not costs and fall under within the policy's definition of damages. "Unless authorized by statute or agreement attorney fees ordinarily are not recoverable as costs."[111] Absent any statute authorizing attorney fees to be recoverable as costs, they are not costs here and thus are recoverable as damages.

## VII. CONCLUSION

For all of the above reasons, this court should vacate said interim order finding that G&A is entitled to a defense and reimbursement of monies paid in settlement with prejudgment interest at the legal rate of 10% per annum from date of invoice and date of consummation of the settlement agreement, subject only to proof of reasonableness. This court may adjudicate that issue on cross-motions with supporting declarations in accord with accepted practice in federal courts within California and such relief should be awarded as part of this order.

Dated: January 12, 2012

**GAUNTLETT & ASSOCIATES**

By: /s/ David A. Gauntlett
David A. Gauntlett

*Insurance-Authority*, 31 Cal. App. 4th 617, 632 (1994).

[110] California Code of Civil Procedure § 1021.5 ("[A] court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right…")

[111] *Mabee v. Nurseryland Garden Centers, Inc.*, 88 Cal. App. 3d 420, 427 (1979).