**LEWIS BRISBOIS BISGAARD & SMITH LLP**
LANE J. ASHLEY (SBN 073296)
E-Mail: ashley@lbbslaw.com
RAQUEL VIDAL (SBN 199597)
E-Mail: vidal@lbbslaw.com
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant ILLINOIS UNION INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID A. GAUNTLETT d/b/a GAUNTLETT & ASSOCIATES, a sole proprietorship,<br><br>Plaintiff,<br><br>vs.<br><br>ILLINOIS UNION INSURANCE COMPANY, an Illinois corporation,<br><br>Defendant. | CASE NO. 11-CV-00455 EJD<br><br>Hon. Edward J. Davila<br><br>**ILLINOIS UNION INSURANCE COMPANY'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>NEW DATE : April 6, 2012<br>TIME : 9:00 a.m.<br>CRTRM. : 1, 5th Floor |

Defendant Illinois Union Insurance Company ("Illinois Union"), hereby submits its reply to the opposition to Illinois Union's motion for summary judgment filed by Plaintiff David A. Gauntlett d/b/a Gauntlett & Associates ("Gauntlett").

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## I. INTRODUCTION

In its opposition, Gauntlett essentially asks this Court to disregard established California law and the Court's own Order Denying Plaintiff's Motion for Partial Summary Judgment, and to expand Illinois Union's employment practices insurance coverage to include "wage and hour" claims, contrary to the manifest intentions of the parties to the insurance contract.

More specifically, Gauntlett improperly seeks to manufacture coverage for Tarzi's uncovered "wage and hour" suit by speculating about unpled claims for misrepresentation and invasion of privacy and imagining that these claims fall within the "inappropriate employment conduct" coverage in the Illinois Union policy. However, neither the pleadings in the underlying suit, nor the extrinsic evidence presented to Illinois Union during the claims process, mentioned invasion of privacy or misrepresentation, nor did they allege the elements necessary to establish either tort. Consequently, Gauntlett's opposition fails to establish a potential for coverage of the Tarzi action.

This is the same conclusion reached by the Court in its November 1, 2011 Order Denying Plaintiff's Motion for Partial Summary Judgment. Because the Court has already found the arguments made by Gauntlett in support of his position to be unpersuasive, Gauntlett devotes a significant portion of his opposition to the argument that the Court erred in its reasoning. However, to the extent that Gauntlett's opposition seeks reconsideration of the Court's November 1, 2011 Order Denying Plaintiff's Motion for Partial Summary Judgment, it is substantively and procedurally deficient. Illinois Union will address Gauntlett's improper motion for reconsideration in its opposition to Gauntlett's cross-motion.

In summary, because Gauntlett cannot establish that the Tarzi complaint included allegations that support a claim for invasion of privacy or misrepresentation, the duty to defend did not arise and Illinois Union is entitled to summary judgment in its favor on the Gauntlett complaint.

## II. ARGUMENT

### A. Gauntlett Has Not Satisfied His Burden Of Proving That The Tarzi Claim Was Potentially Covered Under The Illinois Union Policy Coverage For Inappropriate Employment Conduct

#### 1. Tarzi's wage and hour claims are not covered

Preliminarily, it should be noted that Gauntlett does not contend that there is a potential for coverage for the Tarzi's wage and hour claims. Instead, he asserts that imagined invasion of privacy and misrepresentation claims fall within the scope of the underlying wage dispute.[1] (Doc. 34, p. 13:15-20.)

As stated in the moving papers, it is precisely because the Tarzi claim only alleges facts in support of her wage dispute and because—absent speculation—those same facts do not support a claim for invasion of privacy or misrepresentation, that the court should conclude that the claims are not covered under the policy. (*See TriTech Software Sys. v. U.S. Specialty Ins. Co.*, 2010 U.S. Dist. LEXIS 132245 (C.D. Cal. Dec 13, 2010).) Gauntlett ineffectively attempts to distinguish *TriTech* on the ground that the conduct alleged therein did not encompass a misrepresentation. (Doc. 34, p. 13:9-10.) Yet, here, similar to *TriTech*, the allegations in the Tarzi complaint that Gauntlett misclassified her as an exempt employee also fail to constitute a misrepresentation. Accordingly, the holding in *TriTech* is directly on point.

#### 2. The imagined invasion of privacy claim does not establish a potential for coverage

As explained by the Court in its Order and detailed in Illinois Union's moving papers:

---

[1] Gauntlett mischaracterizes Illinois Union's position by incorrectly stating that Illinois Union focuses on the labels of the claims for relief. To the contrary, Illinois Union's position is that the facts alleged in the Tarzi action fail to establish the elements of any covered personal injury tort.

> A privacy violation of "intrusion upon seclusion" requires a reasonable expectation of privacy and highly offensive conduct. Neither of these essential elements is alleged in the Tarzi complaint, nor are the facts supporting those elements pled. Moreover, Tarzi seeks only damages for wage and hour violations, instead of emotional distress or other consequential damages that might be expected from a claim for invasion of privacy.

(Doc. 26, pp. 14:16-15:5.)

The Court was correct as detailed below.

**(a) <u>The Tarzi complaint failed to allege the necessary elements of the tort of intrusion upon seclusion</u>**

A claim against the insured which does not expressly allege a personal injury offense must, at least, factually allege each of the elements of that offense in order to trigger a potential for "personal injury" coverage. (*See, e.g.*, *Microtec Research, Inc. v. Nationwide Mutual Ins. Co.*, 40 F.3d 968, 972 (9th Cir. 1994); *Total Call Internat., Inc. v. Peerless Ins. Co.*, 181 Cal.App.4th 161 (2010).) Gauntlett's opposition does not address these California decisions. Instead, Gauntlett cites to Florida, Massachusetts and Illinois authorities for the contrary proposition that ***none*** of the elements of the tort for intrusion upon seclusion must be pled for the potential for coverage to arise. (Doc. 34, p. 14:3-5, fn. 59.) These cases directly contradict California law and are neither binding nor persuasive here.

Gauntlett does cite to two cases, *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1269-1270 (9th Cir. 2010) and *CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.App.3d 598 (1986), which he asserts stand for the proposition that "'California Courts have cast doubt on the notion that a complaint must support all elements of a cause of action to state potential liability.'" (Doc. 34, p. 11:7-8, fn. 50.) However, Gauntlett's reliance on these authorities is misplaced.

*CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 608 (1986), is a decision which pre-dates more recent California authority, relies on New York law and which was later disapproved by the California Supreme Court in *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 296 (1993), because the

*CNA* court had failed to consider the potential that extrinsic facts could eliminate coverage. Indeed, the *CNA* case is not representative of current California law. Not only did that court refuse to consider extrinsic evidence, it concluded that the insurer should consider the possibility of later amendments in the pleadings as a basis for coverage (*CNA*, *supra* at 610-611), a proposition repeatedly rejected by subsequent cases. (*See*, *Hurley Construction Co. v. State Farm Fire & Cas. Inc. Co.*, 10 Cal.App.4th 533 (1992); *Low v. Golden Eagle Ins. Co.*, 99 Cal.App.4th 109 (2002).) In any event, the court in CNA found potential coverage for libel, slander, or other defamatory or disparaging material based on allegations that the insured made statements misrepresenting the business, property and rights possessed by plaintiffs. (*CNA, supra*, at 608.) Here, Tarzi's allegations against Gauntlett are missing all three of these critical elements that would support an invasion of privacy claim.

The decision in *Hudson Ins. Co., supra*, 624 F.3d 1264, also is of no assistance to Gauntlett. That case involved a contribution action between two insurers and a question of potential coverage for slogan infringement. The court found coverage noting that the complaint "alleges facts potentially supporting a legal theory of slogan infringement." (*Id*. at 1268.) Here, the facts do not support a claim for invasion of privacy.

Gauntlett also mischaracterizes the holding in *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal.4th 643 (2005) as suggesting that a future amendment can trigger coverage. (Doc. 34, p. 14:2, fn. 58.) The court in *Scottsdale* did not hold that there is a potential for coverage if the underlying complaint might be amended to allege a covered claim. To the contrary the *Scottsdale* court found that the test is whether the necessary "facts [are] stated or fairly inferable in the complaint." (*Scottsdale, supra*, 36 Cal.4th at 654-55.) In *Scottsdale*, the extrinsic facts known to the insurer at the time of tender suggested that the claim may have been covered. (*Id*. at 654.) That is not the case here where neither the allegations of the complaint, nor the extrinsic facts made known to Illinois Union at time of tender suggested a potential claim for the tort of

intrusion upon seclusion. (*See also*, *Hurley Construction, supra*, 10 Cal.App.4th at 538 [Insured may not manufacture coverage by arguing that the third-party complaint might be amended to allege a covered claim.])

Gauntlett's reliance on the unpublished California Court of Appeal decision *Miranda v. Cal. Capital Ins. Co.*, 2011 Cal. App. Unpub. LEXIS 2419 (Cal.App.1st Dist. Mar. 29, 2011) is also mistaken. The *Miranda* court analyzed the duty to defend arising from factual allegations in the context of a claim for trade libel. In *Miranda*, the underlying complaint alleged that the Mirandas made misrepresentations regarding the origin of the substandard cows at issue and alleged an injury of damage to reputation. From that language, the *Miranda* court implied a disparagement claim. In contrast, here, Tarzi did not allege any injury from the e-mail incident. Accordingly, *Miranda* does not support Gauntlett's position that an invasion of privacy offense can be inferred from fact allegations even absent the elements necessary for a common law tort of intrusion by seclusion.

Finally, in his opposition, Gauntlett cites to three federal decisions issued since the Court's prior order, *Tom Kelley Studios, Inc. v. State Farm Gen Ins. Co.*, No. 10-55931, 2011 WL 6396441, at *1 (9th Cir., Dec. 21, 2011); *Burgett, Inc. v. Am. Zurich Ins. Co.* __ F.Supp.2d __, 2011 WL 5884251, at * 4, *5 (E.D. Cal. Nov. 23, 2011); *Tower Ins. Co. of New York v. Capurro Enterprises Inc.*, No. C 11-03806 SI, 2011 WL 6294485 (N.D. Cal. Dec. 15, 2011). He asserts that these cases stand for the proposition that "the failure of the underlying complaint to specifically allege all elements of a covered offense is also insufficient to defeat the duty to defend." (Doc. 34, pp. 1:12-3:3.) However, in all three of these cases the courts found that the necessary factual elements of a "personal injury" tort were either expressly stated or self-evident. That is not the case here.

/ / /

/ / /

/ / /

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

**(b) Extrinsic evidence not provided in this litigation is irrelevant and should not be considered**

Gauntlett also argues that facts made known to Illinois Union ***in this litigation*** establish facts supporting the purported privacy invasion claim. (Doc. 34, p. 20:13-16.) Citing to the declaration of Robert Alaniz.[2] Yet, such new facts made known to Illinois Union for the first time in this litigation are irrelevant to establishing any duty to defend. (*See Gunderson v. Fire Ins. Exchange*, 37 Cal.App.4th 1106, 1117 (Cal.App.1st Dist. 1995) [duty to defend depends on information available to insurer at time of tender, not on information developed by insured after tender that was not communicated to insurer at time of tender]; *Baroco West, Inc. v. Scottsdale Ins. Co.*, 110 Cal.App.4th 96, 103 (2003).) Accordingly, the Court should decline to consider these new facts in connection with its determination regarding the existence of a duty to defend here.

**(c) The authorities relied upon by Gauntlett are not determinative of coverage for invasion of privacy**

The cases relied upon by Gauntlett do not support the argument that there was a potential for coverage of an invasion of privacy offense. The holding in *LensCrafters, Inc. v. Mutual Fire Ins. Co.*, No. C 04-1001 SBA, 2005 WL 146896, at * 10 (N.D. Cal. Jan. 20, 2005) does not help Gauntlett. There the court held that the use of the term "publication" that "violates a person's right of privacy;" in a policy does not limit coverage to common law right of privacy and includes statutory violations of the right to privacy. Thus, the policy language is different. In any event, no statutory violation of privacy rights is involved here.

/ / /

---

[2]This declaration is objectionable as it fails to establish that it is based on personal knowledge and fails to set forth admissible facts. (See Objections to Declaration of Robert Alaniz filed and served concurrently herewith.)

Similarly, Gauntlett's reliance on *Tower Ins. Co. v. Capurro Enters*., 2011 U.S. Dist. LEXIS 144436, 16-17 (N.D. Cal. Dec. 15, 2011) is misplaced. In *Capurro* the court found that the allegations of the complaint together with the extrinsic evidence provided to the insurer at the time of tender established the elements of a cause of action for advertising injury and therefore created the potential for coverage.

In *Owners Ins. Co. v. European Auto Works, Inc*., 2011 U.S. Dist. LEXIS 98153 (D. Minn. Aug. 30, 2011), the court applied Minnesota law, to conclude that a violation of the Telephone Consumer Protection Act involved violations of the "right of privacy." There was no question that the underlying complaint alleged the elements of a cause of action of the violation of the Telephone Consumer Protection Act.

Similarly, in *Creative Hospitality Ventures, Inc. v. United States Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1329 (S.D. Fla. 2009), the court applied Florida law, to conclude that a violation of the Fair and Accurate Transaction Act, involved violations of the "right of privacy." Gauntlett's quote from *Creative Hospitality* conveniently omits all references to the analysis applying Florida law. The complete quote provides:

> Under Florida law, "tort law principles do *not* control judicial construction of insurance contracts." *FCCI Ins. Co. v. Horne*, 890 So.2d 1141, 1143 (Fla. 5th Dist. Ct. App. 2004) (emphasis in original) (citing *Prudential Property & Cas. Ins. Co. v. Swindal*, 622 So.2d 467 (Fla. 1993)). Rather, Florida law requires courts to interpret contracts in such a way as to give effect to every provision, if possible. See *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So.2d 938, 941 (Fla. 1979). As a result, the addition of the words "in any manner" to the term "publication" should have some function. Here, the words clarify the scope of the meaning of "publication."

(*Id*.)

### 3. **<u>Tarzi's allegation regarding her misclassification as an exempt employee does not establish an employment related misrepresentation</u>**

The Court previously rejected Gauntlett's argument that a potential for coverage was triggered by Tarzi's allegations regarding her misclassification as non-exempt, holding that:

> The Tarzi action did not allege any affirmative misrepresentations by Gauntlett, nor is misrepresentation a required element of any of the Tarzi causes of action, all of which related to wage and hour conditions of employment. To view these allegations as "employment-related misrepresentations" is a strained interpretation of the policy language in light of the facts presented. (*See California Dairies, Inc. v. RSUI Indemn. Co.*, 617 F.Supp.2d 1023, 1050 (E.D. Cal. 2009). For these reasons, the Tarzi action could not conceivably impose liability against Plaintiff for an "employment-related misrepresentation."

(Doc., 26, pp. 11:21-12:5.) Again, the Court was correct.

Gauntlett attempts to distinguish *California Dairies, Inc. v. RSUI Indemn. Co.*, 617 F.Supp.2d 1023, 1050 (E.D. Cal. 2009) by summarily stating that the allegation by Tarzi that she was erroneously classified as an "exempt" employee can only be *construed as* "an employment-related misrepresentation." (Doc. 34, p. 12.) Yet, Gauntlett can cite to no California authority standing for the proposition that the misclassification of an employee's status as exempt triggers coverage. Indeed, Tarzi's allegation that she was erroneously classified as an "exempt" employee in violation of one or more Industrial Welfare Commission Wage orders is simply incidental to her "wage and hour" claim. If accepted, Gauntlett's argument would create coverage for an entire subset of "wage and hour" claims based on misclassification.

Gauntlett suggests that *Professional Security Consultants, Inc. v. United States Fire Ins. Co.*, No. CV 10-04588 SJO (SSx) 2010 WL 4123786 (C.D. Cal. Sept. 22, 2010) is instructive. However, *Professional Security* is readily distinguishable as the underlying complaint specifically alleged the elements of a negligent misrepresentation. In *Professional Security* the underlying complaint alleged:

> that [the insured] "[d]isseminated false information throughout [the insured's] facilities and amongst [the insured's] employees, reciting that, under [the insured's] labor policies and practices and under California law, the members of the Illegal Wages Class were not entitled to overtime compensation. . . ."

(*Id.* at * 7-8.) Moreover, the underlying complaint sought unspecified damages. Here, no such affirmative misrepresentations were alleged in the Tarzi complaint. Finally, *Professional Security* involved a motion to dismiss pursuant to Rule 12(b)(6) which tests the legal sufficiency of the claims asserted in the complaint.

Finally, although Gauntlett takes issue with the Court's interpretation of "employment-related misrepresentation" as meaning "negligent misrepresentation" (Doc. 34, p. 9:23-26), the Court's interpretation is entirely consistent with this "offense" based coverage for torts. *See Fibreboard Corp. v. Hartford Acc. Indem. Co.*, 16 Cal.App.4th 492, 511 (1993).

**B. <u>Gauntlett's Reply Does Not Establish The Existence Of A Covered Loss</u>**

Gauntlett focuses on Tarzi's ancillary fee claim as a basis for coverage. However, that claim does not constitute a claim for monetary "damages." (*See* policy sections XI.A.1 and I.1; Gauntlett Decl., ¶ 5, Exh. 1, pp. 19-21; *see also Cutler-Orosi*, 31 Cal.App.4th 617, 629-630 (1994).) Although Gauntlett questions the *Cutler-Orosi* decision on the ground that its been "specifically superseded by the California Supreme Court's decision in *Powerine*" (Doc. 34, pp. 24:17-25:2), this is simply not true. The Supreme Court decision in by *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal.4th 377, 390 (2005) does not address the point and Gauntlett's stated reliance on *Powerine Oil Co. v. Superior Court*, 104 Cal. App. 4th 957, 968 (Cal. App. 2d Dist. 2002) is misplaced as it was superceded by the Supreme Court decision and is not citable. His additional reliance on non-California authorities is unavailing because they are contrary to California law.

**C. <u>Illinois Union Is Not Estopped From Asserting Lack Of Coverage As A Defense</u>**

Finally, Gauntlett desperately argues that Illinois Union should be estopped from reliance on grounds for denial that were not asserted in its denial. California law is clear in that "[e]stoppel cannot ... create coverage under an insurance policy where such coverage did not originally exist." (*Miller v. Elite Ins. Co.*, 100 Cal.App.3d 739, 755 (1980).) Here, Illinois Union denied Gauntlett's claim on the ground that there is no coverage under the policy. Accordingly, Illinois Union is entitled to assert all coverage defenses available to support its determination.

## III. CONCLUSION

For the foregoing reasons, Illinois Union Insurance Company respectfully requests that the Court grant summary judgment in its favor and against Plaintiff David Gauntlett.

DATED: January 20, 2012

LANE J. ASHLEY
RAQUEL VIDAL
LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/ *Raquel Vidal*
Raquel Vidal
Attorneys for Defendant
ILLINOIS UNION INSURANCE COMPANY

# FEDERAL COURT PROOF OF SERVICE

**Case:** ***Gauntlett, etc. v. Illinois Union, etc.*,**
**U.S.D.C. Case No. 11-CV-00455 EJD - File No. 29560.052**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action. My business address is 221 North Figueroa Street, Suite 1200, Los Angeles, CA 90012.

On January 20, 2012, I served the following document(s): **ILLINOIS UNION INSURANCE COMPANY'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

David A. Gauntlett, Esq.
James A. Lowe, Esq.
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, CA 92612
Tel. No.: (949) 553-1010
Fax No.: (949) 553-2050
info@gauntlettlaw.com
Jal@gauntlettlaw.com

Attorneys for Plaintiff
GAUNTLETT & ASSOCIATES

The documents were served by the following means:

☒ **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on January 20, 2012, at Los Angeles, California.

/s/ *Raquel Vidal*
RAQUEL VIDAL

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW