**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com

Attorneys for Plaintiff
GAUNTLETT & ASSOCIATES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| DAVID A. GAUNTLETT d/b/a GAUNTLETT & ASSOCIATES, a California sole proprietorship,<br><br>Plaintiff,<br><br>vs.<br><br>ILLINOIS UNION INSURANCE COMPANY, an Illinois corporation,<br><br>Defendant. | Case No. 11-cv-00455 EJD<br><br>Hon. Edward J. Davila<br><br>**REPLY TO ILLINOIS UNION'S OPPOSITION TO GAUNTLETT & ASSOCIATES' CROSS-MOTION FOR SUMMARY JUDGMENT ON RECONSIDERATION**<br><br>Date: February 12, 2012<br>Time: 9:00 a.m.<br>Ctrm: 1, 5th Floor |

## TABLE OF CONTENTS


**Page**

**I. ILLINOIS UNION'S PROCEDURAL ARGUMENTS LACK MERIT .......... 1**

**A. *Sua Sponte* Reconsideration and Relief are Allowed Despite L.R. 7-9 .......... 1**

**B. G&A's Motion Does Not Impermissibly Repeat Prior Arguments .......... 1**

**C. G&A's Cases Invoke the Court's Inherent Power to Reconsider its Order .......... 1**

**II. ILLINOIS UNION DISTORTS THE "DUTY TO DEFEND" STANDARD .......... 2**

**A. Illinois Union Improperly Urged This Court To Apply A Rule 12(B)(6) Standard .......... 2**

**B. Facts Supporting An Amendment of the Complaint to State a Potentially Covered Claim Suffice .......... 3**

**C. Reconsideration is Appropriate Given the Breadth of the Duty to Defend .......... 4**

**III. ILLINOIS UNION CITES NO AUTHORITY THAT PRECLUDES COVERAGE FOR THE ALLEGED "INAPPROPRIATE EMPLOYMENT CONDUCT" .......... 4**

**A. Illinois' Purportedly "On Point" Case, *Tritech*, is Readily Distinguishable .......... 4**

**B. Neither *Microtec* nor *Total Call* Support a Different Result .......... 5**

**C. Illinois Union's Assertion That The Underlying Action Does Not Allege The Necessary Elements For An "Intrusion Upon Seclusion" Claim Is Simply Untrue .......... 6**

**D. Illinois Union Ignored Its Duty to Investigate All Factual Basis for Potential Coverage Before Denying a Defense .......... 7**

**E. The Cases Cited By Illinois Union Do Not Change This Conclusion .......... 8**

**IV. ILLINOIS UNION'S EVIDENTIARY OBJECTIONS LACK MERIT .......... 9**

**V. THE ELEMENTS OF "INAPPROPRIATE EMPLOYMENT CONDUCT" ARE NOT LIMITED TO DEFINED ELEMENTS OF COMMON LAW TORTS .......... 11**

**A. Right of Privacy .......... 11**

**B. Misrepresentation .......... 13**

**VI. THE TARZI ACTION ALLEGES DAMAGES CONSTITUTING A COVERED LOSS UNDER CALIFORNIA LAW .......... 15**

**VII. CONCLUSION .......... 15**

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alito v. United States*,
593 F. Supp. 1402 (N.D. Cal. 1984) ........ 1

*Allstate Ins. Co. v. Madan*,
889 F. Supp. 374 (C.D. Cal. 1995) ........ 8

*Amarel v. Cornell*,
102 F.3d 1494 (9th Cir. (Cal.) 1996) ........ 1

*Anthem Electronics, Inc. v. Pacific Employers Ins. Co.*,
302 F.3d 1049 (9th Cir. (Cal.) 2002) ........ 8

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (U.S. 2009) ........ 2

*Burch v. Regents of Univ. of Cal.*,
433 F. Supp. 2d 1110 (E.D. Cal. 2006) ........ 11

*California Dairies Inc. v. RSUI Indem. Co.*,
617 F. Supp. 2d 1023 (E.D. Cal. 2009) ........ 13

*Capitol Records, LLC v. BlueBeat, Inc.*,
765 F. Supp. 2d 1198 (C.D. Cal. 2010) ........ 9

*City of Ontario v. Quon*,
130 S. Ct. 2619 (U.S. 2010) ........ 7

*Cool Fuel, Inc. v. Connett*,
685 F.2d 309 (9th Cir. (Cal.) 1982) ........ 1

*Creative Hospitality Ventures, Inc. v. United States Liab. Ins. Co.*,
655 F. Supp. 2d 1316 (S.D. Fla. 2009) ........ 12

*Dobrin v. Allstate Ins. Co.*,
897 F. Supp. 442 (C.D. Cal. 1995) ........ 8

*Haynes v. Office of the Attorney General*,
298 F. Supp. 2d 1154 (D. Kan. 2003) ........ 7

*Hudson Ins. Co. v. Colony Ins. Co.*,
624 F.3d 1264 (9th Cir. (Cal.) 2010) ........ 3, 5

*Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*,
686 F. Supp. 2d 1005 (N.D. Cal. 2010) ........ 6

*Mateo v. M/S Kiso*,
805 F. Supp. 761 (N.D. Cal. 1991) ........ 2

*Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*,
761 F. Supp. 2d 904 (N.D. Cal. (S.F. Div.) 2011) ........ 14

*Microtec Research, Inc. v. Nationwide Mutual Ins. Co.*,
40 F.3d 968 (9th Cir. (Cal.) 1994)........................................................................................ 5

*New Hampshire Ins. Co. v. R.L. Chaides Constr. Co.*,
847 F. Supp. 1452 (N.D. Cal. 1994) ...................................................................................... 7

*O'Connor v. Ortega*,
480 U.S. 709 (1987) ................................................................................................................ 7

*Pension Trust Fund v. Federal Ins. Co.*,
307 F.3d 944 (9th Cir. (Cal.) 2002)........................................................................................ 2

*Pure Power Boot Camp v. Warrior Fitness Boot Camp*,
587 F. Supp. 2d 548 (S.D.N.Y. 2008) .................................................................................... 7

*United States v. Forrester*,
512 F.3d 500 (9th Cir. (Cal.) 2008)........................................................................................ 7

*Winklevoss Consultants, Inc. v. Federal Ins. Co.*,
11 F. Supp. 2d 995 (N.D. Ill. 1998) ....................................................................................... 5

**STATE CASES**

*ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.*,
147 Cal. App. 4th 137 (2007).............................................................................................. 13

*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*,
100 Cal. App. 4th 1017 (2002)........................................................................................... 3, 7

*Baroco West, Inc. v. Scottsdale Ins. Co.*,
110 Cal. App. 4th 96 (2003).................................................................................................. 9

*Certain Underwriters at Lloyd's of London v. Superior Court*,
24 Cal. 4th 945 (2001)........................................................................................................ 15

*CNA Cas. of California v. Seaboard Sur. Co.*,
176 Cal. App. 3d 598 (1986)............................................................................................ 3, 11

*Cutler-Orosi Unified Sch. Dist. v. Tulare County Sch. etc. Auth.*,
31 Cal. App. 4th 617 (1994)................................................................................................ 15

*Egan v. Mutual of Omaha Ins. Co.*,
24 Cal. 3d 809 (1979)......................................................................................................... 7, 8

*Fibreboard Corp. v. Hartford Acc. & Indem. Co.*,
16 Cal. App. 4th 492 (1993)................................................................................................ 13

*Fox v. Pollack*,
181 Cal. App. 3d 954 (1986)................................................................................................ 14

*Giddings v. Industrial Indem. Co.*,
112 Cal. App. 3d 213 (1980).................................................................................................. 2

*Gunderson v. Fire Ins. Exchange*,
37 Cal. App. 4th 1106 (1995)........................................................................................ 8

*Hurley Construction Co. v. State Farm Fire & Cas. Inc. Co.*,
10 Cal. App. 4th 533 (1992)...................................................................................... 3, 4

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006).................................................................................................. 7

*Low v. Golden Eagle Ins. Co.*,
99 Cal. App. 4th 109 (2002)........................................................................................ 3

*Marine Terminals Corp v. Paceco, Inc.*,
145 Cal. App. 3d 991, 193 Cal. Rptr. 687 (Ct. App. 1983) ......................................... 15

*Montrose Chem. Corp. v. Superior Court*,
6 Cal. 4th 287 (1993).................................................................................................. 2

*Powerine Oil Co., Inc. v. Superior Court*,
104 Cal. App. 4th 957 (Cal. App. 2nd Dist. 2002)....................................................... 15

*Powerine Oil Co., Inc. v. Superior Court*,
37 Cal. 4th 377 (2005)................................................................................................ 15

*Scottsdale Ins. Co. v. MV Transp.*,
36 Cal. 4th 643 (2005).............................................................................................. 2, 3

*Total Call International, Inc. v. Peerless Ins. Co.*,
181 Cal. App. 4th 161 (2010)........................................................................................ 5

*Vandenberg v. Superior Court*,
21 Cal. 4th 815 (1999).................................................................................................. 3

**DOCKETED CASES**

*Aurafin-Oroamerica, LLC v. Federal Ins. Co.*,
No. CV 04-115 AHM (C.D.Cal. May 5, 2004) *rev'd, Aurafin-OroAmerica, LLC v. Fed. Ins. Co.*, 188 F. App'x 565 (9th Cir. 2006)........................................................................ 4

*Gates v. Wheeler*,
No. A09-2355, 2010 WL 4721331 (Minn. App. Nov. 23, 2010) .................................... 7

*Gauntlett v. Illinois Union Ins. Co.*,
No. 5:CV 11-00455-EJD, 2011 WL 5191808 (N.D. Cal. Nov. 1, 2011)................... 2, 13

*LensCrafters, Inc. v. Liberty Mutual Fire Ins. Co.*,
No. C 04-1001 SBA, 2005 WL 146896 (N.D. Cal. Jan. 20, 2005)........................ 11, 12

*Miranda v. California Capital Ins. Co.*,
No. A126778, 2011 WL 1168064 (Cal. App. (1st Dist.) March 29, 2011) .................... 15

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Seagate Technologies, Inc.*,
No. 10-17194, 2012 WL 169703 (9th Cir. (Cal.) Jan. 20, 2012) ............................... 4, 15

*Owners Ins. Co. v. European Auto Works, Inc.*,
No. CIV. 10-2868 RHK/JJG, 2011 WL 3847469 (D. Minn. Aug. 30, 2011) .............................. 12

*Professional Security Consultants, Inc. v. U.S. Fire Ins. Co.*,
No. CV 10-04588 SJO SSX, 2010 WL 4123786 ............................................................ 14

*Thomas v. Housing Auth. of County of Los Angeles*,
No. CV 04-6970 MMM ......................................................................................... 1

*Tower Ins. Co. of New York v. Capurro Enterprises Inc.*,
No. C 11-03806 SI, 2011 WL 6294485 (N.D. Cal. Dec. 15, 2011) ..................................... 3, 12

*TriTech Software Sys. v. U.S. Specialty Ins. Co.*,
No. CV10-00094-R VBKX, 2010 WL 5174371 (C.D. Cal. Dec. 13, 2010) ................................. 4

*United States v. Vittaly*,
No. C 04-3186 MHP, 2006 WL 3834229 (N.D. Cal. Dec. 28, 2006) ........................................ 1

**FEDERAL RULES AND STATUTES**

Fed. R. Civ. P. 56(h) ....................................................................................... 1

Fed. R. Evid. 602 ........................................................................................... 10

**STATE RULES AND STATUTES**

Cal. Civ. Proc. Code § 3287 ................................................................................ 15

Cal. Civ. Proc. Code § 1021.5 .............................................................................. 15

**OTHER AUTHORITIES**

L.R. 7-3(a) ................................................................................................. 9

L.R. 7-9 ..................................................................................................... 1

L.R. 7-9(c) .................................................................................................. 1

Rule 12(B)(6) ................................................................................................ 2

Rule 56(g) ................................................................................................... 1

Rule 60(b) ................................................................................................ 1, 2

## I. ILLINOIS UNION'S PROCEDURAL ARGUMENTS LACK MERIT

### A. *Sua Sponte* Reconsideration and Relief are Allowed Despite L.R. 7-9

Illinois Union argues that reconsideration cannot be had unless the movant strictly complies with L.R. 7-9 to obtain permission to file a motion. Not so. "A district court also has the power to reconsider *sua sponte* its orders prior to the entry of judgment."[1] G&A's arguments and authorities support reconsideration and a different summary judgment order regardless of the procedural means to accomplish them. Procedural technicalities should not trump substantive merit where, as here, G&A's arguments and authorities [Docket No. 40] support the same affirmative relief G&A requests by reconsideration.[2]

### B. G&A's Motion Does Not Impermissibly Repeat Prior Arguments

L.R. 7-9(c) does not prohibit reiterating prior arguments in the motion for reconsideration itself, only "repeating" arguments in a "motion for leave to file a motion for reconsideration" which was not filed here. Illinois Union's sanctions request similarly lacks merit.[3]

### C. G&A's Cases Invoke the Court's Inherent Power to Reconsider its Order

The Court's power to reconsider *sua sponte* is not limited by rules of court. Rule 60(b): "[D]oes not affect, interfere with, or curtail the common-law power of the courts . . . to deal with situations where . . . relief should be granted from manifest error . . ."[4] District Courts "are

---

[1] *United States v. Vittaly*, No. C 04-3186 MHP, 2006 WL 3834229 at *2 (N.D. Cal. Dec. 28, 2006) (J. Patel). *See Amarel v. Cornell*, 102 F.3d 1494, 1515 (9th Cir. (Cal.) 1996) ("[T]he interlocutory orders made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment").

[2] *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. (Cal.) 1982) ("[T]he overwhelming weight of authority supports the conclusion that if one party moves for summary judgment and . . . there is no genuine dispute respecting a material fact . . . and that the case cannot be proved if a trial should be held, **the court may *sua sponte* grant summary judgment to the non-moving party**." (emphasis added)).

[3] Fed. R. Civ. P. 56(h) (mis-cited by Illinois Union as Rule 56(g)) only permits sanctions based on "an affidavit or declaration . . . submitted in bad faith or solely for delay" "after notice and a reasonable time to respond." But Illinois Union provides neither. *Alito v. United States*, 593 F. Supp. 1402, 1415 (N.D. Cal. 1984) (decided under former Rule 56(g) which did not require notice and response) **refused** to order sanctions because filing a "substantially identical" subsequent motion does not constitute bad faith.

[4] *Thomas v. Housing Auth. of County of Los Angeles*, No. CV 04-6970 MMM (RCx), 2005 WL 6166322, at *4 (C.D. Cal. Sept. 22, 2005), citing *Bucy v. Nevada Constr. Co.*, 125 F.2d 213, 217 (9th Cir. (Cal.) 1942).

authorized to reconsider interlocutory orders at any time to final judgment, independent of Rule 60(b)" so long as the arguments are not the same as those made earlier.[5] G&A meets this requirement because its argument includes three cases decided after the initial denial order with detailed explanations [Doc. No. 34, pp. 9-11] of why they constitute "law of a strongly persuasive nature to induce the court to reverse its prior decision." *Id*.

## II. ILLINOIS UNION DISTORTS THE "DUTY TO DEFEND" STANDARD

### A. Illinois Union Improperly Urged This Court To Apply A Rule 12(B)(6) Standard

This court ruled that there was a failure to allege sufficient elements of the common law "intrusion upon seclusion" or "negligent misrepresentation" tort to sustain liability.[6] But its analytic approach mirrors that of a Rule 12(b)(6) motion, looking to whether a claim was "probable."[7] This is the wrong standard. Rather, the mere "potential" for coverage not absent any factual specificity as to the elements of the asserted claims suffices.[8] The duty to defend exists "and is not extinguished until the insurer *negates all facts* suggesting potential coverage."[9] Illinois Union assiduously ignores *Pension Trust*,[10] which explains why a defense is due here, so long as the potential coverage identified is not "farfetched and tenuous."[11]

---

[5]*Mateo v. M/S Kiso*, 805 F. Supp. 761, 786 (N.D. Cal. 1991).

[6]*Gauntlett v. Illinois Union Ins. Co.*, No. 5:CV 11-00455-EJD, 2011 WL 5191808, at *9 (N.D. Cal. Nov. 1, 2011).

[7]*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

[8]*Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993) ("Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor.").

[9]*Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005) (emphasis added).

[10]*Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 951-52 (9th Cir. (Cal.) 2002) ("California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty. . . . [In *Barnett*,] . . . the court found a duty to defend because the plaintiffs alleged facts that might give rise to a defamation claim. These **allegations were buried within the complaint to show the moral blameworthiness of the defendants, yet they were enough to trigger the duty to defend**." (emphasis added))

[11]*Giddings v. Industrial Indem. Co.*, 112 Cal. App. 3d 213, 220 (1980) ("An insurer is not obligated to defend its insured where the basis for claiming potential liability under the policy is so tenuous and farfetched.").

**B. Facts Supporting An Amendment of the Complaint to State a Potentially Covered Claim Suffice**

Illinois Union distorts the *Scottsdale* duty to defend standard by limiting its scope to "facts stated or fairly inferable in the complaint" *Id*. at 654. [Doc. 38, p. 5 of 12; Doc. 41, p. 14 of 20] The *Scottsdale* court's full articulation of that standard (which Illinois Union failed to cite), however, comes into effect where "**the complaint could fairly be amended to state a covered liability**." *Id*. at 654. *Scottsdale*'s duty to defend standard is fully consistent with, and favorably relies upon *CNA*,[12] which Illinois Union erroneously claims no longer represents valid California coverage law, as the Ninth Circuit clarified in *Hudson*.[13] Nor is the "wage and hour" label[14] an impediment to potential coverage.[15]

Illinois Union's attempt to discredit *CNA* by citations to *Hurley*[16] and *Low*[17] are unavailing. *Hudson* readily distinguished both *Hurley*[18] and *Low* on this very issue.[19] *Capurro*[20] clarified why *Hurley* was of no moment, noting that "the underlying action charged the insured with participation in conspiracy to engage in fraudulent billing practices," while the insurance policy "limited coverage

---

[12]*CNA Cas. of California v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 610-11 (1986).

[13]*Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1270 (9th Cir. (Cal.) 2010) (citing *CNA*, 176 Cal. App. 3d at 612 (1986) ("[T]wo solitary, unsubstantiated words" ["false disparagement"] that were part of a "patently groundless and 'shotgun allegation' in the middle of ... a completely unrelated federal antitrust cause of action which was, itself, undisputedly *not* covered" [**obligated the insurer**] to defend its insured under its policy's coverage for defamation and unfair competition.").

[14]*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1034 (2002) ("The scope of the duty [to defend] does not depend on the labels given to the causes of action in the third party complaint . . . .").

[15]*Vandenberg v. Superior Court*, 21 Cal. 4th 815, 838 (1999) ("Coverage under a CGL policy is not based upon the fortuity of the form of action chosen by the injured party . . . .").

[16]*Hurley Construction Co. v. State Farm Fire & Cas. Inc. Co.*, 10 Cal. App. 4th 533 (1992).

[17]*Low v. Golden Eagle Ins. Co.*, 99 Cal. App. 4th 109 (2002).

[18]*Hurley*, 10 Cal. App. 4th at 538-39 ("[T]he insured 'concede[d] that all repair work was performed for the property owner, not [the third-party plaintiff]' so that the third-party plaintiff 'could not assert a claim for breach of warranty;' the property owners would have to 'file [ ] their own actions for property damages.'").

[19]*Hudson*, 624 F.3d at 1270 *citing Low*, 99 Cal. App. 4th at 120.

[20]*Tower Ins. Co. of New York v. Capurro Enterprises Inc.*, No. C 11-03806 SI, 2011 WL 6294485 (N.D. Cal. Dec. 15, 2011).

to third party claims for bodily injury and damage to tangible property."[21] Since the insured's alleged conduct could not possibly trigger coverage under the policy, the idea that the complaint could be amended to allege covered conduct was "too attenuated to trigger the duty to defend." *Id.* Like the insurer in *Capurro*, Illinois Union's "reliance on *Hurley* is misplaced." *Id.*

**C. Reconsideration is Appropriate Given the Breadth of the Duty to Defend**

Applying California law, the Ninth Circuit again held that "the duty to defend is so broad that it only requires 'a bare "potential" or "possibility" of coverage as the trigger of a defense duty.' "[22] The court found disparagement coverage despite the underlying complaint not alleging all of the elements of a disparagement claim or including a labeled disparagement cause of action.[23]

Like *Seagate*, the *Tarzi* allegations that G&A "mis-classif[ied] her as an 'exempt' employee" and accessed and deleted more than 3000 "stored email communications," including personal web-based accounts, "create[d] a bare potential for coverage for" misrepresentation and invasion of privacy. This court should follow the *Seagate* district court initially which rejected a duty to defend but subsequently reconsidered that decision and had its ruling affirmed on appeal.[24] By contrast, the district court in *Aurafin-OroAmerica*[25] denied reconsideration, finding no potential for a duty to defend, but had its decision reversed on appeal.

**III. ILLINOIS UNION CITES NO AUTHORITY THAT PRECLUDES COVERAGE FOR THE ALLEGED "INAPPROPRIATE EMPLOYMENT CONDUCT"**

**A. Illinois' Purportedly "On Point" Case, *Tritech*, is Readily Distinguishable**

Illinois Union contends that *Tritech*[26] is "directly on point" without referring to a single factual analogy to the coverage at issue here. [Doc. 38, p. 3 of 12] *Tritech* had no reason to address

[21] *Id.* at *7.

[22] *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Seagate Technologies, Inc.*, No. 10-17194, 2012 WL 169703, at *1 (9th Cir. (Cal.) Jan. 20, 2012).

[23] *Id.* at *1 ("Because the duty to defend is broad and the complaint creates a bare potential for coverage for disparagement, the district court did not err in concluding that the underlying complaint potentially created liability for disparagement . . . .").

[24] *Id.* at *2.

[25] *Aurafin-Oroamerica, LLC v. Federal Ins. Co.*, No. CV 04-115 AHM (RZx) (C.D.Cal. May 5, 2004) *rev'd, Aurafin-OroAmerica, LLC v. Fed. Ins. Co.*, 188 F. App'x 565, 566 (9th Cir. 2006).

[26] *TriTech Software Sys. v. U.S. Specialty Ins. Co.*, No. CV10-00094-R VBKX, 2010 WL 5174371 (C.D. Cal. Dec. 13, 2010).

whether the insured misrepresented the employees' non-exempt status because that issue was never alleged in the underlying action. The case primarily turned on whether the underlying complaint's state labor claims were "similar" enough to claims made under the Fair Labor Standards Act to also exclude them from coverage. *Id*. at *6. But *Tritech* did not address facts evidencing "speculation," or even determining whether certain factual allegations could trigger coverage for a potential claim. G&A does not need to speculate because its alleged misrepresentation is slated on the face of the *Tarzi* complaint.

The *Tritech* court noted that "[n]either the Sims Demand nor the Sims Complaint ever allege that TriTech inaccurately represented or stated that certain employees were exempt instead of non-exempt employees." *Id*. at *3. Unlike *Tritech*, however, the *Tarzi* action expressly alleges that G&A continued to "**mis-classify** her as an 'exempt' employee." [Doc. 10-2, pp. 6-7 of 16, ¶10 (emphasis added)]

**B. Neither *Microtec* nor *Total Call* Support a Different Result**

Illinois Union's reliance on *Microtec*[27] and *Total Call*[28] is misplaced. In *Microtec*, the court never found that the underlying complaint must "factually allege each of the elements of that offense in order to trigger a potential for 'personal injury,' " as Illinois Union claims. [Doc. 38, p. 4 of 12; Doc. 41 p. 13 of 20] Clarifying its position in *Microtec*, the Ninth Circuit held in *Hudson* that it found no coverage for the "personal injury" offense of disparagement not because each element of disparagement was not alleged, but because the underlying plaintiff consciously "elected not to make that claim" **and** there were no factual allegations within the complaint that could even hint at the possibility of coverage.[29] The court found that the "the complaint conspicuously and carefully omitted to allege any wrongdoing with respect to the disparaging advertisements." *Id.* Other courts distinguishing *Microtec's* disparagement coverage analysis are in accord with this view.[30]

---

[27] *Microtec Research, Inc. v. Nationwide Mutual Ins. Co.*, 40 F.3d 968 (9th Cir. (Cal.) 1994).

[28] *Total Call International, Inc. v. Peerless Ins. Co.*, 181 Cal. App. 4th 161 (2010).

[29] *Hudson*, 624 F.3d at 1269.

[30] *Winklevoss Consultants, Inc. v. Federal Ins. Co.*, 11 F. Supp. 2d 995, 1000 (N.D. Ill. 1998) (distinguishing *Microtec*, 40 F.3d at 971 (finding allegations did not amount to disparagement as envisioned by the policy where they did not "aver that Microtec had said anything negative about Green Hills[,]" but observing that if Microtec's product "had bugs, or was slower," such allegations

Not only is there no evidence that Tarzi consciously elected not to make a claim for misrepresentation or invasion of privacy but the underlying complaint includes express fact allegations of misrepresentation (misclassification of "exempt" status) and invasion of privacy (access and deletion of over 3000 stored e-mails, including from personal web-based accounts). Illinois Union's restrictive interpretation of *Microtec* was rejected by the very court that articulated the decision.

Unsurprisingly, *Total Call* also does not stand for Illinois Union's non-existent rule that requiring the underlying complaint to "factually allege each of the elements of that offense in order to trigger a potential for 'personal injury.' " [Doc. 38, p. 4 of 12] In *Infor*,[31] this Court addressed the limited implications of *Total Call* in which coverage was denied, not because the underlying complaint failed to allege each element of defamation or disparagement, but because " 'the injurious false statement' " "did not refer to the plaintiffs specifically or by reasonable implication."[32]

*Infor*, decided by Chief Judge Ware, found that under its facts "the allegations in the underlying complaint referred disparagingly to a competitor by clear implication," thus triggering coverage. *Id*. Although each case came to a different result, *Infor* and *Total Call* each acknowledged that coverage for "personal injury" offenses may be triggered by implicit allegations. Similarly here, the *Tarzi* allegations that G&A allegedly accessed and deleted more than 3000 "stored email communications," including from personal web-based accounts, implies an invasion of privacy sufficient to trigger the duty to defend.

**C. Illinois Union's Assertion That The Underlying Action Does Not Allege The Necessary Elements For An "Intrusion Upon Seclusion" Claim Is Simply Untrue**

The *Tarzi* action alleges the necessary reasonable expectation of privacy, highly offensive conduct, and damages elements. Tarzi had a reasonable expectation of privacy in the 3000-plus "stored email communications" allegedly deleted by G&A because e-mail communications, even by an employee at her work computer, are considered private communications entitled to privacy

---

would have satisfied the covered offense of disparagement.)).

[31] *Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*, 686 F. Supp. 2d 1005, 1006-07 (N.D. Cal. 2010).

[32] *Id.* at 1007 (citing *Total Call*, 181 Cal. App. 4th at 168, 170).

protections.[33] Those 3000 e-mails also included "emails to and from personal web based email accounts of Tarzi," increasing her expectation of privacy in the emails. [Doc. 35, p. 2 of 20, ¶ 7]

G&A's alleged conduct of accessing and deleting over 3000 stored e-mail communications was also highly offensive under an objective standard.[34] Since damages are available for the tort of "invasion of the right of privacy,"[35] the damages element is also met.[36] The *Tarzi* action therefore alleged all of the necessary elements for an "intrusion upon seclusion" claim.

### D. Illinois Union Ignored Its Duty to Investigate All Factual Basis for Potential Coverage Before Denying a Defense

Illinois Union erroneously contends that the facts stated in the Alaniz Declaration should not be considered by the Court because they were made known to Illinois Union during the course of this litigation. [Doc. 38, p. 7 of 12; Doc. 41, p. 9 of 20] Had Illinois Union fulfilled its duty to diligently investigate all **potential** claims against G&A, however, it would have discovered these facts on its own.[37] An insurer's defense obligation can be established not only by the pleaded fact allegations, but also by the inferences emanates from those allegations,[38] which need not be in

[33]*City of Ontario v. Quon*, 130 S. Ct. 2619, 2631 (U.S. 2010) (Search of a person's e-mail account is as intrusive as "a wiretap on his home phone line."). *See O'Connor v. Ortega*, 480 U.S. 709, 718 (1987); *United States v. Forrester*, 512 F.3d 500, 511 (9th Cir. (Cal.) 2008) (Person's privacy interest in mail and e-mail "are identical.");

*Haynes v. Office of the Attorney General*, 298 F. Supp. 2d 1154, 1161-62 (D. Kan. 2003) (Reasonable expectation of privacy in private computer files, despite a computer screen warning that there shall be no expectation of privacy in using the employer's computer system.);

*Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548 (S.D.N.Y. 2008) (Accessing Hotmail, Yahoo!, and Gmail accounts of former employee violated SCA.).

[34]*Gates v. Wheeler*, No. A09-2355, 2010 WL 4721331, at *5 (Minn. App. Nov. 23, 2010) ("The record reflects that Wheeler collected . . . personal emails between Gates and his wife, emails with passwords and financial account information, and private communications between Gates and his accountant. Surreptitious collection of these items would be offensive to the reasonable person.").

[35]*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 115-16 (2006) ("any person who has been injured by any . . . invasion-of-privacy . . . recover damages . . . .").

[36]*J. Lamb, Inc.*, 100 Cal. App. 4th at 1032 ("**Coverage** for personal injury **is not determined by the nature of the damages sought** in the action against the insured . . . . 'Coverage ... is triggered by the *offense*, not the injury or damage which a plaintiff suffers.' ") (Italics in original, bold emphasis added).

[37]*Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 819 (1979) ("[I]t is essential that an insurer fully inquire into possible bases that **might** support the insured's claim." (emphasis added)).

[38]*New Hampshire Ins. Co. v. R.L. Chaides Constr. Co.*, 847 F. Supp. 1452, 1455 (N.D. Cal. 1994) ("NHICO's duty to defend 'must be analyzed and determined on the basis of **any potential liability arising from the facts available** to [the insurer] **from** [the claimant's] **complaint or other sources**

evidence.[39]

Any fact assertions which directly or by inference arguably place part of the underlying claim within the policy trigger the defense.[40] The potentiality standard requires drawing reasonable inferences. Here, these inferences support finding that G&A invaded Tarzi's privacy by accessing and deleting over 3000 "stored email communications" from her work computer. *Egan*, 24 Cal. 3d at 819. Yet Illinois Union never bothered to investigate whether an invasion of privacy claim was potentially implicated even though such a claim was reasonably inferable from the *Tarzi* action which stated that Tarzi "immediately brought [the access and deletion of her emails] to the attention of [G&A's] Technology Manager" and he "confirm[ed] that someone had changed her settings and deleted [] her stored emails." [Doc. 10-2, pp. 6-7 of 16, ¶ 10]

Had Illinois Union adhered to its duty to investigate the invasion of privacy claim it would have sought more information from G&A's technology manager Robert Alaniz since he allegedly verified that Tarzi's emails were accessed and deleted.[41] Therefore the extrinsic evidence presented in the Alaniz Declaration can be considered by the Court because it is information that Illinois Union should have known.

**E. The Cases Cited By Illinois Union Do Not Change This Conclusion**

In *Gunderson*[42] the extrinsic evidence offered in support of a potential claim for property damage "arose **after** [the underlying] complaint was filed and tendered to [the insurer] for defense."

---

available to it at the time of the tender of defense.' ") (citing *CNA Cas. of California*, 176 Cal. App. 3d at 605) (emphasis added).

[39] *Anthem Electronics, Inc. v. Pacific Employers Ins. Co.*, 302 F.3d 1049, 1058 (9th Cir. (Cal.) 2002) (Defense obligation can be established not only by established not only by pleaded fact allegations, but also by inferences which emanate from those allegations, and those inferences need not be in evidence.).

[40] *Dobrin v. Allstate Ins. Co.*, 897 F. Supp. 442, 444 (C.D. Cal. 1995) ("[T]he factual allegations demonstrate that the breach of fiduciary duty claim is premised on the claim that Dobrin misrepresented the nature of the dissolution in order to divert clients away from Raitt, thus causing Raitt damage to his business reputation. Consequently, a potential claim for personal injury as defined under the policy exists.").

[41] *Allstate Ins. Co. v. Madan*, 889 F. Supp. 374, 381 (C.D. Cal. 1995) ("An insurance company's duty to conduct a thorough investigation includes the duty to interview witnesses with significant information.").

[42] *Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106, 1117 (1995).

(emphasis added). Similarly in *Baroco*[43] the issue was whether coverage existed for events that occurred **after** the insurer was provided notice of the claim.

Here, the information in the Alaniz Declaration was available to Illinois Union **at the time of tender** and would have been known by Illinois Union had it met its duty to investigate. Unlike *Gunderson* and *Baroco*, the extrinsic evidence here did not originate from events that occurred after Illinois Union was provided notice of the underlying complaint.

## IV. ILLINOIS UNION'S EVIDENTIARY OBJECTIONS LACK MERIT

Illinois Union filed a separate document titled Objections to Declaration of Robert T. Alaniz [Doc. 39] despite the requirement of L.R. 7-3(a) that "[a]ny evidentiary . . . objections . . . must be contained within the [party's] brief or memorandum." In addition to the procedural irregularity, Illinois Union's evidentiary objections to the entirety of paragraphs 3 through 12 of the Alaniz declaration lack merit. Illinois Union makes a scattershot objection to every substantive statement in the declaration by alleging that the declaration "lacks foundation," is "irrelevant," "conclusory," "speculative," "argumentative," or is "secondary evidence." [Doc. 39]

Illinois Union has made only blanket objections without analysis or explanation of any real basis for excluding the evidence, or even specifically identifying the precise testimony to which the objection is directed. Instead, it objects to every word of every paragraph in the declaration, perhaps expecting the Court to spend its time scrutinizing the declaration for possible defects. The Court need not and should not waste resources on this practice.[44]

For example, Illinois Union makes blanket objection to foundation without explaining any basis for claiming the declarant has insufficient personal knowledge of the facts stated. On the contrary, Robert Alaniz testified that he is the technology and personnel manager of Gauntlett & Associates, having personal knowledge of the facts in the declaration. The declaration concerns

---

[43] *Baroco West, Inc. v. Scottsdale Ins. Co.*, 110 Cal. App. 4th 96, 103 (2003).

[44] *See, e.g.*, *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200, n.1 (C.D. Cal. 2010) ("[I]t is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised. *Doe v. Starbucks, Inc.*, No. SACV 08–0582 AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009). This is especially true when, as here, 'many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence.' (*Id.*)").

technology and personnel matters logically within Mr. Alaniz' managerial authority. He testified to the employment and termination of underlying plaintiff Mariam Tarzi and the employment of a computer forensic analysis company that inspected and analyzed the hard drive of Tarzi's computer on behalf of the insured.

Mr. Alaniz testified about giving notice of the underlying Tarzi employment lawsuit and the response of Illinois Union to that notice. Illinois Union shows no reason to believe that Mr. Alaniz lacks personal knowledge of the matters within the scope of his employment as the "technology and personnel manager" and thus establishes no basis for any evidentiary objection based on a lack of foundation. The Alaniz declaration meets the requirement of Fed. R. Evid. 602.[45]

The Alaniz declaration is relevant to the issue of potential insurance coverage for the Tarzi lawsuit because it discusses her employment, her termination, inspection of her computer (about which she complained in her lawsuit), and about interaction with the defendant insurer here. Because Tarzi specifically complained about her allegedly deleted e-mails, the inspection of her hard drive and the discovery and recovery of her emails, including the possible disclosure of "private" emails, is directly relevant to the defense of the lawsuit, and to the potential for insurance coverage.

The Alaniz declaration is also relevant to the issue before the Court of what evidence was available to Illinois National if it had properly investigated the claim. Illinois Union objects to prevent the Court from considering evidence prejudicial to its position in this case. That is the essence of relevance.

Mr. Alaniz draws no conclusions. He simply reports facts "that would have been available to the insurer had it requested that information or… investigated any claims." Mr. Alaniz merely identifies various documents and witnesses and quotes from the insurer's own coverage denial letter. [Doc. 35, p. 3 of 20, ¶ 11]

Mr. Alaniz does not speculate or make any argument but only lists facts that were available to Illinois Union had it investigated the claim. For example, he explains that certain e-mails were

[45]Fed. R. Evid. 602 provides that "a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter" and that evidence may "consist of the witness' own testimony."

found to or from non-business and therefore possibly private entities. Since Tarzi had expressly complained that G&A had deleted her (presumably private) emails, the information Mr. Alaniz reports in his declaration is not an argument or speculation but simply relates to the underlying allegations. What emails were present or deleted or disclosed was important to defend the Tarzi suit.

The Alaniz testimony may be inconvenient to Illinois Union because it shows that an investigation of the claim would likely have shown the potential for coverage for breach of Tarzi's privacy. Illinois Union's failure to investigate does not justify preventing this court from considering what the insurer refused to investigate and consider.[46] Here too, Illinois Union's objections merely obfuscate and waste time unnecessarily, without focus or explanation. This court should overrule the insurer's evidentiary objections to the Alaniz declaration.

## V. THE ELEMENTS OF "INAPPROPRIATE EMPLOYMENT CONDUCT" ARE NOT LIMITED TO DEFINED ELEMENTS OF COMMON LAW TORTS

### A. Right of Privacy

Under the *CNA*[47] standard, the *Tarzi* allegations that G&A continued to "**mis-classify** her as an 'exempt' employee" and accessed and deleted more than 3000 "stored email communications," including from personal web-based accounts, triggers Illinois Union's duty to defend. Just as an allegation of "false disparagement" was enough to indicate that the underlying complaint could be amended to include coverage for defamation and unfair competition, so too do the *Tarzi* allegations indicate that the complaint could fairly be amended to state covered claims of misrepresentation and invasion of privacy.

Attempting to distinguish the cases cited by G&A, Illinois Union misconstrues the coverage principles articulated. In *LensCrafters*,[48] the court's holding that "nothing in the [] Policies limits 'right of privacy' to common law right of privacy" was not, as Illinois Union suggests, intended to afford coverage only to statutory violations of privacy rights. The crux of the statement is that the

[46] *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118, 1122 (E.D. Cal. 2006) (condemning the prevalent and time-consuming practice of "fil[ing] objections on all conceivable grounds.").

[47] *CNA Cas. of California*, 176 Cal. App. 3d 598.

[48] *LensCrafters, Inc. v. Liberty Mutual Fire Ins. Co.*, No. C 04-1001 SBA, 2005 WL 146896, at *10 (N.D. Cal. Jan. 20, 2005).

"right of privacy" is defined by the policy, not by the elements of any underlying tort.

Here, the Policy's coverage for invasion of privacy is even broader than in *LensCrafters*, providing coverage for "any invasion of right of privacy." So long as the underlying allegations can potentially violate any right of privacy, coverage is triggered. To illustrate its point the *LensCrafters* court noted that coverage was triggered because the underlying allegations potentially violated "California's constitutional right of privacy," even though violations were not alleged in the underlying complaint. *Id.* at *11.

Similarly, Illinois Union's claim that *Capurro* stands for the proposition that "allegations of the complaint together with the extrinsic evidence . . . established the elements of a cause of action . . . creat[ing] the potential for coverage" [Doc. 38, p. 8 of 12] does not withstand scrutiny. Not once does *Capurro* tie the duty to defend standard to the "elements of a cause of action." On the contrary, *Capurro* embodies the broadness of the potentiality standard in triggering the insurer's duty to defend. Even after acknowledging that "there could be some doubt as to whether the facts established the duty to defend," potential coverage arose.[49] *Capurro* additionally reiterated that courts should " 'not examine only the pleaded word but the potential liability created by the suit.' "

*European Auto Works*[50] similarly disregarded Illinois Union's position that the underlying action must allege each element of a covered tort in order to trigger coverage. The court found that the policy at issue, like the Policy here, did "not limit coverage to damages arising from specific causes of action but instead covers advertising injuries arising from a violation of the 'right of privacy,' " defined according to its "plain and ordinary meaning." *Id.* If Illinois Union wanted to restrict coverage such that all of the elements of a particular invasion of privacy must be alleged in order to trigger the duty to defend, it should have "'impose[d] a more restrictive, technical and legal definition to the term 'privacy.'" *Id.* at *5.

In similar fashion, *Creative Hospitality*[51] held that " 'tort law principles do not control

---

[49] *Capurro*, 2011 WL 6294485, at *6.

[50] *Owners Ins. Co. v. European Auto Works, Inc.*, No. CIV. 10-2868 RHK/JJG, 2011 WL 3847469, at *3 (D. Minn. Aug. 30, 2011).

[51] *Creative Hospitality Ventures, Inc. v. United States Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1329 (S.D. Fla. 2009).

judicial construction of insurance contracts.' " G&A's reference to *Creative Hospitality* was not an attempt to pass off Florida law as California's. It simply reflected California's already entrenched principle that the duty to defend is determined by whether the underlying allegations and extrinsic evidence "reveal a possibility that the claim may be covered by the policy," not by whether the underlying allegations meet all of the elements of a particular tort.

**B. Misrepresentation**

The *Inappropriate Employment Conduct* terms under subsection "g" covers "any invasion of right of privacy of an employee." It was inappropriate to limit its scope to the offense-based policy language in earlier opinions, especially those issued by St. Paul which have even more restrictive policy language than that issued by ISO.[52] Facts available to National Union confirmed by the Alaniz Declaration reveal that personal e-mails were among those which were removed and it is implicit that their loss would cause emotional distress. Notably, the allegations are not necessary to assert any element of a wage and hour claim. Nor does the absence of an express claim for damages or injury flowing from alleged e-mail destruction to preclude a duty to defend for the invasion of privacy offense pled.

Despite Illinois Union's continued attempts to show otherwise, *California Dairies*[53] is distinguishable. In *California Dairies* there were no allegations that the insured made any false or erroneous representations regarding its employees. The insured merely believed that because the underlying plaintiffs alleged that they "were denied mandated meal periods, rest periods, [etc.]," it implied a misrepresentation by the insured to its employees that it would comply with the relevant labor laws. *Id*. Under the insured's logic, to break the law means one has automatically committed a misrepresentation that one will obey the law. It was no surprise that the court rejected the insured's argument because it would have the untenable result of providing coverage for

[52] *Gauntlett*, 2011 WL 5191808, at *8; *see ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.*, 147 Cal. App. 4th 137, 147 (2007) ("*Making known to any person or organization written or spoken material that violates an individual's right of privacy.*") (emphasis in original);

*Fibreboard Corp. v. Hartford Acc. & Indem. Co.*, 16 Cal. App. 4th 492, 513 (1993) ("'[A] publication or utterance in violation of any individual's right of privacy[.]'").

[53] *California Dairies Inc. v. RSUI Indem. Co.*, 617 F. Supp. 2d 1023, 1050 (E.D. Cal. 2009).

misrepresentation any time the insured was accused of breaking the law.

In contrast, the *Tarzi* complaint expressly alleged that G&A made a false and erroneous representation regarding its employment status by alleging that Tarzi was "misclassif[ied]" as an "exempt" employee. Unlike the insured's legal gymnastics in *California Dairies*, G&A has a concrete allegation of false representation on which to stand. G&A made a representation regarding an **employee's employment** status under an **employment** categorization reserved exclusively for **employment** arrangements.

Illinois Union claims that *Professional Security*'s[54] "underlying complaint specifically alleged the elements of a negligent misrepresentation," [Doc. 38 p. 9 of 12; Doc. 41 p. 12 of 20] which included: "(1) a misrepresentation; (2) made without reasonable grounds for believing it is true; (3) made with the intent to induce reliance; [and] (4) justifiable reliance by the injured party."[55]

The *Professional Security* allegations sufficed for potential coverage even though they did not specifically allege the elements for negligent misrepresentation.[56] As here, **only one** element of negligent misrepresentation was alleged, i.e. misrepresentation. *Professional Security* does not indicate that the insured allegedly made the misrepresentations without reasonable grounds for believing them to be true or that there was any type of reliance whatsoever. Yet Judge Otero concluded that the underlying allegations could potentially trigger coverage for misrepresentation, as defined by identical policy language as here. *Id*.

The *Professional Security* and *Tarzi* complaints essentially allege the same thing – that the insureds misrepresented to their employees that they were not entitled to overtime compensation. That *Professional Security* accomplishes this more effectively is of no moment.[57] When an

---

[54] *Professional Security Consultants, Inc. v. U.S. Fire Ins. Co.*, No. CV 10-04588 SJO SSX, 2010 WL 4123786 *3 (C.D. Cal. 2010).

[55] *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986).

[56] *Professional Security*, 2010 WL 4123786, at *3 ("The facts in the Underlying Action **specifically alleg[ing] that Plaintiff '[d]isseminated false information throughout [Plaintiff's] facilities and amongst [Plaintiff's] employees**, **reciting that**, under [Plaintiff's] labor policies and practices and under California law, the members of the Illegal Wages Class **were not entitled to overtime compensation**.' ") (emphasis added).

[57] *Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*, 761 F. Supp. 2d 904, 912 (N.D. Cal. (S.F. Div.) 2011) ("The only factual change of any note was the expansion of the somewhat vague term 'steered,' into 'sales employees orally told potential customers....' Making this one point

employee is misclassified as "exempt," the reasonable inference is that the insured misrepresented her entitlement to overtime compensation.[58]

## VI. THE TARZI ACTION ALLEGES DAMAGES CONSTITUTING A COVERED LOSS UNDER CALIFORNIA LAW

G&A has never relied on *Powerine Oil*.[59] The decisions by the California Supreme Court in *Powerine*[60] and *Certain Underwriters*[61] define "damages" as "money ordered by a court" and not subject to the limitations Illinois Union seeks to impose. Both cases were decided after *Cutler-Orosi*[62] and therefore supersede it.

## VII. CONCLUSION

For all the above reasons, this court should deny Illinois Union's Motion for Summary Judgment and grant Gauntlett & Associates' Motion for Reconsideration regarding its Motion for Summary Judgment, awarding its reimbursement for its reasonable attorneys' defense fees,[63] monies paid in settlement and prejudgment interest at 10% per annum from the date of invoice.[64]

Dated: February 6, 2012

**GAUNTLETT & ASSOCIATES**

By: /s/ David A. Gauntlett
David A. Gauntlett

Attorneys for Plaintiff,
GAUNTLETT & ASSOCIATES

---

explicit rather than implicit, however, does not represent a distinction of significant import.").

[58] *Miranda v. California Capital Ins. Co.*, No. A126778, 2011 WL 1168064, at *4 (Cal. App. (1st Dist.) March 29, 2011) ("If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage.").

[59] *Powerine Oil Co., Inc. v. Superior Court*, 104 Cal. App. 4th 957, 968 (Cal. App. 2nd Dist. 2002).

[60] *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal. 4th 377, 394 (2005).

[61] *Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945, 965 (2001).

[62] *Cutler-Orosi Unified Sch. Dist. v. Tulare County Sch. etc. Auth.*, 31 Cal. App. 4th 617 (1994).

[63] Cal. Civ. Proc. Code § 1021.5 ("[A] court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right. . . .").

[64] *Seagate*, 2012 WL 169703, at *3 ("Thus, the district court did not err in determining that interest is to be calculated from the invoice dates."). *See Marine Terminals Corp v. Paceco, Inc.*, 145 Cal. App. 3d 991, 994, 193 Cal. Rptr. 687, 690 (Ct. App. 1983) ("Prejudgment interest" under Cal. Civ. Code § 3287 is appropriate when the amount owed is certain or "capable of calculation." Invoices allow damages to be capable of being made certain by calculation.).