1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DAVID A. GAUNTLETT,

        Plaintiff,

    v.

ILLINOIS UNION INSURANCE COMPANY,

        Defendant.

Case No.: 5:11-cv-00455 EJD

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION FOR RECONSIDERATION**

(Docket Item Nos. 32, 34, 51)

Pending before the court is Defendant Illinois Union Insurance Company's ("Illinois Union") motion for summary judgment, seeking an order that it did not have a duty to defend the underlying lawsuit. See Docket No. 32. Also pending before the court is Plaintiff David A. Gauntlett's ("Gauntlett") Cross-motion for Reconsideration of the court's November 1, 2011 Order Denying Plaintiff's Motion for Partial Summary Judgment ("November 1, 2011 Order"). See Docket No. 34.

Having reviewed the parties' submissions, the court previously found this matter appropriate for decision without oral argument. Civil L.R. 7-1(b). For the reasons discussed below, the court GRANTS Illinois Union's motion for summary judgment and DENIES Gauntlett's motion for reconsideration.

# I. BACKGROUND

**A. The Illinois Union Policy**

Illinois Union issued Employment Practices Liability Insurance Policy No. 1262658 to

Gauntlett, as the named insured, effective July 10, 2006 through July 10, 2007 (the "Policy"). <u>See</u>

Docket No. 10-1. The Policy Declarations Page states that it is an "Employment Practices

Insurance Coverage Claims First Made and Reported" policy. <u>Id.</u> at 1-3. It further provides:

THIS IS A CLAIMS-MADE AND REPORTED POLICY - PLEASE READ IT CAREFULLY.

NOTICE: THIS IS A CLAIMS-MADE AND REPORTED POLICY. EXCEPT AS OTHERWISE STATED, THE COVERAGE PROVIDED BY THIS POLICY IS LIMITED TO LIABILITY FOR EMPLOYMENT-RELATED DISCRIMINATION, EMPLOYMENT-RELATED HARASSMENT AND INAPPROPRIATE EMPLOYMENT FOR WHICH CLAIMS ARE FIRST MADE AGAINST THE INSURED WHILE THE POLICY IS IN FORCE AND THAT ARE REPORTED TO US DURING THE POLICY PERIOD OR ANY LIMITED OR EXTENDED PERIOD.

* * * * *

EMPLOYMENT PRACTICES INSURANCE

* * * * *

This policy covers Claims alleging **Employment-related Discrimination**, **Employment-related Harassment** and **Inappropriate Employment Conduct** liability in accordance with the terms, conditions, limitations and exclusions set forth in this policy. . . .

* * * * *

I. **COVERAGE: WHAT IS COVERED**

    A.  We will pay Loss amounts that the insured is legally obligated to pay on account of a Claim because of an Insured Event to which this policy applies. . . .

    B.  This policy applies only if:

    1.  A Claim is first made against the insured in accordance with Section **III. WHEN COVERAGE IS PROVIDED**;

    2.  The Claim is first reported in accordance with Section **III. WHEN COVERAGE IS PROVIDED** section and the CONDITIONS section **X. A. Duties in the Event of a Claim**; and

* * * * *

    C. **Defense.** We have the right and duty to defend any Claim made or brought against any Insured to which this policy applies . . . .

* * * * *

2

Case No.: 5:11-cv-00455 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION

E. **Duty to pay.** We have the duty to pay any Loss that results from any Claim made or brought against any insured to which this policy applies.... We have the duty to pay Defense Costs incurred for the defense of any Claim which is controlled by us.

\* \* \* \* \*

## EXCLUSIONS: WHAT IS NOT COVERED

\* \* \* \* \*

C. **Employee Retirement Income Security Act and Other Laws.** This policy does not cover any Loss imposed on the insured under:

\* \* \* \* \*

2. The Fair Labor Standards Act (except the Equal Pay Act);

\* \* \* \* \*

7. Rules or regulations promulgated under any of such statutes or laws, amendments thereto or similar provisions of any federal, state or local statutory law or common law;

\* \* \* \* \*

J. **Gain or Profit.** This policy does not cover any Loss based upon, arising out of, or attributable to an insured gaining in fact any profit, remuneration or financial advantage to which such insured was not legally entitled.

\* \* \* \* \*

## III. WHEN COVERAGE IS PROVIDED

A. This policy applies only to Claims arising out of an Insured Event that are first made or brought during the Policy Period and reported during the Policy Period or, if applicable, during the Limited or the Extended Reporting Period. A Claim is considered to be first made on the date a Management or Supervising Employee is served or first receives notice of a Claim. The date of Claim arising from a fact, situation or circumstance reported in accordance with the Notice of Potential Claim Condition will be the date notice is given under the policy.

B. **Limited Reporting Period** means the thirty (30) day period after the policy ends, during which Claims first made or brought during the Policy Period can be reported.

\* \* \* \* \*

## XI. DEFINITIONS

A. **Claim(s)** means:

1. A written demand for monetary damages;

2. A civil proceeding commenced by the service of a complaint or similar pleading . . . . against any insured, . . .

\* \* \* \* \*

3

Case No.: 5:11-cv-00455 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

United States District Court
For the Northern District of California

**B. Defense Costs** mean those reasonable and necessary expenses that result from the investigation, settlement or defense of a specific Claim including attorney fees and expenses, . . .

\* \* \* \* \*

**F. First Party Insured Event** means actual or alleged acts of Employment-related Discrimination, Employment-related Harassment, or Inappropriate Employment Conduct by an insured against an Employee, former Employee or applicant for employment with an insured entity.

**G. Inappropriate Employment Conduct** means any actual or alleged:

\* \* \* \* \*

**3. Employment-related misrepresentation to,** humiliation of, or retaliation against **an Employee**, . . . .

\* \* \* \* \*

6. Employment related libel, slander, defamation of character or **any invasion of right of privacy of an Employee**, . . . .

**H. Insured Event** includes a First Party Insured Event . . .

\* \* \* \* \*

**I. Loss**
1. Loss means the amount the insureds become legally obligated to pay on account of each Claim . . . made against them for . . . Inappropriate Employment Conduct for which coverage applies, including, but not limited to, damages . . . settlements and Defense Costs.

2. Loss does not include . . . amounts owed under federal, state, or local wage and hour laws.

Id. at 1–5 – 1–13 (emphasis added.)

**B. The Tarzi Action**

On May 9, 2007, Mariam Tarzi ("Tarzi"), a long-time Gauntlett employee, wrote a letter to Gauntlett, demanding unpaid overtime wages, plus interest, for hours that she claimed to have worked as a non-exempt employee. Tarzi's letter stated:

"As you know, during my Nine (9) years of employment with the Firm, there have been numerous instances when I had to work more than eight (8) hours in one day or more than forty (40) hours in a week. The time records in the Firm's computer system confirm this fact. However, I have never been paid any overtime.

Although I have been classified as an exempt employee throughout my employment, I have since learned that I am not an exempt employee based on a number of factors, including but not limited to, the nature of my job duties and functions. In view thereof, I am entitled to and hereby request immediate payment for all of my unpaid overtime wages. As evidenced by the attached chart, I am owed unpaid overtime wages, plus interest. Please confirm your intent to honor your obligation regarding my overtime pay by this Friday, May 10, 2007, 9:30 a.m."

4

See Zaroski Decl. Ex. B, Docket Item No. 16-2.

Gauntlett responded to Tarzi's letter on May 25, 2007, addressing her "claim for unpaid overtime wages," and denying that she was an exempt employee. See id. Ex. A at 8, Docket No. 16-1. On June 25, 2007, Gauntlett notified Illinois Union of the Tarzi claim arising from her May 9, 2007 letter and submitted (1) a copy of a Supplemental Claim Information form summarizing Tarzi's claim for unpaid overtime wages, (2) the letter from Gauntlett to Tarzi dated May 25, 2007, and (3) correspondence from the Employment Development Department regarding Tarzi's unemployment claim. See id. ¶ 3, Ex. A, Docket No. 16-1.

On August 16, 2007, Tarzi filed suit against Gauntlett, in an action entitled Tarzi v. Gauntlett & Associates, et al., Consolidated Superior Courts of California, County of Orange, Central District, Case No. 07-CC-08999 (the "Tarzi action"). See Gauntlett Decl. Ex. 2, Docket No. 10-2.

The complaint in the Tarzi action raised the following allegations:

> 5. Plaintiff became employed by defendant as a file clerk in June of 1998. From the onset of her employment, defendant classified her as an "exempt" employee, earning a monthly salary of $3,200. . . .
>
> 6. In late 2000, in addition to her duties as defendant's file clerk, plaintiff was given additional job duties in that she began acting as defendant Gauntlett's personal assistant. . . . But for her file clerk duties, defendant Gauntlett assigned plaintiff her daily and weekly list of projects to be completed. . . . On many occasions, defendant Gauntlett required that plaintiff work late hours, on holiday and weekends to complete her assigned work.
>
> 7. In addition to the tasks set forth above, as part of her "exempt" duties, defendant Gauntlett assigned plaintiff to: . . . [various duties assisting Gauntlett in personal matters.]
>
> 8. As a result of the numerous and diverse tasks Plaintiff was required to perform by defendant Gauntlett, Plaintiff did not take rest periods, often did not take a lunch, or would eat at her desk. When Plaintiff did leave the office on a "lunch break," she often spent the entirety of her breaks running personal errands for defendant Gauntlett. Plaintiff worked overtime on a daily basis to meet defendant Gauntlett's demanding needs and deadlines.
>
> * * * * *
>
> 10. On May 10, 2007, plaintiff provided defendant Gauntlett a letter regarding what she reasonably believed to be his choice to misclassify her as an "exempt" employee. She requested payment for her unpaid overtime hours. When plaintiff returned to work, she learned that all of her stored email communications, over 3000, had been deleted from her work computer. Plaintiff immediately brought this to the attention of defendant's Technology Manager who stated that he knew nothing about

5

Case No.: 5:11-cv-00455 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION

the missing documents. He looked at plaintiff's computer and did, however, confirm that <u>someone had changed her settings and deleted her stored e-mails</u>. Plaintiff then advised defendant Gauntlett that <u>someone had logged into her computer, manipulated the settings and deleted several thousand e-mails</u>. Defendant Gauntlett had no response.

11. On May 14, 2007, after no written or verbal response to her demand for overtime compensation, Plaintiff gave her resignation. On May 17, 2007, defendant Gauntlett responded to plaintiff's resignation letter, by stating: "Preliminary, I would like to state that the firm absolutely disputes your claims for overtime wages." On May 25, 2007, he sent a follow up letter stating that Plaintiff was not entitled to overtime wages.

12. Plaintiff estimates that the total number of straight overtime hours worked between August 15, 2003 and May 14, 2007 to be in excess of 1131 hours. During this same time period, plaintiff estimates that the number of hours worked over 12 in a given work day and/or on legal holidays to be in excess of 117. Within this time period, plaintiff also estimates that the total number of days wherein plaintiff was either forced to perform work related tasks or personal ventures for defendant Gauntlett during her designated meal periods or simply could not take a lunch at all was in excess of 567. Finally, plaintiff estimates that the total number of missed rest breaks was in excess of 1512. To date, and despite her demands, plaintiff has not received any reimbursement for overtime hours, meal breaks or mileage reimbursement.

<u>See</u> Docket Item No. 10-2 (emphasis added).

Based on the above-alleged facts, Tarzi stated the following causes of action:

1.  Failure to pay overtime wages (Cal. Lab. Code §§ 1194, 1199);

2.  Failure to pay wages of terminated or resigned employees (Cal. Lab. Code §§ 201-203, 1199);

3.  Failure to provide Rest Breaks and Meal Periods (Cal. Lab. Code §§ 226.7 and 512);

4.  Failure to comply with Itemized Employee Wage Statement Provisions (Cal. Lab. Code § 226(B)); and

5.  Violations of the Unfair Competition law (Cal. Bus. & Prof. Code §§ 17200-17208).

<u>Id.</u>

Gauntlett provided notice of the <u>Tarzi</u> action to Illinois Union on or about September 4, 2007, after it had been served with the summons and complaint. <u>See</u> Gauntlett Decl. ¶¶ 6-7, Docket No. 10. Gauntlett requested that Illinois Union defend Gauntlett in the <u>Tarzi</u> action and provided Illinois Union with a copy of Tarzi's complaint. <u>Id.</u> No additional information or documents were provided to Illinois Union by Gauntlett in connection with the <u>Tarzi</u> action or <u>Tarzi</u> claim. <u>See</u> Zaroski Decl. ¶ 7, Docket No. 16-1.

Case No.: 5:11-cv-00455 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION

By letter dated September 27, 2007, Illinois Union declined coverage, claiming that the allegations in the Tarzi action could not fall within the Policy's definition of covered "Loss" or were otherwise excluded by the Gain or Profit, the Compensation Earned or Due, and the Employment Contracts Exclusions. Gauntlett Decl. ¶8, Ex. 3, Docket No. 10-3. Gauntlett paid for its own defense in the Tarzi action, and the matter was resolved through settlement. Id. ¶¶ 10-11.

On January 28, 2011, Gauntlett filed the instant declaratory judgment action, seeking to establish that Illinois Union had a duty to defend Gauntlett in the underlying Tarzi action. See Compl., Docket Item No. 1. On February 14, 2011, Gauntlett then filed a Motion for Partial Summary Judgment re: Illinois Union's Duty to Defend. On November 1, 2011, this court denied Gauntlett's motion for summary judgment finding that "the Tarzi action is based solely on 'wage and hour' claims; Plaintiff faced no potential liability to Tarzi for claims of misrepresentation or invasion of privacy. Since the Policy terms clearly preclude wage and hour claims from coverage, Defendant owed Plaintiff no obligation to defend the Tarzi action." November 1, 2011 Order at 15:10-13.

On January 3, 2012, Illinois Union filed this Motion for Summary Judgment. See Docket No. 32. On January 13, 2012, Gauntlett filed its Cross-Motion for Reconsideration, which as discussed above the court deems to be a motion for leave to file a motion for reconsideration. See Docket No. 34.

## II. LEGAL STANDARD

**A. Motion for Summary Judgment**

The standard applied to a motion seeking partial summary judgment is identical to the standard for a motion seeking summary judgment of the entire case. A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material

7

Case No.: 5:11-cv-00455 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION

1    fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party meets this initial

2    burden, the burden shifts to the non-moving party to go beyond the pleadings and designate

3    "specific facts showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324. A genuine

4    issue for trial exists if the non-moving party presents evidence from which a reasonable jury,

5    viewing the evidence in the light most favorable to that party, could resolve the material issue in

6    his or her favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (9th Cir. 1991).

7    Conversely, summary judgment must be granted where a party "fails to make a showing sufficient

8    to establish the existence of an element essential to that party's case, on which that party will bear

9    the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.

10   **B. Duty To Defend**

11        It is a fundamental rule of law that an insurer has a duty to defend an insured if it becomes

12   aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under

13   the insuring agreement. <u>See</u> <u>Food Pro Intern., Inc. v. Farmers Ins. Exchange</u>, 169 Cal. App. 4th

14   976, 985 (2008). It is the insured's initial burden to show that a claim potentially falls within the

15   scope of the insurer's coverages. <u>Royal Globe Ins. Co. v. Whitaker</u>, 181 Cal. App. 3d 532, 537

16   (1986). Where the facts create no potential for coverage, however, there is no duty to defend. "In

17   order to establish a duty to defend, an insured need only establish the existence of a potential for

18   coverage; while to avoid the duty, the insurer must establish the absence of any such potential."

19   <u>Ringler Associates Inc. v. Maryland Casualty Co.</u>, 80 Cal. App. 4th 1165, 1186 (2000) (internal

20   citations omitted). Doubts concerning the potential for coverage, and therefore, the existence of a

21   defense duty must be resolved in favor of the insured. <u>Montrose Chemical Corp. v. Superior Court</u>,

22   6 Cal. 4th 287, 299-300 (1993).

23        Whether an insurer has a duty to defend its insured against a third party complaint is

24   determined as of the time of "the inception of the third party lawsuit." <u>Id.</u> at 295. The insurer does

25   so "by reference to the policy, the complaint and all facts known to the insurer from any source."

26   <u>Id.</u> at 300. As an initial step, the allegations of the complaint are compared with the terms of the

27   policy. <u>Atlantic Mut. Ins. Co. v. J. Lamb, Inc.</u>, 100 Cal. App. 4th 1017, 1033 (2002). "Facts

28   8

Case No.: 5:11-cv-00455 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION

United States District Court
For the Northern District of California

1    extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the

2    claim may be covered by the policy." <u>Id.</u> Whether coverage exists does not depend on the labels

3    given to the causes of action in the third party complaint; instead it rests on whether the alleged

4    facts or known extrinsic facts reveal a possibility that the claim may be covered by the policy." <u>Id.</u>

5    at 1034 (citing <u>Hurley Constr. Co. v. State Farm Fire & Cas. Co.</u>, 10 Cal. App. 4th 533, 538

6    (1992)).

7         These facts must be "known by the insurer at the inception of the third party lawsuit."

8    <u>Gunderson v. Fire Ins. Exchange</u>, 37 Cal. App. 4th 1106, 1114 (1995). An insured may not trigger

9    the duty to defend by speculating about claims that have not been alleged or asserted. <u>Golden Eagle</u>

10   <u>Ins. Corp. v. Cen-Fed Ltd.</u>, 148 Cal. App. 4th 976, 988 (2007); <u>Gunderson</u>, 37 Cal. App. 4th at

11   1114; <u>Hurley Constr.</u>, 10 Cal. App. 4th at 538. "[W]hile the universe of facts bearing on whether a

12   claim is potentially covered includes extrinsic facts known to the insurer at the inception of the suit

13   as well as the facts in the complaint, it does not include made up facts, just because those facts

14   might naturally be supposed to exist along with the known facts. An insured is not entitled to a

15   defense just because one can imagine some additional facts which would create the potential for

16   coverage." <u>Friedman Prof. Mgmt Co., Inc. v. Norcel Mut. Ins. Co.</u>, 120 Cal. App. 4th 17, 34-35

17   (2004).

18   **C. Rules Governing Interpretation of Insurance Policies**

19        In California, insurance contracts are to be interpreted in the same manner as any other

20   contract, with the fundamental goal of giving effect to the mutual intention of the parties. <u>Bank of</u>

21   <u>the West v. Superior Court</u>, 2 Cal. 4th 1254, 1264 (1992). To that end, "words in an insurance

22   policy are to be read in their plain and ordinary sense. Ambiguity cannot be based on a strained

23   instead of reasonable interpretation of a policy's terms . . . ." <u>McKee v. State Farm Fire & Cas. Co.</u>,

24   145 Cal. App. 3d 772, 776 (1983) (citation omitted); <u>see also</u> <u>Am. Intern. Underwriters Ins. Co. v.</u>

25   <u>Am. Guarantee and Liability Ins. Co.</u>, 181 Cal. App. 4th 616, 629 (2010) ("An insurance policy is

26   not rendered ambiguous or uncertain because of a strained or grammatically incorrect reading of

27   the policy's terms. . . . strict construction does not mean strained construction." (internal citations

28

9

Case No.: 5:11-cv-00455 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION

1    and punctuation omitted)). "Any ambiguous terms are resolved in the insureds' favor, consistent

2    with the insureds' reasonable expectations." <u>Safeco Ins. Co. v. Robert S.</u>, 26 Cal. 4th 758, 763

3    (2001). Furthermore, policy exclusions are strictly construed, while exceptions to exclusions are

4    broadly construed in favor of the insured. <u>Health Net, Inc. v. RLI Ins. Co.</u>, 206 Cal. App. 232, 251

5    (2012).

6                                    **III. DISCUSSION**

7    **A. Motion for Leave To File a Motion for Reconsideration**

8            On January 12, 2012, Gauntlett filed its motion entitled, "Cross-motion for Reconsideration

9    Pursuant to Rules 59 and 60 Partial Summary Judgment Motion Re Illinois Union's Duty to

10   Defend and Settle," seeking reconsideration of the court's November 1, 2011 Order. Docket No.

11   34.

12           Gauntlett claims it brings is motion pursuant to Civil L.R. 7-18. This district, however, does

13   not have a Civil L.R. 7-18. The court therefore applies Civil L.R. 7-9, which governs motions for

14   reconsiderations. Pursuant to Rule 7-9, "any party may make a motion before a Judge requesting

15   that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order

16   made by that Judge on any ground set forth in Civil L.R. 7-9 (b). <u>No party may notice a motion for</u>

17   <u>reconsideration without first obtaining leave of Court to file the motion.</u>" Civil L.R. 7-9(a)

18   (emphasis added). Thus, the motion for reconsideration, which was filed without leave of court, is

19   procedurally improper and is therefore DENIED.

20           Gauntlett also claims he bases his motion on Fed. R. Civ. P. 59 and 60. Rule 59(e) allows for

21   a motion to alter or amend a judgment. Here, no judgment has been entered, and therefore no

22   motion under Rule 59(e) can be filed. [1] Similarly, under Rule 60(b), a court may relieve a party

23   from a "final judgment, order, or proceeding." <u>Prudential Real Estate Affiliates, Inc. v. PPR Realty,</u>

24   <u>Inc.</u>, 204 F.3d 867, 880 (9th Cir. 2000); <u>Lowe v. McGraw-Hill Cos.</u>, 361 F3d 335, 343 (7th Cir.

25   _____

26   [1] Additionally, a Rule 59(e) "motion to alter or amend a judgment must be filed no later than 28
     days after the entry of the judgment." Fed. R. Civ. P. 59(e). The motion for reconsideration was
27   filed on January 12, 2012, more than 28 days after the November 1, 2011 Order was issued. For
     this reason as well, Gauntlett's motion can not be brought under Rule 59(e).
28
                                              10
     Case No.: 5:11-cv-00455 EJD
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
     DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR
     RECONSIDERATION

2004). A denial of summary judgment is not a final order. See <u>Miller v. Schoenen</u>, 75 F.3d 1305, 1308 (8th Cir. 1996) (orders denying summary judgment "are not final orders in the traditional sense"); <u>c.f.</u> <u>Padfield v. AIG Life Ins. Co.</u>, 290 F3d 1121, 1124 (9th Cir. 2002) (order denying summary judgment is reviewable when coupled with grant of summary judgment to opposing party). Because an order denying partial summary judgment is interlocutory in nature and is not a judgment and does not terminate an action as to all claims and parties, Rule 59(e) and Rule 60(b) do not apply to Gauntlett's cross-motion for reconsideration.

Accordingly, Gauntlett's motion is DENIED on these bases as well.

**B. Motion for Summary Judgment**

The court therefore turns to Illinois Union's motion for summary judgment that the underlying <u>Tarzi</u> action did not trigger its duty to defend. Docket No. 32.

**1. Estoppel**

As a threshold matter, Gauntlett argues that Illinois Union should be estoped from asserting lack of coverage for invasion of a right of privacy or misrepresentation as a basis for denying its duty to defend.

To demonstrate estoppel, "(1) [t]he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury." <u>Spray, Gould & Bowers v. Assoc. Intern. Ins. Co.</u>, 71 Cal. App. 4th 1260, 1262 (1999). Application of estoppel in the insurance context typically arises from some affirmative, misleading conduct on the part of the insurer. <u>Spray</u>, 71 Cal. App. 4th at 1268. Absent such affirmative conduct, estoppel may arise from silence when the party has a duty to speak, such as where a legal obligation requires disclosure. <u>Id.</u>

Gauntlett does not cite to any evidence in support of any of the elements of estoppel. The entirety of Gauntlett's estoppel argument consists of three sentences:

"Notably, Illinois Union did not initially analyze whether the fact allegations supporting the wage and hour claims could support coverage under its EPLI policy for

11

Case No.: 5:11-cv-00455 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION

1
a form of covered invasion of privacy or a misrepresentation. It is an 'after the fact'
construction which followed the denial of any defense or settlement reimbursement for
the underlying action. It should be estopped from making any arguments to contest any
evidence brought to its attention in connection with this action as an additional grounds
for declining a defense."

Opp'n at 7:13-8:1 (citations omitted), Docket No. 34. Because Gauntlett neither cites the standard
for estoppel nor attempts to demonstrate that that standard is satisfied by Illinois Union's conduct,
the court DENIES Gauntlett's request for estoppel.

**2. Wage and Hour Claims**

Illinois Union argues that Tarzi's wage and hour claim are not covered by the Policy. The
Policy only covers "Loss amounts that the Insured is legally obligated to pay on account of a Claim
because of an Insured Event." See Docket No. 10-1 at 1-5. Wage and hour violations not included
in the definition of any "First Party Insured Event." See id. at 1-13. Additionally, the definition of
"Loss" excludes "[a]mounts owed under federal, state or local wage and hour laws." See id. at 1-
14. Additionally, the Policy bars coverage for any loss imposed on the insured under the Fair Labor
Standards Act ("FLSA") or similar provisions of state statutory law, such as the California Labor
Code or Business and Professions Code. See id. at 1-6; c.f. TriTech Software Systems v. U.S.
Specialty Ins. Co., 2010 WL 5174371, at *6-7 (C.D. Cal. Dec. 13, 2010) (explaining the purpose of
an FLSA exclusion and the extent to which it covers similar state claims). Gauntlett does not
dispute that the wage and hour claims are excluded from coverage.

Although Tarzi's wage and hour claims are excluded from coverage, Tarzi could still
maintain a claim for misrepresentation or invasion of privacy claims against Gauntlett. Even if an
exclusion applies to a cause of action that is expressly pleaded, the defense may still arise for other
claims that fall outside the excluded categories. See, e.g., National Union Fire Ins. Co. of
Pittsburgh, PA v. Seagate Technology, Inc., 233 Fed. Appx. 614, 616 (9th Cir. 2007). In other
words, claims by Tarzi for misrepresentation or invasion of privacy against Gauntlett could
proceed and succeed even if Tarzi were not entitled to unpaid wages. The court therefore considers
whether claims of misrepresentation or invasion of privacy were potentially alleged in the Tarzi
action, triggering Illinois Union's duty to defend.

12
Case No.: 5:11-cv-00455 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION

**3. Invasion of Right of Privacy**

Gauntlett and Illinois Union dispute whether the underlying complaint raised allegations that potentially support a claim for invasion of privacy. Gauntlett bases its argument on Tarzi's allegation that someone had logged into her work computer, manipulated the settings, and deleted 3,000 e-mails from her work computer. <u>See</u> Gauntlett Decl. Ex. 2 ¶ 10, Docket Item No. 10-2.

The Policy states provides coverage for "Inappropriate Employment Conduct," which means "[e]mployment related libel, slander, defamation of character or <u>any invasion of right of privacy of an Employee</u>, . . . ." <u>See</u> Docket No. 10-1 at 1-13 (emphasis added). The court previously interpreted "any invasion of a right of privacy" to refer to common law torts involving the invasion of a right of privacy because,

> "California courts have recognized that insurance coverage for 'offense' based claims, including invasion of privacy, typically relate to one or more types of common law torts. <u>See ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 147 Cal. App. 4th 137, 147 (2007); <u>Fibreboard Corp. v. Hartford Acc. & Indem. Co.</u>, 16 Cal. App. 4th 492, 511 (1993). Pursuant to the doctrine of *ejusdem generis*, this conclusion is reinforced by the location of the term 'invasion of right of privacy' next to other torts, such as libel and slander."

November 1, 2011 Order at 12:11-16. The court then determined that the <u>Tarzi</u> Complaint alleged none of the elements of a privacy violation based on intrusion. <u>Id.</u> at 13. The court specifically noted that the Tarzi Complaint did not allege

> "that her e-mail communications had been searched, that these communications were personal, or that she had a reasonable expectation of privacy in the contents of any of the deleted e-mail communications stored in her work computer. Tarzi also did not allege that she was offended by the event or suffered mental anguish or any other damage as a result."

<u>Id.</u> at 13:11-16. Furthermore, the court found that the allegation alone that 3,000 emails were deleted from Tarzi's work computer did not raise a potential that a violation of the right of privacy coverage was being asserted. <u>Id.</u> at 13-15.

In line with the court's prior holding, Illinois Union moves for summary judgment that the <u>Tarzi</u> action did not trigger its duty to defend Gauntlett from liability for invasion of the right of privacy. Specifically, Illinois Union argues that the invasion of privacy language coverage relates to common law invasion of privacy torts, and the <u>Tarzi</u> Complaint did not allege any of the

13

Case No.: 5:11-cv-00455 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION

United States District Court
For the Northern District of California

elements of a privacy tort. Illinois Union further argues that Tarzi could not claim she had a right of privacy in her work computer.

Gauntlett argues that the plain and ordinary meaning of "any invasion of right of privacy" is not limited to common law privacy torts.[2] Gauntlett argues that a layperson would understand this language to mean coverage for invasion into a right to protection from interference with seclusion. See Opp'n at 16:10-12 (citing the dictionary definition of privacy). Gauntlett further argues that, even if coverage were limited to common law torts, the Tarzi Complaint raises a potential "intrusion upon seclusion" tort violation[3] and that all of the elements of a particular tort need not be pleaded in order to raise a potential for coverage sufficient to trigger and insurer's duty to defend. Id. at 16:14-18:9.

The court agrees with Gauntlett that, in determining whether a potential for coverage existed, the test is not whether Tarzi alleged facts sufficient to state a claim for relief under a common law theory of invasion of privacy. Twin Star Ventures v. Universal Underwriters Ins. Co., No. 10-4284 MMC, 2012 WL 948842, at *4 (N.D. Cal. Mar. 20, 2012). Rather, the test is whether Tarzi's allegations raised a "potential for coverage" that a claim for invasion of the right of privacy could be asserted. See Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 26 (1995); CNA Casualty v. Seaboard Surety Co., 176 Cal. App. 3d 598, 609 n. 4 (1986) (holding "it is not [the] insurer's place to analyze and evaluate the underlying claim of liability in order to reject the defense of any claim

---

[2] Gauntlett cites only one case applying California law in support of this argument. In Lens Crafters, Inc. v. Liberty Mutual Fire Ins. Co., No. C 04-1001 SBA, 2005 WL 146896, at *10 (N.D. Cal. Jan. 20, 2005), a court in this District held that the "right of privacy" was not limited to common law tort claims but also included the California constitutional right to privacy and statutory privacy rights.

[3] Under California law, a privacy violation based upon "intrusion" consists of two elements: "First, the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy. Second, the intrusion must occur in a manner highly offensive to a reasonable person. These limitations on the right to privacy are not insignificant. Nonetheless, the cause of action recognizes a measure of personal control over the individual's autonomy, dignity, and serenity. The gravamen is the mental anguish sustained when both conditions of liability exist." Hernandez v. Hillsides, Inc., 47 Cal. 4th 272, 286 (2009) (internal citations omitted) (holding that employer's surveillance system did not violate the plaintiff employee's right to privacy); see also Shulman v. Group W. Productions, Inc., 18 Cal. 4th 200, 231 (1998); Taus v. Loftus, 40 Cal. 4th 683, 725 (2007).

14

United States District Court
For the Northern District of California

that is not meritorious"). Where a potential for coverage existed, the insurer was obligated to defend, even if it was aware of a "sure-fire" defense to the underlying action, such as the "absence of an element of a properly pleaded cause of action." See id. at 612 n. 7 (internal quotation and citation omitted).

Applying this standard, however, the allegations in the Tarzi Complaint—that "all of her stored email communications, over 3000, had been deleted from her work computer;" "someone had changed her settings and deleted of her stored e-mails;" and "someone had logged into her computer, manipulated the settings and deleted several thousand e-mails"—do not raise a potential for a claim for invasion of a right of privacy. See Gauntlett Decl. Ex. 2 ¶ 10, Docket No. 10-2. No potential claim is raised regardless of whether the invasion of a right of privacy coverage is defined by the intrusion upon seclusion tort or by Gauntlett's proposed plain meaning because Tarzi did not allege facts indicating that she had a right to privacy or a right to protection from interference with seclusion with respect to her work computer or the emails stored on her work computer. The complaint contains no allegations regarding the nature of those emails, whether the work computer contained any personal or private information, or facts otherwise showing Tarzi had an expectation of privacy or of seclusion in her work computer. Gauntlett is not entitled to a defense just because one can imagine some additional facts which would create the potential for coverage. See Friedman Prof. Mgmt Co., Inc., 120 Cal. App. 4th at 34-35.

In the court's November 1, 2011 Order, the court reviewed the absence of any allegations regarding private, secret, or personal content on Tarzi's work computer and case law indicating that an allegation that an employer accessed an employee's work computer does not, by itself, implicate a right to privacy. The court reiterates its previous finding that the Tarzi Complaint does not allege any facts demonstrating the potential that an invasion of privacy claim could be asserted.

Even if the Tarzi Complaint does not raise the potential for a privacy claim, Gauntlett argues that had Illinois Union requested additional information before denying the claim, it would have received evidence supporting privacy invasion claims. Specifically, in May 2007, Gauntlett employed Talon Executive Services ("Talon"), a computer forensic analysis firm, who arranged for

15

Case No.: 5:11-cv-00455 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION

the analysis of a computer that had been used by Tarzi while employed at Gauntlett. Alaniz Decl., ¶ 4, Docket No. 35.[4] Talon copied the hard drive from Tarzi's computer and inspected it, looking for email and other Internet traffic. Id. The analysis of Tarzi's hard drive disclosed emails to and from Tarzi's personal web based email accounts. Id. ¶ 7. Reports of Talon's activity would have been available to Illinois Union had it requested that information. Id. ¶ 11.

Although "[f]acts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy," Horace Mann Ins. Co., 4 Cal.4th at 1081, those facts must be "known by the insurer at the inception of the third party lawsuit," Gunderson, 37 Cal. App. 4th at 1114 (emphasis added). Gauntlett has not provided any authority indicating that the insurer's duty to defend also hinges on extrinsic facts that are not known by the insurer and are not tendered to the insurer. Accordingly, the court does not consider the Talon forensic analysis in determining whether Illinois Union's duty to defend was triggered in the Tarzi action.

In sum, the court concludes that the Tarzi Complaint did not allege facts that support a potential claim of invasion of a right of privacy and that Gauntlett has not provided extrinsic evidence known to Illinois Union that would otherwise reveal a possibility of a privacy claim.

**4. Misrepresentation**

Gauntlett and Illinois Union dispute whether the underlying complaint raised allegations that potentially support a claim for employment-related misrepresentation. Gauntlett bases its argument on Tarzi's allegations that Gauntlett had "mis-classif[ied] her as an 'exempt' employee" but that she "was a non-exempt employee" and therefore Gauntlett was required to pay Tarzi overtime. See Gauntlett Decl. Ex. 2 ¶¶ 5, 10, 15, Docket No. 10-2.

---

[4] On January 20, 2012, Illinois Union filed a document entitled, "Illinios Union Insurance Company's Objections to Declaration of Robert T. Alaniz in Opposition to Illinois Union's Motion for Summary Judgment." See Docket No. 39. Civil Local Rule 7-3(c) provides that "[a]ny evidentiary . . . objections to the opposition must be contained within the reply brief or memorandum." Civil L.R. 7-3(c). Because Illinois Union's separately-filed objections are procedurally improper, the court does not consider them for the purposes of this Order.

16

Case No.: 5:11-cv-00455 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION

United States District Court
For the Northern District of California

1    The Policy provides coverage for "Inappropriate Employment Conduct," which means

2  "Employment-related misrepresentation to, humiliation of, or retaliation against an Employee." <u>See</u>

3  Docket No. 10-1. Gauntlett previously argued Tarzi had pleaded a claim for the tort of negligent

4  misrepresentation, which triggered coverage for an employment-related misrepresentation. <u>See</u>

5  November 1, 2011 Order at 11; Pl's Reply to Def.'s Opp'n to Mot. for Partial Summ. J. Re: Illinos

6  Union's Duty To Defend at 7:15-9:4, Docket No. 17.[5] The court rejected that argument because,

> 7       "The Tarzi action did not allege any affirmative misrepresentations by Gauntlett, nor is
>          misrepresentation a required element of any of the Tarzi causes of action, all of which
> 8        related to wage and hour conditions of employment. To view these allegations as
>          'employment-related misrepresentations' is a strained interpretation of the Policy
> 9        language in light of the facts presented. <u>See</u> <u>Cal. Diaries, Inc. v. RSUI Indem. Co.</u>, 617
>          F. Supp. 2d 1023, 1050 (E.D. Cal. 2009). For these reasons, the Tarzi action could not
> 10       conceivably impose liability against Plaintiff for an 'employment-related
>          misrepresentation.'"

11  November 1, 2011 Order at 11:21-12:5. In line with the court's prior holding, Illinois Union moves

12  for summary judgment that the <u>Tarzi</u> action did not trigger its duty to defend Gauntlett from

13  liability for employment-related misrepresentation.

14    Gauntlett argues that coverage for an "employment-related misrepresentation to . . . an

15  employee . . ." is not language used in any special or technical sense. Gauntlett contends that the

16  tort of negligent misrepresentation need not be pleaded in order to trigger coverage for a

17  misrepresentation claim. Rather, Gauntlett argues, "misrepresentation" should be defined by its

18  ordinary meaning, which is "to represent incorrectly, improperly, or falsely." Opp'n at 8:15-16

19  (citing the dictionary definition of misrepresentation). Gauntlett argues that under this broader

20  definition of misrepresentation, Tarzi's allegation that she was misclassified as exempt asserted a

21  potential claim. <u>See</u> Complaint ¶ 10.

22    In support of his argument that misclassifying an employee is sufficient to assert a potential

23  misrepresentation claim, Gauntlett relies on <u>Professional Security Consultants, Inc. v. U.S. Fire Ins.</u>

---

[5] Gauntlett argues that the court erred in its November 1, 2011 Order by interpreting the
misrepresentation coverage to mean the tort of "negligent misrepresentation," and then finding that
the Tarzi allegations did not allege such a tort. The November 1, 2011 Order, however, did not
determine that pleading the tort of negligent misrepresentation was necessary to trigger coverage.
Rather, the court discussed and rejected Gauntlett's argument that it had pleaded negligent
misrepresentation and that was sufficient under the Policy to trigger coverage.

17

Case No.: 5:11-cv-00455 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION

Co., No. CV 10-04588 SJO SSX, 2010 WL 4123786, at *3 (C.D. Cal. Sept. 22, 2010). In

Professional Security, "[t]he facts in the Underlying Action specifically allege that Plaintiff

'[d]isseminated false information throughout [Plaintiff's] facilities and amongst [Plaintiff's]

employees, reciting that, under [Plaintiff's] labor policies and practices and under California law,

the members of the Illegal Wages Class were not entitled to overtime compensation.'" Professional

Security, 2010 WL 4123786, at *3 (emphasis added). In Professional Security, the underlying

complaint alleged the employer had made affirmative false statements to its employees.

Here, however, the Tarzi Complaint does not allege that Gauntlett made any affirmative false

statements to Tarzi. Rather, it alleges only that Gauntlett misclassified Tarzi as an exempt

employee, which resulted in Tarzi not receiving all benefits to which she was entitled. The

allegations in the Tarzi Complaint are more similar to the allegations made in California Diaries,

Inc. v. RSUI Indem. Co., 617 F. Supp. 2d 1023, 1050 (E.D. Cal. 2009). In California Diaries, a

complaint was filed against an insured employer alleging violations of various provisions of the

California Labor Code concerning denial of mandated meal periods, rest periods, reimbursement

for employee uniforms, and wages due at termination. 617 F. Supp. 2d at 1049. The employer

argued that these allegations triggered its insurance company's duty to defend against claims

asserting employment-related misrepresentations to an employee because the employer had

misrepresented that it would abide by the law. Id. The court held that the employer's interpretation

of "employment-related misrepresentations" was a strained interpretation of the Policy language

and the underlying complaint did not allege any misrepresentations. Id. at 1050.

Gauntlett argues that the Tarzi Complaint is distinct from the underlying complaint in

California Diaries because misclassifying an employee as exempt, leading to her long-term reduced

compensation, "is entirely different from the simple denial of miscellaneous benefits." Opp'n at

13:5-7. From the allegation that Tarzi was misclassified as exempt, Gauntlett argues that the court

should infer that Gauntlett affirmatively made false representations to Tarzi including "pay stubs as

a method of calculation of wage provided to Tarzi and other alleged statements that Tarzi's

complaint asserted." Opp'n at 9:2-3. Gauntlett, however, does not cite to any portion of the Tarzi

Case No.: 5:11-cv-00455 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION

United States District Court
For the Northern District of California

1   Complaint that alleges statements regarding Tarzi's exempt status were made to her in her pay

2   stubs or otherwise. This type of speculation about what potential false representations might have

3   been made by Gauntlett cannot trigger an insurer's duty to defend. "An insured is not entitled to a

4   defense just because one can imagine some additional facts which would create the potential for

5   coverage." Friedman Prof. Mgmt Co., Inc., 120 Cal. App. 4th at 34-35; Golden Eagle Ins. Corp.,

6   148 Cal. App. 4th at 988 (An insured may not trigger the duty to defend by speculating about

7   claims that have not been alleged or asserted).

8          The court reaches the same conclusion it reached in its November 1, 2011 Order and

9   concludes that construing Tarzi's allegation that she was misclassified as an exempt employee to

10  be an "employment-related misrepresentation to an employee" requires a strained interpretation of

11  the Policy language and speculation about claims that were not alleged or asserted. Thus, the Tarzi

12  action does not assert a potential claim for misrepresentation.

## IV. CONCLUSION

14         Illinois Union's motion for summary judgment is GRANTED.  Gauntlett's motion to file a

15  statement recent decision (Docket No. 51) is DENIED.

16         Since this determination is dispositive of the sole cause of action asserted, the court will enter

17  judgment in favor of Illinois Union.  The clerk shall close this file.

18  IT IS SO ORDERED

19  Dated: September 13, 2012

20  _____

21  EDWARD J. DAVILA
    United States District Judge

Case No.: 5:11-cv-00455 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION